# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DWANDA HOLDZCLAW,<br>Mother and Next Friend of A.H., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-0890 (ESH) |
| DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,* | ) ) ) | |
| Defendants. | ) ) ) | |

## NOTICE OF FILING OF THE ADMINISTRATIVE RECORD

The Defendants, through counsel, respectfully submit the District of Columbia Public Schools' administrative record from the February 12, 2007, Hearing Officer's Determination at issue in this case. Consistent with LCvR 5.4(f), the Defendants have redacted personal information about the minor A.H., including his name, date of birth and Social Security Number.

The undersigned counsel has served a copy of the unredacted record on counsel for the Plaintiff, by U.S. mail, simultaneous with the filing of the redacted record with the Clerk through the e-filing system.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

August 1, 2007

*Holdzclaw v. District of Columbia*
Civil Action No. 07-0890 (ESH)

# <u>Index of Record</u>

| <u>Description</u> | <u>Page</u> |
|---|---|
| Hearing Officer's Determination, issued 2/12/07 | 1 |
| Friendship's Closing Arguments, 1/26/07 | 10 |
| DCPS' Closing Argument, 1/26/07 | 16 |
| Parent's Closing Argument, 1/24/07 | 37 |
| Parent's Disclosure Letter with Exhibits, 11/24/06 | 49 |
| AH 1: Administrative Due Process Hearing Complaint, 10/6/06 | 52 |
| AH 2: Hearing Notice, 11/9/06 | 60 |
| AH 3: Letter to DCPS Re: Inappropriate Placement, 10/4/06 | 62 |
| AH 4: Letter to Friendship Re: MDT Meeting and Functional Behavior Assessment Request, 9/28/04 | 69 |
| AH 5: IEP, 10/3/06 | 74 |
| AH 6: IEP Meeting Notes, 10/3/06 | 87 |
| AH 7: Advocate's Meeting Notes, 10/3/06 | 94 |
| AH 8: Acceptance Letter from High Road School, 10/17/06 | 97 |
| AH 9: Acceptance Letter from Accotink Academy, 10/23/06 | 100 |
| AH 10: Fourth Quarter Report Card, 4/7/06 – 6/22/06 | 102 |
| AH 11: Educational Evaluation, 8/10/06 | 104 |
| AH 12: Psychological and Clinical Evaluation, 8/13/06 | 109 |

*Holdzclaw v. District of Columbia*
Civil Action No. 07-0890 (ESH)

**<u>Description</u>**                                                        **<u>Page</u>**

AH 13:    Letter to Friendship Re: Request            117
          for Evaluations, 3/1/06

AH 14:    Letter to Friendship Re: Request            123
          for Records, 3/1/06

AH 15:    Glassmanor Elementary IEP, 4/28/05          129

AH 16:    IEP, 10/5/05                                149

AH 17:    MDT Meeting Notes, 10/5/05                  157

AH 18:    IEP, 12/5/05                                159

AH 19:    New Addendum Meeting Page, 12/5/05          169

AH 20:    Letter from Friendship School Counselor     169
          Re: Behavior of A.H.

AH 21:    Letter from Mr. Hill                        171
          Re: Behavior of A.H., 12/7/05

AH 22:    Notice of Suspension, 11/28/05              173

AH 23:    Notice of Suspension                        176

AH 24:    Discipline Referral Form, 9/28/05           178

AH 25:    Discipline Referral Form, 12/5/05           180

AH 26:    Discipline Referral Form, 12/7/05           182

AH 27:    Discipline Referral Form, 12/7/05           184

AH 28:    Notice of Suspension, 12/20/05              186

AH 29:    Discipline Referral Form, 1/4/06            188

AH 30:    Psychological Consultation and              190
          Conference Report Form, 11/12/03

AH 31:    Parent/Guardian Questionnaire, 9/10/03      193

AH 32:    Summary and Score Report, 10/5/05           197

*Holdzclaw v. District of Columbia*
Civil Action No. 07-0890 (ESH)

| **Description** | **Page** |
|---|---|
|     AH 33:    Psychiatric Intake Evaluation, 12/8/05 | 203 |
| Friendship's Disclosure Letter with Exhibits, 11/22/06 | 208 |
|     FSEA 1:    Motion to Dismiss with Exhibits 1 – 4, 11/22/06 | 210 |
|     FSEA 2:    Settlement Agreement, 6/22/06 | 242 |
|     FSEA 3:    IEP, 10/3/06 | 244 |
|     FSEA 4:    Prior Notice and MDT Notes, 10/27/06 | 254 |
|     FSEA 5:    Compensatory Hours Sign-In Sheet, 10/06 – 11/06 | 259 |
|     FSEA 6:    First Quarter Report Card, 8/28/06 – 10/31/06 | 260 |
| SHO Hearing Notice, 11/9/06 | 261 |
| SHO Scheduling Memorandum, 10/6/06 | 266 |
| Administrative Due Process Complaint, 10/6/06 | 268 |
| Hearing Transcript, 1/22/07 | 276 *et seq.* |

(In the Matter of AH    HOD: February 12, 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of ███████ ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: ████████ ) | |
| ("Student") ) | **HEARING OFFICER'S DECISION** |
| ) | |
| Petitioner, ) | Hearing Date: January 22, 2007 |
| ) | Record Closed: January 26, 2007 |
| v. ) | Held at: 825 North Capitol St. NE |
| ) | Washington, DC |
| Friendship Edison ) | |
| Public Charter School and ) | |
| ) | |
| District of Columbia Public Schools ) | |
| ("DCPS" or "District") ) | |
| Attending School: Friendship ) | |
| Edison Public Charter School - ) | |
| South East Academy ) | |
| Respondent. ) | |

Counsel for Student:

                               Miguel Hull, Esq.
                               1220 L Street, NW   #700
                               Washington, DC  20005

Counsel for DCPS:

                               Karen Jones Herbert, Esq.
                               Office of General Counsel
                               825 North Capitol St. NE
                               Washington, DC  20002

Counsel for Friendship Edison, PCS

                               William E. Houston
                               1008 Pendleton Street
                               Alexandria, Virginia  22314

## JURISDICATION:

A Due Process Hearing was convened on January 22, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed October 6, 2006. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A ), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

1

(In the Matter of AH    HOD: February 12, 2007)

**DUE PROCESS RIGHTS:**

The parent's counsel waived a formal reading of the due process rights.

**SUMMARY OF THE RELEVANT EVIDENCE:**

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (AH 1-33 and FEPCS 1-6) which were admitted into the record.   The parties filed a post hearing briefs and the record closed January 26, 2007.

**FINDINGS OF FACT [1]:**

The student has been determined to be eligible for special education and related services with a disability classification of multiple disabilities (MD) including other health impaired (OHI) and emotional disturbance (ED).  The student is currently age ten and attends Friendship Edison Public Charter School Southeast Elementary Academy (FEPCS) and is in the fourth grade. (FEPCS 3)

Based upon his last educational evaluation conducted in August 2006 the student is functioning at the 2nd grade level in Reading and the 3rd grade level in Math.  (AH 11)

On June 22, 2006, FEPCS and the parent's counsel signed a settlement agreement under which FEPCS agreed to conduct evaluations of the student.  FEPCS conducted the evaluations and October 3, 2006, convened a multi-disciplinary team (MDT) meeting and revised the student's IEP to prescribe a full time special education program.  FEPCS does not have a full time special education program.  Consequently, FEPCS informed DCPS the student was in need of a full time special education placement and offered the parent several dates for a placement meeting.  (FEPCS 3)

On October 27, 2006, FEPCS convened the MDT/placement meeting.  DCPS was represented at the meeting by Mr. Evan Murray.  The parent proposed Accotink Academy.  DCPS proposed the student attend the Taft Center (Taft) and Mr. Murray explained the services available at Taft.  DCPS issued a prior notice was issued which indicated the student's placement would be Taft.  (FEPCS 4)

DCPS Transportation Division later called the parent and indicated the student would be transported to Taft.  The parent, thereafter, called Taft and spoke the special education coordinator, Mr. Labone Workman.  The parent shared with Mr. Workman that the student was in the 4th grade.  She did not indicate the student's age, however.  Mr. Workman indicated Taft did not have a 4th grade but its program started at the 5th grade. Mr. Workman did not indicate to the parent the functional grade level of any of the students and did not indicate to her the ages of the students in the 5th grade at Taft.  Based upon the information that Taft did not have a fourth grade the parent concluded Taft was

---

[1] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

(In the Matter of AH    HOD: February 12, 2007)

inappropriate for the student. The parent believes the student should not be moved up to the fifth grade when he is actually in the fourth grade. Mr. Workman indicated to the parent the student's IEP could be implemented at Taft. The parent did not ever visit Taft. (Parent's testimony)

Mr. Workman acknowledged that he indicated to the parent that if the student was a fourth grader he was too young for Taft's program. However, Mr. Workman was not aware of the student age when he conversed with the parent. (Mr. Workman's testimony)

Taft is a full time special education program that serves students with disabilities classifications including severe ED and OHI for Attention Deficit Hyperactivity Disorder (ADHD). Taft has a low student/teacher ratio and psychological services on sight. The students in the fifth grade at Taft are 10 to 11 year olds. And the students in that classroom are functioning at a K to third grade level academically. There are no more than five students in the class. The teacher is provisionally certified. There are three social workers, a speech/language therapist and an occupational therapist who can provide the services prescribed in the student's IEP. (Mr. Workman's testimony)

The parent has allowed the student to remain at FEPCS in a combination special education/general education program until the due process hearing is concluded. The student has continued to have behavior difficulties at FEPCS since he was determined to be in need of a full time special education program. (Parent's testimony)

The student has been interviewed at and accepted by Accotink Academy (Accotink). Accotink has reviewed the student's evaluations and prior IEPs. Accotink is a self contained therapeutic day school for students ages 5 to 21. There is low student to teacher ratio and the school provides speech/language therapy and other related services by certified related services providers. The school has 142 students during the regular school year. The student would be placed with students of his age and be provided specialized instruction and related services comparable to the services contained in the IEPs that were reviewed. The student would be placed in an un-graded classroom based on age. (Ms. Warnke's testimony)

## ISSUE(S): [2]

Did FEPCS and/or DCPS deny the student FAPE by failing to promptly provide the student an appropriate placement? [3]

---

[2] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[3] The parent alleges the student was due an appropriate placement within a reasonable time following the October 3, 2006, MDT meeting in which the student's IEP was amended to prescribe a full time special education placement. The parent also alleges the Taft Center, the placement proposed by DCPS, is inappropriate.


(In the Matter of AH    HOD: February 12, 2007)

## CONCLUSIONS OF LAW:

Pursuant to IDEIA Sec. 1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA § 1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief. [4] In this case the parent is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

Did FEPCS and/or DCPS deny the student FAPE by failing to promptly provide the student an appropriate placement?   Conclusion: Parent's counsel did not sustain the burden of proof.

The student was determined to be in need of a full time special education placement on October 3, 2006. FEPCS promptly scheduled a placement meeting and informed DCPS of the need to attend and to provide the student an appropriate placement. Mr. Workman attended the meeting on October 27, 2006, and proposed the placement at Taft.

There was sufficient evidence presented based on Mr. Workman's testimony that Taft can implement the student's IEP. Opposition to Taft was based on the parent's impression the placement was inappropriate because the student would be moved from the fourth the fifth grade. Although the student will be in the fifth grade at Taft rather than the fourth grade, it was sufficiently demonstrated the student would be with age appropriate peers and with peers functioning at his comparable academic ability.

There was insufficient evidence that Taft was an inappropriate placement for this student. Therefore, the Hearing Officer concludes Taft is an appropriate placement and concludes that DCPS offered the placement within a reasonable time after DCPS became clear the student was in need of a new placement. Therefore, the Hearing Officer concludes the student was not denied FAPE by either DCPS or FEPCS.

---

[4] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

4

(In the Matter of AH    HOD: February 12, 2007)

## ORDER:

1. DCPS and FEPCS are the prevailing parities in this matter.

2. The student's placement at the Taft Center is hereby determined to be appropriate.

## APPEAL PROCESS:

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: February 12, 2007**

Issued: ___2/12/07___

5

5

(In the Matter of AH    HOD: February 12, 2007)

## In the MATTER OF ████████████ V. DCPS

## INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| AH 1-33 | Parent's Disclosures | Yes |
| FEPCS 1-6 | FEPCS Disclosures | Yes |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | * A detailed list of the documents disclosed is contained in the parties' disclosure notices | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

6

6


(In the Matter of AH    HOD: February 12, 2007)

## In the MATTER OF ███████████ V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 10/6/06 | Request for Due Process |
|  | Notice of Pre-Hearing Conference (as applicable) |
| 11/9/06 | Notice of Due Process Hearing |
|  | SETS Disposition Form |
|  | Transcripts or audio tapes of hearing |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

(In the Matter of AH    HOD: February 12, 2007)

# INDEX OF NAMES

## In the MATTER OF ██████████ V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| School Psychologist | |
| Regular Education Teacher | |
| | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | Ms. Dwanda Holtzclaw (Mother) Mr. Charles Robinson (Stepfather) |
| Child/Parent's Representative | Miguel Hull, Esq. |
| School System's Representative | Karen Jones Herbert, Esq. |
| Parent's Educational Advocate | |
| Accotink Academy | Ms. Ann Warnke |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## ATTENDANCE SHEET

STUDENT'S NAME: ▆▆▆▆▆▆▆▆▆▆▆

SCHOOL OF ATTENDANCE: *Friendship Edison*

D.O.B: ▆▆▆▆▆

HEARING DATE: 1/22/07    ROOM: 8151    TIME: 12:00    A.M./P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Karen S. Herbert | DCPS | Att/ Advisor |
| William Houston | FEPCS | Attorney |
| Charles Robinson | & Student Stepfather | Stepfather |
| Dwanda McFinclaw | Mother Student | Mother |
| Miguel Hu | Student | atty. |
| Ann Warnke | Student | Accotink Academy |
| LaBone Workman | DCPS | Director |
|  |  | Spec Ed. Coordinator |
|  |  | Taft Center |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Coleg Ruff*

Impartial Hearing Officer

# District of Columbia Public Schools
## STATE EDUCATION AGENCY

### Confidential

|  |  |  |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓, Student | ) | |
| | ) | Hearing Officer Coles Ruff |
| Date of Birth: ▓▓▓▓▓▓ | ) | Hearing Date: 22 January 2007 |
| Petitioner, | ) | Request for Hearing: 6 October 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| PUBLIC SCHOOLS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FRIENDSHIP-EDISON SOUTHEAST | ) | |
| ACADEMY PUBLIC CHARTER | ) | |
| SCHOOL | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

*2007 JAN 26 PM 2:18 DC PUBLIC SCHOOL SYSTEM*

## RESPONDENT FRIENDSHIP EDISON'S CLOSING ARGUMENTS

Comes now the respondent, Friendship-Edison Southeast Academy Public Charter School, (FSEA) by and through counsel, and respectfully submits the following closing arguments as requested by the Hearing Officer on 22 January 2007.

### Issue

As the petitioner stated in her closing argument, only one issue is before this Hearing Officer, to wit:
Whether Taft Center is an appropriate placement for ▓▓▓▓▓▓▓▓▓

### Background

On 22 June 2006, the petitioner and FSEA entered into a settlement (Document FSEA-02 of the 22 November 2006 Five Day Disclosure).  FSEA agreed to, among other things, "to conduct the student's triennial psychoeducational and clinical evaluation during the summer." FSEA then agreed to convene the MDT team to review the "evaluations and revise the IEP."  The settlement was for "all fees and issues related to the April 27 2006 due process complaint notice."

10

**CLOSING STATMENT -- CONTINUED**                                        2

On 3 October 2006, FSEA convened the MDT and reviewed the evaluations. The team then revised the IEP to reflect the new evaluations. The new IEP provided a full-time special education program with an aggregate of 27.5 hours of special education and related services. (*See*, Five Day Document FSEA-03). FSEA informed DCPS of the need for their intervention in finding a full-time special education program immediately, as did the petitioner's counsel.

On 27 October 2006, FSEA reconvened the MDT to discuss placement. At that meeting the DCPS representative offered Taft Center as the placement. The petitioner turned down the placement.

In the meantime, petitioner filed this instant suit on 6 October 2006, without giving the parties any time, reasonable or unreasonable to place ▮▮▮▮ in a program to meet her needs. The only substantive relief requested in the complaint that is at issue in this case is placement. The petitioner specifically requested:

That FSEEA and / or DCPS be ordered, or agree, to:

a) Begin providing, within 24 hours, the full 26.5 hours of specialized instruction per week as called for by the IEP dated October 3, 2006;

b) Fund 200 hours, or some reasonable amount considering that this is in a ongoing violation, of one-on-one tutoring as compensatory education for the student to make up for services that were denied;

c) Fund interim or permanent placement with transportation to one of the following: Foundations; Rock Creek Academy; Frost School; Accotink; High Roads in Maryland; or some other appropriate school;

d) Alternatively, convene an MDT meeting within ten business days to determine any additional compensatory education that may be due; and identify placement with placement to be made within five business days if for a public school or within thirty calendar days if for a non-public school; *(sic)*

The student hearing office scheduled the hearing after the petitioner refused the placement offer. Originally, the hearing office scheduled the hearing for 1 December 2006, but the petitioner asked for a continuance due to the unavailability of their witness[1]. The hearing was thus heard on 22 January 2007.

## Argument

The Hearing Officer must dismiss the petitioner's complaint against FSEA specifically for failure to state a claim against which relief can be granted and the Hearing Officer must dismiss the petitioner's request in general for not meeting her burden of proof.

### A. Placement Issue is Solely the Responsibility of DCPS in the Instant Case.

---

[1] It is interesting to note that petitioner did not call the witness she deemed necessary for the 1 December 2006 hearing.

**CLOSING STATMENT – CONTINUED** 3

From the outset of this suit, the complaint has been about placement.[2] Under the District of Columbia regulations, DCPS is solely responsible for placement when the LEA Charter School cannot meet the needs of a specific student.

When an LEA Charter concludes that it cannot serve a child with a disability enrolled in its facility, they shall appeal to DCPS as the SEA for assistance and placement. (*See*, 5 DCMR, §3019.9). After DCPS receives notice that an LEA Charter School cannot serve the child, DCPS as both the SEA and the new LEA will assume responsibility for the student. (*See*, 5 DCMR §3019.11).

On 27 October 2006, DCPS assumed sole responsibility for placing the student. On that date, DCPS issued a prior notice to the parent naming the Taft Center as the placement.

When DCPS, as the SEA became aware of FSEA's inability to serve the petitioner, FSEA no longer bore any burden, therefore FSEA respectfully requests the Hearing Officer to dismiss the complaint against FSEA.

**B. Burden of Proof**

However, even without the finding that DCPS became the responsible party, the Hearing Officer must dismiss the complaint because the petitioner failed to meet her burden of proof.

On 27 October 2006 FSEA convened a placement meeting with all the parties attending including DCPS. At the conclusion of the meeting DCPS issued a prior notice to the parent placing the student at Taft Center. At that point, both FSEA and DCPS met their respective procedural burdens as annunciated by the U.S. Supreme Court in *Hendrick Hudson v. Rowley,* 458 U.S. 176 (1982).

> Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. (*Rowley* at 207 & 208)

Thus, at the hearing the burden of proof rested with the petitioner to show that "the

---

[2]Although there was mention of compensatory education, that relief was ridiculous on its face because the petitioner requested 200 hours of compensatory education two days after the revision of the IEP. Even, *in arguendo*, the petitioner is correct in her assertion that FSEA is liable for implementing the full-time IEP, at the time filing of the complaint FSEA would have only denied 55 hours of service between the time of the MDT meeting to revise the IEP and the date of the filing of the complaint.

**CLOSING STATMENT – CONTINUED**                                                          **4**

individualized educational program developed through the Act's procedures" **was not** "reasonably calculated to enable the child to receive educational benefits," or the second prong of the *Rowley* test. Here the petitioner failed.

    The mother testified to a conversation she had with the special education coordinator at the Taft Center, Mr. Labone Workman. She stated that Mr. Workman informed her that Taft did not service 4th grade students. However, Mr. Workman clarified that statement when he testified stating that Taft Center could serve ▓▓▓ because of her age and that students in her classroom would range in ability levels.

    Mother was the only witness for the petitioner to testify about the appropriateness of Taft Center. The mother was not qualified as an expert therefore her testimony about the appropriateness is baseless.

    The petitioner's other witness testified about the appropriateness of Accotink Academy. As FSEA stipulated at the hearing, Accotink could meet the student's needs and Accotink Academy could provide educational benefit. However, before petitioner could seek the redress offered by Accotink Academy, they had to show the inappropriateness of Taft Center. The witness from Accotink Academy did not do this. In fact in her testimony, she stated ▓▓▓▓ would be in a classroom with her age appropriate peers, with the students in her classroom ranging in ability levels. This was the same that Taft Center would offer, only they graded the levels whereas Accotink Academy does not.

    Although Accotink Academy may be vastly superior to Taft Center, IDEIA does not guarantee to maximize the educational opportunities, merely to offer the basic opportunities and open the door for a free appropriate public education. (*See generally, Rowley* at 187 to 201). Therefore when DCPS offered to place ▓▓▓▓ at the Taft Center they had met their obligations under the laws absent a showing by the petitioner that ▓▓▓ would not receive educational benefit at Taft.

    For all the foregoing reasons, the petitioner respectfully requests the Hearing Officer to dismiss the case against FSEA specifically because petitioner did not raise any issues against FSEA for which they could provide any relief and dismiss generally because of the petitioner's failure to meet his burden of proof.

           Respectfully submitted

           William E. Houston, Esq.
           Counsel for FSEA

Case 1:07-cv-00890-ESH    Document 8-3    Filed 08/01/2007    Page 14 of 396

## CERTIFICATE OF SERVICE

I, William Houston, certify that I transmitted a copy of the foregoing Closing Arguments by facsimile on 26 January 2007 to Mr. Miguel Hull and Ms. Karen Jones Herbert,

Respectfully,

William E. Houston

Jan. 26. 2007  2:06PM    Dalton, Dalton, & Houston

# FACSIMILE TRANSMISSION COVER SHEET

## DALTON, DALTON, & HOUSTON, P.C.
### 1008 Pendleton Street
### Alexandria, Virginia 22314-1837
### Telephone: (703) 739-4300
### Facsimile: (703) 739-2323
### E-MAIL: DCSPEDLAW@AOL.COM

**DATE:**              26 January 2007

**TO:**                Hearing Officer Coles Ruff

**AT FAX:**            202 442-5556

**FROM:**              WILLIAM HOUSTON

**RE:**                ███████ – Closing Arguments

**NUMBER OF PAGES INCLUDING COVER SHEET:**              6

**COMMENTS:**          Please pass to Hearing Officer Ruff

*************************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA STATE
ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION SERVICES



|  |  |  |
|---|---|---|
|  | * | **BEFORE** |
| DOB: | * | **STUDENT** |
|  | * | **HEARING OFFICER** |
|  | * | **COLES RUFF** |
| V. | * |  |
|  | * |  |
|  | * |  |
| DISTRICT OF COLUMBIA | * |  |
| PUBLIC SCHOOLS | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

2007 JAN 26 PM 5: 39
DC PUBLIC SCHOOL SYSTEM

## CLOSING ARGUMENT

The District of Columbia Public Schools (DCPS), by its Attorney-Advisor, Karen Jones Herbert, respectfully offers this **Closing Argument** to the matter argued before Hearing Officer Coles Ruff on January 22, 2007 at 11:00 am.

## ISSUE

DCPS believes that the only issue before the Hearing Officer is that of **Placement.** The Petitioner requests the Private school of Accotinck Academy, and DCPS offered Taft Center for placement for the student.

16

Closing Argument
Page 2

## BACKGROUND

At the hearing on Janaury 22, 2007, Petitioner, who had originally stated the student's present school, Friendship-Edison, Southeast Academy Charter School had been determined to be inappropriate for the student.[1]  DCPS was then requested, as the State Education Agency (SEA), and as is required by Law,[2] to seek a placement for the student.  DCPS prepared a Prior Notice placing the student at Taft Center.

## ARGUMENT

Upon the issuance of the prior notice, placing the student at Taft Center, the parent had occasion to speak to the Special Education Programmer, Mr LaBone Workman, at Taft Center and inquired as to her child attending the program. After a short discussion, the parent was told by Mr. Workman, that the student was in too low a grade (4th grade) to attend Taft Center (which begins at the 5th grade)    The parent then began to seek out private schools for her son to attend. Eventually she received an acceptance letter from Accotinck Academy.

DCPS, upon learning of the student's non attendance at Taft Center, proceeded to inquire as to why the student was not there.  When told that the grade that the student was presently in was the problem, DCPS inquired as to the student's age and whether he had been left behind.  The student's evaluations indicated that he was on the 2nd and 3rd grade levels in his reading and math skills, respectively.  It was learned that the student was age equivalent for Taft Center and was in the 4th grade because he had been left behind previously.

---

[1] Multidisciplinary Team (MDT) meeting notes, dated October 27, 2006, (Attachment A), Friendship Edison, SE Charter School's deciding on appropriate placement for the student, whose IEP hours have been increased to 27.5 hours, (Attachment B), the equivalent of a full time special education placement.
[2] *5DCMR,§3019.9.*

17



Closing Argument
Page 3

Taft was informed of these facts and then assured the Hearing Officer that if the parent would allow the student to be placed in the school in the 5th grade, then Taft Center could administer to the student at his current grade levels and would be an educational benefit for the student.

It was explained to the parent and the Hearing Officer that Taft Center is a full time Therapeutic Special Education School with a low teacher to student ratio, that services students with disabilities in the following categories: Learning Disabled, Severely Learning Disabled, Other Health Impaired, Multiple Disabled, and Emotionally disabled. The Center in its therapeutic setting offers all of the related services such as: Speech and Language, Occupational Therapy, Adaptive Physical Education, Remedial Math and Reading, Counseling, and crisis intervention. The school has a part time nurse and all teachers are certified in Special Education.

### CONCLUSION

While there was testimony from Accotinck Academy about what their school could offer and their offer, indeed, sounded much more superior to DCPS, I must remind the Hearing Officer that DCPS does not have to match and be the superior of the private school offers, according to IDEIA, it just has to offer the basic opportunities for a Free and Appropriate Education (FAPE) [*See generally Rowley at 187 to 201*). Therefore, for all foregoing reasons, DCPS requests that the Hearing Officer place the student at Taft Center, as Taft Center can meet the obligation to render an appropriate special education program to the student.

January 26, 2007                              Respectfully submitted,


                                             *Karen J. Herbert*
                                             Karen Jones Herbert
                                             Attorney Advisor
                                              for DCPS as the State Educational Agency

18




Closing Argument
Page 4

I, Karen Jones Herbert, Esquire, hereby certify that a copy of DCPS' **Closing Argument** was sent on January 26, 2007, to Miguel Hull, Esquire, of the firm Brown & Associates, representative of the parent, via facsimile at 202-742-2098, and to William Houston, Esquire, of the Law firm Dalton, Dalton & Houston representative of Friend-Edison, Southeast Charter School, via facsimile 703-739-2323.

*Karen J. Herbert*
Karen Jones Herbert,
Attorney Advisor
for DCPS as the State Educational Agency

19

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)**
**SPECIAL EDUCATION PROGRAMS**

| | |
|---|---|
| Dwanda Holdzclaw )<br>On behalf of ███████ )<br>DOB: ███████ )<br> )<br>    Vs )<br> )<br>District of Columbia Public Schools )<br> )<br>    And )<br> )<br>Friendship-Edison Southeast Academy )<br>Public Charter School )<br> ) | Hearing Officer Ruff, Esq.<br>Hearing: 1/22/07 at 11:00 a.m. |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

<u>**Parent's Closing Argument for Hearing on January 22, 2007**</u>

COMES NOW Dwanda Holdzclaw, parent of the above-referenced student, through

counsel, and respectfully submits this Closing Argument for the Due Process Hearing that

took place on January 22, 2007.

**Issue**

1.  After argument and discussion on the record, the hearing officer and parties agreed to

hone the issue for the hearing to: whether Taft Center is an appropriate placement for

███████

**Facts**

2.  It was undisputed at the Due Process Hearing on January 22, 2007, that:

    a.    ███████ is a ten-year-old special education student attending the fourth

        grade at Friendship Southeast Elementary Academy ("FSEA") in the District of

        Columbia.

    b.    On October 3, 2006, an MDT meeting took place for ███ at FSEA. No one

1

from District of Columbia Public Schools ("DCPS") attended that meeting.

> Exhibit No.: AH-6, MDT notes 10/3/06.

c.  During the October 3rd meeting, ████ Individualized Educational Program
    ("IEP") was revised classifying him with multiple disabilities [other health
    impaired and emotionally disturbed] and entitling him to 26.5 hours per week of
    specialized instruction, in the special education setting, and one hour of counseling
    per week.[1]  Exhibit No.: AH-5, IEP 10/3/06; See also Exhibit No.: AH-18 IEP
    12/5/05; Exhibit No.: AH-19, IEP Addendum 12/5/05.

d.  The October 3, 2006 IEP indicates on the pages pertaining to goals and objectives
    that the specialized instruction will be provided to ████ by a special education
    teacher.  Id.

e.  Although placement was not determined during the October 3rd MDT meeting, the
    team members present agreed that FSEA could not implement ████' IEP.
    Exhibit No.: AH-6.

f.  On October 4, 2006, the parent, through counsel, sent written notice to DCPS and
    FSEA that ████'s placement at FSEA was inappropriate and requested that a
    placement meeting be convened to determine an appropriate placement.  Exhibit
    No.: AH-3, Correspondence to DCPS and FSEA 10/4/06; See also Exhibit
    No.:AH-4, Correspondence to DCPS and FSEA 9/28/06.

g.  On October 6, 2006, the parent filed a Due Process Complaint against FSEA and

---

[1] Although not discussed at the hearing, the documents introduced by the parent and or charter school include: a previous IEP, dated December 5, 2005, that classified ████ with a specific learning disability and entitled him to 12.5 hours per week of specialized instruction, 10 of those hours in a special education setting and 2.5 in the general education setting; an addendum to the IEP, also dated December 5, 2005, reducing ████ specialized instruction in the special education setting from 10 hours per week to only 5 hours per week; and a settlement agreement between the parent and the charter school whereby the charter school agreed to conduct certain evaluations and provide 36 hours of compensatory tutoring.  That tutoring is current being provided by the charter school.

DCPS regarding:

     i.   Whether FSEA, as the LEA, and DCPS, as the SEA have inappropriately failed, and continue to fail, to provide/ensure specialized instruction in a special education classroom as called for the current and previous IEP's; and

     ii.   Whether the placement location at FSEA is appropriate?

h. On October 27, 2006, the parent and her educational advocate appeared at FSEA for a resolution meeting to address the issues raised in the October 6th Complaint. Exhibit No.: FSEA-4, MDT Notes 10/27/06.

i. The October 27th meeting included the active participation of Mr. Evan Murray, a DCPS placement specialist. Id.

j. The October 27th meeting eventually became an MDT/placement meeting, during which, DCPS issued a prior notice for ████ to attend the Taft Center. Exhibit No.: FSEA-4, Prior Notice 10/27/06.

k. According to his educational assessment dated August 10, 2006, ████ is functioning on the grade levels: broad reading 2.2; broad math 3.2; broad written language 1.9. Exhibit No.: AH-11.

3. During the hearing on January 22, 2007, the parent testified that on or about November 1, 2006, she telephoned and spoke with the special education coordinator at Taft, Mr. Labone Workman, who told her that Taft began at the fifth grade and that her son could not attend Taft if he was still in the fourth grade. Transcript 1/22/07. The parent also testified that she and ████ have visited the Accotinck Academy in Springfield, Virginia, a non-public special-education school that has accepted him. Id. The parent further testified that she believes that Accotinck could provide ████ an educational benefit and that she would like for him to attend that school. Id.

3

4. During the hearing, Mr. Workman also testified. During direct examination, Mr. Workman testified, among other things, that Taft is set up by grades beginning with the fifth grade; that there is no fourth grade classroom at Taft; but that ██████would be in a classroom with other students in his age range.

5. During cross-examination, Mr. Workman testified that if ████were to attend Taft, he would have to be put into the fifth grade and his IEP would have to be re-written to reflect his being in the fifth grade. Id.

6. Mr. Workman also testified during the hearing that one of the teachers that would teach ████ at Taft has only a provisional certification to teach special education and not a full certification. Id.

7. Also during the hearing, the parent called Ms. Ann Warnke to testify as to the appropriateness of Accotinck. During her testimony, Ms. Warnke identified herself as a director at Accotinck and explained that the school had interviewed and accepted ████ as a possible student; that ████would be in a classroom with eight other students within the same age-range and level of functioning; that all his possible teachers are certified to teach special education; that the school has counselors and psychologists on staff to provide counseling; and that the school follows DCPS-curriculum. Id.

**Argument**

8. The parent asserts that Taft Center is not an appropriate school for ████.

9. According to the Individuals with Disabilities Education Act ("IDEA"), a placement is to be in a school that is capable of implementing the student's IEP. 20 U.S.C.§ 1402 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that include an appropriate

4

preschool, elementary school, or secondary school education in the state involved" [and] *"are provided in conformity with the individualized education program"* Emphasis added); § 1401 (29) (D) ("The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . .]."); 34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (b) (2) (placement is to be based on student's IEP); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. Tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. Tit. 5 § 3000.

10. Additionally, it is inappropriate for an IEP to be developed, or re-written, to fit a particular placement. Spielberg v. Henrico County Public School, 441 IDELR 178 (4th Cir. 1988) (held that a school district cannot change, or develop, an IEP to fit a particular placement).

11. In this case, Mr. Workman testified that Taft was set up by grades, that the school began at fifth grade and did not have a fourth grade. Consequently, one of the reasons that Taft is an inappropriate placement is because, where he to attend Taft, ▇▇▇▇ would have to be arbitrarily promoted from the fourth grade to the fifth grade and his IEP would have to be re-written to reflect his being arbitrarily promoted into the fifth grade. The fact that at Taft, ▇▇▇▇ would be in a classroom with other students in his age range does not overcome the fact that his IEP would have to be re-written to arbitrarily promote him into the fifth grade.

12. Taft is also inappropriate in that ▇▇▇▇' IEP entitles him to receive all of his specialized instruction from properly certified special education teachers; yet, according to the testimony at the hearing, at least one of ▇▇▇▇ special education teachers is not fully certified as the law now requires.

13. As of the beginning of the 2006-07 school year, the IDEA requires that all of a student's special education teachers must be "Highly Qualified" such that they have obtained "<u>full</u> State certification as a special education teacher [. . .] and the teacher <u>has not had</u> special education certification or licensure requirements <u>waived</u> on an emergency, temporary, or provisional basis." <u>Emphasis added</u>. <u>Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1402 (10) (B)</u> (to be highly qualified, a special education teacher must have full certification); "<u>§ 1412 (a) (14)</u> (all special education teachers in a State must be 'highly qualified' by the end of the 2005-06 school year); <u>34 C.F.R. § 300.18</u>; and <u>34 C.F.R. § 300.156</u>.

14. At the hearing, Mr. Workman testified that the first period teacher that ▇▇▇▇ would have at Taft, and who would provide him with specialized instruction, was only certified on a provisional basis. Consequently, that teacher is not fully certified, or "Highly Qualified," as defined by the statute, meaning that for at least that class period, ▇▇▇▇' IEP would not be properly implemented and the placement is therefore inappropriate.

15. Furthermore, although the IDEA also indicates that there exists no individual right of action for failure of a particular teacher to be highly qualified, that bar <u>does not</u> apply to this argument because here the issue/action to be considered is <u>not</u> whether the teacher in question is highly qualified and whether that in-and-of-itself is a violation, but whether Taft is appropriate and can implement the IEP. The fact that this particular teacher is not highly qualified in this case is merely raised as <u>evidence</u> in support of the claim that Taft is not appropriate, a right of action that is allowed. <u>20 U.S.C. § § 1412 (a) (14) (E)</u>; and <u>34 C.F.R. § 300.156</u>.

**Relief Sought.[2]**

16. a finding in the parent's favor as to each of the issues raised above.

17. That FSEA and/or DCPS be ordered, or agree, to:

   a) Provide funding and transportation for an interim or permanent placement at the

   Accotink Academy in Springfield, Virginia; or

   b) Alternatively, convene an MDT meeting within 10 days to identify an appropriate

   placement for ████████ with placement to be made within 10 days if for a public school

   or 30 days if for a non-public school, and if DCPS fails to convene this meeting

---

[2] In this case both FSEA [as the LEA] and DCPS [as the SEA and LEA if placement is to Taft] are liable for the claims in question. D.C. Mun. Regs. tit. 5 § 3002.1; D.C. Mun. Regs. tit. 5 § 3019.2 (LEA Charters shall be responsible for ensuring that the requirements of Part B of the Act, including documentation or required polices and procedures, are met in regard to children enrolled in their schools, consistent with the requirements of Chapter 38."); and D.C. Mun. Regs. tit. 5 § 3019.8 ("LEA and District Charters are responsible for providing all necessary related services to children with disabilities enrolled in their facilities, consistent with these children's IEP's."). Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1412 (a) (11); 34 C.F.R. § 300.101 (c) (1) ("Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services [. . . ]"); 34 C.F.R. § 300.227 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. § 300.149 (a), ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are carried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibilities shall include, but not be limited to: (a) Acquisition and administration of federal grants on behalf of funding or services for all eligible local education agencies in the District of Columbia, including public, public charter and private schools; (b) Ensuring that all local education agencies in the District of Columbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA)"); S. Rep. No 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code. Cong. & Ad. News 1425, 1448. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under IDEA] reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State . . . Without this requirement, there is an abdication of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist, 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. Grasmick 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending); and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings, *SEA was liable for attorney's fees subsequently incurred at District Court proceedings* because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

through no fault of the parent or representatives, then order funding and transportation

.to Accotink Academy.


Respectfully submitted,

*Miguel A. Hull*

Miguel A. Hull


## Certificate of Service

I HEREBY CERTIFY that on this 24th day of January 2007, a copy of the forgoing Closing Statement was delivered by facsimile to Karen Herbert, Esq., DCPS Office of the General Counsel 202 442-5098/97; and by facsimile to William Houston, Esq., Dalton, Dalton & Houston 703-739-2323.

*Miguel Hull*

Miguel Hull

8

441 IDELR 178
441 LRP 8997

**Category**

Special Education, Judicial Decisions

*Jonathan SPIELBERG, a minor, by his parents, Howard and Susan*
*Spielberg, as his next friend; Howard SPIELBERG; Susan*
*SPIELBERG, Plaintiffs-Appellees v. HENRICO COUNTY PUBLIC*
*SCHOOLS; Malcolm M. CHRISTIAN, Chairman, Henrico County*
*School Board; William C. BOSHER, Jr., Superintendent, Henrico*
*County Public Schools; Morton BRADMAN, Assistant Superintendent*
*for Instructional Support Services, Henrico County Public Schools;*
*Joann MARCHANT, Principal, Virginia Randolph Special Education*
*Center, Henrico County Public Schools; Patricia MARTIN, Special*
*Education Teacher, Virginia Randolph Special Education Center,*
*Henrico County Public Schools; Gwendolyn WHITING, Home Support*
*Trainer, Virginia Randolph Special Education Center, Dorothy*
*SUGARMAN, Social Worker, Henrico County Public Schools; School*
*Psychologist, Henrico County Public Schools, Defendants-Appellants,*
853 F.2d 256

**U.S. Court of Appeals, Fourth Circuit**
87-3640
87-3643

August 5, 1988

**Related Index Numbers**
365.120 Placement, Placement Procedures Generally
200.035 Free Appropriate Public Education (FAPE), Procedural
Violations as Denial

265.010 Individualized Education Program (IEP), Development of IEP
365.075 Placement, IEP Considerations
385.006 Private School Placements, In General

## Case Summary

Where a district first determines where it intends to place a handicapped child and then develops an IEP to carry out its decision, the resulting procedural violation of EHA and its regulations (34 CFR 300.552) is tantamount to a violation of its obligation to provide the student with a free appropriate public education.

Student was severely retarded nineteen-year-old Virginia resident who functioned at eighteen-month level. Since 1977, district had paid for his placement at private residential school in Pennsylvania, where his IEPs focused on survival skills. His placement in Pennsylvania included year-round schooling, as well as after school and evening care and training. In 1985, the district reevaluated the student nine months after the regular triennial evaluation which had resulted in his continued placement in Pennsylvania. A new IEP was proposed, under which the student would attend a newly-opened public facility in his home county nine months a year for five and one-half hours daily, and four hours daily during the summer. The district proposed that other activities be home-based, provided either by his parents or a caretaker trained by the school.

The parents appealed the proposed placement and the local hearing officer held that the procedural requirements of EHA had not been violated, but that the student required continued residential placement. The state review officer affirmed on the procedural issues, but held that the public school placement was appropriate. The parents appealed to federal district court, which found that the district had violated EHA procedures and ordered continued placement in Pennsylvania. The court

29

then vacated its earlier decision, but reached the same result on the merits, holding that the district had not carried the burden of proof as the party wanting a change of placement. The district appealed the court's decision regarding placement and the parents appealed the finding of procedural compliance.

HELD, affirmed.

An IEP must be jointly developed by the school district and parents of the handicapped child prior to placement; hence, a district's decision to transfer a child from a private to public school may not occur before the IEP has been written, with parental participation, on which the change of placement is based.

Where a district first determines where it intends to place a handicapped child and then develops an IEP to carry out its decision, the resulting procedural violation of EHA and its regulations (34 CFR 300.552) is tantamount to a violation of its obligation to provide the student with a free appropriate public education.

**Judge / Administrative Officer**

Ervin, J.

**Full Text**

I.
II.
III.

ERVIN, Circuit Judge:

Jonathan Spielberg is a severely retarded nineteen-year-old resident of Henrico County, Virginia. Since 1977, the Henrico County Public Schools have paid the full cost of his education at the Melmark School ("Melmark"), a residential facility in Pennsylvania, under the Education of All Handicapped Children Act ("EHA") , 20 U.S.C. Sec. 1401, et seq. In March 1985, the county initiated a reevaluation of Jonathan's placement which concluded that he could be educated at a local school. His parents appealed that decision, seeking to continue his institutional placement. The district court reversed the state administrative decision, first finding that the county violated EHA procedures, and on reconsideration finding that Jonathan requires institutional placement. We affirm based on procedural violations of the EHA.

## I.

Jonathan Spielberg possesses the functional skills of an eighteen-month-old child. His capabilities are extremely limited, and his individualized education programs ( "IEP") at Melmark have concentrated on survival skills, such as toilet training. At Melmark, where he continues to study under the "stay put" provision of the EHA, 20 U.S.C. Sec. 1415(e)(3), he goes to school throughout the year and receives after school and evening care and training.

The 1985 reevaluation began only nine months after a regular triennial evaluation which continued Jonathan's Melmark placement. From the beginning, county officials focused on a new placement at Virginia Randolph Special Education Center ("Randolph"), a public facility in Henrico County. After a series of letters and meetings between school officials and the Spielburgs, a new IEP was drawn up providing for Jonathan to attend Randolph during the day while living at home. He would attend school 5-1/2 hours per day during a nine month school year and four hours daily during a six week summer session. After school

31

activities would be home-based, involving either his parents or a hired caretaker, with training available for them from a trainer provided by the school.

The Spielbergs first appealed the placement decision administratively. The local hearing officer concluded that there were no procedural violations of the EHA, and that the new IEP was appropriate, but that Jonathan required residential placement at Melmark. The state reviewing officer affirmed on the procedural compliance issue, but reversed on the placement issue, finding Randolph placement to be appropriate. The Spielbergs appealed this decision to the district court under 20 U.S.C. Sec. 1415(e)(2).

The district court initially found that the school system violated EHA procedure by determining appropriate placement before developing an IEP. *See* 34 C.F.R. Sec. 300.552. The court based its finding on a series of letters written before the IEP meeting held in November, 1985, which focused on a change from Melmark to Randolph. Based on the procedural violation, the court ordered the continuation of Melmark placement.

The court subsequently vacated its initial decision in light of 34 C.F.R. Sec. 300.347 and *Patterson C. v. Board of Education of Prince George's County*, No. M-85-3948 (D. Md. Sept. 23, 1986) *aff'd*, No. 86-2638 (4th Cir. May 7, 1987) (per curiam). In *Patterson C.*, the courts affirmed an IEP developed after placement in a private school was decided. Section 300.347 specifically calls for a chosen private school to participate in IEP development. After vacating his earlier decision, however, Judge Merhige reached the same result on the merits. He found that the burden of proof was on the defendants as they were seeking to change Jonathan's placement. He further found that they had not carried that burden by showing that Jonathan would receive educational benefits at Randolph. Therefore, he ordered the Melmark placement to continue. The defendants appeal his decision regarding placement, and the Spielbergs

32

appeal his finding of procedural compliance.

## II.

Congress, through the EHA, uses federal money to induce the states to provide handicapped students with a free appropriate public education ("FAPE"). An IEP is developed for each handicapped child by school officials and the child's parents. Educational placement is based on the IEP, which is revised annually. Disputes regarding the IEP or placement are subject to administrative and judicial review.

In judicially reviewing the administrative outcome, the courts should make "independent decisions based on a preponderance of the evidence." *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 205 (1982); *see* 20 U.S.C. Sec. 1415(e)(2). [1] Due weight shall be given to state administrative proceedings, as the primary responsibility for developing IEPs belongs to state and local agencies in cooperation with the parents, not the courts. *Rowley*, 458 U.S. at 206-207. The reviewing court should make two inquiries: (1) Did the school board procedurally comply with the EHA and its implementing regulations? (2) Is the IEP reasonably calculated to provide educational benefits to the child? *Id.* [2]

## III.

The district court found that the defendants decided to change Jonathan's placement from Melmark to Randolph before developing a new IEP to support the change. Under the EHA, the general rule is that placement should be based on the IEP. 34 C.F.R. Sec. 300.552. [3] The appendix interpreting the EHA regulations states that "IEP objectives must be written before placement." 34 C.F.R. Part 300, App. C., Question 42. The decision to place Jonathan at Randolph before developing an IEP on

33

which to base that placement violates this regulation as interpreted by the Secretary of Education. It also violates the spirit and intent of the EHA, which emphasizes parental involvement. After the fact involvement is not enough.

The court below vacated its initial finding of procedural noncompliance because in some instances, the placement decision can precede IEP development. *See Patterson C., supra.* 34 C.F.R. Sec. 300.347 calls for the private school which a child will attend to participate in IEP development. *Patterson C.* and Sec. 300.347, however, reflect the need to include any outside parties like private schools in IEP development. In the majority of cases, the child will be educated in public facilities, not private ones. Thus, there is no reason to predetermine placement and involve representa-tives of the chosen private school in IEP development. Since Randolph is a public school, the general rule, not the exception, applies, and placement should have followed IEP development.

The defendants violated EHA procedures when they resolved to educate Jonathan Spielberg at Randolph, and then developed an IEP to carry out their decision. This failure to follow EHA procedures is sufficient to hold that the defendants failed to provide Jonathan with a FAPE. *See Hall v. Vance Cty. Bd. of Educ.*, 744 F.2d 629, 635 (4th Cir. 1985).

Therefore, the district court order that he remain in his current placement is

AFFIRMED.

[1] 20 U.S.C. Sec. 1415(e)(2) provides:

Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to

34

this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

[2] The district court based its decision on the defendant's failure to prove that the proposed placement at Randolph was reasonably calculated to provide educational benefits. It assigned the burden of proof to the defendants as the party seeking to change Jonathan's placement. *See Burger v. Murray City School District*, 612 F. Supp. 434 (N.D. Ga. 1984). The burden, however, is more properly allocated to the party bringing the civil action to challenge the state administrative decision *See Tracey T. v. McDaniel*, 610 F. Supp. 947 (N.D. Ga. 1985). Although we reach the same result as the district court based on procedural noncompliance, *infra*, we cannot affirm its reasoning because of this misallocation of the burden of proof.

[3] 34 C.F.R. Sec. 300.552 provides:

Sec. 300.552 Placements.

Each public agency shall insure that:

(a) Each handicapped child's educational placement: (1) Is determined at least annually, (2) Is based on his or her individualized education program, and (3) Is as close as possible to the child's home;

(b) The various alternative placements included under Sec. 300.551 are available to the extent necessary to implement the individualized education program for each handicapped child;

35

(c) Unless a handicapped child's individualized education program requires some other arrangement, the child is educated in the school which he or she would attend if not handicapped; and

(d) In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of services which he or she needs.

**Statutes Cited**
20.1401.A.19

**Regulations Cited**
34.300.522

## James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Omar Karram
Roxanne Neloms
Christie Fontaine-Covington

--------------------------------
! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# *FAX COVER SHEET*

**DATE:**     January 24, 2007

**TO:**       Hearing Officer Ruff
              Student Hearing Office
              District of Columbia Public Schools

**PHONE:**    202-442-5432

**FAX NO:**   202 442-5556

**FROM:**     Miguel Hull, Esq.

**SUBJECT:**  ▆▆▆▆▆▆▆ DOB: ▆▆▆ **Parent's Closing Argument for Hearing on January 22, 2007**

2007 JAN 24 PM 2: 41
DC PUBLIC
SCHOOL SYSTEM

NUMBER OF PAGES INCLUDING COVER SHEET:     **EIGHTEEN**

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates. PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

37

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)**
**SPECIAL EDUCATION PROGRAMS**

| | | |
|---|---|---|
| Dwanda Holdzclaw | ) | |
| On behalf of ███████████ | ) | |
| DOB: ██████ | ) | Hearing Officer Ruff, Esq. |
| | ) | Hearing: 1/22/07 at 11:00 a.m. |
| Vs | ) | |
| | ) | |
| District of Columbia Public Schools | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Friendship-Edison Southeast Academy | ) | |
| Public Charter School | ) | |
| | ) | |

2007 JAN 24 PM 3 49
DC PUBLIC SCHOOL SYSTEM

**Parent's Closing Argument for Hearing on January 22, 2007**

COMES NOW Dwanda Holdzclaw, parent of the above-referenced student, through counsel, and respectfully submits this Closing Argument for the Due Process Hearing that took place on January 22, 2007.

**Issue**

1. After argument and discussion on the record, the hearing officer and parties agreed to hone the issue for the hearing to: whether Taft Center is an appropriate placement for ███████

**Facts**

2. It was undisputed at the Due Process Hearing on January 22, 2007, that:

   a. ████████████ is a ten-year-old special education student attending the fourth grade at Friendship Southeast Elementary Academy ("FSEA") in the District of Columbia.

   b. On October 3, 2006, an MDT meeting took place for ██████ at FSEA. No one

1

38

from District of Columbia Public Schools ("DCPS") attended that meeting.

Exhibit No.: AH-6, MDT notes 10/3/06.

c.  During the October 3rd meeting, ▮▮▮▮▮▮Individualized Educational Program
("IEP") was revised classifying him with multiple disabilities [other health
impaired and emotionally disturbed] and entitling him to 26.5 hours per week of
specialized instruction, in the special education setting, and one hour of counseling
per week.[1] Exhibit No.: AH-5, IEP 10/3/06; See also Exhibit No.: AH-18 IEP
12/5/05; Exhibit No.: AH-19, IEP Addendum 12/5/05.

d.  The October 3, 2006 IEP indicates on the pages pertaining to goals and objectives
that the specialized instruction will be provided to ▮▮▮▮by a special education
teacher.  Id.

e.  Although placement was not determined during the October 3rd MDT meeting, the
team members present agreed that FSEA could not implement▮▮▮▮ IEP.
Exhibit No.: AH-6.

f.  On October 4, 2006, the parent, through counsel, sent written notice to DCPS and
FSEA that ▮▮▮▮▮placement at FSEA was inappropriate and requested that a
placement meeting be convened to determine an appropriate placement.  Exhibit
No.: AH-3, Correspondence to DCPS and FSEA 10/4/06; See also Exhibit
No.:AH-4, Correspondence to DCPS and FSEA 9/28/06.

g.  On October 6, 2006, the parent filed a Due Process Complaint against FSEA and

---

[1] Although not discussed at the hearing, the documents introduced by the parent and or charter school include: a previous IEP, dated December 5, 2005, that classified ▮▮▮▮with a specific learning disability and entitled him to 12.5 hours per week of specialized instruction, 10 of those hours in a special education setting and 2.5 in the general education setting; an addendum to the IEP, also dated December 5, 2005, reducing ▮▮▮▮ specialized instruction in the special education setting from 10 hours per week to only 5 hours per week; and a settlement agreement between the parent and the charter school whereby the charter school agreed to conduct certain evaluations and provide 36 hours of compensatory tutoring.  That tutoring is current being provided by the charter school.

2

39

DCPS regarding:

    i.  Whether FSEA, as the LEA, and DCPS, as the SEA have inappropriately failed, and continue to fail, to provide/ensure specialized instruction in a special education classroom as called for the current and previous IEP's; and

    ii.  Whether the placement location at FSEA is appropriate?

h.  On October 27, 2006, the parent and her educational advocate appeared at FSEA for a resolution meeting to address the issues raised in the October 6th Complaint. <u>Exhibit No.: FSEA-4, MDT Notes 10/27/06</u>.

i.  The October 27th meeting included the active participation of Mr. Evan Murray, a DCPS placement specialist. <u>Id</u>.

j.  The October 27th meeting eventually became an MDT/placement meeting, during which, DCPS issued a prior notice for ▮▮▮▮ to attend the Taft Center. <u>Exhibit No.: FSEA-4, Prior Notice 10/27/06</u>.

k.  According to his educational assessment dated August 10, 2006, ▮▮▮▮ is functioning on the grade levels: broad reading 2.2; broad math 3.2; broad written language 1.9. <u>Exhibit No.: AH-11</u>.

3.  During the hearing on January 22, 2007, the parent testified that on or about November 1, 2006, she telephoned and spoke with the special education coordinator at Taft, Mr. Labone Workman, who told her that Taft began at the fifth grade and that her son could not attend Taft if he was still in the fourth grade. <u>Transcript 1/22/07</u>. The parent also testified that she and ▮▮▮▮ have visited the Accotinck Academy in Springfield, Virginia, a non-public special-education school that has accepted him. <u>Id</u>. The parent further testified that she believes that Accotinck could provide ▮▮▮▮ an educational benefit and that she would like for him to attend that school. <u>Id</u>.

40

4. During the hearing, Mr. Workman also testified. During direct examination, Mr. Workman testified, among other things, that Taft is set up by grades beginning with the fifth grade; that there is no fourth grade classroom at Taft; but that ▮▮▮▮would be in a classroom with other students in his age range.

5. During cross-examination, Mr. Workman testified that if ▮▮▮▮ were to attend Taft, he would have to be put into the fifth grade and his IEP would have to be re-written to reflect his being in the fifth grade. <u>Id</u>.

6. Mr. Workman also testified during the hearing that one of the teachers that would teach ▮▮▮▮ at Taft has only a provisional certification to teach special education and not a full certification. <u>Id</u>.

7. Also during the hearing, the parent called Ms. Ann Warnke to testify as to the appropriateness of Accotinck. During her testimony, Ms. Warnke identified herself as a director at Accotinck and explained that the school had interviewed and accepted ▮▮▮▮ as a possible student; that ▮▮▮▮would be in a classroom with eight other students within the same age-range and level of functioning; that all his possible teachers are certified to teach special education; that the school has counselors and psychologists on staff to provide counseling; and that the school follows DCPS-curriculum. <u>Id</u>.

### Argument

8. The parent asserts that Taft Center is not an appropriate school for ▮▮▮▮.

9. According to the <u>Individuals with Disabilities Education Act</u> ("IDEA"), a placement is to be in a school that is capable of implementing the student's IEP. <u>20 U.S.C.§ 1402 (9) (D)</u> ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that include an appropriate

41

preschool, elementary school, or secondary school education in the state involved" [and] "*are provided in conformity with the individualized education program*" Emphasis added); § 1401 (29) (D) ("The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ].");  34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (b) (2) (placement is to be based on student's IEP); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. Tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. Tit. 5 § 3000.

10. Additionally, it is inappropriate for an IEP to be developed, or re-written, to fit a particular placement.  Spielberg v. Henrico County Public School, 441 IDELR 178 (4th Cir. 1988) (held that a school district cannot change, or develop, an IEP to fit a particular placement).

11. In this case, Mr. Workman testified that Taft was set up by grades, that the school began at fifth grade and did not have a fourth grade.  Consequently, one of the reasons that Taft is an inappropriate placement is because, where he to attend Taft, ████would have to be <u>arbitrarily</u> promoted from the fourth grade to the fifth grade and his IEP would have to be re-written to reflect his being <u>arbitrarily</u> promoted into the fifth grade.  The fact that at Taft, ████would be in a classroom with other students in his age range does not overcome the fact that his IEP would have to be re-written to arbitrarily promote him into the fifth grade.

12. Taft is also inappropriate in that████ IEP entitles him to receive all of his specialized instruction from properly certified special education teachers; yet, according to the testimony at the hearing, at least one of ████' special education teachers is not fully certified as the law now requires.

42

5

13. As of the beginning of the 2006-07 school year, the IDEA requires that all of a student's special education teachers must be "Highly Qualified" such that they have obtained "<u>full</u> State certification as a special education teacher [. . .] and the teacher <u>has not had</u> special education certification or licensure requirements <u>waived</u> on an emergency, temporary, or provisional basis." <u>Emphasis added</u>. <u>Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1402 (10) (B)</u> (to be highly qualified, a special education teacher must have full certification); "<u>§ 1412 (a) (14)</u> (all special education teachers in a State must be 'highly qualified' by the end of the 2005-06 school year); <u>34 C.F.R. § 300.18</u>; and <u>34 C.F.R. § 300.156</u>.

14. At the hearing, Mr. Workman testified that the first period teacher that ▮▮▮▮would have at Taft, and who would provide him with specialized instruction, was only certified on a provisional basis. Consequently, that teacher is not fully certified, or "Highly Qualified," as defined by the statute, meaning that for at least that class period, ▮▮▮▮ IEP would not be properly implemented and the placement is therefore inappropriate.

15. Furthermore, although the IDEA also indicates that there exists no individual right of action for failure of a particular teacher to be highly qualified, that bar <u>does not</u> apply to this argument because here the issue/action to be considered is <u>not</u> whether the teacher in question is highly qualified and whether that in-and-of-itself is a violation, but whether Taft is appropriate and can implement the IEP. The fact that this particular teacher is not highly qualified in this case is merely raised as <u>evidence</u> in support of the claim that Taft is not appropriate, a right of action that is allowed. <u>20 U.S.C.§ § 1412 (a) (14) (E)</u>; and <u>34 C.F.R. § 300.156</u>.

43

## Relief Sought.[2]

16. a finding in the parent's favor as to each of the issues raised above.

17. That FSEA and/or DCPS be ordered, or agree, to:

    a)  Provide funding and transportation for an interim or permanent placement at the

        Accotinck Academy in Springfield, Virginia; or

    b)  Alternatively, convene an MDT meeting within 10 days to identify an appropriate

        placement for ███████ with placement to be made within 10 days if for a public school

        or 30 days if for a non-public school, and if DCPS fails to convene this meeting

---

[2] In this case both FSEA [as the LEA] and DCPS [as the SEA and LEA if placement is to Taft] are liable for the claims in question. D.C. Mun. Regs. tit. 5 § 3002.1; D.C. Mun. Regs. tit. 5 § 3019.2 (LEA Charters shall be responsible for ensuring that the requirements of Part B of the Act, including documentation or required polices and procedures, are met in regard to children enrolled in their schools, consistent with the requirements of Chapter 38."); and D.C. Mun. Regs. tit. 5 § 3019.8 ("LEA and District Charters are responsible for providing all necessary related services to children with disabilities enrolled in their facilities, consistent with these children's IEP's."). Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1412 (a) (11); 34 C.F.R. §. 300.101 (c) (1) ("Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services [. . . ]"); 34 C.F.R. §. 300.227 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. §. 300.149 (a), ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are carried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibilities shall  include, but not be limited to: (a) Acquisition and administration of federal grants on behalf of funding or services for all eligible local education agencies in the District of Columbia, including public, public charter and private schools; (b) Ensuring that all local education agencies in the District of Columbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA)"); S. Rep. No 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code. Cong. & Ad. News 1425, 1448. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under IDEA] reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State . . . Without this requirement, there is an abdication of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist. 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. Grasmick 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending); and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings, *SEA was liable for attorney's fees subsequently incurred at District Court proceedings* because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

44

through no fault of the parent or representatives, then order funding and transportation

to Accotink Academy.

Respectfully submitted,

*[signature]*

Miguel A. Hull

## Certificate of Service

I HEREBY CERTIFY that on this 24th day of January 2007, a copy of the forgoing **Closing Statement** was delivered by facsimile to Karen Herbert, Esq., DCPS Office of the General Counsel 202 442-5098/97; and by facsimile to William Houston, Esq., Dalton, Dalton & Houston 703-739-2323.

*[signature]*

Miguel Hull

45

**James E. Brown & Associates, PLLC**
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Omar Karram
Roxanne Neloms
Christie Fountaine-Covington

--------------------------------
! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# FAX COVER SHEET

DATE:          January 24, 2007

TO:            William Houston, Esq.
               Dalton, Dalton & Houston, P.C.

PHONE:         703-739-4300

FAX NO:        703-739-2323

FROM:          Miguel A. Hull, Esq.

SUBJECT:       ▮▮▮▮▮▮▮▮ DOB:▮▮▮▮▮ **Parent's Closing Argument for Hearing on January 22, 2007**

NUMBER OF PAGES INCLUDING COVER SHEET: ___NINE___

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

46

TRANSMISSION VERIFICATION REPORT

```
TIME  : 12/04/2006 13:32
NAME  :
FAX   :
TEL   :
SER.# : BROE6J471573
```

```
DATE,TIME        12/04  13:31
FAX NO./NAME     97037392323
DURATION         00:00:18
PAGE(S)          01
RESULT           OK
MODE             STANDARD
                 ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X *REVISED COPY*

### HEARING NOTICE

| MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:  Parent (or Representative): _M. HULL/L. DUAS_   Fax No.: _742-2098_
                                                              _(703) 739 2323_

LEA Legal Counsel: _S. GUPTA_

RE: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and (LEA) DOB: _____
      Student's Name

FROM:  __SHARON NEWSOME__
       Special Education Student Hearing Office Coordinator

DATE SENT: ____12/4/06____

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

   DATE: __1/22/07__                            *Con't f*
                                                *12/1/06*
   TIME: __11:00 Am__

47

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘

                        TIME  : 12/04/2006 13:31
                        NAME  :
                        FAX   :
                        TEL   :
                        SER.# : BROE6J471573


┌──────────────────────────────────────────────────┐
│                                                    │
│  DATE,TIME            12/04  13:31                  │
│  FAX NO./NAME         97422097                      │
│  DURATION             00:00:16                      │
│  PAGE(S)              01                            │
│  RESULT               OK                            │
│  MODE                 STANDARD                      │
│                       ECM                           │
└──────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
## State Enforcement & Investigation Division
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



✗ REVISED COPY

### HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
| --- |

**TO:** Parent (or Representative): _M. HULL/L. DUOS_  Fax No.: _742-2098_
_(703) 739-2323_

LEA Legal Counsel: _S. GUPTA_

**RE:** ████████████ and (LEA) DOB: _____
Student's Name

**FROM:** _SHARON NEWSOME_
Special Education Student Hearing Office Coordinator

**DATE SENT:** _12/4/06_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

**DATE:** _1/22/07_      _Con't f_

**TIME:** _11:00 AM_      _12/1/06_

48

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

---------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

---------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

November 22, 2006



**Via Facsimile and/or Hand Delivery**
Rhondalyn Primes, Esq.
District of Columbia Public Schools
825 North Capitol Street, NE, 9th Floor
Washington, DC 20002

Re: Five-Day Disclosure for ██████████, DOB██████
    Student at Friendship Southeast Elementary Academy

Dear Ms. Primes:

For the upcoming hearing scheduled for December 1, 2006 at 11:00 a.m. or any subsequent hearing regarding this student and pursuant to 34 C.F.R. 300.509 (a)(3); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35872 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3031.2 (2003), and in addition to any documents and witnesses that the District of Columbia Public Schools ("DCPS") may disclose, the parent may rely on the following documents and witnesses:

## Witnesses*

1. ██████████, Student;
2. Kwanda Holtzclaw, Mother;
3. Angela Lingham, Senior Director, High Road School, or designee;
4. Julie Oaks, Admissions Director, Accotink Academy, or designee;
5. Juan Fernandez, Educational Advocate, James Brown & Associates, PLLC, or designee; and
6. Heidi Romero, Legal Assistant, James Brown & Associates, PLLC, or designee.

Witnesses' names, addresses, and phone numbers:
1, 2, 5, and 6 – Witnesses can be reached at James E. Brown & Associates, PLLC, 1220 L Street NW, Washington, DC 20005; 202-742-2000
3 – Witness can be reached at High Road School of Prince Georges County, 8723 Ashwood Drive, Capitol Heights, MD 20743 301-324-8902
4 – Witness can be reached at Accotink Academy, 8519 Tuttle Road, Springfield, VA 22152; 703-451-8041

**\* Witnesses may testify via telephone**

49

Page Two
5-Day Disclosure for 
November 22, 2006

## Documents

| | |
|---|---|
| AH-1 | Administrative Due Process Hearing Complaint (10-06-06); |
| AH-2 | Hearing Notice (11-09-06); |
| AH-3 | Notice to DCPS-State Education Agency of Inappropriate Placement (10-04-06); |
| AH-4 | Request MDT Meeting and Functional Behavioral Assessment (9-28-06); |
| AH-5 | Individualized Educational Program (10-03-06); |
| AH-6 | IEP Meeting Notes (10-03-06); |
| AH-7 | Advocate's Meeting Notes (10-03-06); |
| AH-8 | Correspondence from High Road School (10-17-06); |
| AH-9 | Correspondence from Accotink Academy (10-23-06); |
| AH-10 | Fourth Quarter Report Card (4-07-06 -6-22-06); |
| AH-11 | Educational Evaluation (8-10-06); |
| AH-12 | Psychological Clinical Evaluation (8-13-06); |
| AH-13 | Request for Evaluations (3-01-06); |
| AH-14 | Request for Records (3-01-06); |
| AH-15 | Glassmanor Elementary School Individualized Educational Program (4-28-05); |
| AH-16 | Individualized Educational Program (10-05-05); |
| AH-17 | MDT Meeting Notes (10-05-05); |
| AH-18 | Individualized Educational Program (12-05-05); |
| AH-19 | New Addendum Meeting Page (12-05-05); |
| AH-20 | Correspondence from M. Themba Masimini, MFT, School Counsel, Friendship Southeast Elementary Academy; |
| AH-21 | Correspondence from Mr. Hill (12-07-05); |
| AH-22 | Notice of Suspension (11-28-05); |
| AH-23 | Notice of Suspension; |
| AH-24 | Discipline Referral Form (9-28-05); |
| AH-25 | Discipline Referral Form (12-05-05); |
| AH-26 | Discipline Referral Form Referred by Mr. White (12-07-05); |
| AH-27 | Discipline Referral Form Referred by Mr. Masimini (12-07-05); |
| AH-28 | Notice of Suspension (12-20-05); |
| AH-29 | Discipline Referral Form (1-04-06); |
| AH-30 | Psychological Consultation/Conference Report Form (11-12-03); |
| AH-31 | Parent/Guardian Questionnaire (9-10-03); |
| AH-32 | Summary and Score Report (10-05-05); and |
| AH-33 | Scruples Corporation Psychiatric Intake Evaluation (12-08-05). |

Parent reserves the right to rely on any documents presented by DCPS that the parent deems relevant in this case.

Parent will object to the testimony of any expert witnesses if a curriculum vitae and/or résumé is not provided with the DCPS' 5-day disclosure.

Additionally, parent reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

50

If you should have any questions or wish to discuss any aspect of this case before the hearing, please contact me at (202) 742-2000.

Sincerely,

Miguel Hull, Esq.

Attachments
cc:  Sharon Newsome, Hearing Coordinator
     Laura Duos, Esq., Dalton, Dalton & Houston, P.C.

51

# Exhibit 1





**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# *ADMINISTRATIVE DUE PROCESS COMPLAINT NOTICE*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    **INFORMATION ABOUT THE STUDENT:**

Student Name ████████████████     DOB: ████████████

Address:    916 Savannah St., SE, Washington, D.C. 20032

Present School of Attendance: Friendship Southeast Elementary Academy

53

Home School:          DCPS _____
                      (Neighborhood school)

       '          Parent/Guardian of the Student:  __Dwanda Holtzclaw __

## B.    Legal Representative/Attorney (if applicable):

Name: Miguel A. Hull, Esq. ___        Phone:  (W) _202 742-2015____     (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005 _____

Will attorney / legal representative attend the resolution session?  **X** Yes          ☐ No

## C.    Complaint Made Against (check all that apply):

**X**      DCPS
**X**      Charter school (name of the charter school if different from page
one) _____
☐ Non-public school or residential treatment facility (name)

_____
☐ Parent

## D.    Resolution Session Meeting Between Parent and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint.  I also understand that
I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution
meeting to avoid having this meeting.)

**X** I wish to waive the Resolution Session Meeting

## E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost
to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as
an alternative to a Due Process Hearing.  Please check all that apply:

I am requesting an administrative due process hearing **only** at this time.

## F.    Facts and Reasons for the Complaint:

### I.  Nature of the Problem.

_____ is a ten-year-old special education student attending Friendship
Southeast Elementary Academy ("FSEEA") in the District of Columbia.  On October 3,
2006, an MDT meeting took place for _____ t FSEEA.  During the meeting, _____

Individualized Educational Program ("IEP") was revised classifying him with multiple disabilities [other health impaired and emotionally disturbed] and entitling him to 26.5 hours per week of specialized instruction, in the special education setting, and one hour of counseling per week.[1]  The parent now respectfully asserts the following violations against FSEEA, as the respective local education agency ("LEA"), and District of Columbia Public Schools ("DCPS") as the respective state education agency ("SEA")[2]:

1. **Failure to properly implement IEP –failure to provide specialized instruction in a special education setting as called for by previous and current IEP's.**  FSEEA does not have a separate classroom, also known as a resource room, to provide special education.  The only specialized instruction that the school can provide ██████ with is what is known as "inclusion."  In other words, rather than have ██████go to a

---

[1] A previous IEP, dated December 5, 2005, classified ██████with a specific learning disability and entitled him to 12.5 hours per week of specialized instruction, 10 of those hours in a special education setting and 2.5 in the general education setting.  Apparently, on December 5, 2005, the same day that the IEP was developed, an addendum to the IEP was also developed reducing ██████' specialized instruction in the special education setting from 10 hours per week to only 5 hours per week.  The parent filed a due process complaint against the charter school and District of Columbia Public Schools for the apparent reduction of hours on the December 5, 2005 IEP.  That complaint resulted in a settlement agreement between the parent and the charter school whereby the charter school agreed to conduct certain evaluations and provide 36 hours of compensatory tutoring.  That tutoring is current being provided by the charter school.

[2] On October 4, 2006, the parent, through counsel, provided written notice to DCPS of the problems with the charter school and requested that DCPS, as the SEA assist in remedying those problems.  Regardless of this notice, however, the SEA is ultimately responsible for ensuring evaluations and a FAPE.  See Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1412 (a) (11); 34 C.F.R. §. 300.101 (c) (1) ("Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services [. . . ]"); 34 C.F.R. § 300.227 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. §. 300.149 (a), ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are carried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibilities shall include, but not be limited to: (a) Acquisition and administration of federal grants on behalf of funding or services for all eligible local education agencies in the District of Columbia, including public, public charter and private schools; (b) Ensuring that all local education agencies in the District of Columbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA)"); S. Rep. No 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code. Cong. & Ad. News 1425, 1448. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under IDEA] reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State . . . Without this requirement, there is an abdication of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist, 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. Grasmick 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending); and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings, SEA was liable for attorney's fees subsequently incurred at District Court proceedings because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

3

55

separate special education classroom to receive specialized instruction from a certified special education teacher, ▮▮▮▮ instead remains in a general education classroom and receives his specialized instruction from the special education teacher who comes into the general education classroom. This inclusion scheme is not what ▮▮▮▮ IEP calls for. According to his current IEP, ▮▮▮▮ is to receive 26.5 hours per week of specialized instruction in a separate classroom without any general education students. Similarly, the previous IEP, dated December 5, 2005, which entitled ▮▮▮▮ to 10 hours of specialized instruction per week in a classroom without any general education students. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[ . . ]."); § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ]."); 34 C.F.R. § 300.17 & 39; and D.C. Mun. Regs. tit. 5 § 3000.1.

2.  **Inappropriate placement**. FSEEA is not an appropriate school for ▮▮▮▮ because the school cannot implement the current IEP as written, which calls for a full-time placement out of the general education setting. Moreover, since being at that school, ▮▮▮▮ has engaged in severely aggressive behavior with his teachers as evidenced by the written reports that the school has produced. ▮▮▮▮ clearly requires a more structured school that can handle his behavioral outbursts and actually provide his specialized instruction. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[ . . ]."); 20 U.S.C. § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ]."); 20 U.S.C. § 1414 (e) (public agency to ensure that parents are involved in the placement decision); 34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (placement is to be in the least restrictive environment, based on his IEP as determined by team including the parents); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. tit. 5 § 3000. See also footnote 2.

## II. Issues presented.

1.  Whether FSEEA, as the LEA, and DCPS as the SEA have inappropriately failed, and continue to fail, to provide/ensure specialized instruction in a special education classroom as called for the current and previous IEP's; and
2.  Whether the placement location at FSEEA is appropriate?

## III.    Relief Sought.

1)  a finding in the parent's favor as to each of the claims raised here;

2)  That FSEEA and / or DCPS be ordered, or agree, to:

a) Begin providing, within 24 hours, the full 26.5 hours of specialized instruction per week as called for by the IEP dated October 3, 2006;

b) Fund 200 hours, or some other reasonable amount considering that this in a ongoing violation, of one-on-one tutoring as compensatory education for the student to make up for services that were denied;

c) Fund interim or permanent placement with transportation to one of the following: Foundations; Rock Creek Academy; Frost School; Accotink; High Roads in Maryland; or some other appropriate school;

d) Alternatively, convene an MDT meeting within ten business days to determine any additional compensatory education that may be due; and identify placement with placement to be made within five business days if for a public school or within thirty calendar days if for a non-public school;

3) that DCPS provide any other relief deemed appropriate and relating to the violations committed here;

4) that DCPS be ordered or agrees to pay parent's reasonable attorney's fees and costs;

5) All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

6) Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

7) In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement dated May 12, 1987, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

8) The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

9) Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

10) That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §

1415 (c) (2) (B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

11) That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

12) That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

13) That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

14) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a **Resolution Session Meeting**.

15) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the **Resolution Session Meeting for the student shall include the following persons:** 1) the student's special education teacher, if applicable, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

16) That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B) constitute joint

waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17) A finding that the parent is the prevailing party in this action.

## Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other_____

Signature:

_____                October 6, 2006_____
Legal Representative / Advocate (if applicable)        Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/442-5556**

7

# Exhibit 2



# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8ᵀᴴ Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

---

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

Parent (or Representative): __M. HULL / P. DALTON__    Fax No.: __742 - 2098__

LEA Legal Counsel: __R · PEIMES__    __(703) 739-2323__

Student's Name ████████████    and (LEA) DOB: ████████

FROM:    **SHARON NEWSOME**
Special Education Student Hearing Office Coordinator

DATE SENT: ____11 / 9 / 06____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
__10 / 6 / 0 6__. Please be advised that the hearing has been scheduled for:

DATE: ____12 / 1 / 06____

TIME: ____11:06 AM____

AT:    825 North Capitol Street, NE, Washington, DC
8ᵗʰ Floor

ASSIGNED HEARING OFFICER: _____

THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request in
writing on the attached form to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All
decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff.
Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as
scheduled above.

THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you
are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times
during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the
SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a
final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of
evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special
Education Student Hearing Office.

61

# Exhibit 3



62

# James E. Brown & Associates, PLLC
### A Professional Limited Liability Company

| | | |
|---|---|---|
| James E. Brown | **Attorneys at Law** | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

e-mail: Admin@Jeblaw.biz

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

October 4, 2006

Ms. Marla Oaks
Division of Special Education
District of Columbia Public Schools
825 North Capitol St., 6th floor, NE
Washington, D.C. 20002
Via facsimile only 202 442-5517/18

RE:     ███████████ DOB:█████ Notice to District of Columbia
Public Schools –State Education Agency of Inappropriate
Placement at Friendship South East Public Charter School.

Dear Ms. Oaks:

Ms. Dwanda Holdzclaw, parent of the above-referenced student hereby provides

notice that her daughter's current attending school, Friendship Edison Public Charter School,

is unable and unwilling to fully implement her IEP which calls for full-time placement.

Therefore, the parent demands that DCPS, as the respective SEA, convene an MDT meeting

to address this problem. Please send a letter of invitation for the MDT meeting to my office

as soon as possible. Thank you for your attention.

Yours truly,

Miguel A. Hull

CC:    DCPS Office of the General Counsel
       DCPS Office of Mediation and Compliance
       Friendship Edison South East Academy
       Paul Dalton, Esq.

63

```
*********************
***  TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO               3578
RECIPIENT ADDRESS      94425517
DESTINATION ID
ST. TIME               10/04 17:23
TIME USE               00'23
PAGES SENT             2
RESULT                 OK
```

## James E. Brown & Associates, PLLC
### A Professional Limited Liability Company

| | | |
|---|---|---|
| James E. Brown | **Attorneys at Law** | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

e-mail: Admin@Jeblaw.biz

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# FAX COVER SHEET

**DATE:**  October 4, 2006

**TO:**  Marla Oaks
Division of Special Education
District of Columbia Public Schools

**TEL NO.:**  202 442-4800

**FAX NO.:**  202 442-5517/18

**FROM:**  Miguel A. Hull, Esq.

**SUBJECT:**  ████████DOB:█████Notice to District of Columbia Public Schools –State Education Agency of Inappropriate Placement at Friendship South East Public Charter School

**NUMBER OF PAGES INCLUDING COVER SHEET:**  ___TWO___

**COMMENTS:**

64

4/2006 17:23 FAX 202 742 2098          Brown & Associates          ☒001

```
**********************
***   TX REPORT   ***
**********************
```

TRANSMISSION OK

| TX/RX NO | 4599 | 94425098 |
|---|---|---|
| CONNECTION TEL | | |
| CONNECTION ID | | |
| ST. TIME | 10/04 17:22 | |
| USAGE T | 00'21 | |
| PGS. SENT | 2 | |
| RESULT | OK | |

# James E. Brown & Associates, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Omar Karram
Roxanne Neloms
Christie Fontaine-Covington

---

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# *FAX COVER SHEET*

**DATE:**  October 4, 2006

**TO:**  Office of the General Counsel
District of Columbia Public Schools

**TEL NO.:**  202 442-5000

**FAX NO.:**  202 442-5098/97

**FROM:**  Miguel A. Hull, Esq.

**SUBJECT:**  ▋▋▋▋▋▋ DOB: ▋▋▋▋ Notice to District of Columbia Public
Schools –State Education Agency of Inappropriate Placement

**NUMBER OF PAGES INCLUDING COVER SHEET:**  ___TWO___

**COMMENTS:**

65

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

TX/RX NO                4600              95620726
CONNECTION TEL
CONNECTION ID
ST. TIME                10/04 17:23
USAGE T                 00'40
PGS. SENT               2
RESULT                  OK

## James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Omar Karram
Roxanne Neloms
Christie Fontaine-Covington

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# FAX COVER SHEET

DATE:           October 4, 2006

TO:             Principal
                Friendship South East Elementary Academy

PHONE:          202-562-1980

FAX NO:         202 562-0726

FROM:           Miguel A. Hull, Esq.

SUBJECT:        ████████████ DOB: ██████ –Notice to District of Columbia Public
                Schools –State Education Agency of Inappropriate Placement

NUMBER OF PAGES INCLUDING COVER SHEET: _____TWO_____

COMMENTS:

66

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                3580
RECIPIENT ADDRESS       94425097
DESTINATION ID
ST. TIME                10/04 17:25
TIME USE                00'21
PAGES SENT              2
RESULT                  OK
```

# James E. Brown & Associates, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

e-mail: Admin@Jcblaw.biz

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# *FAX COVER SHEET*

**DATE:**      October 4, 2006

**TO:**        Office of the General Counsel
               District of Columbia Public Schools

**TEL NO.:**   202 442-5000

**FAX NO.:**   202 442-5098/97

**FROM:**      Miguel A. Hull, Esq.

**SUBJECT:**   ███████████ **DOB:**███ –**Notice to District of Columbia Public Schools –State Education Agency of Inappropriate Placement**

NUMBER OF PAGES INCLUDING COVER SHEET: ___TWO_____

**COMMENTS:**

67

'04/2006 17:26 FAX 2027422098                                                ☑001

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO                3581
RECIPIENT ADDRESS       97037392323
DESTINATION ID
ST. TIME                10/04 17:25
TIME USE                00'22
PAGES SENT              2
RESULT                  OK
```

## James E. Brown & Associates, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

e-mail: Admin@Jeblaw.biz

! Admitted in Bolivia Only
+ DC Bar Special Legal Consultant

# *FAX COVER SHEET*

**DATE:**          October 4, 2006

**TO:**            Paul Dalton, Esq.
                   Dalton, Dalton & Houston, P.C.

**PHONE:**         703-739-4300

**FAX NO:**        703-739-2323

**FROM:**          Miguel A. Hull, Esq.

**SUBJECT:**       ██████████; DOB: ████ –Notice to District of Columbia Public
                   Schools –State Education Agency of Inappropriate Placement

**NUMBER OF PAGES INCLUDING COVER SHEET:** ___TWO___

**COMMENTS:**

68

# Exhibit 4



# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

-----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

-----------------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

September 28, 2006

*Via Facsimile*
Tenina Fleming, Principal
Friendship Southeast Elementary Academy
645 Milwaukee Place, SE
Washington, DC 20032

**Re: Request MDT Meeting and Functional Behavioral Assessment**
**Student:** ████████████ **DOB:** ████████

Dear Ms. Fleming:

Attached, is a copy of the Settlement Agreement, signed on June 23, 2006. Pursuant to that agreement I request that a MDT meeting be scheduled as soon as possible. Please contact Mr. Juan Fernandez, Educational Advocate at 202-742-2011 to schedule this meeting. Attached is also a copy of the Psychological and Clinical Evaluation. I request that a Functional Behavioral Assessment be completed as it was recommended by the above mentioned evaluation. If this evaluation is not completed the parent will take the necessary steps to secure an independent evaluation.

Thank you for your attention. If you have any questions regarding this matter, please do not hesitate to contact me directly at 202-742-2015.

Sincerely,

Miguel Hull, Esq.

Cc:  Marla Oaks, Executive Director-Chief of Special Education Reform, Office of Special Education

70

28/2006 15:54 FAX 2027422098

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              3378
RECIPIENT ADDRESS     95620726
DESTINATION ID
ST. TIME              09/28 15:50
TIME USE              03'37
PAGES SENT            11
RESULT                OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

-----------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:       September 28, 2006

TO:         Tenina Fleming, Principal
            Friendship Southeast Elementary Academy

PHONE:      (202) 562-1980

FAX NO:     (202) 562-0726

FROM:       Heidi Romero, Legal Assistant for Miguel Hull, Esq.

SUBJECT:    ███████████ DOB: ████████

NUMBER OF PAGES INCLUDING COVER SHEET: **15**

71

COMMENTS: Request MDT Meeting and Functional Behavioral Assessment

# FAX COVER SHEET

DATE:        September 28, 2006

TO:          Marla Oaks, Executive Director-Chief of Special Education Reform
             Office of Special Education

FAX NO:      (202) 442-5518/5517 or 5524

FROM:        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

SUBJECT:     ████████  DOB: ████████

NUMBER OF PAGES INCLUDING COVER SHEET: **15**

COMMENTS: **Request MDT Meeting and Functional Behavioral Assessment**

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

```
                                                               RESULT
                                         OK                    PGS. SENT
                                         11                    USAGE T
                                         01.34                 ST. TIME
                                      09/28 15:42              CONNECTION ID
                                     MED#&COMP/DCPS            CONNECTION TEL.
                        9442552 4                              TX/RX NO

                                         4531

                                                      TRANSMISSION OK

                              ***********************
                              ***   TX REPORT   ***
                              ***********************
```

# FAX COVER SHEET

**DATE:**       September 28, 2006

**TO:**         Marla Oaks, Executive Director-Chief of Special Education Reform
                Office of Special Education

**FAX NO:**     (202) 442-5518/5517 or 5524

**FROM:**       Heidi Romero, Legal Assistant for Miguel Hull, Esq.

**SUBJECT:**    ████████████ DOB: ████████

**NUMBER OF PAGES INCLUDING COVER SHEET:** ⬤ 4

**COMMENTS: Request MDT Meeting and Functional Behavioral Assessment**

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive
use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient,
please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this
message and any attachments.

```
               ***********************
               ***    TX REPORT    ***
               ***********************

TRANSMISSION OK

TX/RX NO                    3384
RECIPIENT ADDRESS       9442552Δ
DESTINATION ID
ST. TIME           09/28 16:05
TIME USE              01'31
PAGES SENT             11
RESULT                 OK
```

09/28/2006 16:07 FAX 2027422098

# Exhibit 5



EXHIBIT

AH-5

ALL-STATE LEGAL®

906 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-8395

**INDIVIDUALIZED EDUCATIONAL PROGRAM**

| | |
|---|---|
| | DCPS - IEP  Page 1 of 4 |
| | Additional Comments: ☐ |

## I. IDENTIFICATION INFORMATION

Student Name: Last ▓▓▓▓    First ▓▓▓▓    MI  H

Student ID _____  Soc. Sec. No. ▓▓▓▓  Age: ____  Grade  4

Gender ☐M ☐F  Date of Birth _____  Ethnic Group  Black, not of Hispanic origin

Address  ~~3247 23rd Street SE #101~~  916 Savannah St. SE

House No.    Street Name    Quadrant    Apartment #

Washington, DC 20010
City    State    Zip Code

☐ Non-attending

Attending School  FPCS-Southeast Elementary  Home School  FPCS-Southeast Elementary

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent  Dwanda ~~Holtclaw~~  Holtzclaw

Address of (if different from student):    ☑ Parent ☐ Guardian ☐ Surrogate

House No.  Street Name    Quad    Apt. No.  City    State  Zip Code
Telephone: Home  2|367 (202) 678-7678    Work  21574-6815

## II. CURRENT INFORMATION

Date of IEP Meeting:  10/03/06

Date of Last IEP Meeting:  12/05/05

Date of Most Recent Eligibility Decision:  10/03/06

Purpose of IEP Conference:
☐ Initial IEP    ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | N/A | NONE |
| Parent | English | English | English | NONE |
| Home | English | N/A | N/A | NONE |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral _____
Rdg / Written _____
Instrument: _____
Date: _____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|
| Specialized Instruction | 26.5 26.5 | HR | Weekly | Special Education Teacher | 10/03/2006 | 10  mos |
| Counseling | 1  1 | | | Psychologist | 10-3-06 | 10  mos. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTAL** | 27.5 27.5 | Hours Per Week | | | | |

## V. Disability(ies)

MD

Multiple Disability
~~Specific Learning~~    Disability  Mult-I (MD)

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☐ 21-60% ☐ 61-100%
Percent of time NOT in a Regular Education Setting  0

## VI. IEP TEAM (Participants in the development of the IEP)

Sign your name below.

| | | |
|---|---|---|
| Willie Walker | Willie Walker | Spd. Teacher |
| Juan I. Fernandez, Principal | Jecul Schuyle | A. Lindscale |
| Dwanda C. Holtzclaw, Parent | Dwanda Holtzclaw | Parent |
| Kya E. Mathews | Kya Ems | School Psychologist |

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Dwanda C. Holtzclaw    Date  10/3/06

District of Columbia Public Schools    07-02-2001    Division of Special Education /    Appendix - A    IEP Page 1 of 4

\* Parent wants standing with transportation to Foundations School of MD. agrees with implementation but not placement.

75

| Student Name ████████ | Managing School _____ | DCPS - IEP |
|---|---|---|
| Student ID Number _____ DOB _____ | Attending School FPCS-Southeast Elementary Acade | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:**

**Academic Areas: (Evaluator)** J. Smiley- Sped. Coordinator

Math Strengths:

████ math strengths is to solve simple adding and subtracting.

Impact of disability on educational performance in general education curriculum:

████ disability impacts his ability to solve addition and subtraction problems with regrouping , word problems, fractions without like denominators.

Reading Strengths:

Impact of disability on educational performance in general education curriculum:

████ disability impacts his ability to compose sentences spelling, word meaning, and reading comp.

**Score(s) When Available**

| | | |
|---|---|---|
| Math Cal. | SS89 | GE 3.4 |
| Math Rea. | SS87 | GE2.8 |
| See goal page: | page 2 | |
| Date: | | |
| Rdg. Com | SS75 | GE1.8 |
| Rdg. Basic | SS81 | GE2.6 |
| Written Ex. | SS69 | GE1.9 |
| See goal page: | page 2 | |
| Date: | | |

**Communication (Speech & Language) (Evaluator)** _____
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

| | | |
|---|---|---|
| Exp.Lang. | | |
| Rec- Lang. | | |
| Artic | | |
| Voice | | |
| Fluency | | |
| Exp. Voc. | | |
| Rec. Voc. | | |
| See goal page: | | |
| Date: | | |

**Motor/Health (Evaluator)** _____
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

| | |
|---|---|
| | |
| | |
| | |
| See goal page: | |
| Date: | |

**Social Emotional Behavioral Areas: (Evaluator)** _____
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

| | |
|---|---|
| | |
| | |
| | |
| See goal page: | |
| Date: | |

**Cognitive/Adaptive Behavior: (Evaluator)** _____
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

| | |
|---|---|
| | |
| | |
| | |
| See goal page: | |
| Date: | |

**Prevocational Skills: (Evaluator)** _____
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

| | |
|---|---|
| | |
| | |
| See goal page: | |
| Date: | |

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 2 of 4

76

| Student Name _____ | Managing School _____ | DCPS - IEP |
| Student ID Number _____ DOB _____ | Attending School  FPCS-Southeast Elementary Acade | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:                                    **Goal Number:** [  ]

Area addressed by goal: **Language Arts** _____

ANNUAL GOAL: (including mastery criteria.)

_____ will show one year's growth based on the pretest and posttest of the WJIII data by mastering the short term objectives with 80% accuracy.

Provider(s): _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| _____ will compose simple sentences with 80% accuracy. | | |
| _____ will proofread all written text for the correct capitalization and punctuation with 80% accuracy. | | |
| _____ will spell a list of weekly spelling words with 80% accuracy. | | |
| _____ will use context clues to gain word meaning with 80% accuracy. | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

77

| | | | DCPS - IEP |
|---|---|---|---|
| Student Name _____ | | Managing School _____ | Page 3 of 4 |
| Student ID Number _____ DOB _____ | | Attending School **FPCS-Southeast Elementary Acade** | |

Goal Number: [ ]

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Area addressed by goal: __Academics- Math__ _____

ANNUAL GOAL: (including mastery criteria.)

will show one year's growth based on the pretest and posttest data by mastering the short-term objectives with 80% accuracy.

Provider(s): __Sped. Case Manager and General Educator__

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| will solve addition and subtraction problems with regrouping 80% accuracy. | | Quarterly |
| will multiply and divide two digit numbers with 80% accuracy. | | Quarterly |
| will solve one-step word problems ~~with unlike denominators~~ with 80% accuracy. | | Quarterly |
| will add and subtract fractions with unlike denominators with 80% accuracy. | | Quarterly |
| will solve simple measurement problems with 80% accuracy. | | Quarterly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☑ Chart   ☑ Test   ☐ Documented Observation   ☑ Report   ☐ Other _____

| Student Name | | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | DOB | Attending School FPCS-Southeast Elementary Acade | | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:                          Goal Number: [    ]

Area addressed by goal: Language Arts – *Reading*

**ANNUAL GOAL: (including mastery criteria.)**

will show one year's growth based on the pretest and posttest of the WJIII data by mastering the short-term objectives with 80% accuracy.

Provider(s):  Sped. Case Manager & General Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| will read various text and answer comprehension type questions with 80% accuracy. | | Quarterly |
| will read various text and identify various story elements with 80% accuracy. | | Quarterly |
| will define unfamiliar words while reading various text with 80% accuracy. | | Quarterly |
| will read various text and determine the synonym and antonym of various words with 80% accuracy. | | Quarterly |
| will read various text and identify the author's purpose with 80% accuracy. | | Quarterly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☑ Log  ☐ Chart  ☑ Test  ☐ Documented Observation  ☑ Report  ☐ Other _____

| Student Name ████████ | | Managing School _____ | DCPS - IEP |
|---|---|---|---|
| Student ID Number _____ | DOB _____ | Attending School FPCS-Southeast Elementary Acade | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>regular education</u>?  ☑ Yes  ☐ No

Explanation for removal out of regular education classroom.

Avadis warrants a setting that will provide him the least restrictive environment academically. ████ *requires a full-time placement to provide him the least restrictive environment academically.*

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for <u>testing</u>:    ☐ None needed

☐ Timing/Scheduling: Extended time
☐ Setting:  Small group
☐ Presentation:  Reading of direction and test items as needed *+ Guided notes*
☐ Response:
☐ Equipment:  Use of a highlighter

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio: _____

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☑ Reading        ☐ Physical/Sensory      ☐ Transition
☑ Mathematics    ☐ Social Emotional      ☐ Vocational
☑ Written Expression  ☐ Physical Development  ☐ Independent Living
☐ Other: _____              ☐ Speech/Language
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**Modifications:**

☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | ~~Accept~~ *Reject* | ~~Impact on self-esteem~~ |
| Out of the general education | ~~Reject~~ *Accept* | ~~Too restrictive~~ |
| Combination | Reject | COntinue school failure |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:
Exposure to general education curriculum.

Location for Services    FPCS-Southeast Elementary Academy

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

80

EVALUATION TO JUSTIFY TRANSPORTATION

Student _____ ID# _____ DOB _____ N/A

Attending School _____ Neighborhood School _____

Attach a copy to the Transportation Data Form and maintain as a part of the IEP

Justification for Transportation as a related service as stipulated in 300.24 (15). (Check all that apply):

1. [ ] Medical reports document a severe health condition that prevents the student from walking to school. Specify _____

2. [ ] Medical reports document a physical disability that prevents the students from walking to or getting to school independently. Specify _____

3. [ ] A documented severe cognitive disability prevents the students from walking or getting to school independently. Specify _____

4. [ ] A visual and/or hearing disability interferes with the student's ability to arrive at school independently. Documentation source _____

5. [ ] A severe communication disability prevents the student from communicating for his/her own safety. Documentation source _____

6. [ ] A behavior/emotional disability is so severe or erratic that there is concern for the safety of the student and/or others. Documentation source _____

7. [ ] The student is eligible for the preschool special education program and could not participate without special transportation.

8. [ ] The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.

9. [ ] The student is medically fragile. Documentation source _____

10. [ ] The student requires assistance to get on and off the bus. Documentation source _____

11. [ ] The student is unable to function independently due to the severity of the disability. Documentation source _____

12. [ ] The student requires a non-routine transportation schedule (i.e. contract services, abbreviated school day). Explain _____

13. [ ] Medical reports document that the student has a physical disability and/or severe health condition that prevents him or her from walking to school. Documentation source _____

14. [ ] A documented severe cognitive disability prevents the student from walking to school. Documentation source _____

15. [ ] Other (Specify)

_____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS        07-02-2001        DIVISION OF SPECIAL EDUCATION        APPENDIX-A

146        81

IEP Attachment B
Transportation

DISTRICT OF COLUMBIA PUBLIC  HO

TRANSPORTATION DIVISION

**STUDENT TRANSPORTATION
DATA FORM**

*2006-2007*
School Year

_____
STUDENT IDENTIFICATION NUMBER

(MDT must first determine if student meets the requirements for
transportation services and has it included in the IEP.)

Person Making Request: _____
Date of Request: _____
Status of Request: _____
Date Request Received: _____
Person Receiving Request: _____

Parent / Guardian (Print legibly or type)

Telephone (H)

Telephone (W)

Emergency Contact

Relationship

Telephone No.

Pager / Cell No.

Students will be taken to a central location until
6:00 p.m. if the bus attendants are unable to
deliver them to the designated location. After
6:00 p.m. the police will be contacted. This
year's central location is _____

Student:    Last Name                    First Name              Mi

House No.    Street Name              Quad.    Apt.

City                          State      Zip Code

DOB    Gender    Primary Language    Submitting School and Telephone Number

Disability Classification              **Medical Issues**

**MODE OF TRANSPORTATION**    ☐ *Bus  ☐ Tokens    ☐ Farecards
* SPECIAL ACCOMMODATIONS FOR BUS

Height _____  Weight _____

Oxygen        Tracheotomy tube      Seizures      Helmet
Harness        1:1 Aide          Behavioral issues _____
Medication _____    Specific allergies _____

Dosage required during transportation :
☐ Yes  ☐ No    Dosage _____              ☐ PM  ☐ AM

☐ Mobility  ☐ Ambulatory ( ☐ Cane, ☐ Crutch, ☐ Walker)
            ☐ Ambulatory w/ assistance ( ☐ Cane, ☐ Crutch, ☐ Walker)
            ☐ Non Ambulatory ( ☐ Standard, ☐ Motorized, ☐ Oversized
                w/ tap tray    ☐ Yes  ☐ No)

☐ Car Seat          ☐ Positioning Device _____
☐ Special Restraint    ☐ Other, Describe: _____

Click one of the following:

☐ **AM Pick-up & PM Drop-off** is the same as the student address.

☐ _____              Telephone No. _____
   **AM Pick-up Address**

☐ _____              Telephone No. _____
   **PM Drop-off Address**

**Transportation will  NOT be provided without confirmed placement through the proper procedures.
Justification for other than neighborhood settings must be explained on the back by the school official
requesting the transportation services.**

_____          _____          Date _____
School Official requesting transportation service:    Telephone No.

_____          _____          Telephone No. _____
School to Attend:              Address of School

**Questions may be directed to the Special Education Transportation Liaison.**

District of Columbia Public Schools    07-02-2001    Division of Special Education    IEP Attachment B    Transportation
147

82

| Student Name | | Managing School | | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
| Student ID Number | DOB | Attending School | | |

Date Developed: _____

# DCPS TRANSITION SERVICES PLAN

Note: The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of tile IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.  Record student's post-secondary goals and interests.**

Employment: _____

Community Participation: _____

Post-Secondary Education and Training: _____

Independent Living: _____

**II.  Courses of study leading to student's post-high school goals.**

| Grade or School Year | Courses of Study |
|---|---|
| | |
| | |
| | |
| | |
| | |

**III.  Transition Services Needed.**
Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Employment** <br><br> If service is not needed, provide explanation. | | |
| **Community Participation** <br><br> If service is not needed, provide explanation. | | |
| **Post - Secondary Education and Training** <br> If service is not needed, provide explanation. | | |
| **Independent and Adult Living** <br> If service is not needed, provide explanation. | | |

District of Columbia Public Schools    07-02-2001    Division of Special Education    IEP Attachment C    Transition Services Plan    Page 1 of 2

148

83

| Student Name | | Managing School | | DCPS - TRANSITION |
| Student ID Number | DOB | Attending School | | SERVICES PLAN PAGE 2 OF 2 |

Date Developed: _____

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | | |
| **Other** | | |

**IV.**

| Projected Exit Category *(check one)* | High School Diploma Status | | Projected Exit Date (M/D/Y) |
|---|---|---|---|
| DC High School Diploma | # Credits Earned toward graduation | | |
| High School Certificate at age 21 | | | |
| High School Certificate **prior** to age 21 | # Community Service Hours Completed | | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

> **Examples of Agency Linkages Needed for Transition**
> - Rehabilitation Services Administration (RSA)
> - Mental Retardation and Developmental Disabilities Administration (MRDDA)
> - Commission on Mental Health Services (CMES)
> - UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

84

**Friendship Public Charter School**
906 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-8395

| |
|---|
| **IEP Attachment - D**<br>**ESY Services**<br>Page 1 of 2 |

## IEP ADDENDUM FOR ESY SERVICES

**Student Name:** ▓▓▓▓▓▓▓▓▓▓    **Initial** _____    **Date of Birth:** _____

**Gender:**  ☐ Male  ☐ Female                    **Grade** ___*11*___

**School:** FPCS-Southeast Elementary Academy      **Date IEP Written** _____

**Checklist:**

| | | Yes | No |
|---|---|---|---|
| 1. | IEP is appropriate and reasonable for student | ☐ | ☐ |
| 2. | All or most IEP goals and objective are being achieved | ☐ | ☐ |
| 3. | Severity of student's disability requires individualized programming in areas of : | ☐ | ☐ |
| | • Self sufficiency and independence from caretaker or | | |
| | • _____ | | |
| 4. | Student record shows serious regression following interruptions in the school program. | ☐ | ☐ |
| 5. | Student record shows inability to recoup skills a reasonable time following regression. | ☐ | ☐ |
| 6. | Student has critical need for continuity in programming to facilitate achieving educational benefit from her or his education program. | ☐ | ☐ |
| 7. | Transportation services needed | ☐ | ☐ |

**Determination**

After review the IEP team **RECOMMENDS** the provision of an

extended school year program for the above student.                 ☐      ☐

**Reason**

| |
|---|
| |

85

## Special Education Goal and Objective for ESY

Goals and objectives from the IEP which are to be specifically addressed during ESY are:

| Annual Goal(s) | Skills Area(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| Special Education Services for ESY | | RELATED SERVICES | | | | | |
|---|---|---|---|---|---|---|---|
| Skills Area(s) | *Setting | Time to be Provided | | | Projected Date of Initiation | Number of Weeks |
|  |  | Amount | Unit ( Hours/ Mins ) | Period ( D/ W/ M ) |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

\* Setting : **A** - Full Time General Education; **B** - Combo. General Education / Resources Classroom ; **C** – Out of Regular Education

| ESY Least Restrictive Environment (LRE) | |
|---|---|
| ☐  Placement as in regular school year |  |
| ☐  Placement different from regular school year | Hours/Week |

**Placement**

Specify placement (setting and alternate) of ESY service:

Explain why options selected above are the most appropriate and the least restrictive.

Describe any other options considered, and provide reasons those options rejected.

| Parent Name | Date | Signature |
|---|---|---|
|  |  |  |

86

# Exhibit 6



Friendship Public Charter Schoo⋅
_____ Campus

MULTIDISCIPLINARY TEAM
(MDT) IEP
MEETING NOTES

MDT REFERRAL DATE: _____

STUDENT: ██████████

MEETING DATE: 10:3.06

SCHOOL: FPCS-Southeast Academy

PARTICIPANTS; (PRINT NAME)

M. Abbott-Davis
Dwanda (MOAClaw) *
Iveen J. Ternember 2
Willie Walker
Kya Mathews

PARTICIPANTS; (SIGN NAME)

W. Abbott-Davis
Dwanda Hotheford
Iveen Ternember
Willie Walker
Kya Mathews

POSITION

Teacher
Parent
Advocate
Special Education
School Psychologist

* Advocate's Notes are attached

Purpose: The MDT has found that ████ 4 continues to qualify for special education services. ████ will receive 28.5 of specialized instruction and 1 hour of counseling. His disability category will be changed from SLD to MD. At this time he will be a level III child for standardized testing. He does not qualify for ESY, transition or transportation services. Transportation services will discussed at next meeting.

88

Friendship Public Charter School

_____ Campus

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

STUDENT: ███████████████

MEETING DATE: 10-3-06

SCHOOL: FPCS Southeast Elem. Academy

PARTICIPANTS: (PRINT NAME)

| PARTICIPANTS: (PRINT NAME) | PARTICIPANTS: (SIGN NAME) | POSITION |
|---|---|---|
| Willie Walker | Willie Wal | Special Ed. Teacher |
| Monique Abbott-Davis * | M. Abbott-Davis | Teacher |
| Judah Fernandez | Julian Fuguet | Advocate |
| Dwanda C. Hotzchaw | Dwanda Hotzchaw | Parent |
| Monique Abbott-Davis | MAb | |
| Kya Mathews | Kya Mathews | School Psychologist |

Purpose: The purpose of this meeting is to review the current evaluations for ████████ and determine if he continues to qualify for special education services. For the record introductions were made and parent received a copy of the parental safeguards.

Psychologist: Ms. Kya Mathews interpreted the evaluations for the meeting. ████████ was evaluated on 8-8-06 and 8-9-06 by Jamila Smiley and Sharon Piner. He was given the following evaluations: WJ-III, WISC IV, BASC2, CRS-R and parent interview.

* Advocate 's Notes are attached

89

Friendship Public Charter Schoo...
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

page:____of_____

MEETING TYPE: _____

STUDENT: _____    DATE OF BIRTH_____

SCHOOL: _____    DATE: _____

Psychologist Cont - ▓▓▓▓ was referred for testing due to assess his current level of cognitive functioning, social emotional functioning and his present level of performance in all academic areas. Ms Holtzclaw reported that ▓▓▓▓ has Chronic Asthma, Seizures, Migraine Headaches and ADHD. He is currently prescribe Flovent and Albuterol to treat asthma, Depacot to treat his seizures and migraines, and Alderol for the ADHD. During both testing sessions ▓▓▓▓ was observed as putting forth adequate effort. The results of the assessments are as follows: WJ-III, Reading Composite=73 or borderline, Math Composite=88 or Low Average, Written Language-69 or deficient range Reading Comprehension and spelling appear to be areas were he experience the most difficulty. WISC-IV, Full Scale IQ = 80 or low average, VCI=75 or borderline, PRI=84 or low average, WMI= 99 or average, and PSI= 83 or low average. BASC-2 Ms. Holtzclaw completed the Parenting Rating Scale. Externalizing Problems= T=78 or suggesting ▓▓▓▓ is overall disruptive in School, Conduct Problems and Aggression both

Friendship Public Charter School
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)                    page:___of____
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: _____    DATE OF BIRTH_____

SCHOOL: _____    DATE: _____

Psychologist Cont: fall in the clinical significant range.
Internalizing Problems fall in the Insignificant range = 62.
Adaptive Skills = T-40 or Average. CPRS-R:L .Ms. Holtzclaw
responses on the CPRS-R:L yielded an elevated profile
Most of her subscales and index scores exceed the cut off
point for clinical significance or greater than 65. Global Index:
Restless-Impulsive (T=70 and ADHD index (T=70) or Atypical
range, suggesting problems with hyperactivity and inattention.
DSM-IV (T=65) also falls in the Atypical range, indicating an
average correspondence to DSM-IV criteria for ADHD, Combined
Type.


Parent: Ms. Holtzclaw states that ████ missed alot a time from
school due to suspensions. She also stated that ████ did not
receive all of his specialized instruction due to Special Education
teacher being out.

Friendship Public Charter Schoo.
_____ Campus

**MULTIDISCIPLINARY TEAM (MDT)**          page:____of_____
**CONTINUATION MEETING NOTES**
MEETING TYPE: _____

STUDENT: _____     DATE OF BIRTH_____

SCHOOL: _____     DATE: _____

MDT: The MDT has determined that ▇▇▇▇ continue to qualify for special education services. His disability category will be changed from SLD to MD. The disability categories being LD, OHI and ED. The team is seeking a full time placement and will reconvene to review FBA & BIP. At that time a DCPS placement specialist will be invited. FPCS-Southeast Elem. Academy has agreed to provide 36 hours of tutoring for ▇▇▇▇ per a settlement agreement.

92

Friendship Public Charter Schoc

_____ Campus

MULTIDISCIPLINARY TEAM
(MDT) IEP
MEETING NOTES

MDT REFERRAL DATE: _____

MEETING DATE: 10306

STUDENT: ███████████

SCHOOL: FPCS-Southeast Academy

| PARTICIPANTS; (PRINT NAME) | PARTICIPANTS; (SIGN NAME) | POSITION |
|---|---|---|
| M. Abbott-Davis | M. Abbott-Davis | Teacher |
| Dwanda C. McClain | Dwanda McClain | Parent |
| Queen J. Torrence | Queen Torrence | Advocate |
| Willie Walker | Willie Walker | Special Education |
| Kya Mathews | Kya Mathews | School Psychologist |

* Advocate's Notes are attached

Purpose. The MDT has found that ████ 4 continues to qualify for special-education services. ████ will receive 26.5 of specialized instruction and 1 hour of counseling. His disability category will be changed from SLD to MD. At this time he will be a level III child for standardized testing. He does not qualify for ESY, transition or transportation services. Transportation services will discussed at next meeting.

93

# Exhibit 7

EXHIBIT

*AH-7*

ALL-STATE LEGAL®

94

(Advocate's Notes)

10/3/06

The purpose of this meeting is to comply with S.A. between parent and school. dated 6/13/06. Where among things, the Friendship Edison PCS agreed to complete a Psycho-Educational and Clinical Evaluation, reconvene a CDT meeting to review the evaluations stated before and revise IEP as necessary.

| Educational Testing | | Grade Equivalence | A.E. |
|---|---|---|---|
| Reading 73 | | 2.2 | 7.6 |
| Mathematics | 88 | 3.2 | 8.8 |
| Written Language | 69 | 1.9 | 7.5 |

Sub-Test Administered

Letter Word ID  81        81
Reading Fluency  74
Calculation  91        74
Math Fluency  84        94
Spelling  77        86
Writing Fluency  65
Passage Comprehension  75
Applied Problems  87
Writing Samples  78

Clinical – Psychological was reviewed by school Psychologist. ▮▮▮▮ was suspended for 12 school days last school year. He has been diagnosed as an ADHD.

Parent/Advocate @ this time based on the reevaluations and all other relevant data are requesting a full-time IEP with an MD Classification (OHI, LD, ED) Parent would like ▮▮▮▮ to receive psychological counseling @ least 1 hr x week. ▮▮▮▮ originally came from Maryland with a full time IEP.

Friendship reduced the hrs on the IEP without appropriate justification. Parent was told that school could not

(Advocate's Notes)

10/3/06

service a student with a Fulltime IEP.

Parent/Advocate are requesting IEP report Cards for sky 2005/2006.

Behavior Intervention Plan was supposed to produce weekly reports, parent now is asking for copies of these reports.

Friendship does not have a resource room, what they do have is an inclusion program.

parent is asking for Funding with Transportation from both Friendship and DCPS for The FOUNDATION SCHOOL OF LARGO MD.

Friendship acknowledges that it can not provide ~~adequate~~ services to ████ because he now has a Foll-time IEP.

Team will reconvene to review FBA and BIP. A Placement Monitor will ~~also~~ participate at next meeting.

(DCPS)

Gerard Juando, Advocate

96

# Exhibit 8





# HIGH ROAD
SCHOOL

October 17, 2006

Ms. Dwanda Holtzclaw
916 Savannah St. SE
Washington, DC 20032

Dear Ms. Holtzclaw:

Congratulations, ██████████ has been accepted into the High Road School of
Prince George's County for our 2006 – 2007 school year. The school day is in operation
from 8:00 a.m. – 2:30 p.m. Monday through Friday.

Please note that the doors will not open until 7:45 a.m. This will allow each of the
teachers to greet the students and provide a safe and welcoming start to your child's
school day. We appreciate your cooperation in this matter, as we know that your child's
safety is paramount.

We have included several forms for your review. Some require your signature and must
be returned to High Road School prior to your child's first day. Please keep these forms
in a safe place for future references.

**Please sign and return the following forms** in the self-addressed envelope provided:

1. Authorization to Implement Behavior Management Practices
2. Trip Authorization
3. Photographic/Video Release
4. Medical Authorization
5. Emergency Card
6. Immunization Certificate
7. Consent to Evaluate
8. Authorization to Release/Obtain Information (2)
9. Authorization for the Release of Confidential Information
   Student and Family Rights



**Documents for your review only:**

1. Description of Program
2. Technology Education/Diversified Occupation
3. Child Management Procedures Packet
   - a. Techniques/Disciplinary Practices
   - b. Behavior Management System
   - c. Classroom Management Techniques
   - d. Physical Restraint
   - e. Time Out/Quiet Room Procedures
   - f. Incident Reporting
   - g. High Risk Behavior Intervention
   - h. De-escalation of Student Behavior
   - i. Student Removal Guidelines
   - j. Behavior Level System
4. Health Policies for Parents/Guardians
5. Parent Information: Medication Guidelines
6. Suspected Abuse
7. Dress Code
8. Closing-Storm/Heat Related
9. Trip Authorization
10. Consent to Evaluate

If you have any questions, please call me at 301-324-8902.

Sincerely,

Angela Lingham,
Senior Director

Enc.

CC: Law Offices of James E. Brown & Associates, PLLC

99

# Exhibit 9



EXHIBIT
AH-9



# Therapeutic Day School

8519 Tuttle Road
Springfield, Virginia 22152
(703) 451-8041  Telephone (703) 569-5365 Fax

aine McConnell
Chief Executive Officer
atthew McConnell
General Counsel
lia Warden, M.S.
Educational Director
un Warnke, M.S., CCC
Assistant Educational Director
ielissa Deichmann, Ph.D.
Co-Clinical Director
ancy McKenna, Ph.D.
Co-Clinical Director
rlene Ring, M.A. CCC/SLP
Speech Pathology Co-Director
tephanie Oates, M.A. CCC/SLP
Speech Pathology Co-Director
ennifer Baldwin, MA, ATR-BC
Art Therapy Director
atrice Brown, OTR/L
Occupational Therapy Director
anice Gombo, B.S.
Transitional Specialist
ulic Oaks
Admissions

October 23, 2006

Ms. Dwanda Holtzclaw
916 Savannah Street, SE
Washington, DC  20032

RE: ▓▓▓▓
DOB: ▓▓▓▓

Dear Ms. Holtzclaw:

We are pleased to inform you that we have accepted ▓▓▓▓ to Accotink Academy for the 2006-07 School Year to begin as soon as possible. ▓▓▓▓ will be placed in a small student-teacher ratio classroom. Services that will be provided to her will be based on the incoming IEP until evaluations/recommendations can be made at the parents' review meeting. Recommendations for support services could include psychological counseling and speech and language sessions.

You will be contacted soon by a representative of this student's treatment team to arrange for you to visit the school to meet with the Accotink Academy personnel who will be working with ▓▓▓▓ Please call Ann Warnke, Assistant Director of Education, or myself if you have any questions concerning the placement or program needs.

Please complete the enclosed Enrollment Form, Physical Examination Form, and the Authorization for Use of Creative Productions Form and return to Diane Lips on or before the first day of arrival. It is essential that we have the physical form and immunization record on file before student attends any classes. We look forward to working with ▓▓▓▓

Sincerely,

Julia Oaks
Admissions Director

Enclosures
cc: Heidi Romero
VIA FAX: (202) 742-2098
Ms. Dwanda Holtzclaw
VIA FAX: (202) 373-5730 (hard copy mailed
     with enclosures)

101

# Exhibit 10



02

Friendship Southeast Elementary Academy
645 Milwaukee Avenue, SE
Washington, DC 20032
Gary B. Bartee, Principal

FOURTH QUARTER REPORT CARD
2005-2006 School Year

RE: Dwanda Hotlzclaw
916 - Savannah St. S.E.
Washington, DC 20032

ID: 90050100018Grade: 03

FROM 04/07/06 TO 06/22/06

Friendship SE Elementary Academy
Fourth Quarter

| | | 1st Qtr | 2nd Qtr | 3rd Qtr | 4th Qtr | FNL YR |
|---|---|---|---|---|---|---|
| Reading | JSimpkins | B | D | C | D | D |
| Social Studies | JSimpkins | C | C | A | D | C |
| World Language | JLoewenguth | A | D | D | D | C |
| Physical Fitness | ESingletary | | D | C | D | D |
| Physical Fitness | JWhite | B | C | A | C | C |
| Art | HWilliams | | C | A | A | B |
| Math | JSimpkins | B | C | C | D | C |
| Science | JSimpkins | B | C | C | D | C |

All Abs  All Tdy
14       7

** PAGE 1 OF 1 **

Absent: 14   Present: 172

Summer school is highly recommended. Math Reading

103

# Exhibit 11

EXHIBIT

*AH-11*

504

CONFIDENTIAL



Friendship Edison
Public Charter School
Community Vision ... World Class Education

**Educational Evaluation**

| | | | |
|---|---|---|---|
| EXAMINEE: | ███████ | REPORT DATE: | 8/10/2006 |
| AGE: | 10 years 1 month | GRADE: | 4.9 |
| DATE OF BIRTH: | ███████ | ETHNICITY: | African/African American |
| EXAMINEE ID: | -- | EXAMINER: | Jalima Smiley |
| GENDER: | Male | | |

Tests Administered:   Woodcock Johnson III (8/9/2006)

Age at Testing:   WJIII (10 years 1 month)

**SCORES SUMMARY**

| WJ-III COMPOSITE | SCORE |
|---|---|
| Reading | 73 |
| Mathematics | 88 |
| Written Language | 69 |

**TYPE OF ASSESSMENT**
__INITIAL        _X_  REEVALUATION

**REASON FOR REFERRAL:**
   The Woodcock-Johnson III (WJ-III) was administered to ███████ as a part of the evaluation process to gain information regarding his present levels of performance in all academic areas.

**BACKGROUND INFORMATION:**
   ███████ is a 10-year-old African American male student who attends Friendship Public Charter Schools/Southeast Academy in Washington, DC. ███████ is currently in the 4th grade.

**DESCRIPTION OF TEST BEHAVIOR:**
   ███████ was cooperative throughout the examination; his activity level seemed typical for his age. He appeared at ease, comfortable, and attentive to the tasks during the examination. ███████ responded slowly and carefully to test questions. ███████ did not, however, wish to complete or attempt tasks that appeared difficult even with encouragement and prompting from the examiner.

105

CONFIDENTIAL

Given ████ cooperative approach and apparent investment in his performance, the results presented in this report can be considered a valid estimate of his current level of academic functioning.

## DESCRIPTION OF THE WJ-III TEST OF ACHIEVEMENT:

The Woodcock-Johnson III (WJ-III) Test of Achievement may be used to determine and describe a students academic abilities and current achievement levels. The test provides information about the student's strengths and weaknesses, which may be useful in developing instructional goals for Individualized Educational Programs.

## ASSESSMENT DATA SUMMARY

| TEST CLUSTERS | STANDARD SCORES | GRADE EQUIVALANCE | AGE EQUIVALANCE |
|---|---|---|---|
| Broad Reading | 73 | 2.2 | 7.6 |
| Broad Math | 88 | 3.2 | 8.8 |
| Broad Written Lang | 69 | 1.9 | 7.5 |
| Math Calculation Skills | 89 | 3.4 | 8.11 |
| Written Expression | 66 | 1.7 | 7.0 |
| Academic Skills | 83 | 2.7 | 8.0 |
| Academic Fluency | 71 | 2.0 | 7.3 |
| Academic Applications | 80 | 2.1 | 7.6 |

| SUB-TEST ADMINISTERED | STANDARD SCORES | GRADE EQUIVALANCE | AGE EQUIVALANCE |
|---|---|---|---|
| Letter-Word ID | 81 | 2.6 | 7.11 |
| Reading Fluency | 74 | 2.0 | 7.3 |
| Calculation | 91 | 3.5 | 9.0 |
| Math Fluency | 84 | 3.2 | 8.7 |
| Spelling | 77 | 2.2 | 7.9 |
| Writing Fluency | 65 | 1.6 | 6.7 |
| Passage Comprehension | 75 | 1.8 | 7.1 |
| Applied Problems | 87 | 2.8 | 8.4 |
| Writing Samples | 78 | 1.8 | 7.4 |

## DATA INTERPRETATION:

**Reading:** ████ broad reading standard score is a 73 and falls within the borderline range. The broad reading score is based on performance on the following subtests: letter-word identification, reading fluency, and passage comprehension.

**Letter-word identification (SS=81)-** ████ was able to correctly read cvc words; words with blends and with 2 syllables. He correctly read words such as *there, whole, against,* and *decide.* ████ consistently used his decoding skills when he came to a difficult word.

**Reading Fluency (SS=74)-** ████ was able to read the example sentences with accuracy and responded correctly. He was given 3 minutes and was able to answer a total of 20 items, of which he received credit for 17 of these items. ████ took his time and read and responded to the sentences carefully, which had an impact on his score.

2



CONFIDENTIAL

**Passage comprehension (SS=75)-** ████ was able to read several sentences and fill in the blank with the correct word. He began to have more difficulty as the sentences became more complex. ████ did attempt to answer all items given to him.

**Math:** ████ broad math standard score is 88 and falls within the upper limits of the low average range. The broad math score is based on performance on the following subtests: calculation, math fluency, and applied problems.

**Calculation (SS=91)** In this section, ████ was asked to solve math problems. He performed within the average range of his ability on this subtest. He was able to correctly complete single digit addition and subtraction and adding fractions with like denominators. He had difficulty with adding and subtracting with regrouping, 2 by 1 digit multiplication, and division. ████ stated that he did not wish to attempt the difficult items even with several prompts and words of encouragement from the examiner.

**Math Fluency (SS=84)-** ████ was asked to complete as many basic math problems as he could within 3 minutes. He was able to complete 42 problems correctly. ████ worked diligently to complete as many items as he could within the given timeframe during this subtest.

**Applied Problems (SS=87)-** ████ was able to tell time, identify coins, read temperature, and add and subtract mentally. He began to have difficulty when presented with word problems. ████ did not use a pencil and scrap paper to solve many of the items given to him.

**Written Language:** ████ broad written language standard score is a 69, which falls within the deficient range. The broad writing score is based on performance on the following subtests: spelling, writing fluency, and writing samples.

**Spelling (SS=77)-** ████ was able to spell cvc words, and words with vowel blends. He correctly spelled words such as *green, table, was,* and *under*. He had difficulty spelling words with vowel blends and suffixes.

**Writing Fluency( SS=65):** ████ was given a picture with three words. He was asked to write a sentence using the words to describe the picture. He was given a total of 7 minutes to complete this task. ████ did not attempt many of the items on this subtest. He was able to write some complete sentences using all three words, however, he took his time and worked at a slow speed, which impacted his score. It should be noted that although spelling and capitalization were not scored, ████ was unable to write complete sentences with these components.

**Writing Samples (SS=78):** ████ was given a picture and asked to write a sentence to describe the picture. He was able to write several complete sentences, however, he was only able to receive partial credit on many of the items because his sentences were simplistic and did not include much detail. At times, ████ did not include a noun in his sentences. It should be noted that although spelling and capitalization were not scored, ████ was unable to write complete sentences with these components.

**Recommendations:**

The following recommendations are offered for consideration by the multidisciplinary team (MDT) based on the information obtained in this evaluation. Final decisions about eligibility determination, special education services, and interventions should be made at the MDT meeting in conjunction with results from any other evaluations conducted along with input from the parent and other team members of the MDT.

3

107

CONFIDENTIAL

## SPECIFIC RECOMMENDATIONS FOR INSTRUCTION:

**Math:** ⬛⬛⬛ should practice adding and subtracting with regrouping. He may benefit from using base ten blocks in order to understand the concept of borrowing. ⬛⬛⬛' teacher should also encourage him to use a pencil and paper when solving math problems. Due to difficulties with word problems, ⬛⬛⬛ should underline, highlight, or circle key words to determine which operation to use.

**Reading:** ⬛⬛⬛ would benefit from using a highlighter to highlight important details from the story. He should also be encouraged to use context clues in the story. ⬛⬛⬛ should be encouraged to go back to the passage to reread specific sections of the story related to the question.

**Writing & Spelling:** ⬛⬛⬛ should practice writing sentences that included more details and the use of adjectives. He should also be encouraged to edit his writing for spelling and punctuation errors. A CUPS (Capitalization, Usage, Punctuation, Spelling) checklist may benefit him.

**All academic areas:** ⬛⬛⬛ would benefit from extended time when completing tests and assignments since fluency appears to be a weakness for him.

## RATIONALE/SUMMARY:

⬛⬛⬛ fluency with academic tasks is within the low range of others at his age level. His academic skills and his ability to apply those skills are both within the low average range.

When compared to others at his age level, ⬛⬛⬛ performance is low average in mathematics and math calculation skills; low in broad reading; and very low in written language and written expression.

## TEST VALIDITY:

## BASED ON THIS REPORT, THE EXAMINER BELIEVES:

☒ THE ASSESSMENT PROCEDURES ARE VALID FOR THE PURPOSES INTENDED.
   **X** YES ___ NO

☒ THE RESULTS ARE A VALID REPORT OF THE STUDENT'S CURRENT ACHIEVEMENT.
   **X** YES ___ NO

| | | |
|---|---|---|
| _(signature)_ | Educational Educator | 8/10/06 |
| SIGNATURE | TITLE OF EXAMINER | DATE REPORT COMPLETED |

4

# Exhibit 12



**Friendship Edison**
Public Charter School
Community Vision ... World Class Education

## Psychological and Clinical Evaluation

EXAMINEE:
AGE: 10 years 1 months
DATE OF BIRTH:
EXAMINEE ID: Not Specified
GENDER: Male

REPORT DATE: 8/13/2006
GRADE: 1st
ETHNICITY: African/African American
EXAMINER: Sharon Piner
School Psychologist

Tests Administered: WISC-IV (8/8/2006)
BASC, Parent Rating Scale
Conners' Parent Rating Scale
Parent Interview (8/8/2006)

Age at Testing: WISC-IV (10 years)

Is this a retest?    No

### SCORES SUMMARY

| WISC-IV COMPOSITE | SCORE |
|---|---|
| Verbal Comprehension Index (VCI) | 75 |
| Perceptual Reasoning Index (PRI) | 84 |
| Working Memory Index (WMI) | 99 |
| Processing Speed Index (PSI) | 83 |
| Full Scale IQ (FSIQ) | 80 |

**Reason for Referral**
_____ was referred for a psychological evaluation by the MDT at Friendship Southeast Elementary Academy to assess his current level of cognitive functioning and to assess his current social emotional functioning.

**Background Information**
_____ is a 10-year-old African American male who currently resides with his mother, maternal grandmother, seven-year-old sister, and an older brother. A parent interview was conducted with Ms. Holtzclaw for the purpose of this evaluation on August 8, 2006. According to Ms. Holtzclaw she received prenatal care during her pregnancy and her labor and delivery were uncomplicated. However, _____ health is significant for Chronic Asthma, Seizures, Migraine Headaches, and ADHD. He is currently prescribed Flovent and Albuterol to treat his asthma, Deprocot to treat his seizures and migraine headaches, and Alderol to treat his ADHD diagnoses. Reportedly, _____ did not experience any accidents or severe head trauma in the past.

His academic history consists of the following schools:

110

- K-1ˢᵗ- McGogney Elementary School
- 1ˢᵗ grade – 2ⁿᵈ grade- Glass Manor Elementary School
- 3ʳᵈ Grade- Friendship Southeast Elementary Academy

His mother retained ████ in the 1st grade because she did not feel he was prepared for the 2nd grade. According to Ms. Holtzclaw, ████ 4ᵗʰ quarter report card was "O.K.". He received only two D's in reading. However, he had been suspended approximately 12 times for negative behavior. Each suspension mandated him to be absent from school approximately 3-5 days. Ms. Holtzclaw's main concern is that ████ continues to struggle in reading and mathematics. According to her, ████ previous I.E.P. mandated 25 hours of specialized instruction; however, ████ only received 12.5 hours of specialized instruction per week.

**Behavior Observation**
The examiner met ████ and his mother at Southeast Elementary Academy to conduct this assessment. When ████ arrived to the testing site, he appeared to be upset about having to come to the school for the evaluation. His mother promised that he would be able to go to a game afterwards if he did well on the test. ████ agreed that he would stay to complete the test. After the examiner assured him that he would not have to remain at the school for long, ████' attitude and behavior improved. Reportedly, ████ likes school because he likes to learn; however, he does not like to read. He disclosed that his favorite subject is mathematics. He has two best friends named Rashad and Randy and he wants to play football for the Woodland Tigers. Eventually, ████ became very cooperative during the evaluation and he attempted to answer all of the items on each subtest regardless of their difficulty. ████ put forth his best efforts and it is the examiners belief that the results presented in this report are considered to be valid estimates of his current levels of cognitive functioning.

**Interpretation of WISC-IV Results**

The WISC-IV is a standardized test of intellectual ability that assesses cognitive ability in four domains. Each domain is comprised of selected subtests, the sum total of which is reported as an Index Score. Each Index score contributes to the basis for the Full-Scale Intelligence Quotient (IQ). The Verbal Comprehension Index (VCI) measures an individual's verbal reasoning abilities. The Perceptual Reasoning Index (PRI) is a measure of an individual's non-verbal reasoning abilities. The subtests that comprise the Working Memory Index (WMI) assess an individual's ability to hold auditory information in mind while performing some operation with that information and then accurately reproducing that information. The Processing Speed Index (PSI) assesses an individual's ability to rapidly process simple visual information without making errors. ████ results are as follows (and are also indicated as an attachment at the back of this report):

████ general cognitive ability is within the Low Average range of intellectual functioning, as measured by the FSIQ. His overall thinking and reasoning abilities exceed those of approximately 9% of children his age (FSIQ = 80; 90% confidence interval = 76-85). He performed slightly better on nonverbal than on verbal reasoning tasks, but there is no significant meaningful difference between ████ ability to reason with and without the use of words.

 verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Borderline range (VCI = 75; 90% confidence interval = 71-82). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. ▮▮▮ performance on the verbal subtests contributing to the VCI is somewhat variable although it is not especially unusual. Examination of ▮▮▮ performance on individual subtests provides additional information regarding his specific verbal abilities.

 nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Low Average range (PRI = 84; 90% confidence interval = 79-92). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that primarily assess nonverbal fluid reasoning and perceptual organization abilities. ▮▮▮ performance on the perceptual reasoning subtests contributing to the PRI is somewhat variable, although the magnitude of this difference in performance is not unusual among children his age. Examination of ▮▮▮ performance on individual subtests provides additional information regarding his specific nonverbal abilities.

▮▮▮ ability to sustain attention, concentrate, and exert mental control is in the Average range (Working Memory Index = 99; 90% confidence interval 93-106). ▮▮▮ abilities to sustain attention, concentrate, and exert mental control are better developed than his nonverbal and verbal reasoning abilities.

▮▮▮ ability in processing simple or routine visual material without making errors is in the Low Average range (Processing Speed Index = 83; 90% confidence interval 78-93). ▮▮▮ performance on the subtests that comprise the PSI is quite variable; therefore, the PSI score should be interpreted with caution. He performed much better on Symbol Search (Scaled Score = 9), which is more demanding of attention to detail and mental control, than on Coding (Scaled Score = 5), which is more demanding of fine-motor skills, short-term memory, and learning.

**Personal Strengths and Weakness**
▮▮▮ achieved his best performance among the nonverbal reasoning tasks on the Block Design subtest and lowest score on the Matrix Reasoning subtest. His performance across these areas differs significantly, suggesting that these are the areas of most pronounced strength and weakness, respectively, in ▮▮▮ profile of nonverbal reasoning abilities. His weak performance on the Matrix Reasoning subtest was below that of most children his age. The Block Design subtest required ▮▮▮ to use two-color cubes to construct replicas of two-dimensional, geometric patterns. This subtest assesses nonverbal fluid reasoning and the ability to mentally organize visual information. More specifically, this subtest assesses his ability to analyze part-whole relationships when information is presented spatially. Performance on this task also may be influenced by visual-spatial perception and visual perception-fine motor coordination, as well as planning ability; (Block Design scaled score = 9). The Matrix Reasoning subtest required ▮▮▮ to look at an incomplete matrix and select the missing portion from five response options. This subtest assesses fluid visual information processing and abstract reasoning skills; (Matrix Reasoning scaled score = 5).

4

**Interpretation of BASC**

Ms. Holtzclaw completed the Behavior Assessment System for Children, Second Edition (BASC-2) Parent Rating Scales-Child (PRS-C). The BASC-2 system provides tools to assess the emotions and behaviors of children and adolescents, and it offers an extensive view of both maladaptive and adaptive behavior. Standard scores in the Clinically Significant range indicate a high level of maladjustment. In contrast, scores falling in the At-Risk range may identify either a significant problem that is not severe enough to require formal treatment or a developing problem that warrants careful monitoring.

Ms. Holtzclaw's standard score on the Externalizing Problems composite ($T = 78$) falls in the Clinically Significant range, suggesting ▮▮▮▮ overall behavior in school is disruptive. Specifically, her scores on the Conduct Problems ($T = 82$) and Aggression ($T = 78$) scales fall in the Clinically Significant range, indicating that ▮▮▮▮ exhibits socially deviant behaviors and has a tendency to act in a verbally and physically hostile manner that is threatening to others. Ms. Holtzclaw' score on the Aggression scale ($T = 66$) falls in the At-Risk range, suggesting ▮▮▮▮ exhibits impulsive behaviors in school. Although the Aggression and Conduct Problems scales are related, the former focuses on behaviors that are directed against others while the latter focuses on behaviors that are antisocial and rule breaking.

Likewise, Ms. Holtzclaw's standard score on the Internalizing Problems composite ($T = 62$) ▮▮▮▮ Specifically, her scores on the Anxiety ($T = 51$) and Depression ($T = 64$) scales fall in the At Risk range, suggesting ▮▮▮▮ does not have the tendency to appear fearful, nervous, or worried about real or imagined problems and exhibits no feelings of sadness or distress, respectively. In the Behavioral Symptoms Indexes the Atypicality scale assesses behaviors commonly associated with psychosis, such as experiencing visual or auditory hallucinations. Ms. Holtzclaw's standard score ($T = 56$) ▮▮▮▮ The Withdrawal scale measures a child's tendency to evade other people in order to avoid social contact. In mild form, withdrawal may represent a symptom of depression. It is also associated with being neglected or rejected by one's peers. Ms. Holtzvclaw's standard score on the Withdrawal scale ($T = 51$) falls in the at risk range, suggesting ▮▮▮▮ may or may not avoid other children.

Lastly, Ms. Holtzclaw's standard score on the Adaptive Skills composite ($T = 40$) falls in the ▮▮▮▮ Specifically, her score on the Adaptability scale ($T = 37$) and Social Skills scale ($T = 40$) also falls in the Average range, suggesting ▮▮▮▮ has does not experience difficulties in adjusting to changes in routine and new teachers, shifting from one task to another, and sharing toys and possessions with other children and does not have issues with engaging in appropriate conversations with his peers.

**Interpretation of Conner's**

The Conners' Rating Scale-Revised (CRS-R) is primarily used in the assessment of ADHD. In addition, they provide subscales for the assessment of problems with oppositional behavior, cognition, perfectionism, social and emotional functioning,

113

5

anxiety, and psychosomatic complaints. Ms. Holtzclaw completed the Conners' Parent Rating Scale-Revised: Long Version (CPRS-R:L).

Ms. Holtzclaw's responses on the CPRS-R:L yield an elevated profile. Most of her subscale and index scores exceed the cut-off point for clinical significance (i.e. *T*-score greater than 65), which is indicative of global problematic functioning. Her standard scores on Conners' Global Index: Restless-Impulsive ($T=70$) and Conners' ADHD Index ($T=70$) fall in the ████████████████████████████ with hyperactivity and ██████████████████ Likewise, her standard scores on the Hyperactivity ($T=70$) yield a score in the Atypical range and the Anxious-Shy ($T=60$) subscales fall in the insignificant range. Children who score in this range on the Hyperactivity subscale tend to have difficulty sitting still, feel more restless and impulsive than most children their age, and have the urge to always be "on the go." Ms. Holtzclaw's standard score on the DSM-IV Total subscale ($T=65$) also falls in the Atypical range, indicating an average correspondence to DSM-IV criteria for ADHD, Combined Type.

Ms. Holtzclaw's standard scores on the Oppositional ($T=90$), Cognitive Problems/Inattention ($T=83$), and Hyperactivity ($T=70$) subscales fall in the Moderately Atypical to Atypical ranges and indicate significant problems in these areas. In addition to being likely to have problems with authority figures and obeying rules, children with high scores on the Oppositional subscale are more easily angered and annoyed than most children their age. High scorers on the Cognitive/Inattention subscale may be inattentive and have more academic difficulties than most children their age. Furthermore, they may have problems organizing their work and completing tasks or schoolwork, and they may appear to have difficulty concentrating on tasks that require sustained mental effort.   Lastly, Ms. Holtzclaw's standard score on Conners' Global Index: Emotional Lability ($T=77$) falls in the Moderately Atypical range, suggesting the possibility that ████ has significant problems associated with pronounced emotional reactions and frequent and sudden mood swings.

**Summary**

████ is a 10-year-old child who completed the WISC-IV. His general cognitive ability, as estimated by the WISC-IV, is in the Low Average range. ████ general verbal comprehension abilities were in the Borderline range (VCI = 75), and general perceptual reasoning abilities were in the Low Average range (PRI = 84). ████ strength lies within his nonverbal reasoning abilities. ████ results on the BASC yield scores in the clinical significant range for Externalizing Problems (T=78) and in the significant range for Internalizing Problems (T=62). According to Ms. Holtzclaw's responses on the Conners', ████ scores yield an elevated profile, especially on the Oppositional (T=90) Cognitive Problems/Inattention (T=83), and Hyperactivity (T=70).

**Recommendation**

The following recommendations are offered for consideration by the multidisciplinary team (MDT) based on the information obtained in this evaluation. Final decisions about eligibility determination, special education services, and interventions should be made at the MDT meeting in conjunction with results from any other evaluations conducted along with input from the parent and other members of the MDT.

1. After reviewing these results, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓e. However, eligibility for special education services cannot be determined until the results of the educational evaluation are reviewed.

2. Teachers and family can assist ▓▓▓▓▓ verbal communication by reinforcing his ability to correctly label concrete objects, feelings, and abstract concepts.

3. Teachers and therapists are encouraged to use concrete language and materials geared to ▓▓▓▓▓ level of language processing.

4. Visual cues may be presented with verbal material to assist ▓▓▓▓▓ acquisition of verbal concepts.

5. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ be ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ oppositional and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The MDT members should decide on a time that ▓▓▓▓▓ Behavior Intervention Plan can be reviewed to assess his progress.

_____

Sharon Piner, School Psychologist
D.C. Licensed

_____

Date

906 Pennsylvania Avenue, Southeast • Washington, DC 20003
TELE:(202) 543-8248 • FAX:(202) 543-8246

115

7

# APPENDIX

## Composite Scores Summary

| Scale | Sum of Scaled Scores | Composite Score | Confidence Interval | Qualitative Description |
|---|---|---|---|---|
| Verbal Comprehension (VCI) | 17 | 75 | 71-82 | Borderline |
| Perceptual Reasoning (PRI) | 22 | 84 | 79-92 | Low Average |
| Working Memory (WMI) | 20 | 99 | 93-106 | Average |
| Processing Speed (PSI) | 14 | 83 | 78-93 | Low Average |
| Full Scale (FSIQ) | 73 | 80 | 76-85 | Low Average |

## Verbal Comprehension Subtest Scores Summary

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Similarities | 14 | 7 | 8:2 | 16 |
| Vocabulary | 22 | 6 | 7:6 | 9 |
| Comprehension | 12 | 4 | 6:6 | 2 |

## Perceptual Reasoning Subtest Scores Summary

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Block Design | 30 | 9 | 9:10 | 37 |
| Picture Concepts | 15 | 8 | 8:6 | 25 |
| Matrix Reasoning | 12 | 5 | 6:10 | 5 |

## Working Memory Subtest Scores Summary

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Digit Span | 15 | 10 | 10:2 | 50 |
| Letter-Number Sequencing | 17 | 10 | 11:6 | 50 |

## Processing Speed Subtest Scores Summary

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Coding | 27 | 5 | <8:2 | 5 |
| Symbol Search | 20 | 9 | 9:6 | 37 |

# Exhibit 13



EXHIBIT

*AH-13*

ALL-STATE LEGAL®

117

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

--------------------------------

! Admitted in Bolivia Only

March 1, 2006

**Via Facsimile**
James Shepherd, Principal
Friendship Edison Public Charter School
1345 Potomac Avenue, SE
Washington, DC 20003

Re:  **Request for Evaluations**
<span style="background:black">█████████</span>, DOB: <span style="background:black">████</span>

Dear Ms. Shepherd:

On behalf of my client, Ms. Dwanda Holtzclaw, parent of the above referenced student, ███████, I hereby request that this child be reevaluated for special education and its related services.  This request is being made pursuant to 34 C.F.R. §§ 300.530-300.535; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35862-35864 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003).  A comprehensive reevaluation of the student includes, but is not limited to: 1) **psycho-educational evaluation**, 2) **speech and language evaluation**, 3) **social history**, 4) **occupational therapy assessment**, 5) **response to intervention assessment**, and 6) a **formal classroom observation**. The parent is making this request as a result of ██████' ongoing academic and behavioral problems which result in consistently being suspended from school.

In deference to the District of Columbia Public Schools' (DCPS) efforts to conduct the reevaluations, my client will wait for DCPS to complete the reevaluations.  However, if the reevaluations are not completed within a reasonable time, my client will take the appropriate steps to secure independent evaluations at public expense.

This request is not intended to restart or relieve DCPS of any prior timelines that may be in effect, nor is this request intended to waive any of the client's rights that would have entitled him to have the reevaluation process completed prior to this request.

* Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

118

Finally, I also request, that proper notice of all proposed tests, observations, and reevaluations be provided to me, in writing, via facsimile, at 202-742-2097 or 202-742-2098, pursuant to 34 C.F.R. § 300.503; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35869 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3024 (2003).

I may be reached at the above referenced number to schedule the reevaluation. Thank you for your prompt attention to this matter.

Sincerely,

Miguel Hull, Esq.

Attachment: Consent for Evaluation – Initial or Reevaluation

cc:     Erika Pierson, Interim General Counsel, Office of General Counsel
        Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
        Ms. Dwanda Holtzclaw, Parent

119

```
*********************
***   TX REPORT   ***
*********************
```

*Called to confirm*
*receipt of fax*
*Spoke w/ Ms. Flowers*

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1101 |
| CONNECTION TEL | |
| CONNECTION ID | 95474554 |
| ST. TIME | 03/01 14:50 |
| USAGE T | 03'52 |
| PGS. SENT | 8 |
| RESULT | OK |

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

_____

! Admitted in Bolivia Only

# *FAX COVER SHEET*

**DATE:**    March 1, 2006

**TO:**    James Shepherd, Principal
Friendship Edison Public Charter School

**FROM:**    Heidi Romero, Legal Assistant to Miguel Hull, Esq.

**PHONE:**    (202) 547-5800

**FAX NO:**    (202) 547-4554

**SUBJECT:**    Records and Reevaluations Request for ███████████, DOB: ██████

NUMBER OF PAGES INCLUDING COVER SHEET: **8**

COMMENTS: **Attached please find a copy of the Authorization Forms**

120

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 2570 |
| RECIPIENT ADDRESS | 94425518 |
| DESTINATION ID | |
| ST. TIME | 03/01 14:51 |
| TIME USE | 01'12 |
| PAGES SENT | 8 |
| RESULT | OK |

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

-----------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:     March 1, 2006

TO:     Mary Lee Phelps, Interim Director, Chief of Special Education Reform
DCPS, Office of Special Education

FROM:     Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:     202-442-5518/5517

SUBJECT:     Records and Reevaluations Request for ▮▮▮▮▮▮ DOB: ▮▮▮▮

NUMBER OF PAGES INCLUDING COVER SHEET: **8**

COMMENTS:    **Attached please find a copy of the Authorization Forms**

121

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            1105
CONNECTION TEL                    94425098
CONNECTION ID
ST. TIME           03/01 15:03
USAGE T            01'22
PGS. SENT          8
RESULT             OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
|---|---|---|
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Ann Kreske* |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | |
| | e-mail: Admin@Jeblaw.biz | |

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:       March 1, 2006

TO:         Ericka Pierson, Interim
            Office of General Counsel

FROM:       Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:     202-442-5098/5097

SUBJECT:    Records and Reevaluations Request for ▮▮▮▮▮▮▮ DOB:▮▮▮▮▮

NUMBER OF PAGES INCLUDING COVER SHEET: **8**

COMMENTS:  **Attached please find a copy of the Authorization Forms**

122

# Exhibit 14



EXHIBIT

AH-14

123

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull · | Washington, DC 20005 | Ann Kreske* |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | |
| ------------------------------- | e-mail: Admin@Jeblaw.biz | ------------------------------- |
| | | ! Admitted in Bolivia Only |

March 1, 2006

**Via Facsimile**
James Shepherd, Principal
Friendship Edison Public Charter School
1345 Potomac Avenue, SE
Washington, DC 20003

**Re:  Request for Records for student** ███████████, **DOB:**███████

Dear Mr. Shepherd:

. On behalf of my client, Ms. Dwanda Holtzclaw, parent of the above referenced student, I hereby request a copy of the above-referenced student's educational records.  This request is being made pursuant to 34 C.F.R. § 300.562(a); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35879 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003).

If you are unable to provide the requested copy of the student's entire academic file, please provide me in writing, via facsimile, at 202-742-2097 or 202-742-2098, at least three (3) different dates on which the parent's representative may have access to review the student's educational file and make the necessary copies.  This request includes any and all records or writings in the possession of Friendship Edison Public Charter School and the District of Columbia Public Schools that includes and are not limited to the following:

| | | | |
|---|---|---|---|
| 1. | All Attendance Records | 8. | Portfolios |
| 2. | Progress Reports and report Cards | 9. | Related Service Provider Logs |
| 3. | Standardized Test Scores | 10. | Charts and Observations |
| 4. | Class Schedules | 11. | Reports, Letters, Memos, Notes, E-Mails |
| 5. | Individualized Education Programs | 12. | Forms and Data Compilations |
| 6. | Evaluations and Assessments | 13. | Letters of Understanding |
| 7. | Multidisciplinary Meeting Notes | 14. | Disciplinary Records |

* Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

124


Enclosed is a copy of the General Authorization form signed by the parent.  Please send the requested information to us via facsimile at (202) 742-2098.  If you have any questions regarding this request, please call me at (202) 742-2000.  Thank you in advance for your immediate attention to this request.

Sincerely,

Miguel Hull, Esq.

cc:     Erika Pierson, Interim General Counsel, Office of General Counsel
        Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
        Ms. Dwanda Holtzclaw, Parent

125

*called to confirm*
*receipt of fax*
*Spoke w/ Ms. Flowers*
*(HR)*

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO             1101
CONNECTION TEL                    95474554
CONNECTION ID
ST. TIME           03/01 14:50
USAGE T            03'52
PGS. SENT              8
RESULT             OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### A Professional Limited Liability Company

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Ann Kreske* |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | |
| | e-mail: Admin@Jeblaw.biz | |

! Admitted in Bolivia Only

# *FAX COVER SHEET*

**DATE:**          March 1, 2006

**TO:**            James Shepherd, Principal
                   Friendship Edison Public Charter School

**FROM:**          Heidi Romero, Legal Assistant to Miguel Hull, Esq.

**PHONE:**         (202) 547-5800

**FAX NO:**        (202) 547-4554

**SUBJECT:**       Records and Reevaluations Request for ██████████ DOB: ██████

**NUMBER OF PAGES INCLUDING COVER SHEET: 8**

**COMMENTS: Attached please find a copy of the Authorization Forms**

126

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              2570
RECIPIENT ADDRESS     94425518
DESTINATION ID
ST  TIME              03/01 14:51
TIME USE              01'12
PAGES SENT            8
RESULT               OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

-------------------------------
! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:      March 1, 2006

TO:        Mary Lee Phelps, Interim Director, Chief of Special Education Reform
           DCPS, Office of Special Education

FROM:      Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:    202-442-5518/5517

SUBJECT:   Records and Reevaluations Request for ▇▇▇▇▇▇ DOB: ▇▇▇▇

NUMBER OF PAGES INCLUDING COVER SHEET: **8**

COMMENTS:  **Attached please find a copy of the Authorization Forms**

127

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | | |
|---|---|---|
| TX/RX NO | 1105 | |
| CONNECTION TEL | | 94425098 |
| CONNECTION ID | | |
| ST. TIME | 03/01 15:03 | |
| USAGE T | 01'22 | |
| PGS. SENT | 8 | |
| RESULT | OK | |

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:        March 1, 2006

TO:          Ericka Pierson, Interim
             Office of General Counsel

FROM:        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:      202-442-5098/5097

SUBJECT:     Records and Reevaluations Request for ████████████ DOB: ██████

NUMBER OF PAGES INCLUDING COVER SHEET: **8**

COMMENTS:  **Attached please find a copy of the Authorization Forms**

128

# Exhibit 15



IEP Type: 2005-2006

# GLASSMANOR ELEMENTARY SCHOOL
## 1011 Marcy Avenue, Oxon Hill, MD 20745
### IEP Cover Page

| | | | |
|---|---|---|---|
| IEP Meeting Date | 04/28/2005 | Current Eval. Date | 11/12/2003 |
| IEP Approved Date: | 04/28/2005 | Reevaluation Date: | 11/12/2006 |
| Review Date: | 04/28/2006 | | |

| Student Information | | | |
|---|---|---|---|
| **Name:** | **Student ID:** 000478295 | **Alt.ID:** | |

| Sex: Male | Birthdate: | Grade: 03 | Ethnicity: African American | Native Language: |
|---|---|---|---|---|

| School of Attendance(Service School): GLASSMANOR ELEMENTARY | District of Attendance(Service District): PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS |
|---|---|
| Residence School: GLASSMANOR ELEMENTARY | Residence District: PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS |

**Contact Information**

**Name:**
Dwanda Holtzclaw

**Address:**
916 Marcy Ave # 204

| City: Oxon Hill | State: MD | Zip: 20745 |
|---|---|---|

| Home Phone: 301-567-2613 | Day Phone: 202-574-6616 | E-Mail Address: |
|---|---|---|

| Native Language: English | Translation/Interpreter Needed: ○ Yes ⊙ No |
|---|---|

**IEP Information**

Primary Disability: Specific Learning Disabilities
Other Disability:

| Case Manager:  Denise Mahdi | Title: Special Education Teacher |
|---|---|
| Medical Assistance: ○ Yes ⊙ No | Medicaid#: |

| Team Members | |
|---|---|
| **Name** | **Title** |
| Marvin Chelst | Psychologist |
| Diane Louise Jones | Principal |
| Phyllis Knight | Guidance Counselor |
| Denise Mahdi | Special Education Teacher |
| Lynda Wade | Speech/Language Pathologist |
| Ms. Mitchell | Classroom Teacher |
| Dwanda Holtzclaw | Parent |

130


Page: 2 of 13

## GLASSMANOR ELEMENTARY SCHOOL
### 1011 Marcy Avenue, Oxon Hill, MD 20745
### IEP Cover Page

| 2005-2006 | | | IEP Meeting Date: 04/28/2005 |
|---|---|---|---|
| **Name:** ███████ | ID: 000478295 | Grade: 03 | |

**Special Considerations**

The IEP Team has considered these special factors and concluded that the factors indicated need to be addressed in the IEP.

☐ Limited English Proficiency

☐ Adapted Physical Education

☐ Behavior Strategies(including positive behavior interventions, strategies, and supports to address that behavior)

☐ Assistive Technology

☐ Communication Needs

In the case of a child who is deaf or hard of hearing:

☐ Language and communication needs

☐ Opportunities for direct communication with peers and professional personnel in the student's language and mode of communication

☐ Academic level and full range of needs (including opportunities for direct instruction in the student's language and mode of communication)

In the case of a child who is blind or visually impaired:

☐ Instruction in Braille and the use of Braille (if the IEP team determines that instruction in Braille is not language and mode of communication)

Special Considerations Comments:

**Behavior Intervention Plan**

Was a Functional Behavior Assessment Conducted?    ○ Yes  ⊙ No

Date Conducted:

Is a Behavior Intervention Plan needed?    ○ Yes  ⊙ No

Behavior Intervention Plan Date:

Behavior Intervention Plan:

131

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**Present Levels**

Page: 3 of 13

2005-2006

| Name: ██████████ | | IEP Meeting Date: 04/28/2005 |
| --- | --- | --- |
| | ID: 000478295 | DOB: ██████ |

**Intellectual/Cognitive Functioning**

Present Level of Performance:WISC-III was administered by Tara M. Benn, M.Ed. in the District of cColumbia Schools; scores ere as follows:
Verbal - SS 76
Performance - SS 87
Full Scale - SS 80
**Suggested Educational Need:**

**Academic Performance**

Present Level of Performance:The Woodcock Johnson III was administered by Deborah Harrison and the scores were as follows:
Rdg: SS 69
Math: SS 77
Wr. Lang: SS 80
Total : ss 68
Suggested Educational Need:Reading comprehension and word recognition.
Math calculation and solving word problems.
Written language, spelling, sentence structure.

**Communication**

Present Level of Performance:At McGogney Elementary School in the District of Columbia Public Schools Speech assessments were done and it was determined that ██████ did not qualify for services.
**Suggested Educational Need:**

132

Page: 4 of 13

## GLASSMANOR ELEMENTARY SCHOOL
### 1011 Marcy Avenue, Oxon Hill, MD 20745
### Goals and Objectives

2005-2006

IEP Meeting Date: 04/28/2005

| Name: ████████ | ID: 000478295 | Grade: 03 |
|---|---|---|

**Domain/Area**

| ☐ Cognitive | ☑ Academic | ☐ Communication | ☐ Emotional/Social | |
|---|---|---|---|---|
| ☐ Fine | ☐ Gross | ☐ Sensory/Health | ☐ Functional | ☐ Voc/Transition |

**Person/Agency Responsible**

Special Education Teacher

**Standard(s)**

General Education Standard with Accommodations - grade level expectancies with accommodations

| **Annual Goal** | ☐ ESY |
|---|---|

The student will demonstrate improved achievement in reading by mastering the following objective(s).

**Objectives**

**Objective:** 1 Given the Dolch Sight Word List, ████ will study and read aloud daily to increase his sight word recognition.
  Criteria: 80% of the time
  with minimal assistance
  Evaluation: teacher/parent observation
  teacher made tests
  Initiation Date: 04/28/2005

**Objective:** 2 Given short stories from a leveled reader, ████ will read silently then orally to answer factual and inferential questions to demonstrate comprehension.
  Criteria: 80% of the time
  with moderate assistance
  Evaluation: teacher/parent observation
  teacher made tests
  Initiation Date: 04/28/2005

**Objective:** 3 Given stories on ████' reading level, he will read silently then orally and state the main idea and retell the story to demonstrate comprehension.
  Criteria: 80% of the time
  with moderate assistance
  Evaluation: teacher/parent observation
  teacher made tests
  Initiation Date: 04/28/2005

133

Page: 5 of 13

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**Goals and Objectives**

2005-2006

IEP Meeting Date: 04/28/2005

| Name: ■■■■■■ | ID: 000478295 | Grade: 03 |
|---|---|---|

**Domain/Area**

| ☐ | Cognitive | ☑ | Academic | ☐ | Communication | ☐ | Emotional/Social | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | Fine | ☐ | Gross | ☐ | Sensory/Health | ☐ | Functional | ☐ | Voc/Transition |

**Person/Agency Responsible**

Special Education Teacher

**Standard(s)**

General Education Standard with Accommodations - grade level expectancies with accommodations

| Annual Goal | ☐ ESY |
|---|---|

The student will demonstrate improved achievement in mathematics by mastering the following objective(s).

**Objectives**

| **Objective:** | 1 | Given simple word problems of addition and subtraction, ■■■■ will solve using manipulatives. |
|---|---|---|
| | Criteria: | 80% of the time with moderate assistance |
| | Evaluation: | teacher/parent observation teacher made tests |
| | Initiation Date: | 04/28/2005 |

| **Objective:** | 2 | Given basic math facts to twenty, ■■■■ will add and subtract using manipulatives. |
|---|---|---|
| | Criteria: | 90% of the time with minimal assistance |
| | Evaluation: | teacher/parent observation teacher made tests |
| | Initiation Date: | 04/28/2005 |

| **Objective:** | 3 | Given an analog clock, ■■■■ will move the hands to display the given times to the half hour. |
|---|---|---|
| | Criteria: | 90% of the time with minimal assistance |
| | Evaluation: | teacher/parent observation teacher made tests |
| | Initiation Date: | 04/28/2005 |

134

Page: 6 of 13

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**Goals and Objectives**

2005-2006

IEP Meeting Date: 04/28/2005

| Name: | ID: 000478295 | Grade: 03 |
|---|---|---|

| Domain/Area | | | | |
|---|---|---|---|---|
| ☐ Cognitive | ☑ Academic | ☐ Communication | ☐ Emotional/Social | |
| ☐ Fine | ☐ Gross | ☐ Sensory/Health | ☐ Functional | ☐ Voc/Transition |

| Person/Agency Responsible |
|---|
| Special Education Teacher |

| Standard(s) |
|---|
| General Education Standard with Modifications - grade level expectancies with modifications |

| Annual Goal | ☐ ESY |
|---|---|

The student will demonstrate improved achievement in written language by mastering the following objective(s).

**Objectives**

| Objective: | 1 Given weekly spelling words, ▮▮▮▮ will write dictated words correctly. |
|---|---|
| Criteria: | 80% of the time with minimal assistance |
| Evaluation: | teacher/parent observation teacher made tests |
| Initiation Date: | 04/28/2005 |

| Objective: | 2 Given spelling words and vocabulary words, ▮▮▮▮ will write the words in sentences. |
|---|---|
| Criteria: | 80% of the time with minimal assistance |
| Evaluation: | teacher/parent observation teacher made tests |
| Initiation Date: | 04/28/2005 |

| Objective: | 3 ▮▮▮▮ will use proper punctuation grammar and capitalization in his daily written work. |
|---|---|
| Criteria: | 80% of the time with minimal assistance |
| Evaluation: | teacher/parent observation teacher made tests |
| Initiation Date: | 04/28/2005 |

135

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**State & District Assessment**

2005-2006                                                          **IEP Meeting Date: 04/28/2005**

| Name: | ID: 000478295 | Grade: 03 |
|---|---|---|

### STATE AND DISTRICT ASSESSMENTS

| Accommodations and Modification for Use in General and Special Education |
|---|

Extra response and processing time. (MSPAP time extensions must allow for participation in group activities.)
Verbatim repetition of scripted directions, as needed.
Verbatim reading of selected sections of test or vocabulary for content areas other than reading.

**Maryland School Assessment Program (Reading: Grades 3 through 8 and 10; Math: Grades 3 through 8)**

O  Student will participate in the Maryland School Assessment Program without accommodations.

◉  Student will participate in the Maryland School Assessment Program with accommodations.

O  Student will be excused from the Maryland School Assessment Program. Please justify rationale for the excuse:

O  The student will participate in the Alternate Maryland School Assessment.

O  NA (not applicable to the student for the time frame of this IEP)

**Maryland Functional Testing Program**

| Area | Score | Pass/Fail | Date |
|---|---|---|---|
| Math | | | |
| Reading | | | |
| Writing | | | |

O  Student will participate in the Maryland Functional Testing Program without accommodations.

O  Student will participate in the Maryland Functional Testing Program with accommodations.

O  Student will not participate in the Maryland Functional Testing Program because the child is not working toward a
   Maryland High School diploma the student transferred from out-of-state or non public schools into the Maryland
   public school system for the first time during the second semester of the student's senior year.

◉  NA (not applicable to the student for the time frame of this IEP)

**The IDEA Proficiency Test (IPT) is a test of English language proficiency administered to English language
learners upon their entry into the school system and annually during a testing window in the spring. The
test measures a student's English language ability in the areas of listening, speaking, reading, and writing.
Assessment results are used by the local school systems to make decisions as to each student's
participation in English as a Second Language (ESL) programs.**

O  Student will participate in the ITP without accommodations.

O  Student will participate in the ITP with accommodations.

O  NA (the student is not an English Language Learner)

**Maryland High School Assessment (HSA)**

The Maryland High School Assessments (HSA) are a series of end-of-course tests that extend the expectations of
the Maryland School Assessments into high school and currently consist of four core examinations: English 1,
algebra/data analysis, government, and biology. All students taking a core learning goals course in one of these
subject areas must take the relevant High School Assessment examination. Obtaining a passing score on the tests
is first scheduled to be tied to graduation for ninth graders entering high school in the fall of 2004.

136

Page: 8 of 13

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**State & District Assessment**

| 2005-2006 | | IEP Meeting Date: 04/28/2005 |
|---|---|---|
| Name: | ID: 000478295 | Grade: 03 |

## STATE AND DISTRICT ASSESSMENTS

○ The student will participate in the HSA without accommodations.

○ The student will participate in the HSA with accommodations.

◉ NA (not applicable to the student for the time frame of this IEP)

**District Assessment**

○ The student will participate in District Assessment without accommodations.

◉ The student will participate in District Assessment with accommodations.

○ The student will be excused from participation in the District Assessment. Provide rationale for the excuse:


○ The student is exempted from participation in the District Assessment. Provide rationale for the exemption. Address and identify alternative assessments:


○ NA (not applicable to the student for the time frame of this IEP)

137

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**Progress/Transportation/ESY**

2005-2006                                                      **IEP Meeting Date: 04/28/2005**

| Name: ▬▬▬▬▬ | ID: 000478295 | Grade: 03 |
|---|---|---|

**Progress Reported to Parents**

Parents will be informed of the progress in meeting the goals of the IEP on the same timelines as students without disabilities

**How often will the student's progress be reported:** Quarterly

**Method by which the progress will be reported:**

**Transportation**

○ None   ⊙ Regular   ○ Special   (If Special, fill out Transportation Form in Supplemental)

**Comments:**

**ESY:**

**Consider and document the basis of the team's decisions for each of the following questions**
**(Document the basis of the team's decision that supports each response below. This may include data, observations, staff/parent impressions, parent input, etc.):**

○ Yes   ⊙ No   Does the student's IEP include annual goals related to critical life skills?

**What is the student's degree of progress toward mastery of IEP goals related to critical life skills?**
_____

○ Yes   ⊙ No   Is there a likelihood of substantial regression of critical life skills caused by the normal school
                break and a failure to recover those lost skills in a reasonable time?

○ Yes   ⊙ No   Is the student's degree of progress toward mastery of IEP goals related to critical life skills?

○ Yes   ⊙ No   Are there interfering behaviors?

○ Yes   ⊙ No   Is there a presence of emerging skills or breakthrough opportunities?

○ Yes   ⊙ No   Will the nature and severity of the disability prevent the student from receiving benefit from
                the educational program if the student does not receive extended school year services?

○ Yes   ⊙ No   Are there special circumstances to be considered?
_____

**Based upon the consideration of the factors above, will the benefits the student receives from his or her educational program during the regular school year be significantly jeopardized if the student is not provided extended school year services?**

○ Yes, student is in need of extended school year services*

⊙ No, student is NOT in need of extended school year services

○ To be determined by

138

# GLASSMANOR ELEMENTARY SCHOOL
## 1011 Marcy Avenue, Oxon Hill, MD 20745
### Services/Interagency

Page: 10 of 13

2005-2006

Name: ████████████    ID: 000478295

IEP Meeting Date: 04/28/2005

Grade: 03

Frequency Key: 80=One Time Service
90=Recheck Periodically 99=Residential

| Special Education and Related Services | | |
|---|---|---|
| **Service:** Classroom Instruction | | |
| **Provider/Agency:** Special Education Classroom Teacher | **Subject:** Language Arts | **ESY:** No |
| | | Indirect Hours/Freq: |
| **Location:** Both General and Special Education Classroom | **Start Date:** 04/28/2005 | **Direct Hours/Freq:** 01:00 |
| **How Often:** 5 times/week | **End Date:** | **Duration:** 36 Week(s) |
| **Service:** Classroom Instruction | | |
| **Provider/Agency:** Special Education Classroom Teacher | **Subject:** Mathematics | **ESY:** No |
| | | Indirect Hours/Freq: |
| **Location:** Both General and Special Education Classroom | **Start Date:** 04/28/2005 | **Direct Hours/Freq:** 02:00 |
| **How Often:** 5 times/week | **End Date:** | **Duration:** 36 Week(s) |
| **Service:** Classroom Instruction | | |
| **Provider/Agency:** Special Education Classroom Teacher | **Subject:** Reading | **ESY:** No |
| | | Indirect Hours/Freq: |
| **Location:** Both General and Special Education Classroom | **Start Date:** 04/28/2005 | **Direct Hours/Freq:** 02:00 |
| **How Often:** 5 times/week | **End Date:** | **Duration:** 36 Week(s) |

| Supplementary Aids and Services |
|---|
| Program Modifications |
| |
| Supports for Personnel |
| |
| Statement of Service Delivery |
| |

139

Page: 11 of 13

## GLASSMANOR ELEMENTARY SCHOOL
### 1011 Marcy Avenue, Oxon Hill, MD 20745
## LRE

| 2005-2006 | | IEP Meeting Date: 04/28/2005 |
|---|---|---|
| Name: ████████ | ID: 000478295 | Grade: 03 |

**Continuum of Alternative Placements**

Provide a rationale for each placement rejected that is less restrictive than the placement selected.

| Considered/ Selected | Considered/ Rejected | |
|---|---|---|
| ⊙ | ○ | Outside General Education Class less than 21% (Outside General Education Classroom less than 21% of the school Day) |
| ○ | ⊙ | Outside General Education Class between 21% and 60% (Outside General Education Classroom at least 21% but no more than 60%) |
| ○ | ⊙ | Outside General Education Class more than 60% (Outside the general education class for more than 60% of the school day) |
| ○ | ⊙ | Homebound Placement (Student receives greater than 50% of instruction homebound) |
| ○ | ⊙ | Hospital Placement (Student receives greater than 50% of instruction in hospital) |
| ○ | ⊙ | Public Separate Day School (Includes students who spend greater than 50% of the school day in a separate public facility as a day student) |
| ○ | ⊙ | Private Separate Day School (Includes students who spend greater than 50% of the school day in a separate private facility as a day student) |
| ○ | ⊙ | Public Residential Facility (Placement as a residential student) |
| ○ | ⊙ | Private Residential Facility or Center (Placement as a residential student) |

**Placement Considerations**

○ Yes  ○ No  Will the student be educated in the school that student would attend if not disabled? (If no, explain why.)

○ Yes  ○ No  Is the educational placement as close as possible to the student's home? (If no, explain why.)

○ Yes  ○ No  Is the educational placement decision based on the student's IEP? (If no, explain why.)

○ Yes  ○ No  Will the placement decision have any potential harmful effect on the student? (If yes, explain why.)

Explanation of the extent, if any, to which the student will not participate with nondisabled peers in the general classroom and non-academic and extracurricular activities:

140

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**LRE Signature**

2005-2006

IEP Meeting Date: 04/28/2005

| Name: | ID: 000478295 | Grade: 03 |
|---|---|---|

_Dwanda C. Fitzgerald_     Mother     06/3/05
Signature of Parent/Guardian/Surrogate        Relationship     Date

MDT APPROVAL

\_\_\_\_\_ The IEP was approved by the MDT.

\_\_\_\_\_ The placement was approved by the MDT.

_D. Jones_     4-28-05
Signature of MDT Chairperson        Date

IEP Signature Page 2 of 2

141

**GLASSMANOR ELEMENTARY SCHOOL**
**1011 Marcy Avenue, Oxon Hill, MD 20745**
**LRE Signature**

| 2005-2006 | | IEP Meeting Date: 04/28/2005 |
|---|---|---|
| Name: ▓▓▓▓▓▓▓▓▓▓ | ID: 000478295 | Grade: 03 |

**PROPOSED PLACEMENT**

As a result of the development of this student's Individualized Education Program, the MDT has recommended the following educational placement, which is reasonably calculated to meet the student's special education needs in the least restrictive environment.

Placement:

School (enter the projected school):

**IEP APPROVAL**

My signature on this form indicates that I have reviewed the assessments and had an opportunity to participate in the development of the IEP. I understand that I may request mediation and/or a due process hearing concerning the identification, evaluation, or educational placement of this student, or the provision of a free, appropriate public education, by sending a written request to the Department of Special Education, Board of Education of Prince George's County, 14201 School Lane, Upper Marlboro, MD 20772.

Please check A or B below.

_____ A. My signature on this form indicates that I consent to this IEP and placement and that the IEP may be implemented as described.

_____ B. My signature on this form indicates that the IEP may be implemented as described pending a conference on _____ to further discuss _____.

Please check the following:

_____ I have received/reviewed the Procedural Safeguards: Parental Rights.

_____ I have received a copy of the Maryland Graduation Requirements.

_____ I have received a copy of the IEP.

I understand that granting initial consent for IEP implementation is voluntary and may be revoked at any time. I also understand if I revoke consent, Prince George's County Public Schools may initiate a due process hearing to obtain consent.

If the student is eligible for Medical Assistance, please complete:

_____ I agree to IEP coordination and that _____ may be appointed as the IEP Coordinator.

_____ I give permission to PGCPS to recover cost from Medicaid for service coordination, as well as health-related services, related to the implementation of my child's IEP goals. I understand that this service does not restrict or otherwise affect my child's eligibility for other Medical Assistance benefits. I also understand that my child may not receive a similar type of case management service under Medical Assistance if he/she qualifies for more than one type.

IEP Signature Page 1 of 2

142

2004-2005

# GLASSMANOR ELEMENTARY
## OXON HILL, MARYLAND 20745
### Individualized Education Plan (IEP)

| | |
|---|---|
| **IEP Meeting Date:** 03/31/2004 | |
| **IEP Approved Date:** 03/31/2004 | **Current Eval. Date:** 11/12/2003 |
| **Review Date:** 03/31/2005 | **Reevaluation Date:** 11/12/2006 |

## Student Information

**Name:** ▉▉▉▉▉▉▉▉▉▉

| | | |
|---|---|---|
| | **Student ID:** 000478295 | **Alt. ID:** |
| **Sex:** Male | **Birthdate:** ▉▉▉▉▉ | **Grade:** 01 +2nd |
| | **Ethnicity:** African American | **Native Language:** English |

**School of Attendance (Service School):** GLASSMANOR ELEMENTARY

**District of Attendance (Service District):** PRINCE GEORGES COUNTY PUBLIC SCHOOLS

**Residence School:**

**Residence District:**

## Contact Information

**Name:** Dwanda Holtzclaw

**Address:** 916 Marcy Ave#204

| **City:** Oxon Hill | **State:** MD | **Zip:** 20745 |
|---|---|---|

| **Home Phone:** 301-567-~~2613~~ +772 | **Day Phone:** 202-574-~~6616~~ 6815 | **E-Mail Address:** Dtholtzcklaw@DRcommunity.com |
|---|---|---|

**Native Language:** English

**Translation/Interpreter Needed:** ◯ Yes  ◉ No

## EP Information

**Primary Disability:** Specific Learning Disabilities

**Case Manager:** Denise Mahdi

**Title:** Special Educator

**SSIS #:** 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    **Medical Assistance:** ◯ Yes  ◉ No    **Medicaid #:**

## Team Members

| Name | Title |
|---|---|
| Deborah Blackwell | RSES - Regional Special Education Specialist |
| Dr. Marvin Chelst | Psychologist |
| Jim Davis | Guidance Counselor |
| Denise Ross | PPW |
| Dwanda Holtzclaw | Mother |
| Diane Jones | Principal |
| Denise Mahdi | Special Educator |

143

Page: _____ of _____

## GLASSMANOR ELEMENTARY
## OXON HILL, MARYLAND 20745
## Accommodations/State and District Assessments

Initial for 2003-2004

IEP Meeting Date: 11/12/2003

| Name: | | ID: 000478295 | Grade: 01 |

## Part 1

Is the Accommodation Permitted? Yes, No or NA (not applicable or not necessary because allowed under test administration procedures).

| IFTP | CTBS/5 | MSPAP | HSA | | I. Scheduling Accommodations |
|------|--------|-------|-----|---|------------------------------|
| Yes | Yes | Yes | Yes | ☑ | A. Supervised breaks during test session. |
| Yes | Yes | Yes | Yes | ☐ | B. Tests given regularly within a single day/session, may be administered over multiple days without exceeding total time allowances. Tests must be given within the constraints of test administration procedures. |
| Yes | *Yes | Yes | Yes | ☑ | C. Extra response and processing time. (MSPAP time extensions must allow for participation in group activities). |
| Yes | Yes | Yes | Yes | ☐ | D. Tests are administered at best time of day for student. |
| Yes | **Yes | Yes | Yes | ☐ | E. Other-proposed by Local Accountability Coordinator and Special Education or LEP staff and approved by MSDE Assessment Office and MSDE Special Education or LEP staff. |

Invalidates comparison to national norms.

* May invalidate comparison to national norms.

| IFTP | CTBS/5 | MSPAP | HSA | | II. Setting Accommodations |
|------|--------|-------|-----|---|----------------------------|
| Yes | Yes | Yes | Yes | ☑ | A. General education classroom, with special seating (front of room, carrel, etc.) |
| Yes | Yes | Yes | Yes | ☐ | B. General education classroom, with adjusted grouping. |
| Yes | Yes | Yes | Yes | ☐ | C. General education classroom, with additional school support (instructional assistance, guidance, etc.) Support person is not to help student read or respond to items. |
| Yes | Yes | Yes | Yes | ☐ | D. General education classroom, with special education or LEP staff as support. Support person is not to help student read or respond to items. |
| Yes | Yes | Yes | Yes | ☐ | E. Small group setting. |
| Yes | Yes | Yes | Yes | ☐ | F. Small group setting with special education or LEP teacher as examiner. |
| Yes | Yes | NA | Yes | ☐ | G. Individual administration within the school building. |
| Yes | Yes | NA | Yes | ☐ | H. Individual administration outside school (home, hospital, etc.) |
| Yes | *Yes | Yes | Yes | ☐ | I. Other-proposed by Local Accountability Coordinator and Special Education or LEP staff and approved by MSDE Assessment Office and MSDE Special Education or LEP staff. |

* May invalidate comparison to national norms.

144

## GLASSMANOR ELEMENTARY
## OXON HILL, MARYLAND  20745
### IEP Signature Page

**IEP Meeting Date:** 03/31/2004

2004-2005

**Name:** ████████████    **ID:** 000478295    **Grade:** 01 / 6 2

type.

X _Linda H_____ Mother     Date 11/3/04
Signature of Parent/Guardian/Surrogate    Relationship    Date

_____

**MDT APPROVAL**

_____

_____ The IEP was approved by the MDT.

_____ The placement was approved by the MDT.

_Diane Jone_____    April 13, 2004
Signature of MDT Chairperson    Date

145

# Multidisciplinary Team Meeting Summary Notice
## Part 2

Meeting Date: 11/12/2003          Notice Date: 11/12/2003          Initiation Date:

| Name: | ID: 000478295 | Grade: 01 |
|-------|---------------|-----------|

| Team Members | |
|--------------|------|
| **Name** | **Title** |
| Denise Ross | PPW |
| Deborah Blackwell | RSES - Regional Special Education Specialist |
| Dr. Marvin Chelst | Psychologist |
| Kim Davis | Guidance Counselor |
| Dwanda Holtzclaw | Mother |
| Diane Jones | Principal |
| Denise Mahdi | Special Educator |
| Lynda Wade | Speech/Language Pathologist |

Summary and Score Report - COMPUSCORE VERSION 1.1b

September 12, 2003

Page 2

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Norms based on age 7-2

| CLUSTER/Test | RAW | AE | EASY to DIFF | | RPI | PR | SS(68% BAND) |
|---|---|---|---|---|---|---|---|
| ORAL LANGUAGE | - | 8-2 | 6-5 | 11-6 | 94/90 | 71 | 108 (105-112) |
| TOTAL ACHIEVEMENT | - | 5-11 | 5-7 | 6-4 | 24/90 | 2 | 68 (64-71) |
| BROAD READING | - | 5-11 | 5-7 | 6-2 | 4/90 | 2 | 69 (64-73) |
| BROAD MATH | - | 5-9 | 5-4 | 6-4 | 39/90 | 6 | 77 (74-80) |
| BROAD WRITTEN LANG | - | 6-3 | 5-9 | 6-8 | 52/90 | 9 | 80 (73-87) |
| MATH CALC SKILLS | - | 6-6 | 5-11 | 7-2 | 76/90 | 23 | 89 (84-94) |
| WRITTEN EXPRESSION | - | 5-8 | 5-3 | 6-2 | 35/90 | 1 | 64 (51-78) |
| ACADEMIC SKILLS | - | 6-8 | 6-4 | 6-11 | 53/90 | 21 | 88 (85-90) |
| ACADEMIC FLUENCY | - | 5-10 | <5-6 | 6-6 | 51/90 | 4 | 73 (63-83) |
| ACADEMIC APPS | - | 5-3 | 5-0 | 5-7 | 3/90 | 0.5 | 61 (57-65) |

Form B of the following achievement tests was administered:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 19 | 6-5 | 6-3 | 6-8 | 12/90 | 14 | 84 (81-87) |
| Reading Fluency | 0 | <6-1 | <5-9 | <6-5 | - | - | - |
| Story Recall | - | 8-6 | 5-1 | >21 | 93/90 | 70 | 108 (99-116) |
| Understanding Directions | - | 8-0 | 6-11 | 9-10 | 95/90 | 71 | 108 (104-112) |
| Calculation | 5 | 6-7 | 6-3 | 7-1 | 69/90 | 27 | 91 (85-96) |
| Math Fluency | 7 | 5-11 | <5-0 | 7-10 | 82/90 | 9 | 80 (74-86) |
| Spelling | 18 | 7-0 | 6-8 | 7-3 | 82/90 | 41 | 97 (93-100) |
| Writing Fluency | 0 | <5-6 | <5-0 | <6-5 | - | - | - |
| Passage Comprehension | 4 | 5-1 | 4-9 | 5-5 | 0/90 | 0.4 | 60 (54-67) |
| Applied Problems | 11 | 4-7 | 4-2 | 5-0 | 3/90 | 1 | 67 (63-71) |
| Writing Samples | 2-A | 5-9 | 5-6 | 6-1 | 22/90 | 1 | 67 (56-77) |
| Story Recall--Delayed | - | - | - | - | - | - | - |

147

## Educational Report

**Name:** ███████                    **ID:** 000478095          **Report Date:** 10/02/2003

---

**Observation(s)**

███████ willingly accompanied the examiner to the test room. He presented himself as being a very pleasant person. He indicated that homework was his best subject and reading was the hardest.

---

**Summary/Educational Implications**

The Woodcock-Johnson III Tests of Achievement was administered on 09/12/03 by Ms. D. Harrison. The student obtained the following standard scores:
Broad Reading - SS 69
Broad Math - SS 77
Broad Written Language - SS 80

The following areas, or skills, were found to be relative strengths:
Story Recall- SS 108
Understanding Directions- SS 108
Calculation- SS 91
Spelling SS 97

The following areas, or skills, were found to be relative weaknesses:
Letter-Word Identification SS 84
Reading Fluency- -------
Writing Fluency-------
Math Fluency- SS 80
Passage Comprehension- SS 60
Applied Problems- SS 67
Writing Samples- SS 67

Educational implications of the testing:
███████ oral language skills are average when compared to the range of scores obtained by others at his age level. When compared to others at his age level, ███████ academic skills are within the low average range. His fluency with academic tasks is low. His ability to apply academic skills is very low.
███████ performance is low average in math calculation skills; low in mathematics and written language; and very low in reading and written expression.

---

**Recommendations**

Consider the use of spelling aids for written work. A word wall, for example, is a set of predetermined high-frequency words placed at the site where written work is produced. Word banks are lists of words that are commonly misspelled by the student. In addition, thematic word lists pertaining to the current academic activity may also need to be made available to the student.

Provide daily opportunities for writing. Included in the daily writing exercises should be sentence structure, using capitalization and punctuation correctly.

Practice basic addition and subtraction facts.

Practice sight word vocabulary.

Develop reading program with emphasis on phonic skills.

This test will be reviewed at the MDT meeting to determine if ███████ has a disability and is eligible for special education services.

# Exhibit 16



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last ▮▮▮▮    First ▮▮▮▮    MI

Student ID _____    Soc. Sec. No. _____    Age: ____    Grade  3

Gender ☒ M ☐ F    Date of Birth ▮▮▮▮    Ethnic Group  African American

Address  3347 23rd St., SE
_____
House No.      Street Name          Quadrant   Apartment #
Washington, DC 20020
_____
                    City          State    Zip Code

☐ Non-attending

Attending School  Friendship Southeast    Home School _____

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent  Dwanda Holtzclaw

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

_____
House No.   Street Name      Quad    Apt. No.   City       State   Zip Code
Telephone: Home _____    Work (240) 593 - 4024

### II. CURRENT INFORMATION

Date of IEP Meeting:  10/05/2005

Date of Last IEP Meeting:  04/28/2005

Date of Most Recent Eligibility Decision:  11/12/2003

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval. ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral _____ |
| Parent | English | English | English | Native Lang | Rdg./ Written _____  Instrument: _____ |
| Home | English | English | English | Native Lang | Date: _____ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min   D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION #   wks./mos |  |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 25 | | 25 | Hours | Week | Special Educator | 10/11/05 | 36 | Weeks |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| TOTAL | 25 | | 25 | Hours Per Week | | | | | |

### V. Disability(ies)

Specific Learning   Disabled _____

☒ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20% ☐ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Erica Alton
Dwanda Holtzclaw
Sonja Djossou

Print and sign your name below:

Erica Alton
Dwanda C Holtzclaw
Sonja Djossou

✓ *I AGREE* with the contents of this IEP.  I have had an opportunity to be involved in the development of this IEP.  I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature  Dwanda C. Holtzclaw    Date  10/05/2005

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

150

| Student Name | ⬛⬛⬛⬛⬛ | | Managing School | Friendship Southeast Elem. Academy |
|---|---|---|---|---|
| Student ID Number | | DOB ⬛⬛⬛ | Attending School | Friendship Southeast Elem Academy |

DCPS - IEP
Page 2 of 4

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments**

Score(s) When Available

**Academic Areas: (Evaluator)** Deborah Harrison

Math Strengths:

| | |
|---|---|
| | |

Math Cat.    SS   77

Math Rea.   _____ _____

See goal page: _____

Impact of disability on educational performance in general education curriculum:

⬛⬛⬛ disability impacts his ability to complete math calculations and solving word problems on grade level.

Date: _____

Rdg. Com _____ _____

Reading Strengths:

| | |
|---|---|
| | |

Rdg. Basic  SS   69

Written Ex.  SS   80

See goal page: _____

Impact of disability on educational performance in general education curriculum:

⬛⬛⬛ disability impacts his ability to complete reading Comprehension, word recognition, written language, spelling, sentence structure on his grade level

Date: _____

Score(s) When Available

Exp.Lang.   _____ _____

Rec-Lang.   _____ _____

**Communication (Speech & Language) (Evaluator)**

Strengths:

| | |
|---|---|
| | |

Artic         _____ _____

Voice         _____ _____

Fluency       _____ _____

Exp. Voc.     _____ _____

Rec. Voc.     _____ _____

Impact of disability on educational performance in general education curriculum:

| | |
|---|---|
| | |

See goal page: _____

Date: _____

Score(s) / Results When Available

**Motor/Health (Evaluator)**

Strengths:

| | |
|---|---|
| | |

Impact of disability on educational performance in general education curriculum:

| | |
|---|---|
| | |

See goal page: _____

Date: _____

Score(s) When Available

**Social Emotional Behavioral Areas: (Evaluator)**

Strengths:

| | |
|---|---|
| | |

Impact of disability on educational performance in general education curriculum:

| | |
|---|---|
| | |

See goal page: _____

Date: _____

Score(s) When Available

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

| | |
|---|---|
| | |

Impact of disability on educational performance in general education curriculum:

| | |
|---|---|
| | |

See goal page: _____

Date: _____

Score(s) When Available

**Prevocational Skills: (Evaluator)**

Strengths:

| | |
|---|---|
| | |

Impact of disability on educational performance in general education curriculum:

| | |
|---|---|
| | |

See goal page: _____

Date: _____

| Student Name | | |
| Student ID Number | | Attending School | FSEA |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: 1 |

Area addressed by goal: *Academics- Reading*

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate improved achievement in reading by mastering the following objectives by one years growth.

Provider(s): *Special Education Teacher*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given the Dolch Sight Word List, ▓▓▓ will study and read aloud daily to increase his sight word recognition. 80% of the time with minimal assistance | | Weekly |
| Given short stories from a level reader, ▓▓▓ will read silently then orally to answer factual and inferential questions to demonstrate comprehension 80% of the time with moderate assistance. | | Quarterly |
| Given stories on ▓▓▓ reading level, he will read silently then orally and state the main idea and retell the story to demonstrate comprehension 80% of the time with moderate assistance. | | Quarterly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

152

| Student Name | ▓▓▓▓▓▓▓▓ | | Managing School | FSEA | | DCPS - IEP |
| Student ID Number | | DOB ▓▓▓ | Attending School | FSEA | | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | **Additional Comments:** | **Goal Number:** 2 |

**Area addressed by goal:** *Academic - Mathematics*

**ANNUAL GOAL: (including mastery criteria.)**

The student will demonstrate improved achievement in Mathematics by mastering the following objectives by one year growth.

**Provider(s):** Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given simple word problems of addition and subtraction, ▓▓▓ will solve using manipulatives 80% of the time with moderate assistance | | Quarterly |
| Given basic math facts to twenty, ▓▓▓ will add and subtract using manipulatives 90% of the time with minimal assistance. | | weekly |
| Given an analog clock, ▓▓▓ will move the hands to display the given times to the half hour 90% of the time with minimal assistance. | | weekly |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

| Student Name | ████████ | Managing School | _FSEA_ | DC PS - IEP |
| Student ID Number | | DOB ████████ | Attending School | _FSEA_ | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Goal Number: 3

Area addressed by goal: _Academic - Written Expression_

**ANNUAL GOAL: (including mastery criteria.)**

The student will demonstrate improved achievement in written language by mastering the following objectives by one year growth.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given weekly spelling words, ████ will write dictated words correctly 80% of the time with minimal assistance. | | quarterly |
| Given spelling words and vocabulary words, ████ will write the words in sentences 80% of the time with minimal assistance. | | quarterly |
| ████ will use proper punctuation grammar and capitalization in his daily written work 80% of the time with minimal assistance. | | quarterly |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

| Student Name | | Managing School | FSEA | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | DOB | Attending School | FSEA | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>regular education</u>?   (Yes)   No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:     None needed

Timing/Scheduling: Extra, response, and processing time

Setting:

Presentation: Verbatim repetition of scripted directions, as needed.

Response: Verbatim reading of selected sections of test or vocabulary for content areas other than reading

Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I   Tested with non-disabled peers under standard conditions without accommodations.

(Level III) (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V   Portfolio:

Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | | Modifications: |
|---|---|---|---|
| (Reading) | Physical/Sensory | Transition | Language Arts/English |
| (Mathematics) | Social Emotional | Vocational | Social Sciences |
| (Written Expression) | Physical Development | Independent Living | Biological & Physical Sciences |
| Other: | | Speech/Language | Fine Arts |
| None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Stg | Accept | Time away from non-disabled peers in academic settings |
| Combo-General Ed./Resource Classroom | Reject | |
| Out of General Ed. Classroom | Reject | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Location for Services   Friendship Southeast Elementary Academy

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

School Friendship Southeast Elem Acad  Principal Mr. Bartee    Special Education Coordinator Mrs. Djossou

Date _____ Case Manager _____    Technical Support Supervisor _____

Student _____    DOB _____ Age _____ Grade 3  ID# _____    SSN# _____

Parent Dwanda Holtzclaw    Telephone (H) (202) 678-7679    (W) _____

Address: 3347 23rd Street SE Washington, DC 20020
Street #   Street    Quad   Apt. No.   City    State   Zip Code

REFERRAL SOURCE: (Check)    120 Day _____ Reeval. _____ HOD _____ SA _____ MA _____

Nonpublic _____ Residential _____ Citywide _____ Courts _____ Local School _____ Other: _____

Previous least restrictive environment (LRE Setting): _____

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
#### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | Yes | No |
|---|---|---|---|
| | Current IEP | Yes | |
| | Signatures of required participants (MDT notes) | Yes | |
| | Intervention Behavior Plan | Yes | |
| | Copies of current class work and homework assignments: | Yes | |
| | Medical Reports: | Yes | No |
| | Clinical Reports: | Yes | No |
| | Psychiatric Reports | Yes | No |
| | Medications: | Yes | No |
| | Attendance Record | Yes | |
| | Copies of most recent evaluation(s) | Yes | |

| Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| | |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | in general education classroom setting | general educators with consultation from special education staff | between 0% and 20% of service time |
| 2 | combination general education and resource classroom | combination of general educators, special educators and related service providers | between 21% and 60% of service time |
| 3 | *out of general education classroom | special educators and related service providers | between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities; each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

Check the level of need as indicated:
### DIRECTIONS:

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |

## 7. LEVEL OF NEED

| LOW | MODERATE | HIGH |
|---|---|---|
| | | |

07-02-2001    Attention: Technical Support Supervisor / PERM Compliance Team

156

# Exhibit 17



57

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
**(MDT)**
MEETING NOTES

| MDT |
|-----|

DT REFERRAL DATE: _____

STUDENT: ████████

SCHOOL: FSEA                    DATE: _____

PARTICIPANTS: (Print Name)          PARTICIPANTS: (Sign Name)          POSITION

Ms. Dawanda Holtzclaw

Mr. Gary Bartee

Ms. Sonja Djossou

Mr. Michael Hill

We are here to have a MDT meeting for ████ to reduce his service hours in specialize instruction and also to devolope a Behavior Intervention Plan to reflect the scores of the WJIII. ████ was given the WJIII on 10-05-2005 and the scores reflect that his academic skills are average. When compared to other at his grade level, his over all average is low average. His fluency with academic task and his ability to apply academic skills are both within the low range. when compared to others at his grade level ████ performance is average in written language and written expression and low avaerage in broad reading skills mathematics, and math calculation skills. we as a team feel it is nessary to reduce is hours in specialize instruction he will benifit reflecting to his scores on WJIII.

# Exhibit 18



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

**DCPS - IEP**

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last ▮▮▮▮    First ▮▮▮▮    MI

Student ID ▮▮▮▮    Soc. Sec. No. ▮▮▮▮    Age: ▮    Grade 3

Gender ☑ M ☐ F    Date of Birth ▮▮▮▮    Ethnic Group African-American

Address 3347 23rd Street, S.E.
House No.    Street Name    Quadrant    Apartment #

Washington, DC    20020
City    State    Zip Code

☐ Non-attending

Attending School Friendship Southeast    Home School

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Dwanda Holtzclaw

Address of (if different from student):    ☐ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code

Telephone: Home    Work

## II. CURRENT INFORMATION

Date of IEP Meeting: 12/05/05

Date of Last IEP Meeting: 4/28/05

Date of Most Recent Eligibility Decision: 11/12/03

Purpose of IEP Conference:
☐ Initial IEP    ☑ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| ☒ BEHAVIOR | ☐ TRANSPORTATION |
|---|---|
| ☐ ESY | ☐ TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral _____ Rdg./ Written _____ |
| Parent | English | English | English | Native Lang | Instrument: _____ |
| Home | English | English | English | Native Lang | Date: _____ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | DW/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos. |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 2.5 | 10 | 12.5 | Hr. | Week | Special Educator | 12.5.05 | 36 Weeks |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | 2.5 | 10 | 12.5 | Hours Per Week | | | | |

V. Disability(ies)    Specific Learning Disabled

SLD

☒ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%    ☐ 21-60%    ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)    Print and sign your name below.

| | |
|---|---|
| Dwanda Holtzclaw | Dwanda C. Holtzclaw |
| Sonja Djossou | Sonja Djossou |
| ▮▮▮▮ Hall | ▮▮▮▮ |
| Gary Bartee | GB Bartee |

✓ **I AGREE** with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature Dwanda C. Holtzclaw    Date 12/05/05

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix A    IEP Page 1 of 4

160

Student Name

Student ID Number _____ AB        Attending School _FSEA_ _____

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: 1 |

Area addressed by goal: _Academics- Reading_

ANNUAL GOAL: (including mastery criteria.)

_The student will demonstrate improved achievement in reading by mastering the following objectives by one years growth._

Provider(s): _Special Education Teacher_ _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given the Dolch Sight Word List, [redacted] will study and read aloud daily to increase his sight word recognition. 80% of the time with minimal assistance | | Weekly |
| Given short stories from a level reader, [redacted] will read silently then orally to answer factual and inferential questions to demonstrate comprehension 80% of the time with moderate assistance | | Quarterly |
| Given stories on [redacted] reading level, he will read silently then orally and state the main idea and retell the story to demonstrate comprehension 80% of the time with moderate assistance. | | Quarterly |
| | | |
| | | |
| | | |
| | | |

| EVALUATION PROCEDURE(S) | | | | | | |
|---|---|---|---|---|---|---|
| Portfolio | Log | Chart | (Test) | (Documented Observation) | Report | Other _____ |

| Student Name | ▓▓▓▓▓▓▓▓ | Managing School | FSEA | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | | DOB ▓▓▓▓ | Attending School FSEA | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:    Goal Number: **3**

Area addressed by goal: *Academic - Written Expression*

**ANNUAL GOAL: (including mastery criteria.)**

The student will demonstrate improved achievement in written language by mastering the following objectives by one year growth.

**Provider(s):** Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given weekly spelling words, ▓▓▓ will write dictated words correctly 80% of the time with minimal assistance. | | quarterly |
| Given spelling words and vocabulary words, ▓▓▓ will write the words in sentences 80% of the time with minimal assistance. | | quarterly |
| ▓▓▓ will use proper punctuation grammar and capitalization in his daily written work 80% of the time with minimal assistance. | | quarterly |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

| Student Name | | Managing School | FSEA | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | DOB | Attending School | FSEA | | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?   (Yes)   No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs | SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE |
|---|---|---|---|---|---|---|---|
| (Do not name products or companies.) | GenEd | SpEd | Total | Hr / Min | D/W/M. | (by discipline) | ( mm/dd/yyyy) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:     None needed

Timing/Scheduling: *Extra response and processing time.*

Setting:

Presentation: *Verbatim repetition of scripted directions, as needed.*

Response: *Verbatim reading of selected sections of test or vocabulary for content areas*

Equipment: *other than reading*

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I   Tested with non-disabled peers under standard conditions without accommodations.

(Level III) (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V  Portfolio:

Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:       Modifications:

| | | |
|---|---|---|
| (Reading) | Physical/Sensory | Transition | Language Arts/English |
| (Mathematics) | Social Emotional | Vocational | Social Sciences |
| (Written Expression) | Physical Development | Independent Living | Biological & Physical Sciences |
| Other: | | Speech/Language | Fine Arts |
| None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Sttg | Accept | Time away from non-disabled peers in academic settings |
| Combo-General Ed / Resource Classm | Reject | |
| Out of General Ed. Classroom | Reject | |

Modification(s)/Accommodation(s) to address the harmful effects:

Location for Services *Friendship Southeast Elementary Academy*

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

School Friendship Southeast Elem. Acad. Principal Mr. Bartee   Special Education Coordinator Mrs. Djossou

| | | | Technical Support Supervisor | |
|---|---|---|---|---|
| Date | Case Manager | | | |

Student [redacted]   DOB [redacted]   Age [redacted]   Grade 3   10#   SSN#

Parent Dwanda Holtzclaw   Telephone (H) (202) 678-7679   (W)

Address: 3347 23rd Street SE   Washington, DC   20020
Street #   Street   Quad   Apt. No.   City   State   Zip Code

REFERRAL SOURCE: (Check)   120 Day   Reeval.   HOD   SA   MA.

Nonpublic   Residential   Citywide   Courts   Local School   Other:

Previous least restrictive environment (LRE Setting):

---

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
#### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/MODIFICATIONS | 3. DATA REQUIREMENTS | Yes | No |
|---|---|---|---|
| | Current IEP | Yes | |
| | Signatures of required participants (MDT notes) | Yes | |
| | Intervention Behavior Plan | Yes | |
| | Copies of current class work and homework assignments: | Yes | |
| | Medical Reports: | Yes | No |
| | Clinical Reports: | Yes | No |
| | Psychiatric Reports | Yes | No |
| | Medications: | Yes | No |
| | Attendance Record | Yes | |
| | Copies of most recent evaluation(s) | Yes | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| | |

---

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | in general education classroom setting | general educators with consultation from special education staff | between 0% and 20% of service time |
| 2 | combination general education and resource classroom | combination of general educators, special educators and related service providers | between 21% and 60% of service time |
| 3 | *out of general education classroom | special educators and related service providers | between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

#### Check the level of need as indicated:
#### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

| 7. LEVEL OF NEED | | |
|---|---|---|
| LOW | MODERATE | HIGH |
| | | |

07-02-2001    Attention: Technical Support Supervisor / PERM Compliance Team

164



District of Columbia Public
Schools Washington, D.C.

**Division of Special Education**

## FUNCTIONAL BEHAVIORAL ASSESSMENT

Student ███████████       DOB ██████    DATE 12-5-05

School Friendship SE Campus       Grade 3    Special Ed Coordinator

**Describe and Verify the Seriousness of the Problem.**

Acting out in class,  bothering other students

Frequency [ ]    Intensity [ ]    Duration [ ]

**Identify specific characteristics of the behavior that is interfering with learning.**

Talking during learning time ,being disrespectful , getting up and walking around during learning time  unnessary movement

**Collect information on:** Time when the behavior does/does not occur; Location of the behavior; Conditions when the behavior does/does not occur; Individuals present (when most/least likely to occur); Events or conditions that typically occur before the behavior; Events or conditions that typically occur after the behavior; Common setting events; Other behaviors that are associated with the problem behavior.

**What environmental conditions may affect the behavior?**

seating arangement  , classroom stimulation

**What does the student view as positive reinforcement?**

If he can let his teachers know  that his anger is building up / feel he  is entering a  crisis .

**What interventions were previously attempted, and what were the results?**

Seating  changes  have  been  made , was allow to sit alone ,was able  to  raise his hand and  a signal  was  given to the  teacher to let her know he felt he  was getting ready to have a crisis.

**Collect information on possible functions of the problem behavior.**

[ ] Direct Assessment
   [ ] Scatterplots   [ ] ABC Charts   [ ] Rating Rubric   [ ] Amount versus quality of behavior

[X] Indirect Assessment
   [X] Interviews   [ ] Questionnaires   [ ] Surveys

**Analyze information using triangulation and /or problem pathway analysis.**

**Generate a hypothesis statement regarding probable function of problem behavior.**
**Test the hypothesis statement regarding the function of the problem behavior.**

█████ has been disrupting class and disrespecting teachers and  staff he will run when he feels hes  in trouble

District of Columbia Public Schools    07-02-2001    Division of Special Education    **FBA**

165

**District of Columbia Public Schools**
**Washington, D.C.**

| I.E.P.  Attachment A |
| Intervention Behavior Plan |

**INTERVENTION BEHAVIOR PLAN**

Date Developed: _____

Student Name ████████ _____ ID# _____ DOB ████ Grade 3

Address _____
      Street #        Street Name.        Quadrant  Apartment #    City.          State,   Zip Code

Telephone (H) _____ (W) _____ Counselor _____

Attending School _____ Teacher _____ Room _____ Section _____

**TARGETED BEHAVIOR(S):**                                       Additional Comments: ☐

Outburst , talking  during learning  time , taunting  other  students

**POSITIVE INTERVENTION STRATEGIES:** Student Objective -

Verbal or Written Praise  pass  for  free time  with a staff  member  ( 5 min) only  after  1 week  have  lunch  with a staff  for  positive  behavior.

Implementation description -

Behavior Management form  and  behavior point  sheet

**POSITIVE INTERVENTION STRATEGIES:** Teacher Strategies

to allow him 5 min to get  himself togather     Warning  system  provide the  student  with positive  feed back  that  will indicate that  he is respected . and teach  the student problem solving skills ; a)  Identify  the problem, b) identify goals  and objectives, C) Develope  strategies, D) Develop  a plan of action, and  E)  carry out the plan.

**MONITORING SYSTEM:** Responsible Teacher -  Mrs.Simpkins / Mr.Hill

Describe System -

Behavior  management  form and  monitering  the behavior  , counseling

Data collection timeline -

weekly

**FOLLOW-UP MEETING:** Date - _____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS   07-02-2001   DIVISION OF SPECIAL EDUCATION      IEP ATTACHMENT A     INTERVENTION BEHAVIOR PLAN

166

# Exhibit 19





**District of Columbia Public
Schools Division of Special
Education Washington, D.C.**

### NEW ADDENDUM MEETING PAGE
Attach to the IEP and check the box on page one.

Student Name ▓▓▓▓▓▓    DOB ▓▓▓▓    DATE 12/5/05

Student ID Number _____    School *Friendship Southeast Elem. Academy*

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Michael Hill | | Con Ngiyu |
| Dwanda C.Howardlaw | Dwanda C.Howardlaw | Mother |
| Sonya Djossou | Sonya Djossou | Special Ed. Coordinator |
| Gary Burke | | Principal |

**INSTRUCTIONS:** Use this addendum, in an IEP/MDT meeting, when changing levels of services on an IEP section or part.
Discipline service providers must participate in the meeting. Attach addendum to the IEP and check the appropriate box on page one.

**Purpose of this meeting is to:**
Development and Implementation of Behavior Intervention Plan

### SERVICES TO BE ADDED TO THE IEP

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION | | DATE ADDED mm/dd/yyyy |
|---|---|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | | | # | wks/mos | |
| Specialized Instruction | 2.5 | 5 | 7.5 | Hr. | Week | Special Educator | 12/5/05 | 36 | Weeks | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL | 2.5 | 5 | 7.5 | Hours Per Week | | | | | | |

CURRENT IEP : Percent of time in Special Services
☒ 0-20%   ☐ 21-60%   ☐ 61-100%

THIS ADDENDUM : Percent of time in Special Services
☒ 0-20%   ☐ 21-60%   ☐ 61-100%

**Describe:**

PARENT SIGNATURE FOR ADDITION(S) APPROVAL *Dwanda C.Howardlaw*    DATE: 12/05/05

# Exhibit 20





## *Friendship Southeast Elementary Academy*
645 Milwaukee Place, SE •Washington, DC 20032
(202) 562-1980 phone (202) 562-0726 fax

*Donald L. Hense, Chairman, Board of Trustees*
*Gary B. Bartee, Principal*
*Isaac Kornegay, Academy Director*

To Whom It May Concern:

On Wednesday December 7, 2005 at approximately 1:30 pm ████████████ was taken out of class for extreme defiance towards the teacher. While he was being escorted out of the classroom he tried to charge one of the other students. The teacher interceded and ██████ was instructed to leave the classroom. His special education case manager was in the hallway at the time. He attempted to convince █████ to come with him and avoid any further trouble. ██████ continued to try and charge his classmate. He was subsequently restrained by his special education teacher and taken to the counselor's office. As the counselor I allowed █████ to deescalate within my office to limit the damage that his behavior was causing. He ignored my repeated prompts to sit down and stop screaming. His special education teacher, Mr. Hill was positioned in front of the door as to not allow him to leave. His mother was called and told that if █████ was not able to calm down in a reasonable amount of time that she would have to take him home and he would receive an immediate suspension. █████ became agitated further and began to try and force his way out of the door. When he could not force Mr. Hill out of the way he began screaming at the top of his lungs and kicking Mr. Hill. He kicked Mr. Hill approximately 4 times before Mr. Hill and myself were forced to restrain him. We were in the process of taking him to the nurse's suite when we encountered some other students in the hallway. He began violently kicking at the student's as we passed them in the halls. I began to release my grip on his arm in order to grab his leg to not allow him to injure another student. When I did this he snatched his arm back, leaned up and punched me in my right eye, knocking my glasses to the floor. We were able to get █████ to the nurse's suite. The principal took over for me and along with Mr. Hill continued to restrain █████ until he deescalated once more. When █████ was calm he was released. When he was released he bit Mr. Hill on the left arm breaking the skin. His mother along with the police were called and both eventually came to the school. He finally calmed down and was allowed to retrieve his work by the principal. He was placed on in school suspension for 2 days by the principal.

Sincerely,

M. Themba Masimini, MFT
School Counselor

*Community Vi████████████lass Education*
www.██████████ols.org

170

# Exhibit 21



171

Date ; Dec.7, 2005
Time ;1:45pm
People Involved; Mr. Hill , Mr.Masimini, Mr. Beverly
Student ; ███████████

██████ was in  crisis and had to be restrained by Mr.Hill and he was taken to the main office in the Mr. Masimini  office and he than escalated and his mother was  called and she heard him screaming and yelling , Kicking Mr.Hill  and  was told  that she needed to talk to ██████ . He would not  get on the phone  Mr. Masimini talked to her and told her  that if he does not calm down  he will be suspended . We had  ██████  sit  on the bench and he than refused and  had to be restrained again by  Mr. Hill , Mr .Masimini and took to the  Nurses  suite  before getting to the nurses suite  he punched Mr.Masimini in the face  and Bit Mr Hill in the arm . When we get in to the Nurses office  Mr. Bartee helped get ██████ on the bed  and  he then calmed down  and  sat there . The police  were called and came to the  school as  well as Ms. Holtzclaw  the police interviewed the parent and  Mr. Bartee and the decision was made to keep  him in school and he will be with  Mr. Hill  all day on Thursday  and he  will be visited by  MPO Jackson at least  1 -2 times a week  for behavior  monitoring.

Mr. Hill

172

# Exhibit 22



**Friendship Southeast Elementary Academy PCS**
**NOTICE OF SUSPENSION**

Friendship
Public Charter School

|  |  |  |  |
|---|---|---|---|
| | | Washington, DC _____ Date _____ | |

TO _Owanda Holtzclaw_ _____ STUDENT ▮▮▮▮▮▮▮▮▮▮▮

_3347 23rd St SE_ _____ SCHOOL **Friendship Southeast** Grade _3_
**(Number and Street)  (City)  (Zip Code)**

Student I.D. No. _____ Ethnicity __AA__ Sex _M_

SASI No. _____ *(This action must be reflected in SASI)*

This is to inform you that the above named student has been suspended from school for a period of _2 days_ days and may not return until _Wed  Nov 30th_

This action is being taken as a result of _extreme defiance & insubordination. Student refuses to do any work at all. He also refused to go to his ISS placement. Student tried to leave the building unauthorized_

This suspension is based upon the facts which have thus far been presented to me. We have informally discussed the misconduct with your child who has been presented with the evidence. Also, your child has been given an opportunity to present his/her side of the story.

This suspension may be shortened, if an when we can be assured that the student is willing to conform to the regulations of the school. If you desire to attend a conference on this matter, please call this office so that one may be arranged as soon as possible. At the conference you and your child will be given the opportunity to present witnesses and to present any facts or reasons, orally or in writing, which in your opinion relate to this suspension. Please be advised that your failure to respond to this letter and to avail yourself of the opportunity to be heard in the manner provided will signify your desire not to have a conference and your agreement with the action taken.

During the duration of the suspension, your child should be in your custody and should not return to the school campus during that time. An unauthorized appearance could result in a change of trespassing.

Upon completion of the suspension, it is the responsibility of your child to obtain make-up work from all teachers.

Our telephone number is 202-562-1980.

_____
Signature of Suspended Student

_____
Signature of Principal or Designee

A copy of this notice shall be filed in the student's Cumulative Record Folder.

CC: File, Administrator and Parent

174



**Friendship Southeast Elementary Academy PCS**
NOTICE OF SUSPENSION

Washington, DC _____ Date 11-28-05

TO Owanda Holtzclaw _____ STUDENT ▓▓▓▓▓▓▓▓▓▓

3347 23rd St SE

**(Number and Street)   (City) (Zip Code)**   SCHOOL  Friendship Southeast _____ Grade 3

Student I.D. No. _____   Ethnicity AA _____ Sex M

SASI No. _____   *(This action must be reflected in SASI)*

This is to inform you that the above named student has been suspended from school for a period of 2 days days and may not return until Wed Nov 30th

This action is being taken as a result of extreme defiance & insubordination. Student refuses to do any work at all. He also refused to go to his ISS placement. Student tried to leave the building unauthorized

This suspension is based upon the facts which have thus far been presented to me. We have informally discussed the misconduct with your child who has been presented with the evidence. Also, your child has been given an opportunity to present his/her side of the story.

This suspension may be shortened, if an when we can be assured that the student is willing to conform to the regulations of the school. If you desire to attend a conference on this matter, please call this office so that one may be arranged as soon as possible. At the conference you and your child will be given the opportunity to present witnesses and to present any facts or reasons, orally or in writing, which in your opinion relate to this suspension. Please be advised that your failure to respond to this letter and to avail yourself of the opportunity to be heard in the manner provided will signify your desire not to have a conference and your agreement with the action taken.

During the duration of the suspension, your child should be in your custody and should not return to the school campus during that time. An unauthorized appearance could result in a change of trespassing.

Upon completion of the suspension, it is the responsibility of your child to obtain make-up work from all teachers.

Our telephone number is 202-562-1980.

▓▓▓▓▓▓▓▓▓▓▓▓
Signature of Suspended Student

_____
Signature of Principal or Designee

A copy of this notice shall be filed in the student's Cumulative Record Folder.

CC: File, Administrator and Parent

175

# Exhibit 23





**Friendship Southeast Elementary Academy PCS**
**NOTICE OF SUSPENSION**

Washington, DC _____ Date _____

TO Dwanda Holtzclaw         STUDENT ████████████

916 Macei Ave SE WDC         SCHOOL Friendship Southeast     Grade 3rd
**(Number and Street) (City) (Zip Code)**

Student I.D. No. _____        Ethnicity ___A.A___ Sex _M_

SASI No. _____ *(This action must be reflected in SASI)*

This is to inform you that the above named student has been suspended from school for a period of ___1___
days and may not return until _____

This action is being taken as a result of Verbal communication of a threat to a
substitute teacher _____

This suspension is based upon the facts which have thus far been presented to me. We have informally discussed the
misconduct with your child who has been presented with the evidence. Also, your child has been given an
opportunity to present his/her side of the story.

This suspension may be shortened, if an when we can be assured that the student is willing to conform to the
regulations of the school. If you desire to attend a conference on this matter, please call this office so that one may
be arranged as soon as possible. At the conference you and your child will be given the opportunity to present
witnesses and to present any facts or reasons, orally or in writing, which in your opinion relate to this suspension.
Please be advised that your failure to respond to this letter and to avail yourself of the opportunity to be heard in the
manner provided will signify your desire not to have a conference and your agreement with the action taken.

During the duration of the suspension, your child should be in your custody and should not return to the school
campus during that time. An unauthorized appearance could result in a change of trespassing.

Upon completion of the suspension, it is the responsibility of your child to obtain make-up work from all teachers.

Our telephone number is 202-562-1980.

_____
Signature of Suspended Student

_____
Signature of Principal or Designee

A copy of this notice shall be filed in the
student's Cumulative Record Folder.

CC: File, Administrator and Parent

177

# Exhibit 24



EXHIBIT

AH-24

178

# FRIENDSHIP SOUTHEAST ELEMENTARY ACADEMY

645 Milwaukee Place, SE * Washington, DC 20032 * Phone 202.562.1980 * Fax 202.562.0

(2) 562-0726

## DISCIPLINE REFERRAL FORM

Student Name ████████████████    Team _____   Grade 3

Referred by _Bruce Shingler_    Date 9-28-05   Time 1:15

### NATURE OF REFERRAL

| | | |
|---|---|---|
| ☐ Fighting | ☐ Possession of a weapons | ☐ Defiance/ Uncooperative |
| ☒ Threatening a student/teacher | ☐ Inappropriate language/ profanity | ☐ Vandalism |
| ☐ Excessive disturbances | ☐ Possession of tobacco/ alcohol | ☐ Gang activity/symbols |
| ☐ Excessive dress code violations | ☐ Possession of matches/lighter or incendiary device | ☐ Other _____ |
| ☐ Horseplay | ☐ Theft | |

Comments: _He stated that If I'm the gym teacher again_
_that he would throw a rock at my head_

### STRATEGIES/INTERVENTIONS

| | |
|---|---|
| ☐ Conference with student/parents | ☐ Team meeting/strategic behavior plan |
| ☐ Classroom/House disciplinary action | ☐ Reassignment |
| ☐ Other | |

Comments: _____

_____

_____

Lead Teacher Signature: _Jennifer Simpkins_

### ADMINISTRATIVE ACTION

To Be Completed by Administration Only: _____

| | |
|---|---|
| ☐ Warning | ☐ Conference with Parents/Team/Student |
| ☐ In-school suspension | ☐ Suspension from extra-curricular activities |
| ☐ Detention | ☐ Other _____ |
| ☐ Community Service | |
| ☒ Suspension | |

Administrator's Signature: _____   Student Signature X ████████████

Parent Signature: _____

Copy Distribution: Administrator, Teacher, Parent, Data Specialist

# Exhibit 25



180

# FRIENDSHIP SOUTHEAST ELEMENTARY ACADEMY

645 Milwaukee Place, SE * Washington, DC 20032 * Phone 202.562.1980 * Fax 202.562.0

## DISCIPLINE REFERRAL FORM

Student Name _____  Team _Specials_  Grade _3_

Referred by _Joel Loewenguth_  Date _12/5/05_  Time _11:00_

## NATURE OF REFERRAL

| | | |
|---|---|---|
| ☐ Fighting | ☐ Possession of a weapons | ☒ Defiance/ Uncooperative |
| ☐ Threatening a student/teacher | ☐ Inappropriate language/ profanity | ☐ Vandalism |
| ☒ Excessive disturbances | ☐ Possession of tobacco/ alcohol | ☐ Gang activity/symbols |
| ☐ Excessive dress code violations | ☐ Possession of matches/lighter or incendiary device | ☐ Other _____ |
| ☐ Horseplay | ☐ Theft | |

Comments: _Making disturbing noises with his mouth._
_Laughing and playing throughout class. Warned_
_several times._

## STRATEGIES/INTERVENTIONS

| | |
|---|---|
| ☐ Conference with student/parents | ☐ Team meeting/strategic behavior plan |
| ☐ Classroom/House disciplinary action | ☐ Reassignment |
| ☐ Other | |

Comments: _N/_ _____

Lead Teacher Signature: _____

## ADMINISTRATIVE ACTION

To Be Completed by Administration Only: _____

| | |
|---|---|
| ☐ Warning | ☒ Conference with Parents/Team/Student |
| ☐ In-school suspension | ☐ Suspension from extra-curricular activities |
| ☐ Detention | ☐ Other _____ |
| ☐ . Community Service | |
| ☐ Suspension | |

Administrator's Signature: _____ Student Signature: _____

Parent Signature: _____

Copy Distribution: Administrator, Teacher, Parent, Data Specialist

181

# Exhibit 26



182

# FRIENDSHIP SOUTHEAST ELEMENTARY ACADEMY

645 Milwaukee Place, SE * Washington, DC 20032 * Phone 202.562.1980 * Fax 202.562.0726

## DISCIPLINE REFERRAL FORM

Student Name _____  Team _Specials_  Grade _3_

Referred by _Mr. White_  Date _12/7/05_  Time _1:10 pm_

### NATURE OF REFERRAL

| | | |
|---|---|---|
| ☐ Fighting | ☐ Possession of a weapons | ☐ Defiance/ Uncooperative |
| ☐ Threatening a student/teacher | ☐ Inappropriate language/ profanity | ☐ Vandalism |
| ☑ Excessive disturbances | ☐ Possession of tobacco/ alcohol | ☐ Gang activity/symbols |
| ☐ Excessive dress code violations | ☐ Possession of matches/lighter or incendiary device | ☐ Other _____ |
| ☐ Horseplay | ☐ Theft | |

Comments: _Trying to fight other students while being escorted out of the classroom._

### STRATEGIES/INTERVENTIONS

| | |
|---|---|
| ☐ Conference with student/parents | ☐ Team meeting/strategic behavior plan |
| ☐ Classroom/House disciplinary action | ☐ Reassignment |
| ☐ Other | |

Comments: _____

Lead Teacher Signature: _Davin White_

### ADMINISTRATIVE ACTION

To Be Completed by Administration Only: _____

| | |
|---|---|
| ☐ Warning | ☐ Conference with Parents/Team/Student |
| ☑ In-school suspension | ☐ Suspension from extra-curricular activities |
| ☐ Detention | ☐ Other _____ |
| ☐ Community Service | |
| ☐ Suspension | |

Administrator's Signature: _____  Student Signature: _____

Parent Signature: _____

Copy Distribution: Administrator, Teacher, Parent, Data Specialist

183

# Exhibit 27



# FRIENDSHIP SOUTHEAST ELEMENTARY ACADEMY

645 Milwaukee Place, SE * Washington, DC 20032 * Phone 202.562.1980 * Fax 202.562.0726

## DISCIPLINE REFERRAL FORM

Student Name ███████████████    Team _____ Grade ⟶

Referred by **Mr. Masimini**    Date **12-7-05** Time **2:00**

### NATURE OF REFERRAL

| | | |
|---|---|---|
| ☑ Fighting | ☐ Possession of a weapons | ☑ Defiance/ Uncooperative |
| ☑ Threatening a student/teacher | ☑ Inappropriate language/ profanity | ☐ Vandalism |
| ☐ Excessive disturbances | ☐ Possession of tobacco/ alcohol | ☐ Gang activity/symbols |
| ☐ Excessive dress code violations | ☐ Possession of matches/lighter or incendiary device | ☑ Other _Assaulting staff_ |
| ☐ Horseplay | ☐ Theft | |

Comments: ███████ was extremely elevated and needed to be escorted out of my office. Mr. Hill and myself were escorting him to the nurses suite when he began kicking at other students. When I attempted to grab his leg he punched me in the eye.

### STRATEGIES/INTERVENTIONS

| | |
|---|---|
| ☐ Conference with student/parents | ☐ Team meeting/strategic behavior plan |
| ☐ Classroom/House disciplinary action | ☐ Reassignment |
| ☐ Other | |

Comments: _____

_____

_____

Lead Teacher Signature: _____

### ADMINISTRATIVE ACTION

To Be Completed by Administration Only: _____

| | |
|---|---|
| ☐ Warning | ☑ Conference with Parents/Team/Student |
| ☑ In-school suspension | ☐ Suspension from extra-curricular activities |
| ☐ Detention | ☐ Other _____ |
| ☐ Community Service | |
| ☐ Suspension | |

Administrator's Signature: _M. Hill_    Student Signature: _____

Parent Signature: _____

Copy Distribution: Administrator, Teacher, Parent, Data Specialist

185

# Exhibit 28



186



**Friendship Southeast Elementary Academy PCS**
**NOTICE OF SUSPENSION**

Washington, DC _____ Date _12-20-05_

TO _Qwanda Holtzclaw_    STUDENT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SCHOOL  Friendship Southeast _____ Grade _5_

_____
(Number and Street)  (City)  (Zip Code)

Student I.D. No. _____    Ethnicity _AA_ ____ Sex _M_

SASI No. _____ *(This action must be reflected in SASI)*

This is to inform you that the above named student has been suspended from school for a period of _2 days_
days and may not return until _Tuesday  January 3, 2006_

This action is being taken as a result of _Extreme defiance & disrespect. Violation_
_of rule A 18 in student code of conduct._

This suspension is based upon the facts which have thus far been presented to me. We have informally discussed the misconduct with your child who has been presented with the evidence. Also, your child has been given an opportunity to present his/her side of the story.

This suspension may be shortened, if an when we can be assured that the student is willing to conform to the regulations of the school. If you desire to attend a conference on this matter, please call this office so that one may be arranged as soon as possible. At the conference you and your child will be given the opportunity to present witnesses and to present any facts or reasons, orally or in writing, which in your opinion relate to this suspension. Please be advised that your failure to respond to this letter and to avail yourself of the opportunity to be heard in the manner provided will signify your desire not to have a conference and your agreement with the action taken.

During the duration of the suspension, your child should be in your custody and should not return to the school campus during that time. An unauthorized appearance could result in a change of trespassing.

Upon completion of the suspension, it is the responsibility of your child to obtain make-up work from all teachers.

Our telephone number is 202-562-1980.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Signature of Suspended Student

_____
Signature of Principal or Designee

A copy of this notice shall be filed in the
student's Cumulative Record Folder.

CC: File, Administrator and Parent

187

# Exhibit 29



# FRIENDSHIP SOUTHEAST ELEMENTARY ACAD

645 Milwaukee Place, SE * Washington, DC 20032 * Phone 202.562.1980 * Fax 202.562.07

## DISCIPLINE REFERRAL FORM

Student Name ██████████████    Team _Specials_    Grade _3_

Referred by _Mr. Joel Loewenguth_    Date _1/4/06_    Time _11:15_

### NATURE OF REFERRAL

| | | |
|---|---|---|
| ☐ Fighting | ☐ Possession of a weapons | ☒ Defiance/ Uncooperative |
| ☐ Threatening a student/teacher | ☒ Inappropriate language/ profanity | ☐ Vandalism |
| ☐ Excessive disturbances | ☐ Possession of tobacco/ alcohol | ☐ Gang activity/symbols |
| ☐ Excessive dress code violations | ☐ Possession of matches/lighter or incendiary device | ☐ Other _____ |
| ☐ Horseplay | ☐ Theft | |

Comments: ████ _was uncooperative from the beginning of class and told students to shut up on several occasions from across the classroom_

### STRATEGIES/INTERVENTIONS

| | |
|---|---|
| ☐ Conference with student/parents | ☐ Team meeting/strategic behavior plan |
| ☐ Classroom/House disciplinary action | ☐ Reassignment |
| ☐ Other | |

Comments: _____

_____

_____

Lead Teacher Signature: _____

### ADMINISTRATIVE ACTION

To Be Completed by Administration Only: _____

| | |
|---|---|
| ☐ Warning | ☐ Conference with Parents/Team/Student |
| ☐ In-school suspension | ☐ Suspension from extra-curricular activities |
| ☐ Detention | |
| ☐ Community Service | ☐ Other _____ |
| ☐ Suspension | |

Administrator's Signature: _____    Student Signature: _____

Parent Signature: _____

Copy Distribution: Administrator, Teacher, Parent, Data Specialist

189

# Exhibit 30



CONFIDENTIAL

CONFIDENTIAL

CONFIDENTIAL

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## UPPER MARLBORO, MARYLAND 20772

### Department of Psychological Services

## PSYCHOLOGICAL CONSULTATION / CONFERENCE REPORT FORM

STUDENT: ███████         ID:        478295       GRADE:    1

D.O.B ███████
DATE OF CONSULTATION:
SCHOOL:   Glassmanor ES                            11/12/03

## CONSULTATION / CONFERENCE
### WITH:                            CONCERNING:

| | | |
|---|---|---|
| _____ TEACHER | __x__ | LEARNING PROBLEM |
| _____ PRINCIPAL | __x__ | BEHAVIOR PROBLEM |
| _____ COUNSELOR | _____ | GENERAL CLASSROOM MANAGEMENT |
| __x__ PARENT | _____ | HOME MANAGEMENT |
| _____ PUPIL PERSONNEL WORKER | _____ | INTERPRETIVE CONFERENCE − |
| _____ SPECIAL EDUCATION RESOURCE | _____ | OTHER |
| _____ RSES | | |
| __x__ OTHER: MDT | | |

**SUMMARY:**
███████ is repeating 1st grade at Mother's request. He previously attended 1st grade in DC where his academic difficulties prompted referral for psychological evaluation. Testing conducted on 7/30/03 yielded the following WISC-III scores: Verbal IQ=76; Performance IQ=87; Full Scale IQ=80. Achievement testing and a speech and language evaluation resulted in comparable scores.

Mrs. Holtzclaw reports that ███████ behavior at home is barely manageable. External rewards , however, seem to help.

███████ has a significant medical history which includes febrile seizures, chronic asthma, ear tubes, allergy to sulfate and migraine headaches. Last year he would get headaches two or three times a week and when they would occur he would completely shut down. Now, the headaches seem controlled by medication.

Mrs. Holtzclaw believes that ███████ manifests ADHD. This is very much reflected in her ratings of ███████ on the Conners' ADHD Scale where she assigned him ratings which correspond to a T score of 82 on the Oppositional scale, a T score of 68 on Inattention, a T score of 82 on Hyperactivity and a T score of 74 on the ADHD Index. These rating suggest that ███████ has a moderately high risk for manifesting ADHD.

On the Attention Deficit Disorder Evaluation Scale Mrs. Holtzclaw provided ratings which are extreme on both the Inattentive and the Hyperactive-Impulsive scales

191

Teacher ratings do not support a finding of ADHD. Mrs. House, ████ teacher, assigned him ratings on both scales of the Attention Deficit Disorder Evaluation Scale which fell within the average range.

These findings will be shared with the multi-disciplinary team for discussion of educational planning and a final determination of disability. Additionally, Mrs. Holtzclaw will be encouraged to explore counseling as a means for assisting ████ gain control over his behavior at home.

_Marvin Chelst, Ph.D._ 11/12/03

Marvin Chelst, Ph.D.  School Psychologist        Date: 11/12/03

192

# Exhibit 31



... , GUARDIAN QUESTIONNAIRE

(Learning Disabilities)



All information on this form will be confidential and will be used to determine an appropriate educational program for your child.

If you have any questions please call ___Dwanda Holtzla___    ___Mother___    ___3567263___
                                        Name                      Title              Telephone

Today's Date ___9/10/03___          School ___Glassmanor___

Student ___[redacted]___            Teacher ___Ms. House___

Birthdate ___7/9/96___              Grade ___1st___

                                    Grandmother; Evelyn Holtzclaw

Family Data

| Age | Household Members: Relationship | Occupation (If Appropriate) |
|-----|-------------------------------|----------------------------|
| 30 | Dwanda Holtzclaw (Mother) | Med. Burg. Tech. |
| 7 | [redacted] (Son) | Student |
| 5 | Jamia Holtzclaw (Daughter) | Student |
| | | |
| | | |

Describe any serious concerns you have about your child.

___His behavior, Reading.___

Describe any school-related problems other family members have experienced.

___Him not being able to be control unless im around or his___
___stepfather. Him throwing things around___

Is English the usual language spoken at home?  ✓ Yes  ___No  Other Language_____

Pregnancy and Birth

Describe any serious health problems the mother experienced during the pregnancy.

___None___

During what month(s) of the pregnancy did these problems occur?_____

_____

Birthweight _7#s 5oz_____   Apgar Scores_____/_____

Did any of the following occur during the birth process?

____Premature                    ____Transfusion              ____Caesarian section
____Breech birth                 _✓_Prolonged labor           ____Oxygen problem
____Blood incompatability (RH Factor)                          ____Fetal distress

Other birth problems and/or concerns:

_____N/A_____

_____

Describe any difficulties your child had in learning to eat, sleep, sit, walk, or talk.

_____None_____

_____

Briefly describe any traumatic events which the child has experienced, for example:  death of close relative, divorce, family crisis.

_____None_____

_____

Neurologist did MRI
For headaches. Neurol.
exam was normal.

Medical History
Please check below any illness or problems the child has had:

____Physical defect        ____Frequent colds           _✓_Allergies 4    ____Speech problems
____Eye problems           ____Frequent sore throats     _✓_Asthma 5       ____Dietary problems
_✓_Ear Problems            _✓_Headaches 3               ____Epilepsy      ____Serious accidents or
____Operations             ____Heart disease            ____Diabetes          injuries
_✓_Temperatures above 104° 2                            _✓_Other: Bedwets nightly

Describe any of the problems checked above: _ear tubes_(1), _febrile seizures_(2), _migraines_(3), _allergy_(4)
_to Sulpha_(5), _he has chronic asthma_
                                          "cyproheptadine"  medicine 1 pill/night
                                          4 mg.             flovent 2 puffs/day
                                                            Advair

Has the child every been hospitalized?  ____No  _✓_Yes   Reason: _asthma_
Age at time of hospitalization: _3 months - 3 yrs._   How long in hospital? _as long as two(2) weeks_
Is the child under treatment or medication at present?  (If yes, please explain) _he take_
_medicine for his asthma and migraines on a daily basis._
                                                                                     195
How would you rate the child's general health? (check) ____excellent  _✓_good  ____fair  ____poor

Stud___ Name: _____

SOCIAL/BEHAVIORAL CHARAC___ ___STICS - Please check the state___ ___s which describe your child:

_____ Doesn't seem to understand questions or directions
_____ Gets ideas quickly
✓ Creative
_____ Difficulty expressing thoughts and ideas
_____ Enjoys reading
✓ Avoids reading
_____ Difficult time with paper/pencil tasks
_____ Enjoys writing tasks
_____ Difficulty using numbers
_____ Cannot tell time
✓ Enjoys math tasks
✓ Reverses letters or numbers
_____ Other_____

_____ Difficulty remembering information
✓ Remembers most information learned
✓ Short attention span
✓ Avoids homework
_____ Organized
✓ Disorganized
_____ Forgetful
_____ Difficulty with changes in routine
✓ Difficulty completing jobs and activities
_____ Often talks to self working
✓ Overactive
_____ Underactive

_____ Lacks motivation
_____ Frequently late
_____ Lacks self control
✓ Inconsistent behavior
_____ Self confident
_____ Difficulty making and keeping friends
✓ Shy or withdrawn
✓ Aggressive towards others
✓ Cooperative sometimes
✓ Doesn't accept responsibility for own behavior
✓ Tells lies
✓ Likeable
_____ Difficulty with speech
✓ Easily influenced by others

Comment on any behaviors that particularly concern you: _his behavior period is very out of control at school/home. Defiant_
_External rewards help w controls._

Has your child had any evaluations that the school may be unaware of:

___✓ educational     ___✓ psychological     _•_ medical     _____ other

Explain (what, when, by whom) (speech + language, summertime) psychological summer (medical: Dr. Lawence in August) ↑Denyese Thomas    ↑Tava M. Benn M.E.

What are your child's interests? _School, Football, Basketball_

What does your child do well? _Math_

What do you like best about your child? _Everything Just because_

How do you think the school can help your child? _by taking the time to work with him_

Is there any additional information which you feel will help us to understand your child better _that it will take a lot of time for him to complete task because he go easily distracted_ _can't sit still even when watching t.v._

I understand that this information will be used to determine an appropriate educational program for my child and will be reviewed by school professionals only.

_____
Interviewer's Signature/Title
_Ken Holt, Ph.D. Psych._

_____
Parent's Signature

196

(9 of 9)

# Exhibit 32



197

## SUMMARY AND SCORE REPORT

Name: ████████████

Date of Birth: ████████

Age:  9 years, 3 months

Sex:  Male

Date of Testing:  10/05/2005

School:  Friendship Southeast Elem

Teacher:  Ms. Carter

Grade:  3.1

Examiner:  Ms. Alton

## TESTS ADMINISTERED

*WJ III Tests of Achievement*

### SUMMARY

████████academic skills are average.  When compared to others at his grade level, his overall level of achievement is low average.  His fluency with academic tasks and his ability to apply academic skills are both within the low average range.

When compared to others at his grade level, ██████ performance is average in written language and written expression; and low average in broad reading, basic reading skills, mathematics, and math calculation skills.


_____Ms. Alton_____

Examiner

198

Summary and Score Report

October 5, 2005

TABLE OF SCORES
*Woodcock-Johnson III Tests of Achievement*
Compuscore for the WJ III, Version 2.1
Norms based on grade 3.1

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| PRE-ACADEMIC (Std) | – | 2.6 | 2.2 | 3.1 | 73/90 | 32 | 93 (91–95) | 7–11 |
| TOTAL ACHIEVEMENT | – | 2.3 | 1.8 | 2.9 | 69/90 | 22 | 89 (87–90) | 7–8 |
| BROAD READING | – | 2.2 | 1.9 | 2.6 | 45/90 | 17 | 86 (84–88) | 7–6 |
| BROAD MATH | – | 2.3 | 1.6 | 3.0 | 74/90 | 24 | 89 (86–92) | 7–8 |
| BROAD WRITTEN LANG | – | 2.6 | 1.9 | 3.6 | 83/90 | 35 | 94 (90–98) | 8–0 |
| BASIC READING SKILLS | – | 2.2 | 1.9 | 2.5 | 39/90 | 15 | 85 (81–88) | 7–7 |
| MATH CALC SKILLS | – | 2.2 | 1.5 | 3.2 | 76/90 | 22 | 88 (84–93) | 7–8 |
| WRITTEN EXPRESSION | – | 2.6 | 1.8 | 3.9 | 85/90 | 35 | 94 (88–100) | 8–0 |
| ACADEMIC SKILLS | – | 2.5 | 2.2 | 3.0 | 71/90 | 24 | 90 (87–93) | 7–11 |
| ACADEMIC FLUENCY | – | 2.2 | 1.6 | 3.0 | 73/90 | 20 | 87 (85–90) | 7–6 |
| ACADEMIC APPS | – | 2.0 | 1.6 | 2.7 | 64/90 | 19 | 87 (84–90) | 7–5 |

Form A of the following achievement tests was administered:

| | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 39 | 2.7 | 2.4 | 3.0 | 71/90 | 35 | 94 (92–97) | 8–0 |
| Reading Fluency | 10 | 1.7 | 1.3 | 2.1 | 22/90 | 12 | 83 (80–85) | 7–0 |
| Calculation | 9 | 2.1 | 1.7 | 2.6 | 58/90 | 19 | 87 (82–92) | 7–6 |
| Math Fluency | 37 | 2.8 | <1.2 | 4.9 | 88/90 | 39 | 96 (92–100) | 8–2 |
| Spelling | 25 | 2.6 | 2.1 | 3.3 | 80/90 | 37 | 95 (91–99) | 8–0 |
| Writing Fluency | 10 | 3.0 | 2.3 | 3.9 | 89/90 | 48 | 99 (94–105) | 8–4 |
| Passage Comprehension | 18 | 1.9 | 1.6 | 2.3 | 42/90 | 17 | 86 (82–89) | 7–3 |
| Applied Problems | 26 | 2.3 | 1.8 | 2.9 | 68/90 | 29 | 92 (88–96) | 7–9 |
| Writing Samples | 9–A | 2.0 | 1.5 | 3.7 | 79/90 | 20 | 87 (76–98) | 7–7 |
| Word Attack | 5 | 1.6 | 1.4 | 1.8 | 14/90 | 9 | 80 (75–84) | 7–0 |

WJ III Compuscore and Profiles Program 2.1
Standard Score/Percentile Rank Profiles

ame:
ate of Birth:
je: 9 years, 3 months
ex: Male
ate of Testing: 10/05/2005

School: Friendship Southeast Elem
Teacher: Ms. Carter
Grade: 3.1

Examiner: Ms. Alton

er Comparisons

-1 SEM   +1 SEM   Confidence
Band

Norms based on: Grade (K.0-12.9)

RE-ACADEMIC (Std)

OTAL ACHIEVEMENT

ROAD READING

ROAD MATH

ROAD WRITTEN
ANGUAGE

ASIC READING SKILLS

ATH CALCULATION
KILLS

RITTEN EXPRESSION

CADEMIC SKILLS

CADEMIC FLUENCY

CADEMIC APPLICATIONS

RE-ACADEMIC (STD)

Letter-Word Identification

Spelling

Applied Problems

200

ndard Score/Percentile Rank Profiles

ober 5, 2005



ADING (*Grw*)

tter-Word Identification

eading Fluency

assage Comprehension

lord Attack

ATHEMATICS (*Gq*)

:alculation

Math Fluency

Applied Problems

RITTEN
NGUAGE (*Grw*)

Spelling

Writing Fluency

Writing Samples

HONEME/GRAPHEME
NOWLEDGE

Word Attack

andard Score/Percentile Rank Profiles

ctober 5, 2005

## ACADEMIC SKILLS

**Letter-Word Identification**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Calculation**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Spelling**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

## ACADEMIC FLUENCY

**Reading Fluency**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Math Fluency**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Writing Fluency**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

## ACADEMIC APPLICATIONS

**Passage Comprehension**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Applied Problems**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

**Writing Samples**

SS  <40    40    50    60    70    80    90    100    110    120    130    140    150    160    >160

PR  <0.1    0.1    0.5    1    2    5  7  10  15 20    30    40  50  60  70    80 85  90 93 95    98    99 99.5    99.9    >99.9

# Exhibit 33



EXHIBIT

AH-33

203

# SCRUPLES CORPORATION

## PSYCHIATRIC INTAKE EVALUATION

Psychiatrist: Dr. Amir Rehman/Dr. M. Peko

Date: _____

Name: _____

IDENTIFYING INFORMATION:  Age _9_   Race _A A_   (Male), Female, Single, Married, Separated, Divorced

Others_____  School Grade/Education _3rd_  DOB: _____

Unemployed, employed, disabled.  Occupation:_____  Living Arrangements: _c̄ Mother_

CHIEF COMPLAINT: _____ _hyperactive & ↓ concentration_ _____

HISTORY OF PRESENT ILLNESS: Depressed mood, insomnia, decreased interest, decreased motivation, crying spells, decreased energy, decreased appetite, feelings of guilt, loneliness, hopelessness, helplessness, thoughts of hurting self/others, excessive worrying, fearfulness, nervousness; heart racing; shaking; fear of speaking/performing in social situations, racing thoughts, mood swings, periods of marked increased activity & creativity, impulsive behavior, increased energy, low frustration tolerance, easily agitated, anger outbursts, paranoid ideations, difficulty to focus, easily distracted, short attention span, fidgety, restlessness, hyperactivity, aggressive/disruptive behavior, flashbacks, nightmares, substance abuse problems, withdrawal symptoms.

_Pt presented c̄ grand mother_
_who reported _____ c̄ aloud marked ↓_
_for the past 2 yrs which interferes his_
_ability to perform at school._
_He has H/o SEIZURE D/O_

Any current / Hx of withdrawal symptoms. ☒N/A ☐ Denies ☐ Nausea ☐ Tremors/Shakes ☐ Anxiety
☐ Diaphoresis ☐ Blackouts/Seizures/DT's ☐ Abdominal/Muscle Cramps ☐ Diarrhea ☐ Flu like sx
☐ Pilorection ☐ Weakness
- Any history of self medication:_____ Ø
- Current Suicidal Idcations/Homicidal Ideations/Hallucinations:___ Ø
- Precipitating Factors:_____ Ø
- Any Identifiable Risk Factors:_____ /

☒ Patient contracts for safety and is not dangerous to self/others

204

Page 2 of 4

Name: _____    Date: _____

**PAST PSYCHIATRIC HISTORY:**
Hospitalizations: ☑ Denies _____
_____
_____

Suicide Attempts (Methods): ☑ Denies _____
_____

Outpatient Treatment: _____ Ø _____

Substance Abuse Treatment HX: ☑ Denies _____
_____

**MEDICAL / SURGICAL HISTORY:** _Seizue H/O, Asthma_
_+ Migrane_

Head Trauma: _____ Ø _____ LOC _____ Ø _____ Seizure HX: _Yes_

**CURRENT MEDICATION / OTC'S / HERBALS / CAFFEINE:** _____
_____
_Flovent inhaler_

**ALLERGIES:** ☑ NKDA: _____

**FAMILY HISTORY OF MENTAL ILLNESS/SUBSTANCE ABUSE:** ☐ Denies _____
Ø

**PSYCHOSOCIAL** (.....parents and peers): _____
☐ See Identification    ☑ Good Social Support    ☐ Poor Social Support

- Any family/social problems: _____ Ø
- Strengths _family_ Weaknesses _Ø_
Legal Hx (probation, pending charges, DUI's) ☑ Denies _____

H/O sexual/physical/emotional abuse: ☑ Denies _____

Child/Adolescent – Developmental and Educational HX. _fair_
_____

**DRUG AND ALCOHOL HISTORY:**
Tobacco: ☑ Denies _____
ETOH: ☑ Denies _____ - Last Used
Illicit Drug: ☑ Denies _____ - Last Used
_____

205

Name: _____                    Date: _____        Page 3 of 4

# MENTAL STATUS EXAMINATION:  ☐ Check all that apply.

**Appearance**
- ☐ Appears stated age
- ☐ Appears older than stated age
- ☐ Appears younger than stated age
- ☐ Overweight
- ☐ Underweight
- ☐ Bizarre
- ☐ Neat and clean
- ☐ Unkempt
- ☐ Tics
- ☐ Restless

**Alertness**
- ☑ Alert
- ☐ Hypervigiliant
- ☐ Inattentive
- ☐ Unresponsive
- ☐ Lethargic
- ☐ Fluctuating alertness & drowsiness
- ☐ Drowsy

**Orientation**
- ☐ Oriented to all
- ☐ Not oriented for time
- ☐ Not oriented for person
- ☐ Not oriented for place
- ☐ Not oriented for situation

**Mood**
- ☑ Euthimic/normal
- ☐ Dysphoric
- ☐ Expansive
- ☐ Irritable/angry
- ☐ Labile
- ☐ Euphoric
- ☐ Depressed
- ☐ Sad
- ☐ Anxious
- ☐ Fearful
- ☐ Panicky
- ☐ Guilty
- ☐ Ashamed
- ☐ Congruent
- ☐ Incongruent

**Affect**
- ☑ Appropriate with full range
- ☐ Inappropriate
- ☐ Constricted / restricted in range
- ☐ Blunted
- ☐ Flat
- ☐ Labile
- ☐ Sad
- ☐ Anxious

**Recent Memory**
- ☑ Normal
- ☐ Mildly impaired
- ☐ Moderately impaired
- ☐ Severely impaired

**Psychomotor Activity**
- ☑ Normal movements and activity level
- ☐ Psychomotor retardation
- ☐ Catonic stupor
- ☐ Psychomotor agitation
- ☐ Hyperactivity
- ☐ Tics of the _____

**Speech**
- ☑ Normal
- ☐ Organized
- ☐ Coherent
- ☐ Disorganized
- ☐ Confused
- ☐ Nonspontaneous
- ☐ Pressured
- ☐ Excessive
- ☐ Slurred
- ☐ Slowed
- ☐ Loud
- ☐ Soft

**Attitude**
- ☑ Cooperative
- ☐ Friendly
- ☐ Attentive
- ☐ Seductive
- ☐ Defensive
- ☐ Apathetic
- ☐ Hostile
- ☐ Suspicious and guarded

**Thought Process**
- ☑ Logical and coherent
- ☐ Circumstantial
- ☐ Tangential
- ☐ Incoherent
- ☐ Racing thoughts
- ☐ Perseveration
- ☐ Meaningless repetition
- ☐ Condensation
- ☐ Irrelevant answers
- ☐ Flight of ideas
- ☐ Blocking
- ☐ Slow processing

**Impulse Control**
- ☑ Good
- ☐ Fair
- ☐ Poor

**Thought Content**
- ☐ No significant preoccupations
- ☐ Preoccupation with illness
- ☐ Preoccupation w/external stressors
- ☐ Preoccupation w/_____
- ☐ Poverty of content
- ☐ Ideas of reference
- ☐ Delusions of _____
- ☐ Phobias
- ☐ Obsessions
- ☐ Compulsions
- ☐ Suicidal ideation
- ☐ Homicidal ideation
- ☐ Hypochondria
- ☐ Paranoia
- ☑ Difficulty concentrating
- ☐ Distractibility
- ☐ Hallucinations _____
- ☐ Other _____
  (e.g. egomania, monomania, c unica mystica)

**Behavior**
- ☑ Good eye contact
- ☐ Poor eye contact
- ☐ Cooperative
- ☐ Uncooperative
- ☐ Provocative
- ☐ Manipulative
- ☐ Controlling
- ☐ Hostile
- ☐ Passive
- ☐ Dependent
- ☐ Suspicious

**Intellectual Level**
- ☑ Average
- ☐ Above average
- ☐ Below average

**Judgement**
- ☑ Good
- ☐ Fair
- ☐ Poor

**Insight**
- ☑ Good
- ☐ Fair
- ☐ Poor

**Cognitive Functions**
- ☑ Intact
- ☐ Impaired
- ☐ Simple calculations
- ☐ Ability to read
- ☐ Fund of knowledge
- ☐ Ability to abstract

**Attention/Concentration**
- ☐ Intact/Attentive
- ☐ Fair
- ☐ Partially impaired
- ☐ Poor
- ☑ Short attention span
- ☑ Easily distracted

**DIAGNOSTIC / ASSESSMENT REPORT**

**SUMMARY OF FINDINGS & RECOMMENDATIONS FOR SERVICE DELIVERY**

**(INCLUDING ANY BARRIERS TO BE ADDRESSED DURING TX)**

Pt has H/o Seizure D/o + Migrane.
ADHD)

**DIAGNOSIS:**     AXIS I: _____ ADHD _____

AXIS II: _____ def _____

AXIS III: _____ Seizure D/o, Asthma, Migrane _____

AXIS IV: _____ denies _____

AXIS V:   GAF: _____ 55 _____

**Recommendations:**

① Gabapentin 100mg, T qhs + ½ q Am.
Grad mother agrees to try off label
use of Gabapentin.

~ Grand mother

☑ Risks / benefits / side effects discussed. Benefits outweigh risks. Alternate options discussed with patient/parent/guardian and patient/parent guardian is agreeable to the treatment.

☑ Patient/parent/guardian of the child agrees to arrange appointment (for the child/himself) with PMD for Physical exam and monitoring the physical health.

☐ Patient agrees to quit using alcohol/illicit drugs and will not drink and use drugs with the prescription medications.

☐ Patient reported that she is currently not nursing/not pregnant/not trying to get pregnant and will stop using the medications if plan for pregnancy and will report to the doctor.

☑ Patient is recommended for counseling for behavior modification/anger management/coping skills/substance abuse.

☑ Patient is recommended for community support services.

☐ Patient is recommended inpatient/out patient substance abuse rehabilitation program.

| Psychiatrist Signature | _____ | 12/8/05 |
|---|---|---|
| Qualified Practitioner | | Date: |

Revised 9/29/05.

207

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton\*
Ellen Douglass Dalton\*
William E. Houston+
Laura E. Duos~
<u>Jessica M. Smith^</u>
\*ALSO ADMITTED IN D.C. & W.VA
\* ADMITTED IN D.C. & PA
~ADMITTED IN MD & DC
^ ADMITTED IN VA

November 22, 2006

**VIA FACSIMILE** 202-742-2098

**Miguel Hull, Esq.**
Brown & Associates
1220 L Street, Suite 700
Washington, DC 20005

RE: ▬▬▬▬▬
5 Day Disclosure Notice

Dear Mr. Hull:

A Due Process Hearing has been scheduled for ▬▬▬▬▬ on December 1, 2006.  The purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.

### WITNESSES:

1. Will Walker, Special Education Coordinator, FSEA
2. Bronwen Millet, Clinical Psychologist
3. Ms. Bryan, special education teacher
4. Alicia Collins, special education teacher
5. Ms. Bell, regular education teacher
6. Charlene Glymph, Special Education Director, Friendship Public Charter Schools

Some of the above witnesses may testify by telephone or use a designee.

### <u>DOCUMENTS FOR 5 DAY</u>

| | | |
|---|---|---|
| FSEA - 01 | Motion to Dismiss dated (With exhibits dated 1-4) | 11/22/06 |
| FSEA - 02 | Settlement Agreement dated | 06/22/06 |
| FSEA - 03 | IEP dated | 10/03/06 |
| FSEA - 04 | Prior Notice and MDT Notes dated | 10/27/06 |

208

FSEA - 05 Compensatory Hours Sign-In

10/06-11/06

FSEA - 06 Report Card

October 2006

\* We reserve the right to examine any witnesses disclosed by DCPS or the PARENT as if they were witnesses for our client and the right to rely upon rely on all other documents previously filed or filed in a 5 Day Disclosure filed by the District of Columbia Public Schools (DCPS) or the PARENT.

Sincerely,

Laura Duos, Esq.

cc: Student Hearing Office
    OGC

209

2

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA STATE
ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

| | |
|---|---|
| Dwanda Holtzclaw | ) |
| on behalf of | ) |
| ▋▋▋▋▋▋▋▋ | ) |
| | ) |
| v. | ) |
| | ) November 22, 2006 |
| District of Columbia Public Schools ("DCPS") | ) |
| | ) |
| and | ) |
| | ) |
| Friendship Southeast Elementary Academy | ) |
| ("FSEA") | ) |

### Motion to Dismiss Due Process Complaint

Comes now, Friendship Southeast Elementary Academy and requests that the
hearing complaint filed on October 6, 2006, be dismissed.  The hearing request states
that FSEA failed to properly implement the student's current and previous IEPs, and
FSEA is an inappropriate placement for the student.

A.    **The allegation that FSEA failed to properly implement the student's current
and previous IEPs is barred by res judicata due to the settlement
agreement dated June 22, 2006.**

The doctrine of res judicata applies in this case and prevents the parent from
alleging that the student's IEP has not been properly implemented.  The doctrine of res
judicata provides that "when a final judgment has been entered on the merits of a case,
'it is a finality as to the claim or demand in controversy, concluding parties and those in
privity with them, not only as to every matter which was offered and received to sustain
or defeat the claim or demand, but as to any other admissible matter which might have

1

FSEA – 01

been offered for that purpose". *Allied Pilots Ass'n v. Pension Ben. Guar. Corp.*, 357

U.S. App. D.C. 255, 259 (2003), *citing Nevada v. United States*, 463 U.S. 110, 129-30

(1983).

On April 27, 2006, counsel for the parent filed a due process hearing request

alleging several violations on the part of DCPS and FSEA. Counsel alleged that the

specialized instruction on the student's IEP was inappropriately reduced, the school

failed to provide specialized instruction, the student was not receiving the appropriate

level of services, the student was not comprehensively evaluated, and FSEA was not

an appropriate placement. *See* Exhibit 1.

On June 22, 2006, the parent entered into a Settlement Agreement with FSEA.

This agreement was in settlement of "all fees and issues related to the April 27, 2006

due process complaint notice". *See* Exhibit 2. FSEA agreed to compensate the

student for the reduced hours by providing 36 hours of compensatory education. The

school also agreed to conduct the student's triennial psychoeducational and clinical

evaluation during the summer.

The current complaint alleges that FSEA has failed to properly implement the

student's IEP because he is not being provided specialized instruction in a special

education setting. See Exhibit 3. Instead, FSEA provides specialized instruction in an

inclusion setting, meaning the student remains in a general education classroom while

receiving specialized instruction. FSEA has always utilized the inclusion method, and

so the student has been educated in such a setting since entering FSEA.

At the resolution meeting held on October 27, 2006 at FSEA, the parent's

211

advocate stated, "the parent knew last year she was aware that FPCS - Southeast could not service the IEP. It is for that reason that the original IEP was reduced." *See* Exhibit 4. It is clear, therefore, that the parent knew at the time of the first complaint, dated April 27, 2006, that the student was being educated in an inclusion setting. Since the first complaint related to levels of services and appropriate placement, the fact that the student was being educated in an inclusion setting was included within the issue. Therefore, this issue has already been litigated and is barred from being relitigated by the doctrine of res judicata.

B.     **The allegation that FSEA is an inappropriate placement is against DCPS, not FSEA.**

As its own LEA, FSEA is not authorized to issue a notice of placement to another school. That is the function of DCPS. Therefore FSEA cannot be held responsible for the allegation that FSEA is an inappropriate placement for the student. On October 27, 2006, a placement meeting was held at FSEA, with DCPS in attendance. The DCPS representative offered the placement of the Taft Center. Since DCPS has issued a notice of placement for this student, the matter is now between the parent and DCPS.

### Conclusion

The due process hearing request filed on October 6, 2006 consists of two allegations. The first is that there has been a failure to properly implement the student's IEP, and the second is that the student is in an inappropriate placement. As to FSEA, the first allegation is barred by the doctrine of res judicata, and the second is inapplicable. As such, FSEA respectfully requests that the complaint against it be dismissed.

212

Respectfully submitted,

Laura E. Duos, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
703-739-4300
703-642-2323 – fax

4

213

Certificate of Service

I certify that a copy of this document was faxed to Miguel Hull, Esq. at 202-742-2098 and OGC at 202-442-5098.

Laura E. Duos, Esq.

5

214

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA STATE
ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

Dwanda Holtzclaw                              )
on behalf of                                  )
███████████████                               )
                                              )
v.                                            )
                                              )
District of Columbia Public Schools ("DCPS")  )        November 22, 2006
                                              )
and                                           )
                                              )
Friendship Southeast Elementary Academy       )
("FSEA")                                      )

## Motion to Dismiss Due Process Complaint

Comes now, Friendship Southeast Elementary Academy and requests that the
hearing complaint filed on October 6, 2006, be dismissed.  The hearing request states
that FSEA failed to properly implement the student's current and previous IEPs, and
FSEA is an inappropriate placement for the student.

**A.**    **The allegation that FSEA failed to properly implement the student's current
and previous IEPs is barred by res judicata due to the settlement
agreement dated June 22, 2006.**

The doctrine of res judicata applies in this case and prevents the parent from
alleging that the student's IEP has not been properly implemented.  The doctrine of res
judicata provides that "when a final judgment has been entered on the merits of a case,
'it is a finality as to the claim or demand in controversy, concluding parties and those in
privity with them, not only as to every matter which was offered and received to sustain
or defeat the claim or demand, but as to any other admissible matter which might have

1

FSEA — 01

been offered for that purpose". *Allied Pilots Ass'n v. Pension Ben. Guar. Corp.*, 357 U.S. App. D.C. 255, 259 (2003), *citing Nevada v. United States*, 463 U.S. 110, 129-30 (1983).

On April 27, 2006, counsel for the parent filed a due process hearing request alleging several violations on the part of DCPS and FSEA. Counsel alleged that the specialized instruction on the student's IEP was inappropriately reduced, the school failed to provide specialized instruction, the student was not receiving the appropriate level of services, the student was not comprehensively evaluated, and FSEA was not an appropriate placement. *See* Exhibit 1.

On June 22, 2006, the parent entered into a Settlement Agreement with FSEA. This agreement was in settlement of "all fees and issues related to the April 27, 2006 due process complaint notice". *See* Exhibit 2. FSEA agreed to compensate the student for the reduced hours by providing 36 hours of compensatory education. The school also agreed to conduct the student's triennial psychoeducational and clinical evaluation during the summer.

The current complaint alleges that FSEA has failed to properly implement the student's IEP because he is not being provided specialized instruction in a special education setting. See Exhibit 3. Instead, FSEA provides specialized instruction in an inclusion setting, meaning the student remains in a general education classroom while receiving specialized instruction. FSEA has always utilized the inclusion method, and so the student has been educated in such a setting since entering FSEA.

At the resolution meeting held on October 27, 2006 at FSEA, the parent's

2

216

advocate stated, "the parent knew last year she was aware that FPCS - Southeast could not service the IEP. It is for that reason that the original IEP was reduced." *See* Exhibit 4. It is clear, therefore, that the parent knew at the time of the first complaint, dated April 27, 2006, that the student was being educated in an inclusion setting. Since the first complaint related to levels of services and appropriate placement, the fact that the student was being educated in an inclusion setting was included within the issue. Therefore, this issue has already been litigated and is barred from being relitigated by the doctrine of res judicata.

B.    **The allegation that FSEA is an inappropriate placement is against DCPS, not FSEA.**

As its own LEA, FSEA is not authorized to issue a notice of placement to another school. That is the function of DCPS. Therefore FSEA cannot be held responsible for the allegation that FSEA is an inappropriate placement for the student. On October 27, 2006, a placement meeting was held at FSEA, with DCPS in attendance. The DCPS representative offered the placement of the Taft Center. Since DCPS has issued a notice of placement for this student, the matter is now between the parent and DCPS.

## Conclusion

The due process hearing request filed on October 6, 2006 consists of two allegations. The first is that there has been a failure to properly implement the student's IEP, and the second is that the student is in an inappropriate placement. As to FSEA, the first allegation is barred by the doctrine of res judicata, and the second is inapplicable. As such, FSEA respectfully requests that the complaint against it be dismissed.

217

Respectfully submitted,

Laura E. Duos, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
703-739-4300
703-642-2323 – fax

4

Certificate of Service

I certify that a copy of this document was faxed to Miguel Hull, Esq. at 202-742-2098
and OGC at 202-442-5098.

Laura E. Duos, Esq.

5

04/26/2005  08:35   2025528725                 FRIENDSHIP SOUTHEAST              PAGE  02
                                               Brown & Associates               002/009

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# ADMINISTRATIVE DUE PROCESS
# COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- **Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.** Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.   INFORMATION ABOUT THE STUDENT:

Student Name: ▓▓▓▓▓▓▓▓▓▓▓▓▓             DOB: ▓▓▓▓▓▓▓▓

Address:    916 Savannah St., SE. Washington, D.C. 20032

Present School of Attendance: Friendship Southeast Elementary Academy

**EXHIBIT**

*1*

2.10

04/28/2006  08:35   2025628725       FRIENDSHIP SOUTHEAST          PAGE  03
Brown & Associates                                              003/008

Home School: _____
                (Neighborhood school)

Parent/Guardian of the Student:  __Dwanda Holtzclaw__

B.    Legal Representative Attorney (if applicable):

Name: Miguel A. Hull, Esq.      Phone: (W) _202 742-2015_     (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005

Will attorney / legal representative attend the resolution session?  X Yes          □ No

C.    Complaint Made Against (check all that apply):

X     DCPS
X     Charter school (name of the charter school if different from page
one)___  _____
□ Non-public school or residential treatment facility (name)
_____
□ Parent

D.    Resolution Session Meeting Between Parent and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that
I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution
meeting to avoid having this meeting.)

X I wish to waive the Resolution Session Meeting

E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost
to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as
an alternative to a Due Process Hearing.  Please check all that apply:

I am requesting an administrative due process hearing only at this time.

F.    Facts and Reasons for the Complaint:

            I.  Nature of the Problem.

_____ is a nine-year-old student at Friendship Southeast Elementary
Academy ("FSEEA") in the District of Columbia.  According to his most recent
Individualized Educational Program ("IEP") dated December 5, 2005, he is currently

221

04/28/2006  08:35  2025528725                    FRIENDSHIP SOUTHEAST                    PAGE  04
04/27/2006 16:55 FAX 202 747  '86        Brown & Associates                              @004/009

classified with a specific learning disability and is entitled to 12.5 hours per week of specialized instruction, 10 of those hours in a special education setting and 2.5 in the general education setting. Apparently on December 5, 2005, the same day that the IEP was developed, an addendum to the IEP was also developed reducing ████████'s specialized instruction in the special education setting from 10 hours per week to only 5 hours per week. The parent now respectfully asserts the following claims against FSEEA, as the respective local education agency ("LEA"), and District of Columbia Public Schools ("DCPS") as the respective state education agency ("SEA")[1]:

1. **Inappropriate reduction in specialized instruction.** The IEP dated December 5, 2005, clearly indicates that the student is to receive 10 hours per week of specialized instruction in a special education setting or resource classroom. The IEP Addendum also dated December 5, 2005, indicates that the student is to only receive 5 hours of specialized instruction per week in the special education setting. The parent now objects to this duplicitous action by the school. Both documents were created on the same day, yet they indicate very different levels of services. The parent asserts that her son at very least requires the 10 hours of specialized instruction.

2. **Failure to provide specialized instruction.** The parent has learned that FSEEA has failed to provide the student with any of his specialized instruction since on or about January 2006. Individuals with Disabilities Education Improvement Act of

---

[1] The SEA, regardless of notice, is ultimately responsible for ensuring evaluations and a FAPE. See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, § 101, § 612 (a) (11); 34 C.F.R. § 300.341 (a) ("The SEA shall ensure [. . .] that each public agency develops and implements an IEP for each child with a disability served by that agency."); 34 C.F.R. § 300.360 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. § 300.600. ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are carried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibilities shall include, but not be limited to: (a) Acquisition and administration of federal grants on behalf of funding or services for all eligible local education agencies in the District of Columbia, including public, public charter and private schools; (b) Ensuring that all local education agencies in the District of Columbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA)"); S. Rep. No 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code, Cong. & Ad. News 1425, 14 48. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under IDEA] reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State . . . Without this requirement, there is an abdication of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist. 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. Grossmont 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending; and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings, SEA was liable for attorney's fees subsequently incurred at District Court proceedings because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

2004, Pub. L. No. 108-446, Sec. 101, § 602 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[ . . ]."); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 602 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [ . . . ]."); 34 C.F.R. § 300.13 & 26; and D.C. Mun. Regs. tit. 5 § 3000.1.

3. **Inappropriate placement.** The parent asserts that FSEEA is not an appropriate school for her son. Since being there he has engaged in severely aggressive behavior with his teachers as evidenced by written reports that the school has produced. Moreover, the school is currently not providing his specialized instruction. The student clearly requires a more structured school that can handle his behavioral outbursts and actually provide his specialized instruction.

4. **Inappropriate level of services.** The student's evaluations, poor grades, and problem behaviors all support the need for a higher level of service in a more restrictive environment.

5. **Failure to Comprehensively Evaluate the Student in All Areas of Suspected Disability.** The student's evaluations, poor grades, and problem behaviors all support the need for comprehensive social emotional testing, which FSEEA has not done. Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614 (b) (3) (B) (public agency to evaluate in all areas of suspected disability); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 614 (b) (3) (C) ("each local education agency shall ensure that assessment tools and strategies that provide relevant information that directly assists persons in determining the educational needs of the child are provided."); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 612 (a) (3) (state must have procedures in place to ensure that all students in the school district who may need special education services are identified, located, and *evaluated*); 34 C.F.R. Sec. 300.532 (g) ("Each public agency shall ensure that [ . . . ] the child is assessed in all areas related to the suspected disability [ . . . ]"); 34 C.F.R. Sec. 300.532 (h) ("Each public agency shall ensure that the evaluation is sufficiently comprehensive so as to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified."); 34 C.F.R. Sec. 300.125 (public agency must identify, locate and evaluate all students in the school district who may need special education services); 34 C.F.R. § 300.300(a); 34 C.F.R. § 300.320 ("Each public shall ensure that a full and individual evaluation is conducted for each child being considered for special education"); D.C. Mun. Regs. tit. 5 § 3005.9 (g) ("The LEA shall ensure that: the child is assessed in all areas related to the suspected disability [ . . . ]"); and D.C. Mun. Regs. tit. 5 § 3005.9 (h) (The LEA shall ensure that: in evaluating a child with a disability, the evaluation is sufficiently comprehensive to identify all of the child's special education and services needs, whether or not commonly linked to the disability category in which the child has been classified.").

223

04/28/2006  08:36    2025528726                FRIENDSHIP SOUTHEAST              PAGE  05
04/27/2006 16:39 FAX 202 74    088          Brown & Associates                  ☒006/008

## II. Issues presented.

1. Whether FSEEA, as the LEA, and DCPS, as the SEA have inappropriately:
   a. reduced the hours of specialized instruction in the student's IEP dated December 5, 2005;
   b. failed to provide specialized instruction pursuant to the IEP dated December 5, 2005; and
   c. failed to conduct comprehensive social emotional testing to address possible emotional disturbance;

2. Whether the placement at FSEEA is appropriate; and
3. Whether the student requires a higher level of services than on the December 5, 2005 IEP?

## III.     Relief Sought.

1) a finding in the parent's favor as to each of the claims raised here;

2) That FSEEA and / or DCPS be ordered, or agree, to:
   a) Begin providing, within 24 hours, the full 10 hours of specialized instruction per week as called for by the IEP dated December 5, 2005;
   b) provide appropriate compensatory education for the student to make up for services that were denied;
   c) fund independent comprehensive social emotional testing to determine if the student has an emotional disturbance;
   d) fund any other independent assessment recommended by the one specified here;
   e) convene an MDT meeting within ten business days of receiving the last of the parent's independent testing to: review the assessments; revise the IEP; determine any additional compensatory education that may be due; and identify placement with placement to be made within five business days if for a public school or within thirty calendar days if for a non-public school;

3) that DCPS provide any other relief deemed appropriate and relating to the violations committed here;

4) that DCPS be ordered or agrees to pay parent's reasonable attorney's fees and costs;

5) All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq, in writing, via facsimile, at 202-742-2097 or 202-742-2098;

6) Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

224

FRIENDSHIP SOUTHEAST                    PAGE   07
Brown & Associates                      @ 007/009
04/25/2005   03:35   2025922725

7) In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement dated May 12, 1987, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

8) The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.7; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

9) Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

10) That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following:  i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

11) That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

12) That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice;

13) That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

225

14) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a Resolution Session Meeting.

15) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, if applicable, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

16) That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub, L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17) A finding that the parent is the prevailing party in this action.

## G.   Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type) _____
- Special Accommodations for Disability (please be specific)_____
- Other_____

## H.   Signature:

_____                          April 27, 2006
Legal Representative/ Advocate (if applicable)           Date

226

04/28/2005  08:35    2025828725                    FRIENDSHIP SOUTHEAST              PAGE  09
                                                   Brown & Associates                009/009

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202-442-5556

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC Office:
601 Pennsylvania Avenue, N.W.
South Building  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton* +
Ellen Douglass Dalton*+
William E. Houston^+°
Laura E. Duos¨
Jessica M. Smith
* ADMITTED IN VA & W.VA
+ ADMITTED IN DC
^ ADMITTED IN VA
° ADMITTED IN MD
¨ ADMITTED TO THE U.S. SUPREME COURT

## SETTLEMENT AGREEMENT
June 22, 2006

<u>VIA FACSIMILE ONLY</u> – 202-742-2098
Mr. Miguel Hull, Esq.
James Brown & Associates
1220 L Street, NW, Suite 700
Washington, DC 20005

RE: ████████

Dear Mr. Hull:

In settlement of all fees and issues related to the, April 27, 2006 due process complaint notice, Friendship Southeast Elementary Academy, (hereinafter Friendship Southeast) agrees to the following:

1.  To compensate the student for the reduced hours on his 2005 IEP, Friendship Southeast agrees to provide six (6) hours a week of tutoring for six (6) weeks during the summer if Southeast Academy remains open during the summer break. If Southeast Academy is closed for construction, Friendship Southeast will provide the same amount of tutoring during the 2006-2007 school year. Once the tutoring is complete Friendship Southeast will complete additional testing to determine the student's progress and whether additional tutoring is warranted. The parties will determine the timeframe of the tutoring by June 30, 2006.

2.  Friendship Southeast agrees to conduct the student's triennial psychoeducational and clinical evaluation during the summer. The team will reconvene before the beginning of the 2006-2007 school year to review the student's evaluation and revise the IEP.

3.  Friendship Southeast agrees to pay $1,500.00 in settlement of all attorney's fees. The fees will be paid within 30 days of the signing of this agreement.

4.  For purposes of payment, parent's counsel states that his firm's tax identification number is 52-1500760.

EXHIBIT
2,
228

/23/2006 18:04 FAX  2027422098        James E Brown & Assoc.                    No. F28    P. 3/3

Jun.23. 2006  9:54AM    Dalton, Dalton & Houston

Agreed: _____        Agreed: _____
         Paul S. Dalton, Esq.                    Miguel Hull, Esq.
         Attorney Friendship Edison               Parent's Counsel

Date: ___ 6 - 23 - 06 ___                 Date: 6/23/06

229

12/05/2006  17:43  2024425253    STATE ENFORCEMENT    PAGE  04/11

10/09/2006 16:03 FAX  2027422058    James E Brown & Assoc.    ☐002/008

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# ADMINISTRATIVE DUE PROCESS
## COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 1 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule the resolution meetings.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name: ▓▓▓▓▓▓▓▓▓    DOB: ▓▓▓▓▓▓▓▓

Address:    916 Savannah St. SE, Washington, D.C. 20032

Present School of Attendance: Friendship Southeast Elementary Academy

EXHIBIT

230

12/05/2005  17:42   2924425253
10/06/2005 18:09 FAX  2027422053        STATE ENFORCEMENT                    PAGE  05/11
                                    James E Brown & Assoc.
                                                                            ☒003/009

Home School: 

**DCPS**
(Neighborhood school)

Parent/Guardian of the Student: ___Dwanda Holzclaw___

**B.    Legal Representative/Attorney (if applicable):**

Name: Miguel A. Hull, Esq.

Phone: (W) _202 742-2015_        (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005

Will attorney / legal representative attend the resolution session?   ☒ Yes            ☐ No

**C.    Complaint Made Against (check all that apply):**

X    DCPS

X    Charter school (name of the charter school if different from page one)

___Non-public school or residential treatment facility (name)

___Parent

**D.    Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

**X** I wish to waive the Resolution Session Meeting

**E.    Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

I am requesting an administrative due process hearing only at this time.

**F.    Facts and Reasons for the Complaint:**

        I.    Nature of the Problem.

███████ is a ten-year-old special education student attending Friendship Southeast Elementary Academy ("FSEEA") in the District of Columbia. On October 3, 2006, an MDT meeting took place for ███████ at FSEEA. During the meeting, ██████

231

10/05/2006 19:05 FAX  2021422069                                      Jesse E Brown & Assoc.                            @ 004/006

Individualized Educational Program ("IEP") was revised classifying hi╴ with multiple disabilities [other health impaired and emotionally disturbed] and entitl▬ng him to 26.5 hours per week of specialized instruction, in the special education settin╴, and one hour of counseling per week.[1] The parent now respectfully asserts the follo╴ng violations against FSEEA as the respective local education agency ("LEA"), and ▬istrict of Columbia Public Schools ("DCPS") as the respective state education a╴ency ("SEA"):

1. **Failure to properly implement IEP –failure to provide specialize** ▬instruction in a special education setting as called for by previous and current ▬EP's. FSEEA does not have a separate classroom, also known as a resource room, t▬ provide special education. The only specialized instruction that the school can provide ▬▬▬▬▬ with is what is known as "inclusion." In other words, rather than have A╴vad ╴ go to a

---

[1] A previous IEP, dated December 5, 2005, classified ▬▬▬▬ with a specific learning di▬ability and entitled him to 12.5 hours per week of specialized instruction, 10 of those hours in a special educ▬tion setting and 2.5 in the general education setting. Apparently, on December 5, 2005, the same day the▬ the IEP was developed, an addendum to the IEP was also developed reducing ▬▬▬▬'s specialized inst╴uction in the special education setting from 10 hours per week to only 5 hours per week. The parent f╴ed a due process complaint against the charter school and District of Columbia Public Schools for the app╴rent reduction of hours on the December 5, 2005 IEP. That complaint resulted in a settlement agreement ▬╴tween the parent and the charter school whereby the charter school agreed to conduct certain evaluations a╴d provide 36 hours of compensatory tutoring. That tutoring is current being provided by the charter s╴▬ool.

[2] On October 4, 2005, the parent, through counsel, provided written notice to DCPS of th▬ problems with the charter school and requested that DCPS, as the SEA assist in remedying those proble╴s. Regardless of this notice, however, the SEA is ultimately responsible for ensuring evaluations and a FA▬E. See Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1412 (a)(1); 34 C.F.R. § 300.101 (c) (1) ("Each State must ensure that FAPE is available to any individual child w▬h a disability who needs special education and related services [. . .]"); 34 C.F.R. § 300.227 (State age╴cy to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. § 300.149 (a), ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are c╴rried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibi╴ities shall include, but not be limited to: (a) Acquisition and administration of federal grants on beh╴▬ of funding or services for all eligible local education agencies in the District of Columbia, including pub╴ic, charter and private schools; (b) Ensuring that all local education agencies in the District of ▬olumbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA▬ ; S. Rep. No. 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code, Cong. & Ad. News 1425, 1╴48. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under I╴EA] reflects the desire of the Congress for a central point of responsibility and accountability in the edu▬ation of children with disabilities within each State . . . Without this requirement, there is an ▬ education of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist, 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assign▬ responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. ╴rasmuck 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a fr╴ appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citi╴ Gadsby in holding that State Agency could be held liable for costs of child's interim placement while ╴ecision on merits is pending); and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 8 0, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not par╴icipated in administrative proceedings, *SEA was liable for attorney's fees subsequently incurred at Dis╴▬ct Court proceedings* because of SEA's ultimate responsibility to ensure FAPE and due to its content ▬▬▬ participation during proceedings at District Court level).

10/05/2006  17:42   2224425253                    STATE ENFORCEMENT                         PAGE  07/11

10/05/2006  15:06 FAX  2027422085               James E Brown & Assoc.                      ☒ 005/008

separate special education classroom to receive specialized instruction from a certified special education teacher, ▓▓▓▓ instead remains in a general education classroom and receives his specialized instruction from the special education teacher who comes into the general education classroom. This inclusion scheme is not what ▓▓▓▓ IEP calls for. According to his current IEP, ▓▓▓▓ is to receive 26.5 hours per week of specialized instruction in a separate classroom without any general education students. Similarly, the previous IEP, dated December 5, 2005, which entitled ▓▓▓▓ to 10 hours of specialized instruction per week in a classroom without any general education students. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C § 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[ . . ]."); § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [ . . ]."); 34 C.F.R. § 300.17 & 39; and D.C. Mun. Regs. tit. 5 § 3000.).

2.  Inappropriate placement. FSEEA is not an appropriate school for ▓▓▓▓ because the school cannot implement the current IEP as written, which calls for a full-time placement out of the general education setting. Moreover, since being at that school, ▓▓▓▓ has engaged in severely aggressive behavior with his teachers as evidenced by the written reports that the school has produced. ▓▓▓▓ clearly requires a more structured school that can handle his behavioral outbursts and actually provide his specialized instruction. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[ . . ]."); 20 U.S.C. § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [ . . ]."); 20 U.S.C § 1414 (e) (public agency to ensure that parents are involved in the placement decision); 34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (placement is to be in the least restrictive environment, based on his IEP as determined by team including the parents); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. tit. 5 § 3000. See also footnote 2.

## II. Issues presented.

1.  Whether FSEEA, as the LEA, and DCPS, as the SEA have inappropriately failed, and continue to fail, to provide/ensure specialized instruction in a special education classroom as called for the current and previous IEP's; and

2.  Whether the placement location at FSEEA is appropriate?

## III.    Relief Sought

1)  a finding in the parent's favor as to each of the claims raised here;

2)  That PSEEA and / or DCPS be ordered, or agree, to:

233

4

STATE ENFORCEMENT                                    PAGE  08/11

18/06/2006  17:42   2024425253

10/09/2005 18:08 FAX  2027422055                James E Brown & Assoc.                 ⌀ 009/008

a) Begin providing, within 24 hours, the full 26.5 hours of specialized instruction per week as called for by the IEP dated October 3, 2006;

b) Fund 200 hours, or some other reasonable amount considering that this in a ongoing violation, of one-on-one tutoring as compensatory education for the student to make up for services that were denied;

c) Fund interim or permanent placement with transportation to one of the following: Foundations; Rock Creek Academy; Frost School; Accotink; High Roads in Maryland; or some other appropriate school;

d) Alternatively, convene an MDT meeting within ten business days to determine any additional compensatory education that may be due; and identify placement with placement to be made within five business days if for a public school or within thirty calendar days if for a non-public school;

3) that DCPS provide any other relief deemed appropriate and relating to the violations committed here;

4) that DCPS be ordered or agrees to pay parent's reasonable attorney's fees and costs;

5) All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

6) Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

7) In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement dated May 12, 1987, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

8) The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35-36 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

9) Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

10) That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 2 U.S.C. §

5

234

1415 (c) (2) (B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

11) That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

12) That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

13) That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

14) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a Resolution Session Meeting.

15) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, if applicable, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

16) That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B) constitute joint

235

waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17) A finding that the parent is the prevailing party in this action.

## G.    Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other _____

## H.    Signature:

_____          October 6, 2006
Legal Representative / Advocate (if applicable)       Date

**Mail, fax or deliver this complaint notice to:**
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202/442-5556

236

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

STUDENT: ██████████████

MEETING DATE: 10-27-06

SCHOOL: FPCS-Southeast Elem. Academy

| PARTICIPANTS: (PRINT NAME) | PARTICIPANTS: (SIGN NAME) | POSITION |
|---|---|---|
| Willie Walker | Willie Walker | LEA Rep |
| Andrene Brian | J. Brian | Sp. Ed. Teacher |
| Richard Griffin | RGriffin | Psychology Fellow |
| Larure Dior | Larure | AA |
| Juan Fernandez | via phone | Advocate |
| Dwanda Holtzclaw | via phone | Parent |
| Evan Murray | EMurray | Placement Specialist |
| GRACE L. BEI | Grace L. Bell | CRT / Regular Ed. |

Purpose: The purpose of this meeting is to decide the appropriate placement for ████. The team will review the FBA & BIP for ████. For the record introductions were made and parent received a copy of the parental safeguards at the 10-3-06 meeting.

DCPS: Mr. Murray asked the mother & advocate did they have any questions related to FBA & BIP. Mr. Murray asked parent & advocate about any school that they were interested in sending ████.

DCPS is has offered Taft Center for the 2006-2007 as placement for ████. The school is located at 1800 Perry St. NE. The school services the following categories — LD/SLI/OHI/MD/ED. The school has 70 students, 9 teachers, ████ class will have 5 students, 1 teacher and 1 aide. The school is a therapeutic setting that offers speech & language, OT, adaptive PE, Remedial Math & Reading,

237

EXHIBIT

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)                        page: 4 of 4
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: ▓▓▓▓▓▓▓▓▓▓           DATE OF BIRTH ▓▓▓▓▓▓▓

SCHOOL: FPCS- Southeast Academy      DATE: 10-27-06

DCPS Cont: Part time nurse and all teacher are catified. The ~~shoo~~ school offes Crisis intervention and will provide someone to administer medicines.

Parents Advocate: Parent stated that she had visited Frost, Accotik, and ~~Howard Roads~~. They have visited Frost & Accotik but not Howard Roads. ▓▓▓▓▓▓ has been accepted at Accotik and the parent & advocate will send Southeast a copy of the admittance letter and DCPS a copy.

Mother stated that Accotick offers a program that is similiar to Taft Center. The school has a lows teacher to student ratio and he will be able to transition to their Middle School & High School program.

238

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)          page: 3 of 4
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: ██████████████          DATE OF BIRTH: ██████████

SCHOOL: ___FPCS- Southeast Academy___    DATE: __10-27-06__

Psychologist: Mr. Griffith reviewed the current FBA & bIP conducted
on ██████. Target behaviors included talkative, lack of motivation,
Inattention, Impulsive, and Oppositional behaviors.

239

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)          page 2 of 4
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: ███████████          DATE OF BIRTH ███████

SCHOOL: FPCS-Southeast Academy          DATE: 10-27-06

Parent + Advocate:  Mr. Fernandez stated that parent knew last year student/
she was aware that FPCS-Southeast could not service the
IEP. It is for that reason that the original IEP
was reduced. Mr. Fernandez states that parent is
seeking additional comp. ed. hours from the beginning of
the school year to the 10-3-06 IEP date.

FPCS-Southeast
Advocate:  Ms. Laura Deros states Ms. Huttzclaw and FPCS-Southeast
Elem. Academy had a settlement agreement on 6-22-06 that
stated FPCS-Southeast Elem. Academy will provide 36 hours of
Comp. ed. hours. The school has started to service these hours.
FPCS-Southeast is offering 15 hours of inclusion until placement
is rendered. FPCS-Southeast has been attempting to offer the 36 hour of
comp. ed. but mother has pulled ███████ after school a lot since the
10-3-06 meeting so comp ed has been sporadic

Sped Teacher:  Ms. Bryan states that she has provided ███████ his
specialized instruction hours since she has started at
Southeast.

240

Friendship Public Charter School
808 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-6355

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [x] Change in Placement
  - [ ] Other

Date  10/27/06

Student  ████████                    DOB _____

School  FPCS-Southeast Elementary Academy

Current Disability Category  _____

Setting  Outside the general educational Setting

Dear  Dwanda Holtclaw

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [ ] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [ ] Your child is eligible or continues to be eligible to receive special education services as a student with  MD/OHI-ED
- [ ] Your child will begin receiving _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed;
      from  Combination  to  Out of the general educational Setting
- [ ] Your child is no longer eligible and will be exited from the special education program
- [x] Other:  Combination

**Description and Explanation of agency action proposed or refused.**

The student has been appropriately placed in a educational Setting.

**Description of Other Options Considered and reasons for rejection of each option**

General Education      rejected
Combination Setting    rejected
Out of the general education    accepted

Other relevant factors to the decision- _____

MDT Members:
- [ ] Principal or Designee
- [x] Parent  via phone
- [ ] Student
- [ ] Social Worker
- [x] General Education Teacher
- [x] Special Education Teacher
- [ ] Speech and Language
- [x] *LEA & Interpreter  (*may be one)
- [x] Psychologist
- [x] Other:  DCPS
  Attorney for FPS/FPCS
  Juan Hernadez  Att. for parent

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact  Evan Murray  at  2/742-5144  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001                                                                                      1

241

New Location: Taft Center
1800 Perry St. NE NAC

23/2006 18:04 FAX 2027422098          James E. Brown & Assoc          ☐003/005

Case 1:07-cv-00890-ESH     Document 8-9    Filed 08/01/2007     Page 22 of 38

Jun 23. 2006  9:54AM    Dalton. Dalton & Houston          No. 327   P. 2/3

Law Offices
# DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC Office:
601 Pennsylvania Avenue, N.W.
South Building  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton* +
Ellen Douglass Dalton*+
William E. Houston^+*
Laura E. Duos~+
Jessica M. Smith
* ADMITTED IN VA & W.VA
+ ADMITTED IN DC
^ ADMITTED IN MD
~ ADMITTED IN MD
* ADMITTED TO THE U.S. SUPREME COURT

## SETTLEMENT AGREEMENT
June 22, 2006

<u>**VIA FACSIMILE ONLY – 202-742-2098**</u>
Mr. Miguel Hull, Esq.
James Brown & Associates
1220 L Street, NW, Suite 700
Washington, DC 20005

RE:     ▓▓▓▓▓▓

Dear Mr. Hull:

        In settlement of all fees and issues related to the, April 27, 2006 due process complaint notice, Friendship Southeast Elementary Academy, (hereinafter Friendship Southeast) agrees to the following:

1.      To compensate the student for the reduced hours on his 2005 IEP, Friendship Southeast agrees to provide six (6) hours a week of tutoring for six (6) weeks during the summer if Southeast Academy remains open during the summer break.  If Southeast Academy is closed for construction, Friendship Southeast will provide the same amount of tutoring during the 2006-2007 school year.  Once the tutoring is complete Friendship Southeast will complete additional testing to determine the student's progress and whether additional tutoring is warranted. The parties will determine the timeframe of the tutoring by June 30, 2006.

2.      Friendship Southeast agrees to conduct the student's triennial psychoeducational and clinical evaluation during the summer.  The team will reconvene before the beginning of the 2006-2007 school year to review the student's evaluation and revise the IEP.

3.      Friendship Southeast agrees to pay $1,500.00 in settlement of all attorney's fees.  The fees will be paid within 30 days of the signing of this agreement.

4.      For purposes of payment, parent's counsel states that his firm's tax identification number is 52-1500760.

/23/2006 18:04 FAX  2027422098        James E Brown & Assoc.                      No. 628   P. 3/3

Jun.23. 2006  9:54AM    Dalton, Dalton,& Houston

Agreed: _____                Agreed: _____
            Paul S. Dalton, Esq.                              Miguel Hull, Esq.
            Attorney Friendship Edison                        Parent's Counsel

Date: ____6-23-06____                             Date: __6/23/06__

Friendship Public Charter School
9?? Pennsylvania Avenue SE
?shington, DC 20003
(202) 543-8395

INDIVIDUALIZED EDUCATIONAL PROGRAM

## I. IDENTIFICATION INFORMATION

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

Student Name: Last ███████ First ███████ MI H

Student ID _____ Soc. Sec. No. ███████ Age: ____ Grade 4

Gender ☑M ☐F  Date of Birth ███████  Ethnic Group Black, not of Hispanic origin

Address 3247 23rd Street SE #101  9|6 Savannah St. SE
House No.    Street Name    Quadrant    Apartment #
Washington, DC 20010
City    State    Zip Code

☐ Non-attending

Attending School FPCS-Southeast Elementary ▯  Home School FPCS-Southeast Elementary ▯

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Dwanda ~~Holtelaw~~ Holtzclaw

Address of (if different from student):  ☑ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name  9||0   Quad   Apt. No.   City   State   Zip Code
Telephone: Home 2136 7(202) 678-7678   Work 21574-6815

### II. CURRENT INFORMATION

Date of IEP Meeting: 10/03/06

Date of Last IEP Meeting: 12/05/05

Date of Most Recent Eligibility Decision: 10/03/06

Purpose of IEP Conference:
☐ Initial IEP        ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: iii

ADDENDA TO BE ATTACHED AS NEEDED.
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | N/A | NONE | Oral |
| Parent | English | English | English | NONE | Rdg. / Written |
| Home | English | N/A | N/A | NONE | Instrument: Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min  D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION #  wks/mos |
|---|---|---|---|---|---|---|
| Specialized Instruction | 25 26.5 | HR | Weekly | Special Education Teacher | 10/03/2006 | 10 | mos |
| Counseling | 1 | 1 | | Psychologist | 10-3-06 | 10 | mos |
| | | | | | | |
| | | | | | | |
| TOTAL | 27.5 27.5 | Hours Per Week | | | | |

### V. Disability(ies)

Multiple Disability
Specific Learning

MD

Disability 01H-I ED

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting 100%

### VI. IEP TEAM (Participants in the development of the IEP)

| | | Sign your name below. |
|---|---|---|
| Willie Walker | Willie Walker | Sped. Teacher |
| Juan I. Fernandez, Advocate | Recci truggers | Advocate |
| Dwanda C Holtzclaw, Parent | Dwanda C Holtzclaw | Parent |
| ___ E. Mathews | Lyn Ems | School Psychologist |
| Wanda S Perez | | LEA REP |

FSEA – 03

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this I??
IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural sa??????? ??? ??????
pertaining to special education.

Parent/Guardian Signature Dwanda C Holtzclaw    Date 10/3/06

244

✱ D... understanding with transportation to Foundations School of MD. agrees

| Student Name ▬▬▬▬ | | Managing School ▬▬▬▬ | DCPS - IEP |
| Student ID Number ▬▬▬▬ | DOB ▬▬▬▬ | Attending School FPCS-Southeast Elementary Acade | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments:

Academic Areas: (Evaluator) J. Smiley- Sped. Coordinator

**Math Strengths:**

▬▬ math strengths is to solve simple adding and subtracting.

Impact of disability on educational performance in general education curriculum:

▬▬ disability impacts his ability to solve addition and subtraction problems with regrouping , word problems, fractions without like denominators

**Reading Strengths:**

Able to read short passages independently.

Impact of disability on educational performance in general education curriculum:

▬▬ disability impacts his ability to compose sentences spelling, word meaning, and reading comp.

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

### Score(s) When Available

| Math Cal. | SS89 | GE 3.4 |
| Math Rea. | SS87 | GE2.8 |
| See goal page: | | page 2 |
| Date: | | |
| Rdg. Com. | SS75 | GE1.8 |
| Rdg. Basic | SS81 | GE2.6 |
| Written Ex. | SS69 | GE1.9 |
| See goal page: | | page 2 |
| Date: | | |

### Score(s) When Available

| Exp.Lang. | | |
| Rec- Lang. | | |
| Artic | | |
| Voice | | |
| Fluency | | |
| Exp. Voc. | | |
| Rec. Voc. | | |
| See goal page: | | |
| Date: | | |

### Score(s) /Results When Available

| See goal page: | | |
| Date: | | |

### Score(s) When Available

| See goal page: | | |
| Date: | | |

### Score(s) When Available

| See goal page: | | |
| Date: | | |

### Score(s) When Available

| See goal page: | | |
| Date: | | |

245

| Student Name ████████ | Managing School  ESEA | DCPS - IEP |
| Student ID Number _____  DOB ████ | Attending School  FPCS-Southeast Elementary Acade | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: ☐ |

### Area addressed by goal: Language Arts

**ANNUAL GOAL: (including mastery criteria.)**

████will show one year's growth based on the pretest and posttest of the WJIII data by mastering the short term objectives with 80% accuracy.

Provider(s): _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ████ will compose simple sentences with 80% accuracy. | | quarterly |
| ████will proofread all written text for the correct capitalization and punctuation with 80% accuracy. | | quarterly |
| ████will spell a list of weekly spelling words with 80% accuracy. | | quarterly |
| ████will use context clues to gain word meaning with 80% accuracy. | | quarterly |
| | | |
| | | |

### EVALUATION PROCEDURE(S)

☐ Portfolio  ☑ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other _____

246

| Student Name - | Managing School | ESEA | DCPS - IEP |
|---|---|---|---|
| Student ID Number | DOB: | Attending School  FPCS-Southeast Elementary Acade | Page 3 of 4 |

Goal Number: [    ]

| VIII. SPECIALIZED SERVICES | Additional Comments: |
|---|---|

Area addressed by goal: Academics- Math

**ANNUAL GOAL: (including mastery criteria.)**

will show one year's growth based on the pretest and posttest data by mastering the short-term objectives with 80% accuracy.

**Provider(s):**  Sped. Case Manager and General Educator

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| will solve addition and subtraction problems with regrouping 80% accuracy. | | Quarterly |
| will multiply and divide two digit numbers with 80% accuracy. | | Quarterly |
| will solve one-step word problems with unlike denominators with 80% accuracy. | | Quarterly |
| will add and subtract fractions with unlike denominators with 80% accuracy. | | Quarterly |
| will solve simple measurement problems with 80% accuracy. | | Quarterly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☑ Chart   ☑ Test   ☐ Documented Observation   ☑ Report   ☐ Other _____

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4      **247**

| Student Name | Managing School | ESEA | DCPS - IEP |
|---|---|---|---|

| Student Name | ████████ | | Managing School | FSEA | DCPS - IEP |
| Student ID Number | _____ DOB ████ | Attending School | FPCS-Southeast Elementary Acade | Page 4 of 4 |

Additional Comments:

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>regular education</u>? ☑ Yes ☐ No

Explanation for removal out of regular education classroom.

████ warrants a setting that will provide him the least restrictive environment academically. ████ *requires a full-time placement to provide him the least restrictive environment academically.*

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:    ☐ None needed

| ☐ | Timing/Scheduling: | Extended time |
| ☐ | Setting: | Small group |
| ☐ | Presentation: | Reading of direction and test items as needed *+ Guided notes* |
| ☐ | Response: | |
| ☐ | Equipment: | Use of a highlighter |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio: _____

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☑ Reading           ☐ Physical/Sensory        ☐ Transition
☑ Mathematics       ☐ Social Emotional        ☐ Vocational
☑ Written Expression ☐ Physical Development    ☐ Independent Living
☐ Other: _____    ☐ Speech/Language
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**Modifications:**

☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
| General Education | A̶c̶c̶e̶p̶t̶ *Reject* | I̶m̶p̶a̶c̶t̶ ̶o̶n̶ ̶s̶e̶l̶f̶ ̶e̶s̶t̶e̶e̶m̶ |
| Out of the general education | R̶e̶j̶e̶c̶t̶ *Accept* | T̶o̶o̶ ̶r̶e̶s̶t̶r̶i̶c̶t̶i̶v̶e̶ |
| Combination | Reject | COntinue school failure |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:
Exposure to general education curriculum.

Location for Services    FPCS-Southeast Elementary Academy

## EVALUATION TO JUSTIFY TRANSPORTATION

Student _____ ID# _____ DOB _____ N/A

Attending School _____ Neighborhood School _____

Attach a copy to the Transportation Data Form and maintain as a part of the IEP

Justification for Transportation as a related service as stipulated in 300.24 (15). (Check all that apply):

1. ☐ Medical reports document a severe health condition that prevents the student from walking to school. Specify _____

2. ☐ Medical reports document a physical disability that prevents the students from walking to or getting to school independently. Specify _____

3. ☐ A documented severe cognitive disability prevents the students from walking or getting to school independently. Specify _____

4. ☐ A visual and/or hearing disability interferes with the student's ability to arrive at school independently. Documentation source _____

5. ☐ A severe communication disability prevents the student from communicating for his/her own safety. Documentation source _____

6. ☐ A behavior/emotional disability is so severe or erratic that there is concern for the safety of the student and/or others. Documentation source _____

7. ☐ The student is eligible for the preschool special education program and could not participate without special transportation.

8. ☐ The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.

9. ☐ The student is medically fragile. Documentation source _____

10. ☐ The student requires assistance to get on and off the bus. Documentation source _____

11. ☐ The student is unable to function independently due to the severity of the disability. Documentation source _____

12. ☐ The student requires a non-routine transportation schedule (i.e. contract services, abbreviated school day). Explain _____

13. ☐ Medical reports document that the student has a physical disability and/or severe health condition that prevents him or her from walking to school. Documentation source _____

14. ☐ A documented severe cognitive disability prevents the student from walking to school. Documentation source _____

15. ☐ Other (Specify)

<table>
<tr><td></td></tr>
<tr><td></td></tr>
</table>

249

146

**Friendship Public Charter School**
906 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-8395

| IEP Attachment B |
| Transportation |

TRANSPORTATION DIVISION

STUDENT TRANSPORTATION
DATA FORM
06 - 07

School Year

90050100c166

STUDENT IDENTIFICATION NUMBER

(MDT must first determine if student meets the requirements for
transportation services and has it included in the IEP.)

Person Making Request: _Ellen Murray_

Date of Request: _10/26/06_

Status of Request: _____

Date Request Received: _____

Person Receiving Request: _____

---

Dwanda Holtclaw

Parent / Guardian (Print legibly or type)

~~(202) 678-7679~~  2/367-9447

Telephone (H)

240-593-4624

Telephone (W)

_Evelyn Holtzclaw_

Emergency Contact

_Grandmother_

Relationship

_2/367-9447_

Telephone No.

Pager / Cell No.

Students will be taken to a central location until
6:00 p.m. if the bus attendants are unable to
deliver them to the designated location. After
6:00 p.m. the police will be contacted. This
year's central location is _____

---

Student:  Last Name                First Name                MI
_916_  _Savannah_ _St. SE_

3347 23rd Street SE #101

House No.     Street Name     Quad.     Apt.

Washington, DC 20010

City                State     Zip Code

_7/29/96_  M  English

DOB , Gender  Primary Language

Submitting School and Telephone Number

_MD 10HI LA BA_       _Asthma Seizures Migrant_

Disability Classification          Medical Issues _Headaches_

MODE OF TRANSPORTATION  ☒ *Bus  ☐ Tokens  ☐ Farecards

*SPECIAL ACCOMMODATIONS FOR BUS

Height _43"_     Weight _70_

☐ Oxygen       ☐ Tracheotomy tube     ☒ Seizures   ☐ Helmet

☐ Harness      ☐ 1:1 Aide      ☐ Behavioral issues _____

☐ Medication      ☐ Specific allergies _____

Dosage required during transportation :

☐ Yes  ☐ No  Dosage _____     ☐ PM ☐ AM

☐ Mobility  ☐ Ambulatory ( ☐ Cane, ☐ Crutch, ☐ Walker)

☐ Ambulatory w/ assistance ( ☐ Cane, ☐ Crutch, ☐ Walker)

☐ Non Ambulatory ( ☐ Standard, ☐ Motorized, ☐ Oversized

w/ lap tray  ☐ Yes  ☐ No)

☐ Car Seat       ☐ Positioning Device

☐ Special Restraint    ☐ Other, Describe: _____

---

Click one of the following:

☒ AM Pick-up & PM Drop-off is the same as the student address.

_____     Telephone No. _____

☐ AM Pick-up Address

_____     Telephone No. _____

PM Drop-off Address

---

Transportation will NOT be provided without confirmed placement through the proper procedures.
Justification for other than neighborhood settings must be explained on the back by the school official
requesting the transportation services.

_Ellen Murray_         _2/442-5144_       _10/27/06_

School Official requesting transportation service:  Telephone No.      Date

_Labone Workman_       _1800 Perry St. NE WDC_    _2/576-6101_

School to Attend:       Address of School      Telephone No.

**Questions may be directed to the Special Education Transportation Liaison.**

**Friendship Public Charter School**
906 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-8595

## EVALUATION TO JUSTIFY TRANSPORTATION

Student _____ ID# _____ DOB _____

Attending School  FPCS-Southeast Elementary Aca  Neighborhood School  FPCS-Southeast Elementary Academ

Attach a copy to the Transportation Data Form and maintain as a part of the IEP

Justification for Transportation as a related service as stipulated in 300.24 (15). (Check all that apply):

1. ☐ Medical reports document a severe health condition that prevents the student from walking to school. Specify _____

2. ☐ Medical reports document a physical disability that prevents the students from walking to or getting to school independently. Specify _____

3. ☐ A documented severe cognitive disability prevents the students from walking or getting to school independently. Specify _____

4. ☐ A visual and/or hearing disability interferes with the student's ability to arrive at school independently. Documentation source _____

5. ☐ A severe communication disability prevents the student from communicating for his/her own safety Documentation source _____

6. ☐ A behavior /emotional disability is so severe or erratic that there is concern for the safety of the student and/or others. Documentation source _____

7. ☐ The student is eligible for the preschool special education program and could not participate without special transportation

8. ☒ The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.

9. ☐ The student is medically fragile. Documentation source _____

10. ☐ The student requires assistance to get on and off the bus. Documentation source _____

11. ☐ The student is unable to function independently due to the severity of the disability. Documentation source _____

12. ☐ The student requires a non-routine transportation schedule (i.e. contract services, abbreviated school day). Explain _____

13. ☐ Medical reports document that the student has a physical disability and/or severe health condition that prevents him/her from walking to school. Documentation source _____

14. ☐ A documented severe cognitive disability prevents the student from walking to school. Documentation source _____

15. ☐ Other (Specify)

```
┌────────────────────────────────────────────────────────────┐
│                                                              │
│                                                              │
│                                                              │
└────────────────────────────────────────────────────────────┘
```

N/A

| Student Name | ▓▓▓▓▓▓ | Managing School | ESIA |
|---|---|---|---|
| Student ID Number | ▓▓ | DOB ▓▓▓▓ | Attending School | ESIA |

DCPS - TRANSITION
SERVICES PLAN
PAGE 1 OF 2

Date Developed: _____

N/A

## DCPS TRANSITION SERVICES PLAN

Note: The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

I. *Record student's post-secondary goals and interests.*

Employment: _____

Community Participation: _____

Post-Secondary Education and Training: _____

Independent Living: _____

II. *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| | |
| | |
| | |
| | |
| | |

III. *Transition Services Needed.*
Evaluate the student's present level of performance in the following areas: *Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational; Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Employment** <br><br> If service is not needed, provide explanation. | | |
| **Community Participation** <br><br> If service is not needed, provide explanation. | | |
| **Post - Secondary Education and Training** <br> If service is not needed, provide explanation. | | |
| **Independent and Adult Living** <br> If service is not needed, provide explanation. | | |

252

148

N/A

| Student Name | | Managing School | FSEA | DCPS - TRANSITION SERVICES PLAN |
|---|---|---|---|---|
| Student ID Number | DOB | Attending School | FSEA | PAGE 2 OF 2 |

Date Developed:

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Daily Living Skills<br>If service is not needed, provide explanation. | | |
| Functional Vocational Evaluation<br>If service is not needed, provide explanation. | | |
| Other | | |

IV.

| Projected Exit Category (check one) | | High School Diploma Status | | Projected Exit Date (M/D/Y) |
|---|---|---|---|---|
| | DC High School Diploma | | # Credits Earned toward graduation | |
| | High School Certificate at age 21 | | | |
| | High School Certificate prior to age 21 | | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |
| | | |

V. *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

Examples of Agency Linkages Needed for Transition
* Rehabilitation Services Administration (RSA)
* Mental Retardation and Developmental Disabilities Administration (MRDDA)
* Commission on Mental Health Services (CMES)
* UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

253

**Friendship Public Charter School**
906 Pennsylvania Avenue SE
Washington, DC 20003
(202) 543-8395

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
☐ Initial Evaluation
☐ Initial Placement
☐ Reevaluation
  ☐ Change in Category Exit
  ☐ Related Service Add
  ☐ Related Service
  ☑ Change in Placement
  ☐ Other _____

Date  10/27/06

Student ~~_____~~  DOB _____

School  FPCS-Southeast Elementary Academy

Current Disability Category  MD/OHI ED

Setting  Outside the general educational Setting

Dear  Dwanda Holtclaw

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
☐ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

☐ Your child is not eligible for special education service(s).
☐ Your child is eligible or continues to be eligible to receive special education services as a student with  MD/OHI - ED
☐ Your child will begin receiving _____ as a related service(s).
☐ Your child will no longer receive _____ as a related service(s).
☐ Your child's category of disability is being changed from _____ to _____
☐ Your child's alternative placement on continuum (next setting) is being changed
    from  Combination  to  Out of the general educational Setting
☐ Your child is no longer eligible and will be exited from the special education program.
☐ Other:  Combination

**Description and Explanation of agency action proposed or refused.**

The student has been appropriately placed in a educational Setting.

**Description of Other Options Considered and reasons for rejection of each option**

General Education       rejected
Combination Setting       rejected
Out of the general education       accepted

Other relevant factors to the decision- _____

MDT Members:  ☐ Principal or Designee      ☑ General Education Teacher      ☑ Psychologist
              ☑ Parent Via phone           ☑ Special Education Teacher      ☑ Other: DCPS
              ☐ Student                     ☐ Speech and Language          Attorney for FESAPCS
              ☐ Social Worker               ☑ *LEA & Interpreter  (*may be one)   Juan Fernadez Att for parent

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact  Evan Murray  at  2/762-5/44  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001

New Location: Taft Center
1800 Perry St. NE NW
~~_____~~

254
FSEA – 04

Friendship Public Charter Schools
_____ Campus

MULTIDISCPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: ███████████

STUDENT: ████████████████

MEETING DATE: 10-27-06

SCHOOL: FPCS-Southeast Elem. Academy

| PARTICIPANTS: (PRINT NAME) | PARTICIPANTS: (SIGN NAME) | POSITION |
|---|---|---|
| Willie Walker | Willie Walker | LEA Rep |
| Andrene Bryan | A. Bryan | Sp. Ed. Teacher |
| Richard Griffith | R. Griffith | Psychology Fellow |
| Lacara Dior | Larry h | AG |
| Juan Fernandez | Via Phone | Advocate |
| Dwanda Holtzclaw | Via Phone | Parent |
| Evan Murray | | Placement Specialist Ho |
| Grace L.Bel | Grace L. Bell | CRT / Regular Ed. |

Purpose: The purpose of this meeting is to decide the appropriate placement for ██████. The team will review the FBA & BIP for ███████. For the record introductions were made and parent received a copy of the parental safeguards at the 10-3-06 meeting.

DCPS: Mr. Murray asked the mother & advocate did they have any questions related to FBA & BIP. Mr. Murray asked parent & advocated about any school that they were interested in sending. Avadis.

DCPS is has offered Taft Center for the 2006-2007 as placement for ██████. The school is located at 1800 Perry St. NE. The school services the following categories - LD/ SLI/ OHI/MD/ED. The school has 70 students, 9 teachers, ██████ class will have 5 students, 1 teacher and 1 aide. The school is a therapitic setting that offers speech & language, OT, adaptive PE, Remedial Math & Reading,

255

Friendship Public Charter Schools

_____ Campus

MULTIDISCIPLINARY TEAM (MDT)                     page 4 of 4
CONTINUATION MEETING NOTES

MEETING TYPE: _____

STUDENT: _____     DATE OF BIRTH _____

SCHOOL: ___FPCS- Southeast Academy___     DATE: ____10-27-06____

DCPS Cont: Part-time nurse and all teacher are certified. The ~~Shoo~~ school offers Crisis Intervention and will provide someone to administer medicines.

Parents Advocate: Parent stated that she had visited Frost, Accotik, and ~~Howard Roads~~. They have visited Frost & Accotik but not Howard Roads. ████ has been accepted at Accotik and the parent + advocate will send Southeast a copy of the admittance letter and DCPS a copy.

Mother stated that Accotick offers a program that is similiar to Taft Center. The school has a low teacher to student ratio and he will be able to transition to their Middle School & High School program.

256

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)                    page: 3 of 4
CONTINUATION MEETING NOTES
        MEETING TYPE: _____

STUDENT: ███████████                DATE OF BIRTH ██████████

SCHOOL: ___FPCS-Southeast Academy___    DATE: ___10-27-06___

Psychologist: Mr. Griffith reviewed the current FBA & BIP conducted on ██████ Target behaviors included talkative, lack of motivation, Inattention, Impulsive, and Oppositional behaviors.

257

Friendship Public Charter Schools
_____ Campus

MULTIDISCIPLINARY TEAM (MDT)          page: 2 of 4
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: ███████████████          DATE OF BIRTH ███████████

SCHOOL: FPCS-Southeast Academy          DATE: 10-27-06

Parent & Advocate: Mr. Fernandez stated that parent knew last year she was aware that FPCS-Southeast could not service the IEP. It is for that reason that the original IEP was reduced. Mr. Fernandez states that parent is seeking additional comp. ed hours from the beginning of the school year to the 10-3-06 IEP date.

FPCS-Southeast
Advocate: Ms. Laura Davos states Ms. Holtzclaw and FPCS-Southeast Elem. Academy had a settlement agreement on 6-22-06 that stated FPCS-Southeast Elem. Academy will provide 36 hours of Comp. ed. hours. The school has started to service these hours. FPCS-Southeast is offering 15 hours of inclusion until placement is rendered. FPCS-Southeast has been attempting to offer the 36 hour of comp. ed. but mother has pulled ████ after school a lot since the 10-3-06 meeting so comp ed has been sporadic

Sped Teacher: Ms. Bryan states that she has provided ████ his specialized instruction hours since she has started at Southeast.

258



**Friendship**
Public Charter School

# STAFF SIGN IN ▬ *Camp. Hours*

DATE: _____

| Print Staff Name & Student | Signature | Time IN | OUT |
|---|---|---|---|
| 4-06 Alicia Collins | | 3:00 | 4:00 |
| 6-06 A. Walker | A. Walker | 3:15 | 4:05 |
| 10-06 A. Bryan | A. Bryan | 3:15 | 4:15 |
| 13-06 A. Collins | A. Collins | 3:15 | 4:15 |
| 5-06 A. Bryan | A. Bryan | 3:15 | 4:15 |
| 1-06 A. Walker | A. Walker | 3:30 | 4:30 |
| 14-06 A. Bryan | A. Bryan | 3:15 | 4:15 |
| 15-06 A. Bryan | A. Bryan | 3:15 | 4:15 |
| 20-06 A. Bryan | A. Bryan | 3:15 | 4:15 |
| 21-06 A. Bryan | A. Bryan | 3:15 | 4:15 |

Friendship Public Charter School
Friendship Southeast Elementary Academy
645 Milwaukee Avenue, SE
Washington, DC 20032
Tenina Fleming, Principal

FIRST QUARTER REPORT CARD
2006-2007 School Year

ID: 9005010001Grade: 04

RE:
Dwanda Hotlzclaw
916 Savannah St SE
Washington, DC 20032

FROM 08/28/06 TO 10/31/06

|  | 1st Qtr | 2nd Qtr | 3rd Qtr | 4th Qtr | FNL YR |
|---|---|---|---|---|---|
| Reading | GBell | C |  |  |  |  |
| Social Studies | GBell | B |  |  |  |  |
| Physical Fitness | lLong | B |  |  |  |  |
| Math | GBell | C |  |  |  |  |
| Science | GBell | B |  |  |  |  |
| Art | HWilliams | B |  |  |  |  |
| World Language | AWood | B |  |  |  |  |

Friendship SE Elementary Academy
First Quarter

|  | All Abs | All Tdy |
|---|---|---|
|  | 4 | 10 |
|  | 4 | 10 |
|  | 4 | 10 |
|  | 4 | 10 |
|  | 4 | 10 |
|  | 4 | 10 |
|  | 4 | 10 |

** PAGE 1 OF 1 **

Absent: 4  Present: 39

FSEA – 06

```
TRANSMISSION VERIFICATION REPORT
```

```
                                TIME  : 11/09/2006 12:05
                                NAME  :
                                FAX   :
                                TEL   :
                                SER.# : BROE6J471573
```

| DATE,TIME | 11/09  12:05 |
| FAX NO./NAME | 97037392323 |
| DURATION | 00:00:18 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

2006 NOV 14 PM 3: 55
OFFICE OF THE
GENERAL COUNSEL

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

O:   Parent (or Representative): *M. HULL / P. DALTON*    Fax No.: *742 - 2098*

LEA Legal Counsel: *R. PEIMES*    *(703) 739-2323*

E:   _____ and (LEA) DOB: _____
           Student's Name

ROM:   **SHARON NEWSOME**
           Special Education Student Hearing Office Coordinator

ATE SENT:   *11/9/06*

..........................................................................

he Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
*10/6/06*____. Please be advised that the hearing has been scheduled for:

DATE:   *12/1/06*

TIME:   *11:00 AM*

AT:   825 North Capitol Street, NE, Washington, DC
           8th Floor

261

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 11/09/2006 12:05
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROE6J471573
```

```
DATE,TIME           11/09  12:04
FAX NO./NAME        97422097
DURATION            00:00:17
PAGE(S)             01
RESULT              OK
MODE                STANDARD
                    ECM
```

2006 NOV 14 PM 3:55
OFFICE OF THE
GENERAL COUNSEL

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

): Parent (or Representative): M. HULL / P. DALTON    Fax No.: 742-2098
(703) 739-2323

LEA Legal Counsel: R. PEIMES

E: ▓▓▓▓▓▓▓▓▓▓▓  and (LEA) DOB: ▓▓▓▓▓▓
   Student's Name

ROM:  SHARON NEWSOME
      Special Education Student Hearing Office Coordinator

ATE SENT:  11/9/06

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

e Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
10/6/06 . Please be advised that the hearing has been scheduled for:

DATE:  12/1/06

TIME:  11:06 AM

262

AT:  825 North Capitol Street, NE, Washington, DC
     8th Floor

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney:Miguel Hull, Esq.**
**Parent: Dwanda Holtzclaw**

Telephone Number: **(202) 742-2015**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **October 6, 2006**

Please find attached a copy of a Scheduling Memorandum regarding:

Student: ███████

School: **Attending Friendship SE Elementary Academy**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged. The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

263

TRANSMISSION VERIFICATION REPORT

```
TIME    : 10/06/2006 17:41
NAME    : STATE ENFORCEMENT
FAX     : 2024425253
TEL     :
SER.# : 000D6J436181
```

```
DATE,TIME          10/06  17:40
FAX NO./NAME       97422098
DURATION           00:00:57
PAGE(S)            03
RESULT             OK
MODE               STANDARD
                   ECM
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax



## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Miguel Hull, Esq.**
**Parent: Dwanda Holtzclaw**

Telephone Number: **(202) 742-2015**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **October 6, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: ███████████
School:  **Attending Friendship SE Elementary Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

                    **Thank You**
                    **Marica Brown**

264

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
                        TIME : 10/06/2006 17:46
                        NAME : STATE ENFORCEMENT
                        FAX  : 2024425253
                        TEL  :
                        SER.# : 000D6J436181
```

```
DATE,TIME            10/06  17:42
FAX NO./NAME         95620726
DURATION             00:03:59
PAGE(S)              11
RESULT               OK
MODE                 STANDARD
                     ECM
```

**Complaint Intake Unit**
**825 North Capitol Street, NE- 8th Fl.**
**Washington, DC 20002**
**(202) 442-5693**



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
**Special Education Coordinator**

Telephone Number: **(202) 562-1980**              Pages: **11**
        Fax Number: **(202) 562-0726**              Date: **October 6, 2006**

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due Process Complaint Notice regarding:**

Student: 

School:  **Attending Friendship Southeast Elementary Academy**

**The complaint Intake Unit is responsible for only providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, regarding any fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 724-6556.**

265

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:                                ) BEFORE A SPECIAL EDUCATION
                                                 )
▬▬▬▬▬▬▬                          Petitioner    ) HEARING OFFICER
                                                 )
            Vs.                                   )
                                                 )
**DCPS**                                          )
**Attending Friendship SE**                       ) DISTRICT OF COLUMBIA
**Elementary Academy**
                                                 ) PUBLIC SCHOOLS
                    Respondent                    )

# SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on **October 6, 2006**

3.  The deadline for the resolution meeting is  **October 21, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  *Prior Written Notice Not Issued by the Local Educational Agency*.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

   1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;

266

Rev'd. 7/6/05

3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **October 16, 2006**.

C.    *Deficiency Notice*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, within 15 days of receiving the notice of the complaint, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **October 21, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

267

***State Education Agency for the District of Columbia***
***State Enforcement and Investigation Division (SEID)***
***Special Education Programs***



# ADMINISTRATIVE DUE PROCESS COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8ᵗʰ Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.   INFORMATION ABOUT THE STUDENT:

Student Name: █████████████                    DOB: █████████

Address:      916 Savannah St., SE, Washington, D.C. 20032

Present School of Attendance: Friendship Southeast Elementary Academy

268

Home School:          DCPS _____
                      (Neighborhood school)

              Parent/Guardian of the Student:   Dwanda Holtzclaw

**B.      Legal Representative/Attorney (if applicable):**

Name: Miguel A. Hull, Esq.          Phone: (W) _202 742-2015____   (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005 _____

Will attorney / legal representative attend the resolution session?   **X** Yes          | | No

**C.      Complaint Made Against (check all that apply):**

**X**    DCPS

**X**    Charter school (name of the charter school if different from page
one)_____    _____

__ Non-public school or residential treatment facility (name)

_____   ...   _____

¯| Parent

**D.      Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

**X** I wish to waive the Resolution Session Meeting

**E.      Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing _only_ at this time.**

**F.      Facts and Reasons for the Complaint:**

                    **I.   Nature of the Problem.**

_____ is a ten-year-old special education student attending Friendship Southeast Elementary Academy ("FSEEA") in the District of Columbia. On October 3, 2006, an MDT meeting took place for____ at FSEEA. During the meeting,_____

269

Individualized Educational Program ("IEP") was revised classifying him with multiple disabilities [other health impaired and emotionally disturbed] and entitling him to 26.5 hours per week of specialized instruction, in the special education setting, and one hour of counseling per week.[1] The parent now respectfully asserts the following violations against FSEEA, as the respective local education agency ("LEA"), and District of Columbia Public Schools ("DCPS") as the respective state education agency ("SEA")[2]:

1. **Failure to properly implement IEP –failure to provide specialized instruction in a special education setting as called for by previous and current IEP's.** FSEEA does not have a separate classroom, also known as a resource room, to provide special education. The only specialized instruction that the school can provide ▮▮▮▮ with is what is known as "inclusion." In other words, rather than have ▮▮▮▮ go to a

---

[1] A previous IEP, dated December 5, 2005, classified ▮▮▮▮ with a specific learning disability and entitled him to 12.5 hours per week of specialized instruction, 10 of those hours in a special education setting and 2.5 in the general education setting. Apparently, on December 5, 2005, the same day that the IEP was developed, an addendum to the IEP was also developed reducing ▮▮▮▮ specialized instruction in the special education setting from 10 hours per week to only 5 hours per week. The parent filed a due process complaint against the charter school and District of Columbia Public Schools for the apparent reduction of hours on the December 5, 2005 IEP. That complaint resulted in a settlement agreement between the parent and the charter school whereby the charter school agreed to conduct certain evaluations and provide 36 hours of compensatory tutoring. That tutoring is current being provided by the charter school.

[2] On October 4, 2006, the parent, through counsel, provided written notice to DCPS of the problems with the charter school and requested that DCPS, as the SEA assist in remedying those problems. Regardless of this notice, however, the SEA is ultimately responsible for ensuring evaluations and a FAPE. *See* Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1412 (a) (11); 34 C.F.R. §. 300.101 (c) (1) ("Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services [ . . . ]"); 34 C.F.R. §. 300.227 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); 34 C.F.R. §. 300.149 (a), ("The SEA is responsible for ensuring that the requirements of [Part B of the IDEA] are carried out."); D.C. Mun. Regs. tit. 5 § 3801.1 ("The Board of Education's State Education Agency responsibilities shall include, but not be limited to: (a) Acquisition and administration of federal grants on behalf of funding or services for all eligible local education agencies in the District of Columbia, including public, public charter and private schools; (b) Ensuring that all local education agencies in the District of Columbia are in compliance with the provisions of the Individuals with Disabilities Education Act (IDEA)"); S. Rep. No 168, 94th Cong., 1st Sess. at 24 reprinted in [1975] U.S. Code. Cong. & Ad. News 1425, 1448. ("The requirement in section 300.600 (a) [that the SEA be responsible for ensuring rights under IDEA] reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State . . . Without this requirement, there is an abdication of responsibility for the education of handicapped children."); Kruelle vs. New Castle County Sch. Dist, 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); Gadsby vs. Grasmick 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending; and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) (On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings. SEA was liable for attorney's fees subsequently incurred at District Court proceedings because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

270

10/06/2006 16:09 FAX  2027422098        James E Brown & Assoc.                    ☑005/008



separate special education classroom to receive specialized instruction from a certified special education teacher, ▇▇▇▇ instead remains in a general education classroom and receives his specialized instruction from the special education teacher who comes into the general education classroom. This inclusion scheme is not what ▇▇▇▇ IEP calls for. According to his current IEP, ▇▇▇▇ is to receive 26.5 hours per week of specialized instruction in a separate classroom without any general education students. Similarly, the previous IEP, dated December 5, 2005, which entitled ▇▇▇▇ to 10 hours of specialized instruction per week in a classroom without any general education students. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[. . ]."); § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ]."); 34 C.F.R. § 300.17 & 39; and D.C. Mun. Regs. tit. 5 § 3000.1.

2. **Inappropriate placement**. FSEEA is not an appropriate school for ▇▇▇▇ because the school cannot implement the current IEP as written, which calls for a full-time placement out of the general education setting. Moreover, since being at that school, ▇▇▇▇ has engaged in severely aggressive behavior with his teachers as evidenced by the written reports that the school has produced. ▇▇▇▇ clearly requires a more structured school that can handle his behavioral outbursts and actually provide his specialized instruction. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1401 (9) (D) ("FREE APPROPRIATE PUBLIC EDUCATION- The term 'free appropriate public education' means special education and related services that are provided in conformity with the individualized education program[. . ]."); 20 U.S.C. § 1401 (29) (D) (" The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ]."); 20 U.S.C. § 1414 (e) (public agency to ensure that parents are involved in the placement decision); 34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (placement is to be in the least restrictive environment, based on his IEP as determined by team including the parents); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. tit. 5 § 3000. See also footnote 2.

## II. Issues presented.

1. Whether FSEEA, as the LEA, and DCPS, as the SEA have inappropriately failed, and continue to fail, to provide/ensure specialized instruction in a special education classroom as called for the current and previous IEP's; and
2. Whether the placement location at FSEEA is appropriate?

## III.   Relief Sought.

1) a finding in the parent's favor as to each of the claims raised here;

2) That FSEEA and / or DCPS be ordered, or agree, to:

271

a) Begin providing, within 24 hours, the full 26.5 hours of specialized instruction per week as called for by the IEP dated October 3, 2006;

b) Fund 200 hours, or some other reasonable amount considering that this in a ongoing violation, of one-on-one tutoring as compensatory education for the student to make up for services that were denied;

c) Fund interim or permanent placement with transportation to one of the following: Foundations; Rock Creek Academy; Frost School; Accotink; High Roads in Maryland; or some other appropriate school;

d) Alternatively, convene an MDT meeting within ten business days to determine any additional compensatory education that may be due; and identify placement with placement to be made within five business days if for a public school or within thirty calendar days if for a non-public school;

3) that DCPS provide any other relief deemed appropriate and relating to the violations committed here;

4) that DCPS be ordered or agrees to pay parent's reasonable attorney's fees and costs;

5) All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

6) Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

7) In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement dated May 12, 1987, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

8) The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

9) Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

10) That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §

272

1415 (c) (2) (B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

11) That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

12) That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

13) That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

14) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a Resolution Session Meeting.

15) That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, if applicable, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

16) That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B) constitute joint

273

waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17) A finding that the parent is the prevailing party in this action.

## G.    <u>Accommodations and Assistance Needed</u>:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other _____

## H.    <u>Signature:</u>

_____                    October 6, 2006
Legal Representative / Advocate (if applicable)            Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

274

10/06/2006 16:09 FAX 2027422098          James E Brown & Assoc.                    ☒001/008

# James E. Brown & Associates, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Omar Karram |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

-------------------------------

e-mail: Admin@Jcblaw.biz

! Admitted in Bolivia Only
‡ DC Bar Special Legal Consultant

# *FAX COVER SHEET*

**DATE:**        October 6, 2006

**TO:**          Student Hearing Office
                 District of Columbia Public Schools

**PHONE:**       202-442-5432

**FAX NO:**      202 442-5556

**FROM:**        Miguel Hull, Esq.

**UBJECT:**      ▬▬▬▬▬ w DOB: ▬▬▬ – Due Process Complaint.

**NUMBER OF PAGES INCLUDING COVER SHEET:**    EIGHT

**COMMENTS:**

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

275

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF ███████████

HEARING DATE: JANUARY 22, 2007

TRANSCRIBED BY
LEGAL PERSONNEL, INC.  (301) 277-5711

1

## APPEARANCES

| | |
|---|---|
| HEARING OFFICER: | Coles Ruff |
| ATTORNEY ADVISOR FOR<br>    DISTRICT OF COLUMBIA<br>    PUBLIC SCHOOLS | Karen Jones Herbert |
| ATTORNEY FOR PARENT | Miguel Hull |
| PARENT | Ms. Holdzclaw |
| FRIENDSHIP-EDISON SCHOOL | MR. BILL HOUSTON |
| TAFT SCHOOL VIA TELEPHONE | MR. LABONE WORKMAN |
| ACCOKEEK SCHOOL | MS. WARNKE |

1        HEARING OFFICER:  Good afternoon. Today's date is January

2   22, 2007. I'm Coles Ruff, Independent Hearing Officer.  This is

3   an Administrative Due Process Hearing conducted under the

4   Individual with Disabilities Education Improvement Act.  This is

5   the matter of ██████████████    The date of birth is ███████,

6   ██████  Would you all identify yourselves.

7        MS. HERBERT:  Good morning Mr. Ruff, Karen Jones Herbert,

8   attorney advisor DC Public Schools.

9        MR. BILL GIBSON:  Good afternoon Mr. Ruff, Bill Gibson for

10  Friendship Edison Southeast Academy Public Charter Schools.

11       MR. HULL:  Good afternoon, Miguel Hull from law offices of

12  James Brown & Associates, on behalf of the parent and the

13  student.  The student's mother is present and waives formal

14  reading of her Due Process Rights.

15       MS. HOLDZCLAW:  Good afternoon, DaWanda Holdzclaw, parent.

16       HEARING OFFICER: Can you identify yourself sir?

17       MR. ROBINSON:  Charles Robinson

18       HEARING OFFICER: Okay.  Thank you.

19       MR. EDISON: Can I ask what his relationship is the ████████

20  ████████████?

21       MS. HOLDZCLAW: Stepfather.

22       HEARING OFFICER:  Okay Mr. Hull do you waive formal reading

23  of the rights?

1        MR. HULL: Yes the parent does.

2        HEARING OFFICER: Okay, the parent does. Okay, Ms. Holdzclaw

3    I am relying upon Mr. Hull to have informed you of your rights

4    and procedures in the Hearing. So I won't go through into any

5    kind of formal explanation of this. I'll just add that I'm an

6    independent Hearing Officer.  I'm not an employee of D.C. Public

7    Schools or Friendship Edison Public Charter School.  And in the

8    capacity of an Independent Hearing Officer, I'll listen to

9    whatever evidence is presented and make – and render a fair

10    impartial decision, okay?

11        MS. HOLDZCLAW: Okay.

12        HEARING OFFICER:  Okay.  Great.  Let's see, I have a

13    disclosure that Mr. Hull submitted which is a witness list of 33

14    documents.  Did you both receive this?

15        MS. HERBERT:  I have not received this.  The way things get

16    mixed upstairs. I'm sure you sent it, but I haven't received it.

17        HEARING OFFICER: Any objection by it being admitted by

18    either of you?

19        MR. EDISON: I have objections to documents to AH10 and AH13

20    through 33. Those are predating the June 22, 2006 settlement

21    agreement, which is our document number 2.

22        HEARING OFFICER: Okay were they received timely?

23        MR. HULL: They were received timely.

4

1        HEARING OFFICER: Well I take that to be a relevance

2   argument.

3        MR. HULL: Yes sir.

4        HEARING OFFICER: So I'll admit them for the purposes of

5   fact that they were disclosed timely, now whether or not I'll

6   give them any weight and consideration --  why don't we see what

7   they are at some point in the hearing.   Okay?  All right so

8   they will be admitted. Did you receive Mr. Houston's disclosure.

9        MR. HULL: Yes I did. No objection from the parent.  That is

10  a witness list and six document.  They'll be admitted then.  It

11  is my understanding that DCPS did not file anything.

12       MS. HERBERT: No sir we had put in a motion to dismiss and

13  we have not received.

14       HEARING OFFICER: You did a motion to dismiss as well?

15       MS. HERBERT: A motion to dismiss, yes we did sir.

16       HEARING OFFICER: And when you'd file your motion.

17       MS. HERBERT: Our motion was done October 24th.   October 24th,

18  2006.

19       HEARING OFFICER:  October 24th.  Umm do you have a copy of

20  that?

21       MR. HULL: I don't believe that I received or the parent

22  received a copy of that motion. I do acknowledge receiving a

23  copy of the Charter School's motion and responding to it.

5

1       HEARING OFFICER: I was looking at your response initially.

2       MS. HERBERT: I have two confirmations (inaudible) of having

3   been received by Dalton & Dalton and Miguel Hull, -- I'm sorry

4   Brown & Associates.  A lot of times we say wrong (inaudible)

5   fax.

6       HEARING OFFICER: Is this being brought against DCPS as SPA?

7       MR. HULL: Yes it is.

8       HEARING OFFICER: Okay.

9       MR. HULL: At this point theoretically DCPS is both the LEA

10  and the SEA given that they - I mean it sort of segways into the

11  opening statement.  So I would suggest whatever you decide to

12  do, at least some of the background before you rule on any

13  motion.

14      HEARING OFFICER: Okay. I'll do that.

15      MR. HULL: I think that'll help you.

16      HEARING OFFICER: I think I'll listen to you first then.

17      MR. HULL: All right then. Well this student has been at

18  Friendship-Edison Southeast Academy --.

19      MR. HOUSTON: Sir?

20      HEARING OFFICER: Yes.

21      MR. HOUSTON:  I have also have a preliminary matter which

22  is a motion to dismiss that Mr. Hull said he has responded to.

23  It is our document number 1.  And we are asking for dismissal

6

1    for two separate reasons. One, is that there is a issue of Res

2    Judicata in this case because there is a settlement on June 22,

3    2006 where Friendship-Edison agreed to provide the student with

4    compensatory education of 36 hours – after school hours and this

5    issue came shortly thereafter – after Friendship-Edison met with

6    the parents and drafted a full-time IEP on October 3, 2006.  So,

7    any – any notion that there was denial of FAPE prior to 2000 –

8    October 3rd, 2006 --.

9       HEARING OFFICER: Prior to when?

10      MR. HOUSTON: October 3rd, 2006.  There would have to be a

11   showing that there was a denial between June 22nd 2006 and

12   October 3rd, 2006.

13      HEARING OFFICER: Okay.

14      MR. HOUSTON: So basically one month of school because we

15   had settled all the other issues on June 22nd.  Also, on October

16   3rd, 2006 we wrote a full-time IEP for this child saying that

17   Friendship-Edison Public Charter could not service this child

18   and we would have to keep him in a bind inclusion program until

19   DCPS found an appropriate placement.  At the resolution meeting

20   on October 27th, DCPS issued a prior notice TAFT.  Since we

21   cannot provide a full-time special education program, it becomes

22   DCPS's responsibility, once we wrote the full-time IEP?

23      HEARING OFFICER: Is he still at Southeast Academy?

7

1    MR. HOUSTON: Yes he is.

2    HEARING OFFICER:  Any other  -- so what - so what - what---

3    so other than Res Judicata is there any other basis for the

4    Motion to Dismiss?

5    MR. HOUSTON: Yes, because it's there calling for a full-

6    time special education placement.

7    HEARING OFFICER: AHH HUMMM

8    MR. HOUSTON: A public charter school does not have the -

9    the obligation nor the right to place a child in a full-time

10   special education program unless that charter school itself have

11   a full-time program.

12   HEARING OFFICER: Okay. Well then.  What I'll need to do is

13   to put your motion in abeyance until I hear some evidence on the

14   Motion, because I'm - are you opposing the Motion?

15   MR. HULL: Yes.

16   HEARING OFFICER:  Because I saw it.  I

17   MR. HULL: Yes we do.

18   HEARING OFFICER: I (Inaudible) So in other words, I'm not

19   going to rule on the Motion if there is a possible that I need

20   to take some evidence on the Motion.  So let me hear from Mr.

21   Hull first so I can understand what his claims are clearly and

22   then I can gauge whether or not they were resolved or dealt with

23   in the settlement agreement.  Mr. Hull go ahead.

8

1      MR. HULL:  Okay ████████ attend during the 05 - 06 school

2    year, ████████ was attending the Southeast Academy of Friendship

3    Edison Southeast Academy Public Charter School.  And there was

4    concerns that his mother was having about him being tested and

5    poor academic performance.

6          HEARING OFFICER: Was he already eligible?

7          MR. HULL: No, I don't think he was eligible at the time.

8    Your indulgence.  No he was, but on a part-time basis.

9          HEARING OFFICER: Okay.

10         MR. HULL: And that is not really relevant, that is just by

11   way of background.  Those issues, there was a complaint filed

12   and then in May or June, the parent and the Charter School

13   reached an off-the-record agreement which is disclosed in one of

14   the various packets that you have. I think it is number 2 in the

15   Charter School packet.

16         HEARING OFFICER: HmmmHmmm.

17         MR. HULL: Whereby the parties agreed to - for the

18   evaluations to be conducted and come back to the table and some

19   comp ed also to be provided.  We're not here to argue anything

20   about that. `What happened - - it's about what happened after

21   they came back to table to review these evaluations. That was

22   October 3rd, the first meeting. So in our packet of disclosure

23   you'll see some notes starting October 3rd when the team came

9

1    together at Friendship-Edison.  Now DCPS was not present at that

2    meeting.  The team developed the full-time IEP, that is number –

3    number 5 in your packet.  Based on that we filed a complaint

4    that has us here today based on what happened at that meeting.

5         HEARING OFFICER: Number 5?

6         MR. HULL: Yes.  Based on what happened that day on October

7    3rd.  We filed a complaint October 6th.  The complaint speaking a

8    little bit towards the motion to dismiss from the charter

9    school, the complaint is not alleging anything that has to do

10   with that settlement agreement.  We – our allegation is that as

11   of October 3rd, the charter school developed a full-time IEP,

12   which they concede they cannot implement.  Nevertheless, there is

13   authority, which I have cited in my complaint, which makes clear

14   that an LEA charter school is responsible for providing FAPE.

15   So until the LEA has been formally changed through the

16   appropriate process, whether they have the legal authority to

17   issue a placement or not, they are legally responsible for

18   provision of FAPE. DCPS at that point was also responsible for

19   this student as the SEA at that time.  This is October 3rd.  Now,

20   DCPS was not at that meeting. If you look at the notes though,

21   the Charter School, one of the participants from the Charter

22   School made clear that DCPS would be notified and that there

23   would be another meeting.  Also, on October 4th, the day after

10

1   that meeting our office on behalf of the parent sent a letter to

2   the appropriate DCPS personnel putting them on notice of the

3   problem.  So even before we filed the complaint, DCPS was put on

4   notice and we just had this meeting — that's is exhibit number

5   3.  We had just had this meeting yesterday, we need a placement

6   for this student, we're letting you know, you need to come to

7   the table with us. That is more or less, that is not exactly

8   what I said --.

9        HEARING OFFICER: You said that on the 4th?

10       MR. HULL: Yes, if you look at number 3.

11       HEARING OFFICER: You filed a complaint on the 6th?

12       MR. HULL: Correct.

13       HEARING OFFICER:  What day of the week was the 4th?

14       MR. HULL: I can look at my calendar.

15       MR. HOUSTON: Wednesday sir.  October 6th was a Friday.

16       HEARING OFFICER: Okay.  Go ahead Mr. Hull.

17       MR. HULL:  Now, the complaint was — this present complaint

18   filed against DCPS as the SEA and the Charter School as the LEA.

19   We've listed authority in the complaint which makes clear that

20   the SEA is ultimately liable for the provision of FAPE. In fact,

21   several federal circuits, the majority a significant number of

22   federal circuits have upheld that notion that an SEA is

23   ultimately liable.  Nowhere in any of those circuits has it been

11

1    a requirement for any kind of notice to the SEA. It's upon the

2    SEA to be - to make sure that free appropriate public education

3    is provided to students. So with that in mind we filed this

4    complaint.  On October 27th, the team came back together, this

5    time with the DCPS employee, Mr. Evan Murray.  Those notes are

6    not in our packet but there are in number 4 in the Charter

7    School's packet.  At that meeting, Mr. Murray on behalf of DCPS

8    issued a prior notice to the Taft School.  The parent and

9    advocate were not comfortable with that and voiced that concern.

10    In fact, they had requested Accokeek Academy.  That had

11    requested Accokeek when the October 3rd meeting had taken place.

12    And then they requested it again with Mr. Murray.

13       HEARING OFFICER:  Okay, did you inform the parent - you

14    represented the parent at the time right?

15       MR. HULL: Yes.

16       HEARING OFFICER: Did you inform the parent under statutory

17    requirement that DCPS is supposed to use - place at a public

18    school first?

19       MR. HULL: Right right.  We're not attacking that, I'm just

20    telling so that you know that we have been consistent with what

21    we've been asking for.  Now the parent was open-minded to

22    consider Taft, the child attending Taft.

23       HEARING OFFICER: Right.

12

1          MR. HULL: But what happened a few days after that, in the

2    weeks after that, the parents spoke to Mr. LaBone Workman who is

3    the Director at Taft.  Mr. Workman, as soon as he learned that

4    this student was a fourth-grader, advised the parent – and she

5    will testify, that he couldn't come there.  First of all he said

6    he didn't know anything about the child.  And this was a week or

7    two after the meeting.  So he wasn't even expecting the child to

8    come.  And secondly, he said that if the child was a fourth-

9    grader he couldn't take him because Taft begins at fifth grade.

10   Based on that we have proceeded with have gone forward with this

11   claim. Now as far as --.

12         HEARING OFFICER: Now what's this classification?

13         MR. HOUSTON:  What was your question, I'm sorry?

14         MR. HULL: He has multiple disabilities, other health

15   impaired and emotionally disturbed.

16         HEARING OFFICER: What's the OA (inaudible).

17         MR. HULL: I believe its ADHD.

18         MS. HOLDZCLAW: ADHD.

19         HEARING OFFICER: Okay.  Thank you.  All right go ahead.

20         MR. HOUSTON: He is also disabled.

21         MS. HOLDZCLAW: Yeah, learning disabled.

22         MR. HOUSTON: LD, speech and language.

23         MR. HULL: That's true.

13

1      MR. HOUSTON: I'm sorry Mr. Hearing Officer.  Learning

2   Disabled, ED, and OHI.

3      MR. HULL: I'm sorry about that, it's on the IEP number 5 in

4   the packet.  So pursuant to the stay put procedures, the

5   students remained at the Charter School. He has not attended

6   Taft, which on its face is inappropriate since Mr. Workman

7   himself made clear. Now you might hear some argument from DCPS

8   if we go into the substance of this case, well if the student

9   was retained they could still take him because they could just

10  bump him up to the fifth grade at Taft. But if you look at his

11  scores and his psychological educational which are disclosed,

12  that would be completely inappropriate.  That would basically be

13  shoe-hoarding this student into Taft so that he would fit into

14  Taft.  Not the other way around.  The law is very clear, shoe

15  hoarding is inappropriate.  That the school needs to be

16  appropriate to this student's individual's needs.  This student

17  does not need to be bumped up to the fifth grade just so he

18  could go Taft so that DCPS can that they've issued an

19  appropriate placement. That doesn't make it appropriate. If

20  anything, that would make it more inappropriate.  Now speaking

21  to the --.

22      HEARING OFFICER: Now let me ask you this, did you attempt

23  to amend this complaint against Taft?

**14**

1        MR. HULL: It is not necessary because the issue is DCPS and

2   the Charter School have failed to issue an appropriate

3   placement.   That issue still stands.   Nothing has changed.

4        HEARING OFFICER: Well you know one of the remedies that I

5   could grant is simply to have a placement meeting.

6        MR. HULL: I know but, I know but, I think after you hear

7   that the problems that this child has been having --

8        HEARING OFFICER: Uhhh Hmmmm.

9        MR. HULL: If you are going to balance the equities.   That

10   would come down to equities.   Who's been harmed more?   Through

11   DCPS's own mistake.   Here's the thing, Mr. Murray supposedly is

12   the person employed by DCPS who should know these things.   The

13   parent found out on her own from Mr. Workman. So who - if you

14   are going to --- I would hope you would balance the equities

15   when you decide what to order in this case and the equities I

16   think tilt in ▆▆▆▆▆ favor completely.   We're not responsible

17   for Taft not accepting him.   They are.   We're not responsible

18   for him even going to Taft.

19        HEARING OFFICER: Well it depends on what - which way I look

20   at this.   I can judge this either from the point on which the

21   complaint was filed.

22        MR. HULL: The issue hasn't changed though.

23        HEARING OFFICER: Because one of the things I don't have a

**15**

1    disclosure from Ms. Herbert or anything.  So technically, if –

2    technically if – she was – I don't know what your position is

3    with regard to her defending Taft because really Taft if not in

4    front of me.

5         MR. HULL: That's their defense.  Our issue still is to

6    date, when we filed this complaint, they issued an appropriate

7    placement.  And they still haven't issued an appropriate

8    placement.

9         HEARING OFFICER: Right.

10        MR. HULL: I really don't have to get into Taft.  I will

11   because that would be their only defense.

12        HEARING OFFICER: Right.

13        MR. HULL: Substantive defense.

14        HEARING OFFICER: Right. Let's deal with – since I'm dealing

15   with Mr. Houston's Motion first.  He has representation to me as

16   I understand it is that this allegation only arises only from

17   the point of which a full-time IEP was drafted.

18        MR. HOUSTON: That's correct sir. So for us – for them to e

19   saying that on October 3rd or on October 6th, we had somehow

20   violated.  That is way the Res Judicata. The only time we would

21   have violated this child's right was before June 22nd.

22        HEARING OFFICER: Okay.

23        MR. HOUSTON:  After June 22nd, we did the testing as Mr.

16

1  Hull had said.  And we had a meeting on October 3rd. We did what
2  we were supposed to do.
3      HEARING OFFICER: But there is no dispute as of October 3rd,
4  this child was entitled a full-time special education placement
5  that Friendship-Edison could not provide.
6      MR. HOUSTON: That's correct.
7      HEARING OFFICER: Okay, so those facts are established.
8      MR. HOUSTON: So those facts we are not disagreeing with.
9  However, on October 6th, if DCPS is - there practice is five days
10  to issue a notice of placement to a public school, thirty days
11  to a non-public school. On October 6th, this case was not right.
12  Friendship-Edison had not, even according to Mr. Hull's fact
13  pattern had not violated this child's rights up until October
14  3rd.  On October 3rd when he needed a full-time placement, that
15  became a DCPS issue and fortunately for Friendship-Edison even
16  if we did not notify DCPS of this meeting of October 1st, that's
17  inarguendo, even if we didn't Mr. Hull put them on notice on
18  October 4th, as his document show.  So, two days later we had not
19  violated this child's rights at all. We had not denied ████████ a
20  free appropriate public education at this time.
21      HEARING OFFICER: HmmmHmmm.
22      MR. HOUSTON: Therefore, the reason the Res Judicata was you
23  can't find anything prior to October 3rd because that was part of

17

1    the June 22nd settlement that we would do testing and we would do

2    compensatory education.  As part of that settlement agreement we

3    came back and had a meeting on October 3rd when we found he

4    needed a full-time placement.

5        HEARING OFFICER: HmmmHmm.

6        MR. HOUSTON:  Thereafter, it no longer became our duty to

7    provide him FAPE, it became DCPS's but, this complaint didn't

8    give anybody any opportunity to provide this child FAPE.  And

9    here it is, we are at January 22nd, this was continued from

10    December 1st at the parent's request. There has been no

11    amendments to say what the failure is.  You cannot give

12    prospective relief.  Perhaps, there is a violation today for

13    DCPS not finding an appropriate placement. I'm not going to

14    argue that. But at the time this hearing request was filed of

15    October 6th, no one had violated this child's rights.

16        HEARING OFFICER: Where was the resolution meeting held?

17        MR. HOUSTON: The resolution meeting was held at Friendship-

18    Edison on 27th, where Mr. Murray and you'll see our prior notice,

19    that was the date that the prior notice was issued at Taft.

20        HEARING OFFICER: Right.  There is no dispute that that

21    occurred right?

22        MR. HULL: No.

23        HEARING OFFICER: So, was there any documentation or

18

1   anything - or anything - I know Mr. Hull sent a letter to DCPS

2   on the 4th?  Who was that addressed to?

3        MR. HULL: Your indulgence please.

4        HEARING OFFICER: HmmmmHmmm.

5        MR. HULL: Marla Oaks, the Director of the Division of

6   Special Education and it was copied to the Office of General

7   Counsel.

8        HEARING OFFICER: Did you get a response from them?

9        MR. HULL: No.  Well we had the meeting on 27th, so in a way

10  yes, Mr. Murray came to the meeting. He didn't even respond to

11  their request.

12       HEARING OFFICER: Did they - that's my point.

13       MR. HULL: October 3rd and October 27th, Mr. Murray was there.

14       HEARING OFFICER: Did - did --- Did Friendship have any

15  communication with DCPS to initiate that placement process?

16       MR. HOUSTON: Yes because Mr. Murray would not have shown up

17  to our school. DCPS --.

18       HEARING OFFICER: So what - is there in the record that

19  indicates that?

20       MR. HOUSTON: There is not any documents to show how we

21  invited him - or probably by phone call.

22       HEARING OFFICER: Was the 27th the resolution meeting?

23       MR. HOUSTON: It was a resolution meeting; it turned into a

19

1  placement meeting.

2       HEARING OFFICER: So what I'm trying to discern is whether –

3  whether there was something other than the complaint that

4  initiate – whether it was Mr. Hull's letter on the 4th that

5  initiated DCPS's coming to the table to give this child a

6  placement? And the complaints is against both –

7       MR. HULL: Yes.

8       HEARING OFFICER: On the face of the complaint?

9       MR. HULL: Yes.

10      HEARING OFFICER: So when you filed the complaint, it

11  immediately sent.  The Student Hearing Officer responses to the

12  (inaudible) to the school.

13      MR. HULL: Pursuant to standard operating procedures, we

14  filed it with the Student Hearing Office --.

15      HEARING OFFICER: HmmmHmmm.

16      MR. HULL: And that's how OGC becomes aware of it through

17  them.

18      HEARING OFFICER: HmmmmHmmm.

19      MR. HULL: We also send a courtesy copy to the counsel for

20  the charter school.

21      HEARING OFFICER: Oh you sent it directly to --.

22      MR. HULL: I have to check; I don't remember exactly how we

23  got it to the Charter School.

20

1          HEARING OFFICER:  All right. Okay.

2          MR. HULL: But it was probably either directly to the

3    Charter School or through their counsel.

4          HEARING OFFICER: I mean - what I'm trying to discern is - I

5    mean, if you got a complaint within 2 days of a -  2 days of a

6    meeting, I mean - the complaint might have happened faster than

7    any action. But I'm just trying to on Friendship-Edison's part,

8    to contact DCPS. But I'm just trying to see if there was any

9    kind of any --.

10          MR. HULL: The letter came two days before the complaint.

11    But even if you were to say, well - it doesn't look like it was

12    right back then.  The fact is it is right now.   It's been right

13    ever since Evan Murray came to the table.  A complaint to

14    dismiss for lack of rightness, for the - it has to be unright on

15    the day that the motion is granted.  When you are looking at

16    this for the first time, it's five months right, six months

17    right.  Then any motion for lack of rightness is moot at that

18    point. That's why in a civil court that would be the case. Now I

19    am not conceding that this was not right.  Our position all the

20    long has been DCPS is responsible for this child's ultimately

21    responsible for child's placement.  But another issue in the

22    complaint is, here we have this IEP. And this is why I don't

23    think Res Judicata applies and I would refer you to my written

1  response.   They have two issues in their motion.   Res judicata

2  and then the fact that their - the charter school not the SEA.

3       HEARING OFFICER: HmmmmHmmm.

4       MR. HULL:  Dealing with Res Judicata, the case law is clear

5  on what has to be found for Res judicata to apply (inaudible)

6  general criteria.  Whether the parties in the present suit and

7  the prior suit are the same? Yes.  We have that here.  Whether

8  there was a final judgment on the merits in the prior suit? Not

9  really because it was settlement agreement off the record.

10  Number three though --- whether the causes of action in the

11  present suit and the prior suit are the same - they are not the

12  same.  Because the prior suit had to do with Child Find issues

13  and evaluation issues.  This has to do with the IEP that was

14  developed on the 3rd that they concede they couldn't implement.

15  On the 3rd when they developed that IEP, automatically his

16  placement at their school became inappropriate without   --

17  without argument.  So they couldn't implement his IEP.  So for

18  everyday he's been there, whether it was three days or now it

19  has been months - four months practically, that they are

20  implementing his IEP.  So the claim against the charter school

21  stills stands.  They aren't implementing his IEP.  It's got

22  nothing to do with Res Judicata and what happened before.

23       HEARING OFFICER: What was the basis of your motion Mr.

22

1  (inaudible).

2      MR. HULL: I'd like to speak to that though because I am

3  completely --.

4      HEARING OFFICER: Speak to what?

5      MR. HULL: That motion.  The first time - I am not aware of

6  that motion until today.  And I'm not even aware that it's been

7  ruled on secondly.

8      MS. HERBERT:  What is he talking about?

9      HEARING OFFICER: You had a motion?

10     MS. HERBERT:  Again, I very clearly let you know that the

11  Motion was - here it is.  I have a confirmation sheet to Mr.

12  Hull's office.

13     HEARING OFFICER: Yeah.  What's the basis of your motion?

14     MS. HERBERT: This is --.

15     MR. HULL: May I see that please because I didn't --.

16     HEARING OFFICER: Okay this was filed October the 25th, that

17  is after the resolution meeting.

18     MS. HERBERT: No.  It's the 27th, it's before.

19     MR. HULL: The meeting was the 27th, which kind of raises

20  another --.

21     HEARING OFFICER: That's kind of late for a Motion To

22  Dismiss.

23     MR. HULL: The complaint was filed on the 6th.

1        HEARING OFFICER: Right.

2        MR. HOUSTON: A Motion to Dismiss is ripe until 5 days prior

3   to the Hearing according to (inaudible).

4        MR. HULL: I'll concede that, but I think there would be an

5   estoppel argument.  First of all, if somehow you believe that we

6   got appropriate notice of it, then I would ask you consider an

7   estoppel argument that how can they file a Motion to Dismiss

8   saying they shouldn't be part of this claim, but then they come

9   to a meeting two later.  There actions sort of outdo the

10  argument that they are trying to make in the Motion.

11       MS. HERBERT:  Oh, no, in the first place we have to protect

12  ourselves.  If we didn't come to the meeting, then there would

13  be whenever you all--.

14       HEARING OFFICER: Oh, what her basic motion is they are the

15  SEA not the LEA.

16       MR. HULL: And argued towards that I would say that the SEA

17  is still liable for placement as evidence by their actions on

18  the 27th.

19       HEARING OFFICER: So what remedy are you seeking?

20       MR. HULL: We'll we're seeking a placement at the Accokeek

21  Academy either interim or permanent with transportation. If it

22  was interim then DCPS is welcome to come back to the table. We

23  have about 4 months before the end of the school that gives them

24

1  plenty of time if they want to align something up for the next

2  school year. But in the meantime, this child has been suffering

3  harm at this school. Not necessarily because of any negative

4  actions taken by them, but just because they can't handle him.

5      HEARING OFFICER: HmmmHmmm.

6      MR. HULL: Another thing I want you to consider, first of

7  all I don't concede that I got this Motion, so I don't think it

8  was appropriate, it would be appropriate for you to rule on.

9  Ms. Herbert said in front of you before this Hearing began that

10  it appears to have been some sort of ruling by Mr. Smith. You

11  searched the file and the Student Hearing Officer searched the

12  file and nobody can track this Motion.  Apparently somebody

13  spoke to Mr. Smith and he said that he does not recall.  But Ms.

14  Herbert seems to be pretty sure that she remembers seeing

15  something, in fact she stated to me and Mr. Houston before this

16  Hearing began, she remembers seeing something that dismissed the

17  Charter School but kept DCPS in. Now what worries me about that

18  is that if you were to rule on these either of these motions,

19  there could be a huge injustice done to all of us, depending on

20  how you rule, because you may rule something completely with two

21  days later, all of the sudden Mr. Smith's motion surfaces.

22  That's makes a big mess and that helps nobody.

23      HEARING OFFICER:  Well we'll find out that. I presume he's

25

1    do here in a couple of hours, so we will find that out today.

2         MR. HULL:  Another thing, you have cross motions. Were each

3    side is arguing that we are not responsible because we're the

4    LEA.  We're not responsible because we're the SEA.  Well wait a

5    minute, somebody's – one of them has got to be responsible.  So,

6    otherwise a huge injustice that Congress did not intend by any

7    means will happen against this child.  The case law is very

8    clear that I've cited in my complaint. Several of the federal

9    circuits, courts of appeal have ruled.  They are ultimately

10   responsible and the reason for that is, precisely so that we

11   don't have this situation where a child is sort of left hanging

12   and both other schools are pointing the finger at each other.

13        MR. HOUSTON: Sir?

14        HEARING OFFICER: Yes.

15        MR. HOUSTON: I have somewhat of a rebuttal. I have a letter

16   of invitation to Ms. Holdzclaw on October 3rd, 2006.  The day of

17   the IEP meeting to come back either on the 23rd, 25th or 27th of

18   October to discuss placement, the levels of service and

19   including where identifying a DCSP placement specialist as MDT

20   team member to TAFT.  That was given on October 3rd --.

21        HEARING OFFICER: Can you show that Mr. Hull?

22        MR. HOUSTON: We received this is our office at – on the 6th

23   of October at 11:45 on the 6th.  According to the timesheet of

1    the transmission of the Hearing Request on the 6th, the timesheet

2    was at 4:09. So this was given to Mr. Duwass, our Associate five

3    hours prior to the - the - the--- the—the submittal of this

4    Hearing Request.

5        HEARING OFFICER: HmmmmHmmm.

6        THE HALL: So what counseling if arguing, if I may, is that

7    this request should be dismissed because we were invited to a

8    meeting --.

9        HEARING OFFICER: Okay.  What I am taking from the Motion to

10   Dismiss is not - I'm taking that to a Motion to Dismiss on the

11   Merits not simply on - because he's presenting evidence as to

12   why he thinks there is no denial of FAPE, as with regard to

13   Friendship-Edison. I take that to be alternative argument to the

14   Motion on Res Judicata.  Because what's he said that he's not

15   claiming anything prior to Octobers 3rd.

16       MR. HOUSTON: If he is claiming anything to prior to -

17       HEARING OFFICER: He's not.

18       MR. HOUSTON: Then this Hearing Request is premature.

19   Regardless of what MR. HULL argues, you cannot file a Hearing

20   Request and say I think DCPS or Friendship-Edison is going to be

21   denying this child rights, just because it so happens after the

22   fact on October 6th, when he filed this--.

23       HEARING OFFICER: HmmmmHmmm.

27

1      MR. HOUSTON: He has to prove on that day there was a denial

2   of FAPE. Not on January 22nd is there a denial of FAPE.  He has

3   to prove on that date.  And by – according to his statement and

4   the reason the res judicata applies is because we had the

5   meeting on October 3rd as part of the settlement agreement.  And

6   anything – and he's not even alleging an denial before October

7   3rd.  He's saying only after October 3rd and in that case, this

8   Hearing Request is premature one (1).  Number two (2) he did not

9   give us the opportunity to fix the problem. Number three (3) we

10  did invite the mother to a meeting to discuss placement prior to

11  the filing of the this case and four (4) we are not – we cannot

12  be held responsible for placing a child outside the Friendship-

13  Edison educational.

14      HEARING OFFICER: MR. HULL you did not file another

15  complaint right?

16      MR. HULL: No, but I'd like to respond to what was just

17  said. Again going back to Res Judicata, the three criteria of

18  the case law is more than established and not just this

19  jurisdiction but every jurisdiction.

20      HEARING OFFICER: Is all of this in your response?

21      MR. HULL: In my response I cite the case law in this

22  jurisdiction as what you need to find in order to believe that

23  res judicata applies.  Those criteria are not satisfied.

28

1      HEARING OFFICER: HmmmHmmmm.

2      MR. HULL:  The only one that is fully satisfied and we'll

3   concede that is that we're talking about the same parties, other

4   than that it is not the same cause of action, it couldn't

5   possibly be because we're talking about something that happened

6   on October 3rd.  For it to be the same cause of action, I would

7   have to be a mind reader – read the future when I filed the

8   first complaint. The events in this complaint had not transpired

9   with the first complaint was filed. So we have a time problem

10  here.  But also, October 3rd.  There are two complaints. One came

11  well before October 3rd.

12      HEARING OFFICER:  There was a complaint resulting in a

13  settlement agreement?

14      MR. HULL: Yes that is how we got the settlement agreement.

15      MR. HOUSTON: Yes, May 2nd.

16      MR. HULL: But if the same cause of action –

17      HEARING OFFICER: You don't need to restate yourself on that

18  one.

19      MR. HULL: Yeah, I won't belabor that point. Now as far as

20  this being premature.

21      HEARING OFFICER: Yes that is the issue.

22      MR. HULL: I'd be happy to speak to that. I can prove right

23  now --.

29

1      HEARING OFFICER: HmmmmHmmm.

2      MR. HULL: That they have denied FAPE to this student on the

3   day I filed the complaint which was October 6th. How can I prove

4   that?  October 3rd you have a full-time IEP.  The moment that IEP

5   is signed off by the team --.

6      HEARING OFFICER:    HmmmHmmm.

7      MR. HULL: They have to provide FAPE within a reasonable

8   time after that.  A reasonable time does not mean the thirty

9   time, a reasonable time probably means within 24 hours.   That

10  was his IEP.  That was what he was entitled to as of October 3rd.

11     MS. HERBERT: That is not true.

12     MR. HULL: There is no authority that says they get a

13  honeymoon period.  Once the IEP is in place that is what FAPE is

14  for the child.  That is the services, so on October 4th, he shows

15  up at school.  Both of them are under an obligation to implement

16  that IEP. That is the issue in the complaint. So if you want me

17  to just stick with October 6th, I can prove that on October 6th,

18  the Charter School --.

19     HEARING OFFICER: I don't think there is any dispute about

20  that.

21     MR. HULL: Then by their own argument, then we would have to

22  prevail.  Now, the reason the other things become relevant

23  because it goes to the remedy.  What is the appropriate remedy?

30

1    There has been no reasonable remedy to this student. He is still

2    without an appropriate placement. He has remained at Friendship-

3    Edison, as is his right.   We're not going to argument anything

4    about that. He is entitled to remain there until an appropriate

5    placement is offered.

6         HEARING OFFICER: Well Mr. –

7         MR. HULL: We went to that meeting, we jumped through the

8    hoops, they have yet to offer to an appropriate placement.   The

9    fact that they –

10        MR. HOUSTON: The ..The..

11        HEARING OFFICER: Wait a minute, I can't listen to both of

12   you at one time.

13        MR. HULL: I'll just be very brief, I hadn't finished.   The

14   fact that they offered a meeting and that we accepted a meeting

15   on the day that we filed a complaint. Nowhere.   Nowhere in the

16   law does it say we are estopped from filing a complaint because

17   a meeting is pending.

18        HEARING OFFICER: So you did accept that meeting?

19        MR. HULL: No. We went to the meeting.   That was the October

20   27th. We go to all -- all of --.

21        HEARING OFFICER: And so that was one of the dates that was

22   on the invitation?

23        MR. HULL: I think this is what -- this is what brought

31

1    about --.

2          HEARING OFFICER: Oh.  Okay.

3          MR. HULL: The October 27th.  But if and on October 27th that

4    had offered an appropriate placement, we wouldn't be here.  This

5    case wouldn't never gone this far.  Because the parents - the

6    parent wouldn't gotten a reasonable relief at that point.  But

7    because she didn't reasonable relief and she still hasn't gotten

8    reasonable relief, this claim has continued.  So you're right we

9    don't have to prove that -- .

10         HEARING OFFICER: It doesn't sound like I need any evidence

11   other than what's already on the documents.

12         MR. HULL: We are still stipulating what Mr. Workman told

13   the parents - I would like you to hear from the parent as to her

14   conversation with Mr. Workman.

15         HEARING OFFICER: About what?

16         MR. HULL: Well I don't know if they are going to raise -

17   they argued in their opening that as a defense --.

18         MS. HERBERT: We haven't had an opening.

19         HEARING OFFICER: Laughter.

20         MR. HULL: She argued in her Motion then --

21         HEARING OFFICER: Laughter.

22         MR. HOUSTON: Laughter.

23         MS. HERBERT: I see where you're coming from.

32

1       MR. HULL: DCPS counsel argued in her Motion --.

2       HEARING OFFICER: HmmmHmmm.

3       MR. HULL: That Taft was appropriate that they could take

4   the child because of the fact that he'd been left back, he could

5   be bumped up to the fifth grade.  I feel that in light in

6   statement, I feel - the parents feel compelled to present

7   evidence to rebut that argument, since the burden of proof is on

8   the parent for the substantive issues.

9       MR. HOUSTON:  Mr. Hearing Officer, if I may.

10      HEARING OFFICER: Yes.

11      MR. HOUSTON: We did not give anyone any reasonable amount

12  of time on October 6th to find an appropriate placement.  If

13  parents are arguing that Friendship-Edison is not an appropriate

14  place and we agree. And that's why we sought help from DCPS. If

15  the parents are saying that Southeast Academy continues to

16  violate to this child, it is only because of the parent's stay

17  put.  You cannot force Southeast Academy to say, "You violated

18  our rights, but we want you to keep him, so that we have an

19  ongoing violation."  That would never make sense.  That's Mr.

20  Hall's argument.  That on October 6th, he said he can prove that

21  there was a denial on the 4th and 5th, and 6th of that - three

22  days we denied him a free appropriate public education but since

23  that day, they kept him there.

33

1      HEARING OFFICER: Okay.  Uhhh.

2      MR. HOUSTON: It was no reasonable--.

3      HEARING OFFICER: What was the reason for the continuance.

4      MR. HULL: The parent's advocate Mr. Fernandez was ill. He's

5 available by phone.  On that day he was ill.  He's available by

6 phone today.

7      HEARING OFFICER:  Okay.

8      MR. HOUSTON: It still goes to the – the reason I continue

9 to say the Res judicata. If he is stipulating that we did not

10 violate before October 3rd then the Res Judicata issue goes away.

11 But October 6th, he filed a Hearing Request for what happened on

12 October 3rd.  It is common practice in the District of Columbia

13 to give DCPS five days to issue notice of placement to a public

14 school, thirty days to private school. Mr. Hull did not give

15 DCPS that opportunity when he put on them notice of 4th.

16      HEARING OFFICER: Okay, I've heard Mr. Houston.

17      MR. HOUSTON: So, he's saying --.

18      HEARING OFFICER: You're repeating yourself now.

19      MR. HOUSTON: Yes sir.  There is no reasonable amount of

20 time between the 3rd and the 6th to implement this IEP.

21      HEARING OFFICER: I heard that.

22      MR. HULL:  My concerns is that these issues keep being

23 edited.

1       HEARING OFFICER: Do you have any objections to this being

2   admitted?

3       MR. HULL: Yes.

4       HEARING OFFICER: You do?

5       MR. HULL: Yes I do.

6       HEARING OFFICER: Okay.  So Ms. Herbert. (chuckle) What's

7   your position in all this?

8       MS. HERBERT: Basically DC Public Schools offered a

9   placement and transportation to Taft.  The special ed

10  coordinator programmer at Taft, Mr. Workman, since he did speak

11  to the mother, he does remember speaking to the mother.  He did

12  not get the age of the child, but he did the grade of the child.

13  The child is in the fourth grade.  He asked me had the child

14  been left behind.  I said yes he has.  He says, "Well", he can,

15  he's basically deals with the disability of the child, which I

16  related to them. And he says they can work with the disability

17  and they can also work with the child, but they would again,

18  enter him into the fifth grade and work with his disability, as

19  they have to do and basically take care of the child there at

20  Taft.  They can do that.

21      HEARING OFFICER:  So I presume the parent does not want

22  that?

23      MR. HULL: Correct.

1      HEARING OFFICER: So technically that the issue of the

2  appropriateness of Taft is really not in front of me.

3      MR. HULL: Well it is --.

4      HEARING OFFICER: Now it can be in front of me, if you all

5  want it to be in front me which means, she hasn't filed any

6  disclosures. That meant that you'd have to - she has to be

7  prepared to adjudicate on that - and you know -- that I wouldn't

8  take any kind of challenge to whatever kind of evidence you want

9  to present on that because she doesn't have disclosure.

10     MR. HULL:  The fact that --

11     HEARING OFFICER: But I'm not arguing

12     MR. HULL: Arguing Taft as a defense compels me, since the

13  burden is on the parent, compels the parent to present her

14  response to her argument through evidence.  So I take not -

15     HEARING OFFICER: I would just tell you that - and I would

16  just tell you for future reference to Mr. Hull, that what might

17  be - I know that when you file a new Hearing Review - you can't

18  amend a Hearing Request without approval of opposing counsel.

19  And when you file a new Hearing Request, you stand in the back

20  of line. And strategically that may be a reason why you didn't a

21  new Hearing Request.  But if I had a new Hearing Request, then

22  there may be some discretion in terms of consolidating the

23  matter.  You know so that all of those issues are in front of

36

1    us.   But again, I know strategically it might not work, because

2    then, there is another, there's another resolution meeting that

3    has to be held and who knows.

4        MR. HULL: I don't' know if another Hearing Request is

5    called here. The issues still stands.   That they've yet to offer

6    an appropriate placement.   That is an inappropriate placement at

7    Friendship-Edison.   They came to try to remedy the parent's

8    pursuant to the relief that is built in - the relief procedures

9    that are built in resolution meeting.   They have 30 days to

10   satisfy the parent.   That doesn't satisfy the parent.   The issue

11   continues.

12       HEARING OFFICER: Okay.

13       MR. HULL: If they want to defend their defense, that's

14   there - but it is not a new issue.   It's a defense - that's how

15   I see it. It's not new issue. I know it gets fuzzy with all--.

16       HEARING OFFICER: Well I can just tell you this. I will

17   entertain your any evidence you want to put on for Accokeek.

18   But at this point because of the posture of the case, I can tell

19   you I am not inclined to put a kid in a private school when I

20   don't even have the public school in front me.

21       MR. HULL: But you do.

22       HEARING OFFICER: They just - technically I don't.

23       MR. HULL: The Charter School disclosed it.

37

1        HEARING OFFICER: Disclosed the notice of placement?

2        MR. HULL: The notice of placement in the notes?  DCPS was

3   at that meeting.  They are the ones that brought that notice of

4   placement about.  You do have it in front of you.

5        HEARING OFFICER: Well.

6        MR. HULL: There is no prejudice here to anybody.

7        HEARING OFFICER: Well, what I am saying. What I am saying

8   Ms. Ah --- Ms. Ah----- Ms. Herbert do you want to go forward on

9   this and - and deal with the appropriateness of Taft.

10        MS. HERBERT: If that is what you'd like, I have to problem

11   with it.

12        HEARING OFFICER: I have to preference one way or another.

13   All I saying is that --.

14        MS. HERBERT:  If we are available if we would have to prove

15   the appropriateness of Taft.  I think - I think what Mr. Hull is

16   arguing - not the appropriateness of Taft, the fact the

17   youngster --.

18        HEARING OFFICER: Because this will be the issue. The issue

19   is I'm looking IEP. I'm judging Taft as the proposed placement.

20   I'm going to judge this right on Taft. And whether Taft can

21   implement the IEP, whether it is inappropriate for this student.

22   Any evidence you want to present with regard to whether or Taft

23   if inappropriate. You want --

38

1    MR. HULL: I think everybody wants to do that today.

2    HEARING OFFICER: If you're prepared to do that then – we

3    can do they that.  The only problem is that I have a 1 o'clock

4    hearing and it took us then time to get to this.  So.

5    MR. HULL: As do I, but I think the child's needs scream out

6    for some relief today.

7    HEARING OFFICER: Okay.

8    MR. HULL: This case. Everybody has had plenty of time.  The

9    charter school and DCPS has had plenty of time to do something.

10    HEARING OFFICER: Okay. Any indication that DCPS is going to

11    come back with anything than Taft?

12    MS. HERBERT: I don't believe so, sir.

13    HEARING OFFICER: Okay.

14    MR. HULL: And consider if you order this immediately then

15    kick up back to a meeting.

16    HEARING OFFICER: I'm fine as far as I'm concerned Mr.

17    Houston do you have anything else to present?

18    MR. HOUSTON: Yes sir.  The thing is in this Hearing

19    Request, the relief appears (inaudible).

20    HEARING OFFICER: Yeah.

21    MR. HOUSTON: Begin providing within 24 hours the full 26.5

22    hours of specialized instruction.  We can't provide that.

23    HEARING OFFICER: Right.

1      MR. HOUSTON:  A fund of 200 hours or some other reasonable

2    amount, considering that this is an on-going violation of one-

3    on-one tutoring on October 6th, three days after there is no – I

4    don't think we can make a showing that in three days, even if we

5    go one for one, the number of the hours, even if we didn't

6    provide any services between October 3rd and October 6th, that's

7    only 75 hours, there are literally more of compensatory

8    education. We – we can't provide 200 hours for an October 6th

9    violation of an October 3rd IEP.  The C under there is fund

10   interim or permanent placement to transportation with one of the

11   following Foundation, Rock Creek Academy Prospect, High Roads or

12   some other appropriate schools. We are not authorized to – to

13   provide that relief. Alternative relief would be to convene an

14   MDT meeting with 10 business days to determine any additional

15   compensatory educational that may be due. I don't see how Mr.

16   Hull is going to prove under the Reid standard any compensatory

17   education for three days.  And therefore, I also renew my

18   request to have Friendship-Edison dismissed because even Mr.

19   Hall is saying the only thing he is looking for here is

20   placement. We can't provide placement.  There is no reason for

21   Friendship-Edison to continue.

22      HEARING OFFICER: Okay. Do you want to stay for the rest of

23   the Hearing?

**40**

1      MR. HOUSTON: If you are dismissing us?

2      HEARING OFFICER: No. Not at hand.  I mean, I've heard

3  everything that you have. I don't think there is anything – that

4  there is any witness you can present that would – that needs –

5  that needs to supplement --- that is needed to supplement what

6  is in the record.

7      MR. HOUSTON: I agree sir.

8      HEARING OFFICER: Okay.

9      MR. HULL: Can I call my first witness?

10     HEARING OFFICER: Yes.

11     MR. HULL: I will call DaWanda Holdzclaw to testify.

12     HEARING OFFICER: Okay Ms. Holdzclaw.  Pull that mike closer

13  to you please. State your name again for us.

14     MS. HOLDZCLAW: My name is DaWanda Holdzclaw.

15     HEARING OFFICER: And raise your right hand for us.  Do you

16  swear or affirm that the statements you'll make today will be

17  the truth, the whole truth and nothing but the truth?

18     MS. HOLDZCLAW: Yes.

19     HEARING OFFICER: Okay.

20     MR. HULL: I'd like to just clarify on the disclosure

21  document, the witness's first name is misspelled by two letters

22  and I apologize for that.

23     HEARING OFFICER:  What is it?

1      MR. HULL: The name should be DaWanda Holdzclaw.

2      HEARING OFFICER: dw?

3      MS. HOLDZCLAW: dw.

4      MR. HULL: And it was typed as RW, I apologize.

5      HEARING OFFICER: All right.  No problem.

6      MR. HULL: Can you tell us your name for the record please?

7      MS. HOLDZCLAW: DaWanda Holdzclaw.

8      MR. HULL: And you are ████████████████ mother?

9      MS. HOLDZCLAW: Yes.

10     MR. HULL: And what school was he attending during the last

11  school year, by way of background?

12     MS. HOLDZCLAW: Friendship Southeast.

13     MR. HULL: And what school has he been attending so far?

14     HEARING OFFICER:  Well, I notice this is your regular track

15  record, but some of these are stipulated to, all right.

16  (Laughter).

17     MR. HULL: All right, you attended the meeting on October

18  27, 2006?

19     MS. HOLDZCLAW: Yes.

20     MR. HULL: And after that meeting did you ever have an

21  occasion to contact anyone at the Taft school?

22     MS. HOLDZCLAW: Mr. Workman.

23     MR. HULL: And when about did you talk to him?

1          MS. HOLDZCLAW: I believe it was November 1st, 2006.

2          MR. HULL: And when you talked to him, was this in person or

3    by another person.

4          MS. HOLDZCLAW: Via telephone.

5          MR. HULL: Who called who?

6          MS. HOLDZCLAW:  I called Mr. Workman.

7          MR. HULL: Why did you call Mr. Workman?

8          MS. HOLDZCLAW: Because DC transportation called and said

9    they were picking my son up, the day before he was due to go

10   Taft.

11         HEARING OFFICER: And when was this? I'm sorry again.

12         MS. HOLDZCLAW: I talked to Mr. Workman November the first.

13         HEARING OFFICER: Okay, got it.

14         MS. HOLDZCLAW: And they called the day before, saying that

15   they were picking ▆▆▆▆up to take him to Taft.  And I didn't

16   have no re-acknowledge of that.

17         MR. HULL: Were you familiar with the Taft before calling

18   Mr. Workman?

19         MS. HOLDZCLAW: No.

20         MR. HULL: And when you spoke to Mr. Workman, what did you

21   talk about?

22         MS. HOLDZCLAW: I had told him that transportation had

23   called to state that they were bringing my son there. And he

43

1    said he didn't know ah—anything about him coming and that he had

2    asked me what was his name, his grade and his age.  And I told

3    him his name was ▇▇▇▇▇▇▇▇▇, age was 10, and he was in the

4    fourth grade.  And he said, they don't the start the fourth

5    grade they only begin their school at the fifth.  Then he was not

6    qualified to come because he was in the fourth grade.

7         MR. HULL: And you did tell Mr. Workman's of ▇▇▇ age?

8         MS. HOLDZCLAW: Yes I did.

9         MR. HULL: Since then has anyone from DC Public Schools

10    contacted you to invite you to another meeting to discuss

11    placement?

12         MS. HOLDZCLAW: No.

13         MR. HULL: Have you visited any other school that you think

14    would be appropriate for your son?

15         MS. HOLDZCLAW: Yes.

16         MR. HULL: What school?

17         MS. HOLDZCLAW:  Accokeek?

18         MR. HULL: In Virginia?

19         MS. HOLDZCLAW: Yes.

20         MR. HULL: And did your son visit with you?

21         MS. HOLDZCLAW: Yes he did.

22         MR. HULL: And as far as you know, is that school accepted

23    your son to attend?

44

1      MS. HOLDZCLAW: Yes they have.

2      MR. HULL: And do you think that school could provide an

3 educational benefit?

4      MS. HOLDZCLAW: Yes.

5      MR. HULL: Now your son has not attended Taft?

6      MS. HOLDZCLAW: No.

7      MR. HULL: Ever? Has he remained at Friendship-Edison?

8      MS. HOLDZCLAW: Yes.

9      MR. HULL: Do you think he has been harmed as a result of

10 not having --.

11      MR. HOUSTON: I object. There has been no foundation for

12 this witness to give opinion testimony on whether there has been

13 harm done to this child?

14      MR. HULL: I can re-phrase it. How has your son been doing

15 since October, since October, how has been doing at Friendship-

16 Edision?

17      MS. HOLDZCLAW: Not good because he still not on grade

18 level. He still not getting what he supposed to have. And to me

19 his grades are not improving at all.

20      MR. HULL: What kind of grades has he been getting?

21      MS. HOLDZCLAW: C's, D's and F's.

22      MR. HULL: Has he had any behavior problems since October at

23 Friendship-Edison?

1        MS. HOLDZCLAW: He's been in fights.

2        MR. HULL: How many times would you say?

3        MS. HOLDZCLAW: Like I think, two or three fights.

4        MR. HULL: Has he been suspended for any of these

5    incidences?

6        MS. HOLDZCLAW: He's been suspended one time out of school

7    and suspended in-house suspension?

8        MR. HULL: When was the out-of-school suspension?

9        MS. HOLDZCLAW: Ahh---. I'm not for sures. I (inaudible)

10    date.

11        MR. HULL: Do you remember what month it was?

12        MS. HOLDZCLAW: I think it was either October or November.

13        MR. HOUSTON: I object. I think this is beyond the scope of

14    the 6th, 2006 Hearing Request.

15        HEARING OFFICER: I think it is relevant, I'll allow it.

16        MR. HULL: Thank you.  You think it was either October or

17    November?

18        MS. HOLDZCLAW: Yes.

19        MR. HULL: And what about the in-school suspensions? When

20    were they if you remember?

21        MS. HOLDZCLAW: I believe it was December.

22        MR. HOUSTON: I object to that also.  I object that there is

23    no documentation to verify those dates or the suspensions.

46

1        HEARING OFFICER: Overruled.  I allowed the testimony, you

2   can re-but it if you want.

3        MR. HULL: Okay. I think everyone has stipulated and I'm not

4   trying to beat a dead horse, everyone stipulated that

5   Friendship-Edison can't implement the IEP.  I just want to make

6   clear to the Hearing Officer that things haven't been peachy for

7   this student. That he has on-going problems so there is some

8   substantive problems that play here.

9        HEARING OFFICER: Okay.

10       MR. HULL: But I think --- I think that would be enough at

11  this point.  What would you like to see happen today.

12       MS. HOLDZCLAW: That my son will go to an appropriate school

13  and implement his IEP. Because right now, he's not getting

14  anything and I feel like it is not appropriate to put him in

15  Taft and just push him up to the fifth grade. Because he still

16  not on the fourth grade level and he's in the fourth grade.  So

17  just to push him up to the fifth grade is still not appropriate

18  because he still not on grade level as being in the fourth

19  grade.

20       MR. HULL: When you spoke to Mr. Workman, did he say

21  anything about, "well if your son's been left back a year, that

22  they could work with him," in light of that.

23       MS. HOLDZCLAW: No.

1       MR. HULL: Thank you. I have no further questions.

2       HEARING OFFICER:  Any?  Who wants to go first?

3       MS. HERBERT: I'll.

4       HEARING OFFICER: Ms. Herbert.

5       MS. HERBERT: Basically Ms. Holdzclaw can you tell me when

6   you talked to Mr. Workman did you go over your son's

7   disabilities, did you talk about your son's disabilities at all?

8       MS. HOLDZCLAW: Yes.

9       MS. HERBERT: And what did Mr. Workman say?

10      MS. HOLDZCLAW: He said that they can implement but he is in

11  the fourth grade, but they do not have students in the fourth,

12  they begin in the fifth, and they he was not appropriate so, we

13  come to that school because he is fourth grade and not the fifth

14  grade?

15      MS. HERBERT: Yes but he did say he can implement it his

16  disabilities?

17      MS. HOLDZCLAW: Yes.

18      MS. HERBERT: Okay, thank you.

19      HEARING OFFICER: Anything Mr., Mr.?

20      MR. HOUSTON: Yes sir.

21      HEARING OFFICER: Mr. Houston, I'm sorry.

22      MR. HOUSTON: Ms. Holdzclaw. Mr. Hull had said earlier that

23  you've been fairly consistent in asking for Accokeek Academy.

48

1   Can you turn your attention to your documents number 5, which is

2   the IEP or my documents, number 3. That's the – do you recall

3   that document?

4       MS. HOLDZCLAW: Yes.

5       MR. HOUSTON: Is that your signature on the bottom?

6       MS. HOLDZCLAW: Yes.

7       MR. HOUSTON: Okay.  Now is there a note at the bottom of

8   that document?

9       MS. HOLDZCLAW: Yes.

10      MR. HOUSTON: Can you read that note please?

11      MS. HOLDZCLAW: Parent understands with transportation to

12  Foundation School of – I don't understand what that is the next

13  word is, of reasonable implementation but not placement.

14      MR. HOUSTON: Okay.

15      MS. HOLDZCLAW: I did not sign this before that was wrote.

16  I didn't know nothing about that.  I asked for – Accokeek cause

17  I never had a response from Foundation before I went to this

18  meeting of being accepted on that.  I only had acceptance letter

19  from Accokeek at the time of this meeting.

20      MR. HOUSTON: I just want to make clear that Accokeek wasn't

21  always (inaudible).

22      MS. HOLDZCLAW: Well I never said Foundation at all.  They

23  just asked me of the list of the schools that I would – wouldn't

49

1    mind going to attend. And that was one of the schools that I had

2    on the list to attend.

3        MR. HOUSTON: Now did you ever think that Southeast Academy

4    was an appropriate placement?

5        MS. HOLDZCLAW: Yes at the time that he was first went to

6    the school yes.

7        MR. HOUSTON: Now turn your attention to our document number

8    4, which is the prior notice and the meeting notice.  Remember

9    that prior notice on page 204 of the meeting notes? You see that

10   paragraph at the top where it says parent and advocate, at the

11   top of the page. It is on the left had size where it indicates

12   you speaking there.  Page 204 of the meeting notes.

13       MS. HOLDZCLAW: Yes.

14       MR. HOUSTON: And paragraph starts Mr. Fernandez, and can

15   you tell us who Mr. Fernandez who is?

16       MS. HOLDZCLAW: He was the representative at the meeting?

17       MR. HOUSTON: Your representative?

18       MS. HOLDZCLAW: Yes my advocate.

19       MR. HOUSTON: Mr. Fernandez stated that parent knew last

20   year she was aware that – ah – that Friendship Public Charter

21   School Southeast did not service the IEP, it for the that reason

22   that the original IEP was reduced.  Mr. Fernandez states that

23   parent is seeking additional comp hours in the beginning of the

50

1   school year.  Is that correct?

2        MS. HOLDZCLAW: Yes. I didn't --.

3        MR. HOUSTON: Please just answer the questions. So it's

4   correct that you knew that this was not an appropriate placement

5   since last December?

6        MS. HOLDZCLAW: Yes.

7        MR. HOUSTON: Okay.  And you continued to keep him there.

8        MR. HULL: Let me object first.

9        MR. HOUSTON: Have you continued to keep him there?

10       MR. HULL: Objection.

11       HEARING OFFICER: Well that's obvious Mr. Houston.

12       MR. HOUSTON: I'm just making sure that it is her choice.

13       HEARING OFFICER: What the objection Mr. Hull?

14       MR. HULL: The objection is calling in information that we

15  already discussed. It's not relevant to this complaint because

16  it was resolved through settlement discussion. The line of

17  questioning has been going towards that.

18       HEARING OFFICER: Well –

19       MR. HULL: And also –

20       HEARING OFFICER: Go ahead.

21       MR. HULL: There is no dispute that the parent has availed

22  herself with a right pursuant to the stay put.

23       HEARING OFFICER: HmmmHmmm.

1    MR. HOUSTON: These meeting notes are from October 27th,

2    2006. After the complaint was filed, where the parent is saying

3    she knew that Southeast Academy was not appropriate.

4    MR. HULL: That goes to the previous complaint which was

5    disposed of through the settlement agreement. And we've already

6    belabored that.

7    HEARING OFFICER: Okay. I don't see the point. She's

8    acknowledged that she knows - she knew Edison was inappropriate.

9    And she continued to keep her son there pending the outcome of

10   this hearing under the stay put.

11   MR. HOUSTON: But they are accusing us of keep providing a

12   non-appropriate - not appropriate program after October 3rd --.

13   HEARING OFFICER: Right.

14   MR. HOUSTON: When the parent knew all the long that this

15   was not even appropriate when it was a part-time placement.

16   MR. HULL: And that was raised in the previous complaint

17   that was disposed of through the settlement where the parties

18   agreed to have evaluations to come back to the table. So--.

19   HEARING OFFICER: So I understand - so I - So I understand

20   your point. So it's been made.

21   MR. HOUSTON: All right sir.

22   HEARING OFFICER: Is there any other questions you have for

23   her?

1      MR. HOUSTON: No sir.

2      HEARING OFFICER: Anything else Ms…

3      MS. HERBERT: No sir.

4      HEARING OFFICER:  Did you have anything?

5      MR. HULL: No sir.

6      HEARING OFFICER: Okay, I do have a couple of questions for

7 you Ms. Holdzclaw, right?

8      MS. HOLDZCLAW: Right.

9      HEARING OFFICER: Did you ever visit Taft?

10     MS. HOLDZCLAW: No.

11     HEARING OFFICER: You did not.

12     MS. HOLDZCLAW: No.

13     HEARING OFFICER: So based upon that one conversation you

14 had with Mr. Workman, you've concluded that it's inappropriate

15 for him?

16     MS. HOLDZCLAW: Yes, because if they only start at fifth

17 grade and my son is in the fourth grade and not even on grade

18 average – I mean grade level being in the fourth grade – why

19 would I want him to go to the fifth when he's not even on the

20 fourth grade level.

21     HEARING OFFICER: Not, but he is what – 10 years old?

22     MS. HOLDZCLAW: Yes.

23     HEARING OFFICER:  Did Mr. Workman indicate to you anything

53

1    about the age of the students in the fifth grade?

2        MS. HOLDZCLAW: No he did not.

3        HEARING OFFICER:  Did he indicate the grade level that any

4    of the students in the fifth were operating at?

5        MS. HOLDZCLAW: No he did not.

6        HEARING OFFICER:  But where is he evals? Is it in here?

7        MR. HULL: They are in our packet.

8        HEARING OFFICER:  Where is the psycho ed?  Do you know what

9    grade level your son is operating at?

10       MS. HOLDZCLAW: Some second and some third.

11       HEARING OFFICER:  Okay.

12       MS. HOLDZCLAW: And I believe even some first grade if I'm

13   not mistaken.

14       HEARING OFFICER:  Okay where is it Mr. Hull?

15       MR. HULL: Well you can look at –

16       MR. HOUSTON: Try looking at number 12 is the latest psycho

17   education.

18       HEARING OFFICER:  What's the date of that psycho ed?

19       MR. HOUSTON: August 13th, 2006.

20       HEARING OFFICER:  Oh it's recent.  Well—

21       MR. HOUSTON: Fortunately some of it has been redacted.

22       HEARING OFFICER:  I'm looking at his--.

23       MR. HULL: I think that may have been a highlighter through

54

1    the fax machine and I have my copy, which is highlighted.

2        HEARING OFFICER: Ohhhhhh.

3        MR. HULL: So I can give you my copy to look at.

4        HEARING OFFICER: Okay.

5        MR. HULL: I didn't realize it highlighters ended up erasing

6    anything. I'd be happy to share with you.

7        HEARING OFFICER:  No charts.

8        MR. HOUSTON: Well there is --.

9        HEARING OFFICER: All right, there they are.

10       MR. HOUSTON: There is an appendix.

11       HEARING OFFICER: I'm looking at page 2 from the Woodcott

12   Johnson.

13       MR. HOUSTON: Well there is a page 7 that has appendix that

14   has all the documents.

15       HEARING OFFICER: I'm satisfied with page 2. Page 2 of the

16   eval.

17       MR. HOUSTON: Is that the WISK 4?

18       HEARING OFFICER: It was the Wisk. I got a Woodcott Johnson

19   that I'm looking at.

20       MR. HOUSTON: Is that document number 12?

21       MR. HULL: Oh, that's 11 sir.  That's a clinical - the next

22   one is (inaudible).

23       HEARING OFFICER: This is the clinical?  With all the

55

1    Woodcott Johnson? Yeah, that's what I want to see the education.

2          MR. HOUSTON: They were labeled incorrectly.

3          HEARING OFFICER: Okay.  And you only had the one

4    conversation with Mr. Workman - that's all.

5          MS. HOLDZCLAW: Yes.

6          HEARING OFFICER:  Okay I don't have any other questions.

7    Anything else? Are there any report cards in here?  From

8    Southeast Academy, any report cards?

9          MR. HOUSTON: There is a report card sir in our disclosure

10   number 6.

11         HEARING OFFICER:  Six.  Oh God.

12         MR. HOUSTON: Grades for the first quarter are (inaudible).

13         HEARING OFFICER: That's the first quarter of this year?

14         MR. HOUSTON: Yes sir. Through the 31st of October.

15         HEARING OFFICER:  All right.  Ahhh--.

16         MR. HULL: I have another witness.

17         HEARING OFFICER: Yes I do.

18         HEARING OFFICER: Ms. ? from the - I need to go off the

19   record and check on my --. Walking back and forth.

20         MR. HOUSTON: MS. ? Can I get a proffer of what she's going

21   to be testifying to?

22         MR. HULL: Oh, simply that as to the appropriateness, the -

23   her school has interviewed the student and the parent. That they

56

1  reviewed the IEP and they believe that they can provide an

2  educational benefit for the student.

3      MR. HOUSTON: I can stipulate to that.

4      HEARING OFFICER:  No you can't can you?  I know, only —

5  only --- Laughter.

6      MR. HOUSTON:  The question here though sir, I can stipulate

7  to the appropriateness from Friendship-Edison the point here

8  though is they have not – they don't have any witness to prove

9  their case that Taft is not appropriate and since there was a

10  notice of placement to Taft before they can get to Accokeek,

11  they have to prove that Taft is not appropriate.  And the mother

12  has testimony, since she is not an educator, nor would she

13  qualify as an expert in that field.  Just her one conversation

14  does not make her an expert to say that Taft is not appropriate.

15  And therefore, if the only witness they have is Accokeek Academy

16  that does not go the parent's duty to of burden of proof to show

17  that the Taft placement is not appropriate.

18      MR. HULL: The burden of proof for us is a preponderance of

19  the evidence. Here we have an out-of-court statement by Mr.

20  Workman, although it is hearsay, as you well know the rules

21  against hearsay are very relaxed in these hearings.  So here we

22  have the parent who has a conversation with the Director of

23  Taft.  He wasn't the secretary, the receptionist the gym coach.

57

1          MS. HERBERT: He's not the director of Taft; he is the

2    special ed coordinator.

3          MR. HULL: Well even better.  The special education

4    coordinator at the proposed the school has said--.

5          HEARING OFFICER: Let me just cut this off because I'm going

6    to allow him to put on testimony if he wants to put it on. Even

7    though, he might not have met the burden.  I'm not going to

8    decide that here without fully reviewing the record.

9          MR. HOUSTON: I understand, I'm just saying that if that's

10   all – from Friendship-Edison side, that's fine. We'll stipulate

11   to--.

12         HEARING OFFICER: I know you will – but will Ms. Herbert –

13         MS. HERBERT: No I cannot do that.

14         HEARING OFFICER: Herbert will do that than we can forego

15   that witness. But we can't do it so we have to call the witness.

16   Is that the only other witness?

17         MR. HULL: Yes.

18         HEARING OFFICER: You calling anyone?

19         MR. HOUSTON: I'm not calling anyone.

20         HEARING OFFICER: You calling anyone?

21         MS. HERBERT: Yes sir.

22         HEARING OFFICER: Who you calling?

23         MS. HERBERT: I'm calling Taft.

1          HEARING OFFICER: Right. Who at Taft?

2          MS. HERBERT: Mr. Workman.

3          HEARING OFFICER: All right. We'll go off the record to get

4     those other cases settled.

5          MR. HULL: Thank you.

6          MS. HERBERT: Be right back.

7          HEARING OFFICER: Okay, we're back on the record.

8          MR. HULL: Good afternoon is Ms. Warnke available.

9          OPERATOR: May I ask who is calling?

10         MR. HULL: Miguel Hull.

11         OPERATOR: I'm sorry.

12         MR. HULL: Miguel Hull.

13         OPERATOR: And you are with?

14         MR. HULL: James Brown & Associates.

15         OPERATOR: One second please.

16         OPERATOR: A note for the record, Ms. Herbert requested that

17    this testimony be on the record and we have been trying to

18    locate her, but she is not available. So we'll move proceeding.

19         OPERATOR: I'm sorry, she's not in her office right now,

20    would you like to speak to Ms. Warnke?

21         MR. HULL: Yes, that's who'd I'd like to speak to. We need

22    her to testify at a hearing.

23         OPERATOR: Your name again please, Mr. Hull from James

1    Brown?

2        MR. HULL: Yes, I spoke to her this morning.

3        OPERATOR: One second.

4        HEARING OFFICER: Accokeek.  What's her name again? Ann

5        MR. HULL: Warn

6        HEARING OFFICER: W-O-R-

7        MR. HOUSTON: W-A-R-N-K-E.

8        MS. WARNKE: Hello this is Ann Warnke may I help you?

9        MR. HULL: Mr. Warnke, good afternoon, it's Miguel Hull from

10   James Brown & Associates.

11       MS. WARKNE: Hi, how are you?

12       MR. HULL: I have you on speakerphone; we are in the midst

13   of ▮▮▮▮▮▮▮▮▮▮ Hearing.

14       MS. WARNKE: Okay.

15       MR. Hull: And I was going to ask you to testify. Are you

16   ready to testify?

17       MS. WARNKE: Sure.

18       MR. HULL: I'm going to turn you over to the Hearing

19   Officer, Mr. Ruff.

20       HEARING OFFICER:  Ms. Warnke, can you state your name for

21   us and spell it please.

22       MS. WARNKE: Sure my name is Ann Warnke, and its W-A-R-N-K-

23   E.

60

1          HEARING OFFICER: And Ann is A-N-N.

2          MS. WARNKE: And Ann is A-N-N. I'm sorry.

3          HEARING OFFICER: And your position there?

4          MS. WARNKE: I'm Assistant Educational Director.

5          HEARING OFFICER: And this is Accokeek Academy.

6          MS. WARNKE: Yes it is.

7          HEARING OFFICER:  Do you swear or affirm that the statement

8    you'll make today will be the truth, the whole truth and nothing

9    but the truth?

10         MS. WARNKE: Yes I do.

11         HEARING OFFICER: Great.  You may proceed Mr. Hull.

12         MR. HULL:  Ms. Warnke can you tell us what is Accokeek

13   Academy.

14         MS. WARNKE:  Accokeek is a full-time special education

15   program. We service children with disabilities between the ages

16   of 5 though 21.  And the disabilities we service is that we have

17   students with learning disabilities, emotional disturbance,

18   speech and language impairments, other health impairments, we

19   have some that are mildly mentally retarded, some with

20   developmental disorders and also some that have a combination of

21   the disorders.

22         MR. HULL: And what is the size of the whole student body?

23         MS. WARNKE:  Right now we have 144 students.

61

1    MR. HULL: And are you familiar with ██████████?

2    MS. WARNKE:  Yes I am.

3    MR. HULL: How are you familiar with him?

4    MS. WARNKE:  I reviewed his file and also met with him when

5 he came out to our school for an intake.

6    MR. HULL: Have your school considered him for admission?

7    MS. WARNKE: Yes, we've accepted him for admission.

8    MR. HULL: If he were to attend your school, what would be

9 the size of the classroom, he would be—Well let me ask you this,

10 would he be the same group of students throughout the day?

11    MS. WARNKE:  Yes it is a substantive sp? Classroom.

12    MR. HULL: Would he be in the same location, or would he

13 move from room-to-room with that group of students.

14    MS. WARNKE:  No, he'd be in the same location.

15    MR. HULL: And what are the age ranges of those students.

16    MS. WARNKE:  The students in the classroom that we have

17 proposed for him are birthdays with 96/97 and two with 98 – or

18 early 98.

19    MR. HULL: And how many other students would he be with in

20 that in classroom?

21    MS. WARNKE:  Currently there are 7 students in the

22 classroom, they are all male.  So he'd would be the eighth male

23 in the classroom.

1        MR. HULL: How many adults are assigned to that classroom?

2        MS. WARNKE:  There is one lead teacher and there are two

3    teaching assistants in the classroom. The lead teacher is a

4    female and the there is a female and a male teaching assistant.

5        MR. HULL: Is the teacher certified to teach special

6    education?

7        MS. WARNKE:  Yes, she has her certification in special ed,

8    yep.

9        MR. HULL: What curriculum would ▓▓▓▓▓▓follow if he were at

10   your school?

11       MS. WARNKE:  With students from the District of Columbia,

12   we follow their guidelines. Their standards that they have

13   produced and that's what we follow for the testing that the

14   students are to take part in.  And what we do, we have to

15   (inaudible) Oh God --, Michelin Hofflin Books that they

16   recommend what their curriculum so we also use those.  And then

17   we also have project read and the Wilson program that we use in

18   conjunction with them for our reading program.  But we follow

19   all the guidelines from the District to the County that the

20   student comes from.

21       MR. HULL: Does your school have prior school experience

22   with DCPS students?

23       MS. WARNKE:  Yes.  Out of all of the students, 143 of them

63

1  are from the District.

2      MR. HULL: And does your school have any counselor or

3  psychologist on staff to provide ▓▓▓▓ with counseling on site?

4      MS. WARNKE:  Oh yes.  Yes, yes.  We have 10 clinical

5  psychologist here on staff. We also have five art therapists and

6  then we also have 7 behavior counselors that we have at the

7  school.

8      MR. HULL: Do you believe based on what you know about this

9  student and about this school, that your school can provide

10  ▓▓▓▓ with an educational benefit.

11      MS. WARNKE: Yes I do. Absolutely.

12      MR. HULL:  Thank you. I have no further questions at this

13  time, but please stay on the line.

14      HEARING OFFICER: Ms. Herbert anything?

15      MS. HERBERT: Yes. Ms. Warnke how are you doing today?

16      MS. WARNKE: Good, how are you?

17      MS. HERBERT: Okay, can you tell us how many students you

18  have returned back to DC Public Schools please?

19      MR. HULL: Objection, relevance.

20      HEARING OFFICER: I'll allow it.

21      HEARING OFFICER: Go ahead. Understand the question?

22      MS. WARNKE: I'm sorry sir?

23      MS. HERBERT: Did you understand the question, I'm sorry.

64

1        MS. WARNKE: I heard you but then I heard objection and I

2    didn't hear --.

3        MS. HERBERT: Okay.  Okay. It was allowed.

4        MS. WARNKE: Oh, okay.  What we do throughout the year, we

5    have our IEP that go on throughout the year.  There are several

6    students that we recommend to go back.  Or go to a less

7    restrictive placement.  We also of course have students who

8    graduate every year.  The total number I would have to back and

9    research that with our transition department so I can give you

10   the exact number.  But we try - that's our goal to get to them

11   to go back to less restrictive.

12       MS. HERBERT: Would you say that, it's on the average of 3

13   or 4 a year?

14       MS. WARNKE: Definitely I would say that.

15       MS. HERBERT: All right.  Thank you.

16       MS. WARNKE: You're welcome.

17       HEARING OFFICER: Mr. Houston anything?

18       MR. HOUSTON: Ms. Warnke, this is Bill Houston, Good

19   afternoon.

20       MS. WARNKE: Hi Mr. Houston.

21       MR. HOUSTON: I'm representing Friendship Edison today.

22       MS. WARNKE:  Okay.

23       MR. HOUSTON: I just have one question for you today. When

65

1    did you receive the packet regarding ███████████?

2         MS. WARNKE: The date received on this 101/16/06.

3         MR. HOUSTON: Okay, thank you.

4         HEARING OFFICER:  Okay, Ms. Warnke this is Mr. Ruff, I have

5    a couple of questions for you?

6         MS. WARNKE: Sure.

7         HEARING OFFICER: I notice that you had indicated that ah –

8    ███████ will be placed in a classroom with students based on age?

9         MS. WARNKE: Right.

10        HEARING OFFICER: Is that right? What age group would he

11   placed with?

12        MS. WARNKE: The students in that classroom range in age

13   from birthdays from 96 through 98.  And they are all similar as

14   far as the academic levels that they are on.  And that's the

15   reason, we wanted him to be in that classroom.

16        HEARING OFFICER: So what is that academic level?

17        MS. WARNKE: The academic levels in this classroom range

18   from let's say from mid-first grade to third grade in reading,

19   and math they range from latest first grade to beginning fourth

20   grade, and then in written language they are mid-first grade to

21   mid-third grade.

22        HEARING OFFICER: Okay do you actually call the class by

23   grade level?

66

1      MS. WARNKE: No.  What we consider is we consider them

2  ungraded.

3      HEARING OFFICER: Ungraded?

4      MS. WARNKE: Yes.

5      HEARING OFFICER: Okay. Anything else? Hold just a moment

6  Mr. Hull stepped out of the room and I have to see if he has any

7  other questions.

8      HEARING OFFICER: What is the name of the teacher that he

9  will be assigned to?

10     MS. WARNKE: The teacher in this classroom is Ms. Terry

11 Shonard?

12     HEARING OFFICER: Is she certified?

13     MS. WARNKE: Oh yes she is.

14     HEARING OFFICER: Dual certification?

15     MS. WARNKE: Excuse me?

16     HEARING OFFICER: No dual certification, only in special ed?

17     MS. WARNKE: Special ED, ED, LD.

18     HEARING OFFICER: Okay.  Do you have any other questions for

19 her?

20     MR. HULL: In follow-up to your question, Ms. Warnke, are

21 your teacher certified to teach general education in any

22 capacity?

23     MS. WARNKE: General education?

1      MS. HULL: Yes.

2      MS. WARNKE:  I don't know if Ms. Shoner (inaudible) general

3    ed before she was certified.  That I don't know.  Many of her

4    teachers have general education, but I don't know about Ms.

5    Shonard.

6      MR. HULL: Okay.  Thank you.  I have nothing further.

7      HEARING OFFICER: Thank you very much, we're done.

8      MS. WARNKE: Okay, thank you.

9      MS. HERBERT: Bye, bye now.

10      HEARING OFFICER: Okay, call on your witness. Okay you're

11   calling it.

12      MR. HOUSTON: There's a directed verdict.  They did not make

13   a case that Taft is not an appropriate placement.  In fact,

14   according to Ms. Warnke's testimony, they would be having the

15   same type of issues that Mom was talking about, that he would

16   placed with children who are the same age group, but lower grade

17   than the fifth grade.

18      HEARING OFFICER: I heard an ungraded classroom.

19      MR. HOUSTON: Yes sir.

20      HEARING OFFICER: But I heard the representation that Taft

21   has grades.

22      MR. HOUSTON: The parents haven't made --.

23      HEARING OFFICER: So the motion is denied, I'm going to

1   allow testimony.

2       OPERATOR: Good afternoon Taft.

3       MS. HERBERT: Good afternoon this is Karen Herbert, may I

4   speak with Mr. Workman please?

5       OPERATOR: Sure, hold on.

6       MS. HERBERT: Thank you.

7       HEARING OFFICER: Raise that volume. I don't know whether

8   she was not speaking in the phone.

9       MS. HERBERT:  Mr. Workman, can I help you.

10      MR. WORKMAN: Hi Mr. Workman, this is Karen Herbert.

11      MS. HERBERT: Hi.  We are now in a Hearing and Mr. Ruff is

12  the Hearing Officer and he will swear you in, is that all right?

13      MS. WORKMAN: HmmmHmmm.

14      HEARING OFFICER: Ah --- Mr. Workman, could you state your

15  name and spell it for us please.

16      MR. WORKMAN: My name is LaBone Workman.  Capital L-a-

17  Capital B-o-n-e, Capital W-o-r-k-m-a-n.

18      HEARING OFFICER: Do you swear or affirm that the statements

19  you'll make today will be the truth, the whole truth and nothing

20  but the truth?

21      MR. WORKMAN: Yes.

22      HEARING OFFICER: Great.  Go ahead.  What's your position

23  there?

1      MR. WORKMAN: Special Ed Coordinator/ Administrator

2  Designee.

3      HEARING OFFICER: And this is Taft Center.  Great. Ms.

4  Herbert you may proceed?

5      MS. HERBERT: Mr. Workman would you please let me know if

6  you are familiar we are talking about in this Hearing and I

7  might mispronounce it - I'm trying not to.

8      HEARING OFFICER: (LAUGHTER).  Why don't we let the parent

9  do it, she is the best then.

10     MS. HOLDZCLAW: ███████████.

11     HEARING OFFICER:  Did you hear that?

12     MR. WORKMAN: Yes I did hear.  Yeah.

13     MS. HERBERT: ███████████.

14     MR. WORKMAN: Sounds familiar, I believe I looked at a

15  packet for him some time ago.

16     MS. HERBERT: Can you basically tell us your impression of

17  this student please?

18     MR. WORKMAN: If my can, if my memory serves, he was a young

19  man who I believe he said, fourth grade.  And he was diag—his

20  disability was ah - I want to say ED and there was a full-time

21  IEP.

22     MS. HERBERT: Do you remember talking to the mother her son?

23     MR. WORKMAN: I think so.  I think so.  I think we spoke

70

1  about his grade. I told her she was a fourth grader, he'd be too

2  young for Taft.

3      MS. HERBERT: Okay.  However, did you talk about his age?

4      MR. WORKMAN: No.

5      MS. HERBERT: And did you talk about his disabilities at the

6  time?

7      MR. WORKMAN: Not to my knowledge.

8      MS. HERBERT: Have you since found out his age?

9      MR. WORKMAN: No.

10     MS. HERBERT: He was born ████████, 1996.

11     MR. WORKMAN: Okay.

12     MS. HERBERT: And can you basically describe a fifth grade

13  class of yours please and there ages --.

14     MR. WORKMAN: Oh. Well, age of the fifth grade class is from

15  10½ to 10¾ to 11. Excuse. Right now it is a very small class. I

16  think there is no more than 5 students in that class.  With a

17  teacher and a teacher's assistant.  The kids in that class are

18  on levels in both reading and math from anywhere as low as you

19  know - kindergarten up to third grade, -- third grade fifth

20  month I believe.

21     MS. HERBERT: That's the grade levels of the kids in that

22  class, the fifth grade class?

23     MR. WORKMAN: Huhhh hmmmm.

1      MS. HERBERT: Okay. Can you tell me if your teacher is

2  certified in that class?

3      MR. WORKMAN: Well she is certified provisionally by DCPS,

4  she's in school and she is getting her masters' and all this

5  other thing.

6      MS. HERBERT: Her Master's in Special Education?

7      MR. WORKMAN: Huh hmmm.

8      MS. HERBERT: And the teacher's aid?  Is the teacher's aid,

9  basically able to help with a class like that?

10      MR. WORKMAN: Absolutely.

11      MS. HERBERT: Okay. Do you have counselors for counseling--.

12      MR. WORKMAN: What we have at Taft, we have on site, three

13  social workers who knead out the psychological services as per

14  the IEP. We have a (Inaudible) speech and language therapist as

15  well as a (inaudible) occupational therapist.

16      MS. HERBERT: I think for the Hearing Officer, we need to

17  describe Taft.  What is Taft at DC Public School?

18      MR. WORKMAN: Taft is a school that serves emotionally

19  disturbed and OHI students, to with the OHI to the ADHD.  We are

20  a therapeutic school, and we offer therapeutic intervention

21  throughout the day.  Students that are attending Taft are in

22  small classrooms, with a teacher and a teacher assistant. We

23  have, as I stated earlier, we have psychological services on

72

1   site that administered by or rather is given out by the social

2   workers we have here.  We also have (inaudible) speech and

3   occupational therapist if the student's IEP calls for those

4   services.  We also utilize the crisis behavior --.

5       MS. HERBERT: Speak up Mr. Workman.

6       MR. WORKMAN: We utilize the crisis intervention room that

7   staff by two trained specifically trained crisis intervention

8   specialist who respond to crisis throughout the day as it

9   pertains to our Taft students.  For instance if a student cannot

10  manage himself in the classroom and is not successful in taking

11  any classroom time out, the student is then removed to this room

12  with what we call the stop and go room.  They get an opportunity

13  to calm down and process the incident with the teacher or

14  whomever the conflict was or was the issue was and sent back to

15  class.

16      MS. HERBERT: Oh, okay.  Thank you.  The next thing I want

17  to talk about is the student's IEP.  Are you able to look up his

18  IEP on the Encore.

19      MR. WORKMAN:  I don't think - if he isn't assigned to my

20  school, I wouldn't have access to him.

21      MS. HERBERT: You wouldn't have access to him?

22      MR. WORKMAN:   HmmmHmm.

23      MS. HERBERT: Okay, his IEP.  Let me just describe his

1   disability to you.

2        MR. WORKMAN: Okay.

3        MS. HERBERT: Multiple disability,

4        MR. HULL: Objection for the witness to be able to testify,

5   he must be competent to testify. We can't him --.

6        HEARING OFFICER: Put him on mute. Mr. Workman we'll going

7   to put you on mute please.

8        MS. HERBERT: Hold on Mr. Workman.

9        MR. HULL: He has to be able to be competent to testify. He

10  has to be competent to testify as to what the school is about

11  and the services they offer. If he is unaware of what the

12  student needs, it's inappropriate to feed him that information

13  and ask him questions about the student and whether or not they

14  can meet those needs.

15       HEARING OFFICER: I disagree. I'll overrule.

16       MR. WORKMAN: Shut that door, let me give you other stuff.

17       MS. HERBEFT:  Mr. Workman:

18       MR. WORKMAN: Yes.

19       MS. HERBERT: We can hear, stop yelling.

20       HEARING OFFICER: (LAUGHTER)

21       MR. WORKMAN: Oh I'm sorry.

22       MS. HERBERT: Thank you. Okay, I will give you the

23  youngster's, I mean ▬▬▬▬ disability.

74

1       MR. WORKMAN: Okay.

2       MS. HERBERT: Multiple disability, OHI/ED, I thought that he

3  was LD.  Okay, LD/OHI/ED.  Did you hear me?

4       MR. WORKMAN: You said, AD, OHI, ED.

5       MS. HERBERT: LD.

6       MR. WORKMAN: LD.  The OHI/ED, what does the clinical say?

7       MS. HERBERT: OHI. I believe.  The mother did ADHD.

8       MR. HULL: Again, he doesn't know about the student and he

9  is asking information --.

10      MS. HERBERT: Hold on Mr. Workman.

11      HEARING OFFICER: For a witness to be competent to testify,

12  he has to have first-hand knowledge about what he is testifying

13  about.  Here, we have a situation where the witness is being

14  told about the student and then being asked questions about that

15  student. How can --.

16      HEARING OFFICER: The principle question --.

17      MR. HULL: We had accident on Monday, when was the car

18  accident?

19      HEARING OFFICER: The principle question is whether or not

20  Taft is appropriate. If he has not reviewed the IEP or hasn't

21  reviewed the IEP recently, I think it is reasonable for him, --

22  for me to able to judge his testimony for him to be able to told

23  what the IEP indicates.

75

1      MR. HULL: So, we're asking to opine on the appropriateness

2  regarding a student that he doesn't know about?

3      HEARING OFFICER: We're asking him - well we're asking him

4  what services the school can provide the student?

5      MR. HULL: And I think he has already spoken to that?

6      HEARING OFFICER: Well now in relationship to the IEP,

7  because that is what it needs to be judged against.

8      MR. HULL: Again, I stand by my objection that he doesn't,

9  that he is not aware of the IEP - he is not aware of --.

10     HEARING OFFICER: And your objection has been noted twice

11  Mr. Hull and overruled twice.   Thank you.

12     MR. HERBERT: Okay, Mr. Workman?

13     MR. WORKMAN: Yes.

14     MS. HERBERT: It's ADHD.

15     MR. WORKMAN: Okay.

16     MS. HERBERT: And so can your school handle this student?

17     MR. WORKMAN: Absolutely.  You know we have students here

18  with similar disabilities and they be fine.

19     MS. HERBERT: And you do fine by them?

20     MR. WORKMAN: Yes M'ame.

21     MS. HERBERT: Tell me if you all are definitely graded, is

22  that correct?

23     MR. WORKMAN: Yes we are.

1    MS. HERBERT: Okay.  So then your school would enter this

2    boy at the fifth grade level. But because of his age and his

3    disabilities would he be out of place in the fifth grade?

4    MR. WORKMAN: Not my fifth grade. I mean --- I'd like to

5    know what levels he is on and his reading and math level.  As I

6    stated, I believe our levels go anywhere from kindergarten to

7    third grade in that particular class.  And if he was in those

8    parameters, then he'd be well suited there. Even if he wasn't,

9    you know the teacher would tailor what needs to be given to him,

10   according to what his abilities are.

11   MS. HERBERT: Okay, when you spoke to the mother and you

12   told her, well he is in the fourth grade, and he's not

13   appropriate for here.  Specifically what information did you

14   have on the child at the time?

15   MR. WORKMAN: If I'm not mistaken I probably had his IEP.

16   And some other assessments, but I can't recall. But I do know

17   that I was told he was in the fourth grade.

18   MS. HERBERT: Okay, so you didn't have anything else on him

19   at the time?

20   MR. WORKMAN: Not that I can recall.

21   MS. HERBERT: Let me relate to you that he had a prior

22   notice to Taft. And also a transportation order to Taft. Let us

23   know when you would have gotten his - when you would have gotten

77

1   his file?

2        MR. HULL: Objection.

3        HEARING OFFICER: Well, it needs a foundation.   There is not

4   indication he got the file.

5        MS. HERBERT: He said he didn't have the file.

6        MR. HULL: He said he had received the packet, he has the

7   IEP.

8        MS. HERBERT: He said he had the IEP, he didn't say the

9   file.

10       HEARING OFFICER: He said he thinks he reviewed the IEP, but

11  he wasn't even certain of that.

12       MS. HERBERT: You don't know why I asked that question?

13       HEARING OFFICER: I don't know understand the question.

14       MS. HERBERT:  Because I want to know –

15       HEARING OFFICER: But you got him on – we need to mute him.

16       MS. HERBERT: Hold on Mr. Workman. Basically I am asking him

17  that question for – to determine – because he didn't have

18  anything when the mother called him.  And transportation was

19  coming then. And DCPS the way that it operates, they send the

20  file along with the transportation.  They send the file at the

21  time that the child comes.

22       HEARING OFFICER: So what's your point, I'm not clear?

23       MS. HERBERT:  Basically, he couldn't have prepared for him

78

1   until he saw the file. And he hadn't had the file at the time

2   that the mother called.  Because he could have given her a

3   different answer had he had the file in front of him. Does that

4   make sense?

5       HEARING OFFICER: Well, yeah that makes sense. But –

6       MR. HULL: But he already stated he did have the IEP. So I –

7   so the IEP identifies the level of functioning, the grade level,

8   the age, --.

9       HEARING OFFICER: I took his statement to mean, I'll review

10  the record to indicates that he thinks he saw the IEP, he

11  doesn't really recall.

12      MS. HERBERT: Okay, I'll withdraw the question, no problem.

13      HEARING OFFICER:  Okay, you can unmute him.

14      MS. HERBERT: Okay, Mr. Workman, I'll withdraw the question,

15  no further questions. Thank you.

16      HEARING OFFICER: Mr. Hull has some questions for you, I'm

17  sure.

18      MR. HULL: Mr. Workman, good afternoon.

19      MR. WORKMAN:  How are you?

20      MR. HULL: Good, thank you.  When do you first remember

21  reviewing this student's IEP?

22      MR. WORKMAN:  Sometime, I really can't put a strong date to

23  it – I think the early part of October, late September.

79

1      MR. HULL: But is it fair to say that by the day you spoke

2  the parent you had already looked at the IEP?

3      MR. WORKMAN:  I believe so.

4      MR. HULL: Are you aware that the IEP states the student is

5  in the fourth grade for this school year?

6      MR. WORKMAN:  Yeah.

7      MR. HULL: And your school does not have a fourth grade,

8  correct?

9      MR. WORKMAN:  No we do not.

10     MR. HULL: You begin at the fifth grade?

11     MR. WORKMAN:  Yes we do.

12     MR. HULL: So if were to attend your school you would have

13  to bump him up to the fifth grade?

14     MR. WORKMAN:  Okay.

15     MR. HULL: And that is not what his IEP calls for is it?

16     MR. WORKMAN:  Well I don't know, if his IEP said he was

17  fourth grade.

18     MR. HULL: Okay. If indeed his IEP says that he is in the

19  fourth grade that does mean that you really couldn't really

20  implement his IEP as written?

21     MR. WORKMAN:  Maybe the way that one was written, if we

22  were to say that he was going to come here, and everybody was in

23  agreement that we'd place him in his age chronologically, we

80

1  would write the IEP and place him in the fifth grade.  But that

2  doesn't mean the goals would change necessarily?

3      MR. HULL: So you're saying you'd have to re-write the IEP

4  in order to implement it?

5      MR. WORKMAN:  We'd have to put fifth grade on there.

6      MR. HULL: Okay.  Are you in the separate building or do you

7  share a building with another school.

8      MR. WORKMAN:  We share a building another school?

9      MR. HULL: What school is that?

10     MR. WORKMAN:  I'm sorry?

11     MR. HULL: What school is that?

12     MR. WORKMAN:  Actually its two schools, it's DCALA and a

13  school called Choice Academy.

14     MR. HULL: Now can you tell us the set-up or you on a self-

15  contained floor or just part of a floor – or how is that set up?

16     MR. WORKMAN:  Well it's a very large school. Each school

17  has a section of it. We occupy the middle, first and second

18  floors.

19     MR. HULL: And do all the students to these – all three

20  schools go through the same entrances --.

21     MR. WORKMAN:  No.  Everybody has their own entrance.

22     MR. HULL: Does your school have its own cafeteria?

23     MR. WORKMAN:  Yes.

1       MR. HULL: Does it have its own library?

2       MR. WORKMAN:  Does the school has it own library?

3       MR. HULL: Yes.

4       MR. WORKMAN:  Yes.

5       MR. HULL: Does it has its own recreation facilities?

6       MR. WORKMAN:  Yes.

7       MR. HULL: Has there ever been situations where the students

8  from your school wander into the other school buildings areas?

9       MR. WORKMAN:  Yes.

10      MR. HULL: Is that a problem for your school?

11      MR. WORKMAN:  No.

12      MR. HULL: You said earlier that the classroom he would be

13  in has currently has five students?

14      MR. WORKMAN:  Yes.

15      MR. HULL: What is the total capacity of that classroom?

16      MR. WORKMAN:  Eight.

17      MR. HULL: And the teacher that would be teaching him, has a

18  provisional certification for special education?

19      MR. WORKMAN:  That is my understanding, I mean she is

20  licensed by DCPS to teach, she has the qualifications - I mean

21  the certification that she needs to teach.

22      MR. HULL: But as far as you know that is provisional?

23      MR. WORKMAN:  Yes.

82

1        MR. HULL: Okay. Would she be his teacher throughout the

2  course of the day, or would he switch from teacher to teacher?

3        MR. WORKMAN:  He would switch from two other teachers.

4        MR. HULL: would he be with the same group of students

5  throughout the day?

6        MR. WORKMAN:  Yes.

7        MR. HULL: And all of these students are in the fifth grade?

8        MR. WORKMAN:  Yes.

9        MR. HULL: And what are their ages?

10        MR. WORKMAN:  Like I said, 10¾ to "11"  "5".

11        MR. HULL: Thank you, I don't have any further questions.

12        HEARING OFFICER: Anything else Ms. --.  Did you have any

13  questions?

14        MR. HOUSTON: Yes sir I do.

15        HEARING OFFICER: (LAUGHTER) Okay, Mr. Houston.

16        MR. HOUSTON: Mr. Workman?

17        MR. WORKMAN:  Yes.

18        MR. HOUSTON: Bill Houston with Friendship Edison.

19        MR. WORKMAN:  Yes sir.

20        MR. HOUSTON: I have a couple of questions? Your fifth grade

21  class, is it based upon their academic achievement or their age?

22        MR. WORKMAN:  Chronologically, their pace in the fifth

23  grade.

1    MR. HOUSTON: Okay, so if they child has broad reading in

2    the second grade level and broad math in the third grade level

3    and broad written language in the second grade level, but they

4    are ten years old, would they be appropriate for your fifth

5    grade classroom?

6        MR. WORKMAN:  Yes.

7        MR. HOUSTON: If the IEP does not indicate a age, does the

8    grade, would you be able to discern -from - what - if you knew

9    that this child was a ten year old in the fourth grade and you

10   were asked if Taft was an appropriate placement, would you

11   change your answer to the mother if you knew he was --.

12       HEARING OFFICER: Speculation Mr. Houston.

13       MR. HOUSTON: But the IEP does not -

14       HEARING OFFICER: I know for the record that the IEP does

15   not have birthday or an age on it.

16       MR. HOUSTON: OKAY.

17       MR. WORKMAN:  I mean.

18       MR. HULL: Objection.

19       HEARING OFFICER: No question intended.

20       MR. HERBERT: You don't have to answer Mr. Workman. Don't

21   say anything.

22       MR. HOUSTON: You say that DCLA is co-located their at Taft?

23       MR. WORKMAN:  Yes sir.

84

1      MR. HOUSTON: Are they still open?

2      MR. WORKMAN:  Yes sir.

3      MR. HOUSTON: Now if this child has chronic asthma, would

4  you be able to provide the services there?

5      MR. WORKMAN:  What services would he need?

6      MR. HOUSTON: Well, you have a nurse on staff there?

7      MR. WORKMAN:  Yes.

8      MR. HOUSTON: According to his psycho education – his

9  psychological and clinical evaluation, he has chronic asthma,

10  seizures, migraine headaches, as well as ADHD, that composes his

11  OHI, would Taft be appropriate for a child who has those medical

12  conditions.

13      MR. WORKMAN:  Yes.

14      MR. HOUSTON: Thank you I have no further questions.

15      HEARING OFFICER: Anything else?

16      MR. HULL: No.

17      HEARING OFFICER: Mr. Workman, this is Mr. Ruff, the Hearing

18  officer?

19      MR. WORKMAN:  Yes sir.

20      HEARING OFFICER: I have a couple of questions for you.

21      MR. WORKMAN:  Yes sir.

22      HEARING OFFICER: How many grades does Taft Center have?

23      MR. WORKMAN:  We go from 5th to 8th.

1      HEARING OFFICER: And the age range of those children there?

2      MR. WORKMAN:  10 to 13.

3      HEARING OFFICER: Oh, you mention that if this student came

4 to Taft, he would have some other teachers, he would change

5 classes?

6      MR. WORKMAN:  Yes sir.

7      HEARING OFFICER: To what other teachers and what other

8 classes?

9      MR. WORKMAN:  Just the different classes. He'll go to a

10 teacher for math, a teacher for science, a teacher for social

11 studies --.

12      HEARING OFFICER: And who are those other teachers?

13      MR. WORKMAN:  Ah, those teachers are Ms. Ruffin and Ms.

14 Sharps. And those are two very good teachers who both have their

15 certifications.

16      HEARING OFFICER:  Full certification?

17      MR. WORKMAN:  Yes sir.

18      HEARING OFFICER: So what teachers are provisionally

19 certified?

20      MR. WORKMAN:  Ms. Bennett has - would be his homeroom

21 teacher.

22      HEARING OFFICER: And how much time would he spend with Ms.

23 Bennett?

1      MR. WORKMAN:  He would spend a class with her. I think she

2  does social studies?

3      HEARING OFFICER:  What does Ruffin and Sharps teach?

4      MR. WORKMAN:  Ms. Sharps does math and Ms. Ruffin  I think

5  does English.

6      HEARING OFFICER: Okay.  All right thank you.

7      MR. WORKMAN:  Is that it?

8      HEARING OFFICER: That's it.

9      MS. HERBERT: That's it. Okay. Bye bye.

10     MR. WORKMAN: Have a good day.

11     HEARING OFFICER: Okay, given the hour, if you want to do a

12  closing.

13     MR. HULL: (inaudible)

14     HEARING OFFICER: You tell e.

15     MR. HULL: I prefer to have a (inaudible) until Wednesday,

16  the 24th the close of business.

17     HEARING OFFICER: What about Friday.

18     MR. HULL: Yeah, I'm flexible too.

19     HEARING OFFICER: Wednesday, Friday or Friday?

20     MR. HULL: I can get it done by Wednesday, close of

21  business.

22     HEARING OFFICER: I mean you don't need - I can get them

23  simultaneously.  I'm just giving you all until Friday if you

87

1  want.

2      MR. HOUSTON: Well since the parent has the burden of proof

3  in this, I would like -- .

4      HEARING OFFICER:  Yeah because in here you would have heard

5  it first. So yeah Wednesday and Friday.

6      MR. HOUSTON: And I would also like to renew my motion for a

7  directed verdict.

8      HEARING OFFICER: I'm sure it would be in your written.

9      MR. HOUSTON:  Just want to put in on the record that I'm

10  requesting a directed verdict because the parents have not met

11  the burden that Taft is not an appropriate placement.

12      MR. HULL: But I think that motion is already flat out

13  denied when the parent had concluded her case, so there is not

14  new information for which to rule again on that motion.

15      HEARING OFFICER: Okay, great we're adjourned.

16      MR. HULL: Thank you.

17      MS. HERBERT: Thank you.

18      HEARING OFFICER: Thank you.