IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWANDA HOLDZCLAW, ) <br> parent and next friend of A.H., a minor ) <br> ) <br> **Plaintiffs** ) <br> ) <br> v. ) <br> ) <br> DISTRICT OF COLUMBIA, *et al.*, ) <br> ) <br> **Defendants.** ) <br> ) | Civil Action No.: 07-00890(ESH) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, the Plaintiff, by and through counsels, Roxanne D. Neloms and Domiento C.R. Hill and James E. Brown & Associates, PLLC and pursuant to Local Rule 7.1 and Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for entry of summary judgment against the Defendants, jointly and severally, for the reasons that are more specifically set forth in the attached Memorandum of Points and Authorities filed contemporaneously herewith and incorporated herein by reference as though set forth in its entirety.

Respectfully submitted,

/s/
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ MD14793]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsels for Plaintiffs

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWANDA HOLDZCLAW, <br> parent and next friend of A.H., a minor <br><br> Plaintiffs <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 07-00890(ESH) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through their attorneys Domiento C.R. Hill and Roxanne D. Neloms of James E. Brown & Associates, PLLC, in their Memorandum of Points and Authorities Submitted in Support of Motion for Summary Judgment, represent unto this Honorable Court as follows:

**I. INTRODUCTION**

A.H. attended Friendship Edison Public Charter School (FEPCS) for 2006-2007 school year as a fourth grader. During the month of October 2006, A.H. was classified with multiple disabilities (other health impaired; emotionally disturbed; and learning disabled) and entitled to receive 26.5 hours per week of specialized instruction and one hour of specialized instruction in counseling. *See Administrative Record at 75-101.* At the October 3, 2006 MDT/IEP meeting held for A.H., it was determined that he required a full time educational placement and FEPCS was no longer an appropriate placement. *Id.* A day later, the parent, through counsel, via letter, notified DCPS that A.H. required a new educational placement. *See AR. at 63.* On October 6,

2

2006, the parent filed an administrative due process alleging that FEPCS, as the LEA, and DCPS, as the SEA, failed to provide specialized instruction and failed to determine an appropriate placement. *See AR. at 53-59*. At the October 27, 2006 resolution meeting, the parties failed to resolved the issues presented in the due process complaint. *See AR at 254-258*. The failed resolution meeting became a MDT/placement meeting, at which time the DCPS placement specialist, Mr. Evan Murray, issued prior written notice of placement to Taft Education Center. *Id.* While the parent neither accepted nor rejected the placement of Taft, she informed the members she would like to investigate the program prior to her son attending. *Id.* She then provided the MDT Team with information on two possible placements that she had investigated prior to the meeting. *Id.* Even though the parent discussed she would like to investigate the program at Taft, Mr. Evan Murray, a DCPS placement specialist, issued a prior written notice indicating that A.H.'s new placement was Taft. *Id.* Soon after the parent contacted Mr. Lebone Workman, the Special Education Director at Taft, to discuss elements of the program. *Id*. Mr. Workman informed the parent that A.H., a fourth grader, could not attend Taft because Taft began with fifth grade. *Id.*

At the hearing held on January 22, 2007, the parent testified that during her conversations with Mr. Workman she discovered that Mr. Workman had no knowledge of her son attending Taft and that A.H. could not attend Taft because he was not in fifth grade. *See Tr. at 44*. Upon additional questioning by the hearing officer, the parent stated she believed that Taft to be inappropriate based on the information provided to her by Mr. Workman. *Id.* After the January 2007 due process hearing, Hearing Officer Ruff issued a February 12, 2007 Hearing Officer's Determination where he determined that the proposed placement of Taft could appropriately implement A.H.'s IEP. *See AR. at 1-9.*

3

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

As there are no genuine issues of material fact, this Court should grant the Plaintiff's motion for summary judgment.

