## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWANDA HOLDZCLAW,<br>Mother and Next Friend of A.H., a minor,<br><br>    Plaintiff,<br><br>          v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,*<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-0890 (ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, the Defendants here move for summary judgment in this matter, and also here oppose the Plaintiff's August 31, 2007, Motion for Summary Judgment ("Plaintiff's Motion"). The basis for this motion is that the Plaintiff's challenge to the administrative hearing officer's determination ("HOD") in this case lacks merit as there was nothing improper about that decision.

A memorandum of points and authorities, a statement of material facts as to which there is no genuine issue, a response to Plaintiff's statement of material facts, and a proposed order are attached hereto.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

October 15, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DWANDA HOLDZCLAW,<br>Mother and Next Friend of A.H., a minor,<br><br>       Plaintiff,<br><br>       v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,*<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 07-0890 (ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiff here appeals a February 12, 2007, administrative decision issued by a hearing officer pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA"). The sole issue is whether or not the Hearing Officer erred in determining that the District of Columbia Public Schools ("DCPS") appropriately placed the student at the Taft Center ("Taft").

In her Motion, the Plaintiff alleges that the placement was not appropriate and that the parent did not meaningfully participate in the placement discussion. As the Defendants will demonstrate below, the parent *did* meaningfully participate in the placement discussion, and Taft *can* provide the student with a free appropriate public education ("FAPE") as required under the IDEIA. Further, the record clearly indicates that the Plaintiff's belief that Taft cannot implement the student's individualized

education program ("IEP") was based on a miscommunication during one phone call she had with the Taft Special Education Coordinator, as explained in detail below.

Under the IDEIA, disabled students are entitled to a FAPE.  20 U.S.C § 1412(a)(1).  An IEP team, consisting of the disabled student's parents, teachers, and other educational specialists, meet and confer in a collaborative process to determine how best to accommodate the needs of the student to provide a FAPE.  20 U.S.C. §1414(d)(1)(B). The IEP is the written statement from the meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met.  20 U.S.C. §1414(d)(1)(A); 20 USCS § 1401(14).   The IEP team also must make decisions regarding the student's educational placement.  20 U.S.C. § 1412(a)(5)(A).  Following an IEP meeting, the school system issues a prior notice of placement of the student at a school that can implement the IEP.  20 U.S.C. § 1415(c)(1). Should the parent disagree with that placement selection (or any other aspects of the IEP), she can seek a due process hearing.  20 U.S.C. § 1415(c)(2) and (f).

The administrative process described in the statute, if fully employed, results in an evidentiary administrative hearing before an impartial hearing officer, at the conclusion of which an HOD is issued.  20 U.S.C. § 1415(f).  Such an HOD contains findings of fact and conclusions concerning the disputed matters.  If the student's parent does not prevail in the hearing proceedings, judicial review of the HOD by this Court may be sought.  20 U.S.C. § 1415 (i)(2)(A).

## STANDARD OF REVIEW

### I.    Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *Id*.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Factual determinations of the hearing officer are to be accorded due weight.

## II.    <u>Review of administrative decisions under the IDEIA.</u>

The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Board of Educ.of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  *Angevine v. Smith*, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  *Lyons*, 829 F. Supp. at 418.  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices.  *Rowley*, 458 U.S. at 207-08.  Accordingly, this Court must give the hearing officer's determination "due weight," and Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong.

Because the subject HOD was appropriate in all respects challenged by the Plaintiff, she cannot make the required showing, and summary judgment should be granted to the Defendants.

## STATEMENT OF THE RELEVANT FACTS

A.H. is a ten year-old student living in the District of Columbia who has been determined eligible for special education and related services. Administrative Record at pages 2, 53, 244 (hereinafter "R. at __"). He is classified as having Multiple Disabilities ("MD"), including Other Health Impaired ("OHI"), Emotionally Disturbed ("ED") and Learning Disabled ("LD"). R. at 2, 244, 250. According to an August 10, 2006, Educational Evaluation, A.H. was reading at the second grade level, and was functioning at the third grade level in math. R. at 2, 106. He attended Friendship Edison Public Charter School Southeast Elementary Academy ("FEPCS")[1] for the 2006-2007 school year and was in the fourth grade.[2] R. at 2, 244.

