UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**DWANDA HOLDZCLAW,**               )
**parent and next friend of A.H., a minor** )
                                    )
        **Plaintiffs,**                )
                                    )
    **v.**                          )   Civil Action No. 07-00890 (ESH)
                                    )
**DISTRICT OF COLUMBIA,** *et al.*, )
                                    )
        **Defendants.**               )
_____)

## MEMORANDUM OPINION

Plaintiffs A.H., a minor, and his mother, Dwanda Holdzclaw ("Holdzclaw"), have brought this action against defendants, the District of Columbia and the Superintendent of the District of Columbia Public Schools ("DCPS"), pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA"). Plaintiffs appeal from an adverse administrative decision rejecting their claim that defendants violated the IDEIA by failing to provide A.H. with a free appropriate public education ("FAPE"). Before the Court are the parties' cross-motions for summary judgment. After considering the parties' submissions and the complete record, the Court concludes that defendants fulfilled their statutory obligation to provide A.H. with a FAPE, and it will therefore deny plaintiffs' summary judgment motion and grant defendants' cross-motion.

## BACKGROUND

At the time this action was brought, A.H. was a ten-year-old student living in the District of Columbia who received special education services provided by DCPS. (Defs' Stmt of Material

Facts As to Which There is No Genuine Dispute [Defs' Facts] at ¶ 1.) According to an August 10, 2006 Educational Evaluation, A.H. was reading at the second grade level and was functioning at a third grade level in math. (Defs' Facts at ¶ 3.) A.H. attended Friendship Edison Public Charter School Southeast Elementary Academy ("FEPCS") for the 2006-2007 school year and was in the fourth grade. (Defs' Facts at ¶ 4.)

On October 3, 2006, FEPCS convened a multi-disciplinary team ("MDT") meeting to review A.H.'s existing Individual Education Program ("IEP"). At the MDT meeting, at which Holdzclaw was present, the team determined that A.H.'s IEP needed to be revised, changing his classification from Specific Learning Disability to Multiple Disabilities ("MD"), including Other Health Impaired ("OHI"), Emotionally Disturbed ("ED"), and Learning Disabled ("LD"). (Administrative Record [A.R.] at 88, 92; Plaintiffs' Stmt of Material Facts Not In Dispute [Pls' Facts] at ¶ 1.) The team also determined that A.H. needed a full-time special education program. (Pls' Facts at ¶ 2.) At the meeting, FEPCS informed Holdzclaw that because FEPCS does not have a full-time special education program, it could not implement the new IEP. (A.R. at 92; Defs' Facts at ¶ 8.) The team agreed to reconvene for the purposes of determining a new placement for A.H., and FEPCS agreed to invite a DCPS placement specialist to the meeting. (A.R. at 92; Defs' Facts at ¶ 9.) On October 4, 2006, counsel for Holdzclaw informed DCPS that FEPCS could no longer educate A.H. and requested a meeting to determine a new placement. (Pls' Facts at ¶ 4.) On October 6, 2006, plaintiffs filed their Administrative Due Process Hearing Complaint, alleging that both FECPS and DCPS failed to immediately implement A.H.'s revised IEP and that FEPCS was an inappropriate placement. (Pls's Facts at ¶ 5; Defs' Facts at ¶ 11.)

On October 27, 2006, FEPCS conducted another MDT meeting to consider A.H.'s

placement.[1]  (Pls' Facts at ¶¶ 6-7; Defs' Facts at ¶ 13.)  Specialist Evan Murray represented DCPS at that meeting.  (A.R. at 255.)  He proposed the Taft Educational Center, a school within the DCPS system that offers a full-time therapeutic setting, as an appropriate placement for A.H.  (A.R. at 255.)  Holdzclaw presented the three schools she had researched and informed the MDT that A.H. had been accepted at Accotink Academy, a private school in Virginia.  (*Id.* at 256.)  She explained that Accotink offers a program that is similar to Taft.  (*Id.*)  That same day, Murray issued a prior written notice of placement to Taft and arranged for A.H.'s transportation to and from the school.  (Pls' Facts at ¶ 10; Defs' Facts at ¶ 19.)

On October 31, 2006, the DCPS Transportation Division called Holdzclaw to inform her that A.H. would be picked up the next day to start at Taft.  (Defs' Facts at ¶ 20.)  Holdzclaw then called Taft and spoke to Mr. LaBone Workman, Taft's Special Education Coordinator.  (Pls' Facts at ¶ 11.)  She told Mr. Workman that her son would be starting the fourth grade at Taft the following day.  (Defs' Facts at ¶22; Hearing Transcript ["H.T."] at 43.)  Mr. Workman told her that Taft did not have a fourth grade because its program begins in the fifth grade. (Pls' Facts at ¶ 12; H.T. at 44.)  Holdzclaw did not visit Taft and, pursuant to her request, A.H. has remained at FEPCS during the course of these proceedings, despite its inability to implement his IEP.  (Defs' Facts at ¶ 26, 27; H.T. at 45.)