### III. JUDICIAL REVIEW OF AN ADMINISTRATIVE DECISION UNDER IDEIA

A party aggrieved by the findings and decisions rendered during the administrative due process proceedings is entitled to bring forth a civil action in either a state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415 (i)(2). The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines to be appropriate." 20 U.S.C. § 1415 (i)(2); 34 C.F.R. §305.512(b)(3). The applicable standard of review requires that "a party challenging [an] administrative determination must [shoulder] the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *See Kerkam v. McKenzie*, 862 F.2d 884, (D.C. Cir. 1989) ("*Kerkam I*"). Thus, an administrative determination "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent*, D.C. Pub. Schs., 931 F. 2d 84, 87 (D.C. Cir. 1991) ("*Kerkam II*"). In interpreting "the preponderance standard of review", the Supreme Court noted in *Rowley*, that it is not a review that equates into an "unfettered de novo review". *See Board of Educ. Hendrick Hudson Central School Dist. Westchester County v. Rowley*, 458 U.S. at 206, 102 S. Ct. 3034; Courts must give administrative proceedings "due weight,"(*see also Simmons v. District of Columbia*, 355 F.Supp 2d. 12 (D.D.C 2004)) and [f]actual findings from administrative proceedings are considered prima facie correct." *Id.* (Quoting *S.H. v. State Operated Sch. Dist. of the City of Newark*, 336 F. 3d 260, 270 (3d Cir. 2003)).

Courts may not substitute their own views for [that] of the hearing officer, (*id.* at *Rowley* 206; *see also Argueta v. Government of the District of Columbia*, 355 F. Supp. 2d. 408 (D.D.C

2005)*; Shaw v. Dist of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002)), and a court upsetting a hearing officer's decision "must a least explain its basis for doing so." *District of Columbia v. Ramirez* , 355 F.Supp. 2d. 63 (D.D.C 2005). Consequently, when neither party seeks to supplement the administrative record with additional evidence, a motion for summary judgment will operate as a motion for judgment based on the evidence of record. 20 U.S.C. § 1415(i)(2)(B); *Id.* at *Ramirez,* 355 F.Supp. 2d. 63 (D.D.C 2005).

This Court should reverse the February 2007 Hearing Officer's Determination as it is not based on a preponderance of evidence as the hearing officer failed to determine that DCPS violated the Individuals with Disabilities Education Act when it predetermined placement for A.H. and further attempted to "shoehorn" A.H. into a placement by modifying his IEP.

## IV. ARGUMENT

In the February 2007 Hearing Officer's Determination, the hearing officer determined that despite the fact that the Taft Educational Center only educated students in grades fifth through eighth, A.H. would receive an access to a free and appropriate education because A.H. would be educated with peers of like age and like academic deficiencies. **See AR. at 1-9.** The parent sustained her burden in demonstrating that Taft was not an appropriate placement for A.H., as she testified that based on the IEP, A.H could not attend Taft since Taft only provided specialized instruction to fifth to eighth grade students. **See Tr. at 45-47.** Mr. Workman, Taft's special educational coordinator, openly admitted that A.H's IEP would have to be changed from fourth grade to fifth grade so that he could attend Taft for the 2006-2007 school year. **See Tr. at 80.** As a result, DCPS' failure to allow the parent to participate in a meaningful discussion about placement and its subsequent attempts to "shoehorn" A.H. into a placement resulted in a

substantial violation of the IDEIA. See *Spielberg v. Henrico County Public School*, 441 IDELR, 178 (4th Cir. 1988).

### A. DISTRICT OF COLUMBIA PUBLIC SCHOOLS SIGNIFICANTLY IMPEDED THE PARENT'S PARTICIPATION IN MEANINGFUL PLACEMENT DISCUSSION

DCPS violated the parent's right when it determined A.H.'s placement without the parent's particpation. In accordance with 34 C.F.R. 30.501, "each public agency must ensure that a parent of each child with a disability is a member of any group that makes decisions on the educational placement of the parent's child. *See 34 CFR 300.501*(2004). Additionally, each parent must be provided notice containing the purpose, time, and location of the meeting and who will be in attendance of said meetings in advance of the proposed placement meeting. *See 34 CFR 300.322* Furthermore, any changes the school district intends to initiate or propose must be done in a prior written notice and given to the parents of child with a disability well in advance. *34 CFR 300.503*. Consequently, "[f]ormal written offer[s] create a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any." *See Union School District v. Smith*, 15 F. 3d 1519, (9th Cir. 1994).