On October 3, 2006, FEPCS convened an MDT meeting to review A.H.'s existing IEP in light of new evaluations. R. at 2, 89, 244. The team determined that A.H.'s IEP needed to be revised, changing his classification from Specific Learning Disability, to MD, including OHI, ED and LD. R. at 2, 92. They also decided that A.H. needed a full-time special education program, increasing his hours of specialized and related services from 12.5 hours per week to 27.5 hours per week. R. at 2, 160, 244, 248. At the meeting, FEPCS explained to the Plaintiff that FEPCS does not have a full-time special

---

[1] FEPCS is a public charter school that functions as its own Local Education Agency ("LEA"). In the usual course, if FEPCS determines that it can no longer service a student, it will inform DCPS, and DCPS will then assume LEA functions for that student.

[2] According to the June 13, 2006, Psychological and Educational Evaluation, the Plaintiff held A.H. back in the first grade because the Plaintiff did not feel that he was ready for the second grade. R. at 111.

education program, and thus, could not implement A.H.'s new IEP.  R. at 2, 92; Hearing

Transcript at pages 7-8 (hereinafter "T. at ___").  Consequently, the team agreed to

reconvene to discuss placement, and FEPCS assured the parent that a DCPS placement

specialist would be invited.[3]  *Id.*  Shortly thereafter, FEPCS informed DCPS that A.H.

would need a full-time special education placement, and offered the parent her choice of

dates—October 23, 25, or 27—to conduct the placement meeting.  R. at 2; T. at 26.

On October 6, 2006, just three days after the meeting, the Plaintiff filed her

Administrative Due Process Hearing Complaint, alleging that both FECPS and DCPS

failed to immediately implement A.H.'s revised IEP, and that FECPS was an

inappropriate placement.  R. at 53-59.  A hearing convened on January 22, 2007, the

record closed on January 26, 2007, and an HOD was issued on February 12, 2007.  R. at

1-9.

On October 27, 2006, FEPCS convened a placement meeting at which Placement

Specialist Evan Murray represented DCPS.  R. at 2, 255.   The Plaintiff requested that

A.H. be placed at the Accotink Academy ("Accotink"), a private school placement in

Virginia.  R. at 2, 256.  She indicated that Accotink could implement A.H.'s IEP, and that

A.H. had already been accepted there.  R. at 3, 101, 256.

At that same meeting, Mr. Murray proposed the Taft Center ("Taft").  R. at 2,

254-256.  He explained that Taft—a school within the DCPS system which offers a full-

time therapeutic setting—could implement A.H.'s IEP.  *Id.*  He further indicated that Taft

services students with the same disability classifications as A.H., has appropriate

personnel on staff to implement the IEP and currently has a class for A.H. with five

students, one teacher and one aide.  *Id.*  On that same day, Mr. Murray issued a Prior

---

[3] See Footnote 1.

Notice of placement at Taft, and arranged for transportation for A.H. to and from the school. *Id.*

According to the Plaintiff's testimony at the January 22, 2007, due process hearing, on October 31, 2006, the DCPS Transportation Division called the Plaintiff to inform her that A.H. would be picked up the next day to attend Taft. R. at 2; T. at 43. The Plaintiff then called Taft, and spoke to Mr. LaBone Workman, Taft's Special Education Coordinator. *Id.* She informed Mr. Workman that A.H. was in the fourth grade, and would be starting at Taft the next day. *Id.* She testified that Mr. Workman told her that Taft did not have a fourth grade—rather, its program started with the fifth grade. R. at 2; T. at 44. The Plaintiff said that Mr. Workman told her that since A.H. was still a fourth grader, he was too young for Taft's program. R. at 2; T. at 44.

Based only on that conversation with Mr. Workman, the Plaintiff determined that the Taft program was not appropriate. R. at 2-3; T. at 53. She has never visited Taft. *Id.* During the course of the administrative proceeding, the Plaintiff requested that A.H. maintain his then-current placement at FEPCS, despite its inability to implement the student's IEP.[4] R. at 2; T. at 45.