On January 22, 2007, a due process hearing was conducted.  (Defs' Facts at 12.)   At the

---

[1] The parties differ in their characterization of the purpose of this meeting.  Defendants describe the meeting as a "placement meeting."  (Defs' Mot. at 8.)  Plaintiffs characterize it as a "resolution meeting" which became a "MDT placement meeting" after the parties "failed to resolve the issues presented in the due process complaint. (Pls' Mot. at 3; *see also* Plaintiffs' Response to Defendants' Statement of Material Facts Not In Dispute at ¶ 4.)  This disagreement is immaterial to the resolution of the motions.

hearing, Holdzclaw testified that she had learned during her conversation with Mr. Workman that he was not aware of her son's enrollment and that A.H. could not attend Taft because it did not have a fourth grade program. (H.T. at 43-44)  Mr. Workman also testified.  He acknowledged that he had told Holdzclaw that A.H. was not eligible for Taft because he was in the fourth grade; however, he clarified that he did not know A.H.'s age or functional grade level when he spoke to her. (*Id.* at 70-71.)  He explained that students in the fifth grade at Taft are ages 10 to 11 and are functioning at the kindergarten to third grade levels. (*Id.* at 71.)  He also testified that Taft services students with disability classifications of ED and OHI, has a low teacher-to-student ratio, and has the psychological and other services necessary to meet A.H.'s needs, as outlined in the IEP. (*Id.* at 71-73.)

On February 12, 2007, the hearing officer issued his decision.  He found that:

> There was sufficient evidence based on Mr. Workman's testimony that Taft can implement the student's IEP.  Opposition to Taft was based on the parent's impression that the placement was inappropriate because the student would be moved from the fourth [to] the fifth grade.  Although the student will be in the fifth grade rather than the fourth grade, it was sufficiently demonstrated the student would be with age appropriate peers and with peers functioning at his comparable academic ability.

(A.R. at 4.)  The hearing officer concluded that A.H. was not denied a FAPE by either DCPS or FEPCS. (*Id.*)  Plaintiffs brought this action to challenge the hearing officer's decision ("HOD").

**ANALYSIS**

Under the IDEIA, "any party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2)(A), (i)(3)(A).  The party challenging the decision of the hearing officer has "the burden of persuading the court that the hearing officer was wrong .

. . ." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). *See also Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). In making its determination, the Court must "bas[e] its decision on the preponderance of the evidence [and] shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). In so doing, the Court must recognize that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the court[] to substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Board of Educ. Of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 206 (1982). While the Court is authorized to make an independent determination, "it must give 'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons v. Smith*, 829 F.Supp. 414, 418 (D.D.C. 1993). The Court may "hear additional evidence at the request of a party," *Kerkam*, 862 F.2d at 887, but "[w]here, as here, no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *T.T. v. District of Columbia*, 2007 WL 2111032, at *3 (D.D.C. July 23, 2007).

When reviewing an administrative determination made pursuant to 20 U.S.C. § 1415(f), the Court engages in a two-step process. *Rowley*, 458 U.S. at 206. First, it must determine whether the State has complied with the procedural requirements of the Act. *Id.* Second, it must determine whether the individualized educational program developed through those procedures is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 207. Once the Court has determined that "these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.*

Plaintiffs allege two procedural failures on the part of the defendants, which they contend are grounds for reversal of the HOD. Plaintiffs first argue that Holdzclaw was denied the chance to participate meaningfully in A.H.'s placement decision because she was not told prior to the second MDT meeting that DCPS was considering a placement at Taft. (Pls' Mot. at 7.) The IDEIA requires that "the parents of a child with a disability" be afforded an opportunity "to participate in meetings with respect to . . . the educational placement of the child . . . ." 20 U.S.C. § 1415(b)(1). *See also Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000). As a preliminary matter, there is no indication in the record that this challenge was presented to the hearing officer. It is well-established that "an allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court." *Shabazz v. Williams*, 2004 WL 3571946, at * 2 (D.D.C. March 1, 2004). *See also Cox v. Jenkins*, 878 F.2d 414, 419-20 (D.C. Cir. 1989); *Shaw v. District of Columbia*, 238 F.Supp.2d 127, 140 (D.D.C. 2002). Therefore, plaintiffs' challenge fails on this ground alone.