At the post resolution/placement meeting held for A.H. on October 27, 2006, Mr. Murray issued a prior written notice of placement indicating that A.H. would attend Taft for the remainder of the 2006-2007 school year. **See AR. at 254.** DCPS issued prior written notice at the post/resolution/placement meeting and never informed the parent of its proposed choice prior to the meeting as the regulations require. ***Id.*** *See San Francisco Unified School District*, 32 IDELR 127 (SEA CA 2000)(noting that because the student had never been notified of any

schools that the district was considering for placement, and sole district witness could not identify the student's disability constituted a violation of the IDEA).

Ms. Holdzclaw was never notified prior to the post resolution placement meeting that DCPS was considering Taft Educational Center as a proposed placement. DCPS sprang this placement on the parent after the resolution meeting, in a prior written notice; which is in clear violation of the IDEIA.  DCPS' only proposal for placement was Taft, and this was evident as no person from Taft participated in the meeting to answer questions about the program or discuss whether the IEP could be implemented on behalf of A.H.  ***See AR. at 254-258.***

It is apparent that Mr. Murray did not possess the prerequisite knowledge necessary to aid the MDT team in determining an appropriate placement for A.H.  Had Mr. Murray had been knowledgeable regarding placement, he would have known that Taft only provided specialized instruction for fifth grade through eighth grade.  But for Ms. Holdzclaw's due diligence in investigating the "predetermined" placement, she would not have known that A.H., as fourth grader, was precluded from attending Taft. The hearing officer failed to address DCPS' clear violation of the IDEIA when it predetermined A.H.'s placement and effectively interfered with the parent's right to participate in meaningful placement discussions and determinations, and as a result, this Court should reverse that decision.

### B. DCPS VIOLATED IDEIA WHEN IT ATTEMPTED TO SHOEHORN A.H. INTO A PREDETERMINED PLACEMENT.

In the February 2007 Hearing Officer's Determination, the Hearing Officer determined that neither FEPCS nor DCPS denied A.H. access to a free and appropriate education regarding placement. ***See AR.at 1-9.***  He further determined that Taft Educational Center presented an appropriate placement for A.H.  ***See AR. at 4.***  In support of determining that Taft would

suffice as an appropriate placement, the hearing officer noted that it was irrelevant that A.H. was in the fourth grade or that Taft's program began at the fifth grade. *Id.* Taft was appropriate, according to the hearing officer because A.H. "would be with age appropriate peers and with peers functioning at his comparable academic ability." *Id.* Counsel for the parent argued that this placement was inappropriate because the District was attempting to shoehorn A.H. into a placement despite the fact that A.H. had yet to enter the fifth grade. ***See AR. at 24-25. ; See TR. at. 34-36***.

"The student's IEP forms the basis for the student's placement decision" and that placement "must be determined at least annually, must be based on the student's IEP,. . . ." *See Office of Special Education Program Memorandum,* 21 IDELR 1152 (November 23, 1994). Thus, it is only after the development of an IEP, can a team determine placement. "Shoe-horning" occurs when a school district will develop or re-write an IEP to fit a particular placement for a disabled child. In *Spielberg v. Henrico County Public School*, 441 IDELR, 178 (4th Cir. 1988), in holding that the school district "shoe-horned" the student into a placement the school district desired. The Court specifically noted that the school district arbitrarily re-wrote the IEP for a profoundly mentally retarded student from an out-of-state private facility residential placement to an in-state public day program. The district accomplished this by re-evaluating the student less than a year after his triennials were completed. See *Spielberg v. Henrico County Public School*, 441 IDELR, 178 (4th Cir. 1988).