At the due process hearing, Mr. Workman acknowledged that he told the Plaintiff that A.H. was not eligible for Taft because A.H. was in the fourth grade. R. at 2; T. at 71. However, Mr. Workman clarified that he did not know the student's age or functional

---

[4] The IDEIA states that:
Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.
20 U.S.C. § 1415(j).

grade level when he spoke to the Plaintiff, and that he did not indicate to the Plaintiff the ages of the other students in the fifth grade at Taft or their functional grade levels. *Id.*

Mr. Workman testified that the students in the fifth grade at Taft are ages 10 to 11, and are functioning at a kindergarten to third grade level academically. R. at 3; T. at 71. He also indicated that Taft services students with disability classifications of ED and OHI (including Attention Deficit Hyperactivity Disorder), has a low teacher-to-student ratio and psychological services on sight. R. at 3; T. at 71-73. He testified that there are social workers, a speech/language therapist and an occupational therapist that can provide the services on A.H.'s IEP. *Id.*

On February 12, 2007, the hearing officer issued his decision. R. at 1-9. The HOD concludes that:

> There was sufficient evidence based on Mr. Workman's testimony that Taft can implement the student's IEP. Opposition to Taft was based on the parent's impression that the placement was inappropriate because the student would be moved from the fourth [to] the fifth grade. Although the student will be in the fifth grade at Taft rather than the fourth grade, it was sufficiently demonstrated the student would be with age appropriate peers and with peers functioning at his comparable academic ability.

R. at 4. The Hearing Officer then specifically found that Taft was an appropriate placement for A.H. *Id.* He further held that "… DCPS offered the placement within a reasonable time after DCPS became clear the student was in need of a new placement. Therefore, the Hearing Officer concludes that the student was not denied a FAPE by either DCPS or FEPCS." R. at 4.

**ARGUMENT**

**I.    Taft is an appropriate placement for A.H.**

In her Motion, the Plaintiff argues that Taft was not an appropriate placement for A.H., and alleges that DCPS attempted to "shoehorn A.H. into a predetermined placement." Plaintiff's Motion, at 8-10. The entire basis for this argument is premised on the fact that Taft does not have a fourth grade. *Id.* As DCPS Placement Specialist Murray and Taft Special Education Coordinator Workman explained, this is irrelevant because Taft can implement the services required on A.H.'s IEP. Further, the classroom A.H. would be placed at would include five other students with similar disabilities, ages 10 to 11 years old, who function at the kindergarten to third grade level academically. As A.H. is 10 years old functioning at a second and third grade level academically, he would be with peers of the same age with the same ability.

Although the student's current IEP indicates that A.H. is in "grade 4" (R. at 244), simply changing the "4" to a "5" would correct any perceived defects in the IEP, as explained by Mr. Workman. T. at 81. There would be no need to change any of the core elements of his IEP—his disability classification, his services, his goals and his setting needs would all remain the same. Significantly, both parties agree to every aspect of the IEP except for the grade level.

This can hardly be deemed "shoe horning," especially considering that the placement was determined *after* the October 3, 2007, meeting in which the student's IEP was revised to change his classification, increase his services per week and change his placement needs to a full-time special education program.

Plaintiff cites only *Speilberg v. Henrico County Public Schools*, 853 F.2d 256 (4th Cir. 1988), to support her position. But the present case can easily be distinguished from the *Speilberg* decision. In the *Speilberg* case, the school system selected a placement for the student *before* it changed the student's IEP. The school system then made a substantial change to the student's IEP by changing the level of placement from a residential placement to a day program without any support for that change. In the present case, the new IEP was developed first, and then DCPS made a placement determination based on that IEP. Again, the change from fourth grade to fifth grade on his IEP is a *de minimus* one that certainly is not equivalent to a changing of the level of setting to fit a placement before changing an IEP.

Considering that DCPS' involvement only came after A.H.'s IEP at FEPCS was revised and FEPCS could not implement his new IEP, it is not possible to suggest that DCPS considered a placement before an IEP.