However, even if the Court were to reach the merits, there is no evidence to support plaintiffs' claim that Holdzclaw was denied the right to participate in A.H.'s placement determination. The record clearly indicates that Holdzclaw and her advocate were present at the MDT meeting at which A.H.'s IEP was revised and requested the reclassification of A.H., which the team ultimately adopted. (A.R. at 88, 95.) The record further shows that Holdzclaw and her advocate participated in the second MDT meeting at which A.H.'s placement was decided, and that Holdzclaw both received information about the Taft Center and expressed her interest in the Accotink Academy. (*Id.* at 255-56.) While Holdzclaw ultimately disagreed with the placement decision, this "does not show [that she] did not participate meaningfully." *Paolella v. District of*

*Columbia*, 210 Fed. App. 1, 3 (D.C. Cir. 2006) (unpublished) (holding that parents participated meaningfully when parents assisted in the development of the student's IEP and expressed their preferences regarding his educational level and placement).

Plaintiffs next allege that the hearing officer erred in determining that Taft Educational Center was an appropriate placement for A.H. They contend that DCPS is bound by the IEP's characterization of A.H. as a fourth grader, and that placing him in Taft and amending his IEP to promote him to the fifth grade constitutes a violation of the general rule that placement must be determined after the IEP is completed. (Pls' Mot. at 9.) In support of their position, plaintiffs cite *Speilberg v. Henrico County Public Schools*, 853 F.2d 256 (4th Cir. 1988), in which the Fourth Circuit held that the School Board had committed a procedural violation by predetermining the child's placement and then developing an IEP to carry out its decision. *Id.* at 259.

*Speilberg* is easily distinguishable from this case. Plaintiffs do not argue (nor does the record support a finding) that A.H.'s diagnoses and his resulting classification were made with a view towards transferring him to the Taft Center.[2] Rather, plaintiffs contend, without citation to any legal authority, that making *any* change to a completed IEP in order to conform to the criteria of a particular placement is improper "shoehorning" and a *per se* procedural violation of the IDEIA.[3] (Pls' Mot. at 9-10.) However, even if they were correct in their novel interpretation of the statute's

---

[2] In fact, plaintiffs requested that A.H. be reclassified, and unlike *Speilberg*, A.H.'s revised IEP significantly increased the special education services to which he is entitled.

[3] By this logic, Accotink would also be an improper placement for A.H. given that Accotink does not classify the children by grade level, but rather places them in classrooms according to their age and functional skill level. (H.T. at 66-67.) Therefore, both of the two proposed placements would require a minor modification of the IEP in order to reflect differences in the schools' classification systems.

requirements, they would still have to show that this procedural violation affected A.H.'s substantive rights for it to be actionable. *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006). Plaintiffs have not met this burden. They have offered nothing to counter the hearing officer's assessment that the Taft Center can implement A.H.'s IEP, nor have they offered any other explanation of how A.H. would be harmed by this placement.[4]

Having concluded that the process followed by DCPS was not procedurally deficient and that there was no violation that affected A.H.'s substantive rights, the Court must determine whether the IEP that was developed and the placement resulting therefrom were "reasonably calculated to enable [A.H.] to receive educational benefits." *Rowley*, 458 U.S. at 207. *See also Shaw*, 238 F.Supp.2d at 138. The hearing officer concluded that they were, and given A.H.'s age and the academic level at which he was functioning, the Court cannot conclude that Taft was an inappropriate placement for him. Plaintiffs have therefore failed to demonstrate by a preponderance of the evidence that the school selected by DCPS is an inappropriate placement or that the hearing officer's decision was erroneous. Accordingly, the Court concludes that DPCS has met its statutory obligation to provide A.H. with a FAPE.

## CONCLUSION

---

[4] Plaintiffs argue that the Court's acceptance of defendants' position constitutes its support for "the notion that Taft Educational Center is appropriate for each and every multiple disabled fourth grader in the District . . . ." (Pls' Reply at 6.) This is simply incorrect. The HOD concluded that a placement in the fifth grade at Taft would be appropriate for A.H. given that he will be placed with students of the same age and at the same academic skill level (as he would be were he placed at Accotink Academy). (A.R. 4.) Plaintiffs have offered no evidence that this "*de minimis*" change in the IEP would affect A.H.'s substantive rights, and therefore the Court will defer to the hearing officer's determination that Taft was an appropriate placement for this student.

For the foregoing reasons, the Court denies plaintiffs' summary judgment motion, and grants defendants' cross-motion for summary judgment. The case is dismissed with prejudice. A separate order has been posted on this date.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 5, 2007