Here in the case at bar, Mr. Workman testified that although Taft's program was a graded program and it could implement A.H.'s IEP because the implementation would be based on A.H.'s disabilities. ***See Tr. at 79-81.*** He further testified that although A.H's IEP indicated fourth grade, it would have to be re-written and "everybody would have to be in agreement to

place him in his age chronologically." *Id*. Notwithstanding that bit of testimony, no members of the MDT team discussed allowing A.H. attendance to Taft based on his age rather than his grade. Suffice it to say that if an IEP forms the basis of a placement decision and A.H.'s IEP indicates that he in the fourth grade, it would stand to reason that A.H. could not attend Taft because Taft only provides full time specialized instruction to fifth through eighth graders. Based on the testimony and evidence of record, the only solution DCPS could offer the parent regarding placement was to "shoehorn" A.H. into Taft since it had no alternative school to send a multiple disabled fourth grader for the remainder of the 2006-2007 school year.

## V. CONCLUSION

This Court should find that the Hearing Officer erred in his February 2007 Hearing Officer's Determination when he determined that Taft Educational Center was an appropriate placement. Thus as relief, the Plaintiff seeks the reversal of the February 12, 2007 Hearing Officer's Decision, that A.H. be placed at Accotink Academy on an interim basis or that the matter be remanded until such time as an appropriate placement may be determined. Furthermore, the Plaintiffs' request attorney fees and costs of this action and any other relief the Court deems just and proper.

Respectfully submitted,

/s/
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ 496256]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsels for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWANDA HOLDZCLAW,<br>parent and next friend of A.H., a minor<br><br>Plaintiffs<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No.: 07-00890(ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. That at an October 3, 2006, MDT/IEP meeting, A.H. was classified as being eligible to receive special education and its related services as a result of his being multiply disabled with other health impairment, learning disabled, and emotionally disturbed. ***See Administrative Record at 75-92.***

2. That the MDT Team at Friendship Edison, along with the parent, agreed that A.H. warranted a full-time placement in a full-time, separate, special education, day program. ***See AR at 92.***

3. That the MDT Team agreed to reconvene for the purposes of determining placement, with Friendship Edison agreeing to contact and invite the District of Columbia Public Schools ("DCPS") to the next meeting. ***See Id.***

4. That on October 4, 2006, counsel for the parent, informed the DCPS, that Friendship Edison could no longer educate A.H. and requested a meeting to address A.H.'s educational placement. ***See AR. at 63.***

1

5. That on October 6, 2006, counsel for the parent filed an administrative due process hearing request alleging that the A.H. had been denied access to a free and appropriate education when the SEA and LEA failed to provide specialized instruction to A.H. and further failed to determine an appropriate placement. *See AR. at 52*.

6. That at the October 27, 2006 resolution meeting, the parties failed to resolved the issues presented in the due process complaint. *See A.R. at 254.*

7. That after the issues were unresolved, the meeting turned into an MDT/placement meeting during which the DCPS placement specialist, Mr. Evan Murray, issued placement to Taft Education Center for the 2006-2007 school year. *Id.*

8. That the Plaintiff did not accept or reject the placement of Taft, but informed the MDT Team members she would to investigate the program prior to her son attending. *Id.*

9. That the Plaintiff offered the MDT/Placement teams with several different schools that she had investigated regarding her sons educational placement. *Id.*

10. That DCPS issued a prior written notice to Taft Educational Center. *See AR. at 241.*

11. That soon after the Plaintiff spoke with Lebone Workman, the Special Education Director at Taft, to discuss that program. *Id*.

12. That Mr. Workman informed the Plaintiff that because A.H. was in fourth grade he could not attend Taft because Taft began in the fifth grade. *Id.*

13. That after the January 2007 due process hearing, Hearing Officer Ruff issued a February 12, 2007 Hearing Officer's Determination where he determined that the proposed placement of Taft could appropriately implement A.H.'s IEP. *See AR at 1-10.*