II.    **The Plaintiff meaningfully participated in the placement discussion at the October 27, 2006, meeting.**

In her Motion, the Plaintiff alleges that she did not meaningfully participate in the placement meeting on October 27, 2006. Plaintiff's Motion, at 7-8. In support of that notion, the Plaintiff suggests that DCPS should have notified her that DCPS was considering Taft before the placement meeting and that the placement was decided without discussion. This assertion simply is not supported by the record. The October 27, 2006, meeting notes indicate that Mr. Murray explained the program available at Taft in detail, and asked the Plaintiff and her advocate about "any school that they were interested in sending A.H." R. at 255-256. The notes also reflect that the Plaintiff had the opportunity to voice her preference for a private placement at Accotink Academy, and

told the team that the student had been accepted at Accotink Academy.  R. at 255-256.

Just because the team did not issue a placement at Accotink, and instead issued a Prior

Notice to Taft, does not mean the Plaintiff did not participate in the placement process.[5]

Furthermore, where both a private school and a public school placement can implement a

student's IEP, DCPS may place the student in the public school placement.

### III.    The Hearing Officer considered all of the Plaintiff's evidence and arguments, and his ultimate determinations should be deferred to in this case.

At the due process hearing, the Plaintiff had a full opportunity to present evidence

and argument to support her requests for relief to the Hearing Officer.  In the HOD, the

Hearing Officer took into account all of the parties' legal arguments and documentary

evidence—including the student's exhibits 1-33 and FEPCS' exhibits 1-6—as well as the

testimony of the Plaintiff, Taft Special Education Coordinator LaBone Workman and

Assistant Educational Director of Accotink Ann Warnke.  Indeed, the decision was a

detailed and reflective consideration of both the parties' positions and the best interests of

the student.  The relief ordered was designed to take the particular circumstances of the

student into account, and was based on experience in the confronting of such educational

problems.

While the Plaintiff may request this Court to disregard the Hearing Officer's

conclusions, and to make an independent (and different) determination of the appropriate

relief, there is no basis for the Court to conclude either that the Hearing Officer did not

properly consider the evidence submitted, or that his expressed views are not entitled to

conclusive deference by this Court.  In fact, the HOD narrates in detail the chronological

events that lead to the placement determination by DCPS.  The Hearing Officer fully

---

[5] Regardless, parental participation in the actual location of services is not required under the IDEIA, although explanation about the program is warranted.

considered the parties' documentary evidence, weighed the testimony offered by the parties' witnesses and explained the basis for his conclusions.

The amount of deference given to an administrative hearing officer's decision is based in part on whether the findings reached were "thorough and complete." *See*, e.g., *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999); *see also S.H. v. State-Operated School Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). In this case, the administrative findings and conclusions were both thorough and complete, were legally correct, and should be summarily affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Defendants' Motion for Summary Judgment, and deny the Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
October 15, 2007                    E-mail: Eden.Miller@dc.gov

14

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————
                                              )
DWANDA HOLDZCLAW,                             )
Mother and Next Friend of A.H., a minor,      )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )        Civil Action No. 07-0890 (ESH)
                                              )
DISTRICT OF COLUMBIA,                         )
A municipal corporation, *et al.,*            )
                                              )
        Defendants.                           )
———————————————————)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, the Defendants submit this statement of material facts
as to which there is no genuine issue:

1.  A.H. is a ten year-old student living in the District of Columbia who has been
    determined eligible for special education and related services.  Administrative
    Record at pages 2, 53, 244 (hereinafter "R. at _____").

2.  He is classified as having Multiple Disabilities ("MD"), including Other Health
    Impaired ("OHI"), Emotionally Disturbed ("ED") and Learning Disabled ("LD").
    R. at 2, 244, 250.

3.  According to an August 10, 2006, Educational Evaluation, A.H. was reading at
    the second grade level, and was functioning at the third grade level in math.  R. at
    2, 106.

4. He attended Friendship Edison Public Charter School Southeast Elementary Academy ("FEPCS") for the 2006-2007 school year and was in the fourth grade.[1] R. at 2, 244.

5. On October 3, 2006, FEPCS convened an MDT meeting to review A.H.'s existing IEP in light of new evaluations. R. at 2, 89, 244.

6. The team determined that A.H.'s IEP needed to be revised, changing his classification from Specific Learning Disability, to MD, including OHI, ED and LD.  R. at 2, 92.

7. They also decided that A.H. needed a full-time special education program, increasing his hours of specialized and related services from 12.5 hours per week to 27.5 hours per week.  R. at 2, 160, 244, 248.

8. At the meeting, FEPCS explained to the Plaintiff that FEPCS does not have a full-time special education program, and thus, could not implement A.H.'s new IEP. R. at 2, 92; Hearing Transcript at pages 7-8 (hereinafter "T. at ____").

9. Consequently, the team agreed to reconvene to discuss placement, and FEPCS assured the parent that a DCPS placement specialist would be invited.  *Id.*

10. Shortly thereafter, FEPCS informed DCPS that A.H. would need a full-time special education placement, and offered the parent her choice of dates—October 23, 25, or 27—to conduct the placement meeting.  R. at 2; T. at 26.

11. On October 6, 2006, just three days after the meeting, the Plaintiff filed her Administrative Due Process Hearing Complaint, alleging that both FECPS and

---

[1] According to the June 13, 2006, Psychological and Educational Evaluation, the Plaintiff held A.H. back in the first grade because the Plaintiff did not feel that he was ready for the second grade.  R. at 111.

DCPS failed to immediately implement A.H.'s revised IEP, and that FECPS was an inappropriate placement.  R. at 53-59.

12. A hearing convened on January 22, 2007, the record closed on January 26, 2007, and an HOD was issued on February 12, 2007.  R. at 1-9.

13. On October 27, 2006, FEPCS convened a placement meeting at which Placement Specialist Evan Murray represented DCPS.  R. at 2, 255.

14. The Plaintiff requested that A.H. be placed at the Accotink Academy ("Accotink"), a private school placement in Virginia.  R. at 2, 256.

15. She indicated that Accotink could implement A.H.'s IEP, and that A.H. had already been accepted there.  R. at 3, 101, 256.

16. At that same meeting, Mr. Murray proposed the Taft Center ("Taft").  R. at 2, 254-256.

17. He explained that Taft—a school within the DCPS system which offers a full-time therapeutic setting—could implement A.H.'s IEP.  *Id.*

18. He further indicated that Taft services students with the same disability classifications as A.H., has appropriate personnel on staff to implement the IEP and currently has a class for A.H. with five students, one teacher and one aide.  *Id.*

19. On that same day, Mr. Murray issued a Prior Notice of placement at Taft, and arranged for transportation for A.H. to and from the school.  *Id.*

20. According to the Plaintiff's testimony at the January 22, 2007, due process hearing, on October 31, 2006, the DCPS Transportation Division called the Plaintiff to inform her that A.H. would be picked up the next day to attend Taft. R. at 2; T. at 43.

21. The Plaintiff then called Taft, and spoke to Mr. LaBone Workman, Taft's Special Education Coordinator.  *Id.*

22. She informed Mr. Workman that A.H. was in the fourth grade, and would be starting at Taft the next day.  *Id.*

23. She testified that Mr. Workman told her that Taft did not have a fourth grade— rather, its program started with the fifth grade.  R. at 2; T. at 44.

24. The Plaintiff said that Mr. Workman told her that since A.H. was still a fourth grader, he was too young for Taft's program. R. at 2; T. at 44.

25. Based only on that conversation with Mr. Workman, the Plaintiff determined that the Taft program was not appropriate.  R. at 2-3; T. at 53.

26. She has never visited Taft.  *Id.*

27. During the course of the administrative proceeding, the Plaintiff requested that A.H. maintain his then-current placement at FEPCS, despite its inability to implement the student's IEP.  R. at 2; T. at 45.

28. At the due process hearing, Mr. Workman acknowledged that he told the Plaintiff that A.H. was not eligible for Taft because A.H. was in the fourth grade.  R. at 2; T. at 71.

29. However, Mr. Workman clarified that he did not know the student's age or functional grade level when he spoke to the Plaintiff, and that he did not indicate to the Plaintiff the ages of the other students in the fifth grade at Taft or their functional grade levels.  *Id.*

30. Mr. Workman testified that the students in the fifth grade at Taft are ages 10 to 11, and are functioning at a kindergarten to third grade level academically.  R. at 3; T. at 71.

31. He also indicated that Taft services students with disability classifications of ED and OHI (including Attention Deficit Hyperactivity Disorder), has a low teacher-to-student ratio and psychological services on sight.  R. at 3; T. at 71-73.

32. He testified that there are social workers, a speech/language therapist and an occupational therapist that can provide the services on A.H.'s IEP.  *Id*.

33. On February 12, 2007, the hearing officer issued his decision.  R. at 1-9.  The HOD concludes that:

> There was sufficient evidence based on Mr. Workman's testimony that Taft can implement the student's IEP. Opposition to Taft was based on the parent's impression that the placement was inappropriate because the student would be moved from the fourth [to] the fifth grade. Although the student will be in the fifth grade at Taft rather than the fourth grade, it was sufficiently demonstrated the student would be with age appropriate peers and with peers functioning at his comparable academic ability.

R. at 4.

34. The Hearing Officer then specifically found that Taft was an appropriate placement for A.H.  *Id.*

35. He further held that "… DCPS offered the placement within a reasonable time after DCPS became clear the student was in need of a new placement.  Therefore, the Hearing Officer concludes that the student was not denied a FAPE by either DCPS or FEPCS."  R. at 4.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
October 15, 2007          E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DWANDA HOLDZCLAW,<br>Mother and Next Friend of A.H., a minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 07-0890 (ESH) |

**DEFENDANTS' RESPONSE TO THE PLAINTIFF'S**
**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

The Defendants, by counsel, here respond to the Plaintiff's Statement of Material Facts. The Defendants note that the parties agree that this case may be disposed of by summary judgment motions. Thus, while the Defendants do not claim that the facts contained in the Plaintiff's Statement create a genuine issue requiring trial, the facts set forth in the Defendant's Statement of Material Facts directly conflict with the Plaintiff's facts in that they require a grant of summary judgment for the Defendants. Also, the Defendants question the materiality of some of the Plaintiff's fact statements, as well as the accuracy of some of those statements. The Court should assess the weight ascribed to these fact statements and their materiality to the issues presented in this case accordingly.

The Defendants respond as follows (paragraph numbers below correspond to the paragraph numbers in the Plaintiff's Statement):

6-7.    The Defendants do not dispute the factual assertions in paragraphs 6-7, but

clarify that meeting dates were offered *before* the Plaintiff filed her due

process complaint notice.  HOD, R. at 2; T. at 26.

8.    The Defendants do not dispute that the Plaintiff did not reject the

placement of A.H. at the Taft Center at the October 27, 2007, meeting, but

the remaining factual assertions in paragraph 8 are not supported by the

record.

12.    The Defendants do not dispute that Mr. Workman did inform the Plaintiff

that the Taft Center did not have a fourth grade, but clarifies that Mr.

Workman was not aware of A.H.'s age or functional grade level at the

time of the Plaintiff's inquiry.  HOD, R. at 2-3.

> Respectfully submitted,
>
> LINDA SINGER
> Attorney General
> for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General
> Civil Litigation Division
>
> **/s/ Edward P. Taptich**
> EDWARD P. TAPTICH
> Chief, Equity Section 2
> Bar Number 012914
>
> **/s/ Eden I. Miller**
> EDEN I. MILLER
> Assistant Attorney General
> Bar Number 483802
> 441 Fourth Street, N.W., Sixth Floor South
> Washington, D.C. 20001
> (202) 724-6614
> (202) 727-3625 (fax)

October 15, 2007    E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DWANDA HOLDZCLAW, | ) | |
| Mother and Next Friend of A.H., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0890 (ESH) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of the Defendants' Motion for Summary Judgment and the Plaintiff's Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, and the record herein, it is, on this _____ of _____, 2007, hereby **ORDERED** that:

- the Defendants' Motion for Summary Judgment is **GRANTED**; and it is further **ORDERED** that

- the Plaintiff's Motion for Summary Judgment is **DENIED;** and it is further **ORDERED** that

- this case is **DISMISSED WITH PREJUDICE.**

_____
United States District Judge Ellen S. Huvelle